# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT,<br><br>               Plaintiffs,<br><br>     vs.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>               Defendant. | Civil Action No. 11-07318 (WHW) (MCA) |

---

## DEFENDANT  LIVE NATION ENTERTAINMENT INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

---

**GREENBERG TRAURIG, LLP**
Philip R. Sellinger (PS 9369)
Ian S. Marx (IM 1704)
200 Park Avenue
P. O. Box 677
Florham Park, N.J. 07932
(973) 360-7917 (Telephone)
(973) 301-8410 (Facsimile)
*Attorneys for Defendant*
*Live Nation, Entertainment, Inc*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ........................................................1

STATEMENT OF FACTS ...............................................................3

    A.   The Parties..............................................................................3

    B.   The Proposed 2011 New Jersey State Fair Electronic Dance Event ...........4

    C.   Live Nation's Allegedly Defamatory Statements .........................................5

    D.   The March 3, 2011 Meeting ....................................................6

    E.   Juice Contracts With SFEM ....................................................6

    F.   Live Nation's Alleged Threats To "Block" Artists ....................................7

    G.   Juice Fails To Perform Under The Contract................................................8

ARGUMENT ................................................................................10

POINT I
COUNT FOUR OF THE COMPLAINT MUST BE DISMISSED BECAUSE
PLAINTIFFS FAIL TO PLEAD A CLAIM FOR DEFAMATION WITH
SUFFICIENT PARTICULARITY AND FAIL TO ALLEGE THAT THEY
SUFFERED ANY DAMAGES AS A RESULT OF THE ALLEGED
DEFAMATORY STATEMENT ........................................................10

    A.   Plaintiffs' Allegations Regarding Live Nation's Allegedly
       Defamatory Statement Are Insufficiently Specific ....................................11

    B.   Plaintiffs Were Not Damaged By The Allegedly Defmatory
       Statements ..........................................................................13

i

POINT II
PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED ON THEIR INTERFERENCE AND UNFAIR COMPETITION
CLAIMS BECAUSE PLAINTIFFS DO NOT GO BEYOND CONCLUSORY
ALLEGATIONS OF LIABILITY ..........................................................................14

    A.    Juice Does Not Satisfy the *Twombly/Iqbal* Standard of
           Pleading Facially Plausible Claims Against Live Nation...........................15

    B.    Plaintiff's Allegations Regarding Live Nation's "Blocking"
           Of Artists Are Wholly Conclusory, Which is Fatal To
           Counts I, II, III and V .............................................................................16

POINT III
PLAINTIFFS FAIL TO STATE A TORTIOUS INTERFERENCE WITH
BUSINESS RELATIONS CLAIM BECAUSE PLAINTIFFS HAVE NOT
ALLEGED ANY PROSPECTIVE ECONOMIC ADVANTAGE OTHER
THAN THE AGREEMENT ..............................................................................22

POINT IV
PLAINTIFFS UNLAWFUL INTERFERENCE WITH CONTRACT CLAIM
IS DUPLICATIVE OF PLAINTIFFS' TORTIOUS INTERFERENCE WITH
CONTRACT CLAIM AND MUST BE DISMISSED............................................24

CONCLUSION..................................................................................................26

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) .......................................................... *passim*

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................. *passim*

*Brennan v. Palmieri,* No. 07-4364 (FSH), 2008 WL 2355203
  (D.N.J. June 4, 2008) ...................................................................................24

*Broughel v. Battery Conservancy,* No. 07-7755, 2009 WL 928280
  (S.D.N.Y. Mar. 30, 2009) .......................................................................19, 20

*CBS Outdoor Inc. v. New Jersey Transit Corp.,* No. 06-2428 (HAA),
  2007 WL 2509633 (D.N.J. Aug. 30, 2007), *aff'd,* 550 F.3d 302 (3d Cir. 2008)...25

*Crestron Elec., Inc. v. Cyber Sound & Security Inc.,* No. 11-3492 (FSH),
  2012 WL 42628 (D.N.J. Feb. 9, 2012) ........................................................11

*DeCosta v. English,* 2012 WL 5228760 (D.N.J. Feb. 16, 2012) ...........................18

*D.W. v. Radisson Plaza Hotel Rochester,* 958 F.Supp. 1368 (D.Minn. 1997)........12

*Eli Lilly and Co. v. Roussel Corp.,* 23 F.Supp.2d 460 (D.N.J. 1998).....................22

*F.D.I. C. v. Bathgate,* 27 F.3d 850 (3d Cir. 1994).................................................11

*Gumbs v. O'Connor,* No. 10-1520 (MLC), 2011 WL 1322238
  (D.N.J. Apr. 4, 2011) ...................................................................................11

*Ives v. Guilford Mills, Inc.,* 3 F.Supp.2d 191 (N.D.N.Y. 1998) ...............................12

*Johnson Serv. Group, Inc. v. France,* No. 10-cv-1988-D, 2011 WL 248552
  (N.D.Tex. Jan. 27, 2011) ..............................................................................19

*Metromedia Energy, Inc, v. Griffin,* No. 101692 (JAP), 2011 WL 4343801
  (D.N.J. Sept. 13, 2011) .................................................................................23

*Novartis Pharms. Corp. v. Bausch & Lomb, Inc.,* No. 07-5945, 2008 WL 4911868 (D.N.J. Nov. 13, 2008) ...................................................11, 12

*Santiago v. Warminster Twp.,* 629 F.3d 121 (3d Cir. 2010) ....................................16

*Serian v. Penguin Group (USA), Inc.,* No. 08-cv-74, 2009 WL 2225412 (N.D.W.Va. July 23, 2009) .................................................................................13

*Solutions Partners, Inc. v. Thomas,* No. 09-cv-4778, 2010 WL 2036139 (D.N.J. 2010).........................................................................................................18

## State Cases

*Beck v. Tribert,* 312 N.J.Super. 335 (App. Div. 1998).............................................13

*C. B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co.,* 14 N.J. 146 (N.J. 1954) .................................................................................................................25

*G.D. v. Kenny,* 205 N.J. 275 (App. Div. 2009).........................................................14

*Jenkins v. Region Nine Housing Corp.,* 306 N.J. Super. 258 (App. Div. 1997)......................................................................................................22, 23

*Lecours v. Mobil Corp.,* 2005 WL 3500802 (App. Div. Dec. 23, 2005) ...............13

*Zoneraich v. Overlook Hosp.,* 212 N.J. Super. 83 (App. Div. 1986) .....................11

## Federal Rules

Fed. R. Civ. P. 12(b)(6).............................................................................................1

Fed. R. Civ. P. 8(a) .................................................................................................15

Defendant Live Nation Entertainment, Inc. ("Live Nation") respectfully submits this brief in support of its motion for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the Complaint of Plaintiffs Juice Entertainment, LLC ("Juice"), Thomas Dorfman ("Dorfman") and Chris Barrett ("Barrett") (collectively, "Plaintiffs") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiffs were awarded a contract to produce a concert to be held in June 2011 at the New Jersey State Fair (the "State Fair") under which they had three weeks, or until April 1, 2011, to provide State Fair Event Management ("SFEM") with a roster of artists that had committed to appear at the concert. When Plaintiffs were unable to perform their end of that bargain, SFEM exercised its right to terminate the agreement. Unwilling to accept that their failure to perform was caused by their own shortcomings, Plaintiffs concocted a theory that they failed because Live Nation defamed them and then "blocked" artists from agreeing to appear at the State Fair concert. Plaintiffs bring this trumped up action against Live Nation -- alleging defamation, three counts of interference and unfair competition -- based on the most conclusory allegations imaginable, with the apparent hope that Live Nation, whom they perceive to be a "deep pocket", can be leveraged to settle this lawsuit, rather than bear the expense and burden of

litigation. However, because Plaintiffs' Complaint is fatally deficient, it should be dismissed for failure to state a claim.

Plaintiffs' defamation claim is based upon the contention that, several weeks <u>before</u> Plaintiffs signed their agreement with SFEM, unidentified representatives of Live Nation made disparaging remarks about Plaintiffs to SFEM and the entity that owns the site of the State Fair.  The Complaint fails to state a claim for defamation because Plaintiffs fail to identify with particularity the speaker of the allegedly defamatory statements.  Moreover, according to their own allegations, Plaintiffs were not damaged by the alleged defamation because Plaintiffs were able to obtain the agreement with SFEM despite the alleged defamatory comments (which are alleged to have been made and heard *prior* to the agreement having been signed), and allegation of harm is an essential element of a defamation claim.  Thus, Count IV of the Complaint must be dismissed.

Plaintiffs' claims for interference and unfair competition are based upon the essential premise that Plaintiffs were unable to satisfy their contractual obligation to provide SFEM with a roster of booked acts for the State Fair concert by April 1, 2011 because Live Nation improperly blocked artists from performing at the State Fair.  The pleading requirements of Rule 8(a), as clarified by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), mandate that the factual allegations of a complaint be specific

enough to raise a right to relief above the speculative level and must create at least "plausible" grounds for a claim by pleading factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plaintiffs have not identified a *single* artist whom they offered a contract to appear at the State Fair concert, and who was interested and available to appear, and who declined to appear because of Live Nation's interference. The Complaint is entirely devoid of factual assertions from which it can reasonably be deduced that Plaintiffs' failure to procure a roster of acts by April 1, 2011 was caused by Live Nation. Instead, it is solely predicated upon Plaintiffs' *ipse dixit* assertion that Live Nation's interference caused their lack of success in signing acts. Because such conclusory allegations are insufficient to sustain a claim, Counts I, II, III and V must be dismissed.[1]

For all of these reasons, Plaintiffs' entire Complaint should be dismissed.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiffs Dorfman and Barrett are the principals of Juice, a company alleged to be in the business of producing live music shows. Complt. ¶15. Live Nation is

---

[1]    Finally, Count III (Tortious Interference with Business Relations) fails for the additional reason that Plaintiffs fail to allege any prospective business relation outside of the Agreement with SFEM that is alleged to have been harmed and Count II (Unlawful Interference with Contract) also must be dismissed as it is duplicative of Count I (Tortious Interference with Contract).

alleged to be the world's largest promoter of live popular music concerts. *Id.* ¶2. The allegations in the Complaint concern an electronic dance concert intended to be held at the New Jersey State Fair in 2011, an event run by SFEM and its President, Al Dorso ("Dorso"). *Id.* ¶18.

**B.    The Proposed 2011 New Jersey State Fair Electronic Dance Event**

According to the Complaint, in 2010, a company called Base Production Inc. produced a one-day show at a Latin Music Festival for SFEM. Complt. ¶16. Plaintiff Barrett is alleged to have been a principal in Base Production Inc. and Plaintiff Dorfman is alleged to have assisted Barrett in production of this event. *Id.* According to Plaintiffs, the Latin Music festival was successful and led SFEM to want to work with Barrett and Dorfman again. *Id.* Plaintiffs began discussions with SFEM regarding a long term agreement for the production of concerts at the State Fair. *Id.* ¶17.

Plaintiffs allege that on December 1, 2010, Dorso verbally granted Barrett and Dorfman exclusive rights to produce an electronic dance concert at the New Jersey State Fair, held annually between mid June and mid July, for the next five years. Complt. ¶18. Such verbal agreement was followed by an engagement letter which granted Deluna Inc., the corporate entity under which Barrett and Dorfman were allegedly operating at the time, "the right to broker, stage and promote musical and dance events in the designated special event area of the fair." *Id.* The

4

engagement letter stated that the terms and conditions of the parties' agreement would be set forth in a contract at a later date. *Id.*

Plaintiffs claim that after the Engagement Letter was signed, Barrett and Dorfman began working to produce the concert for the 2011 State Fair. *Id.* ¶19. In January and early February 2011, Barrett and Dorfman allegedly began contacting talent agencies and artists to perform at the State Fair. *Id.* However, the Complaint does not identify a single artist or agent whom Barrett and Dorfman supposedly contacted. In the same time frame, a representative of the William Morris Talent Agency ("William Morris") is alleged to have told two individuals (not Barrett and Dorfman) that William Morris wanted to be "the wind behind your sails." *Id.* Barrett and Dorfman allegedly believed that this meant that their efforts to produce the concert had been well received by William Morris. *Id.*

### C.   Live Nation's Allegedly Defamatory Statements

Plaintiffs contend that during this time period (January - February 2011), Live Nation began its "campaign" to prevent Juice from securing the contract with SFEM by defaming Plaintiffs. *Id.* ¶20. Plaintiffs claim that as part of this campaign, unidentified representatives of Live Nation told Dorso that Barrett and Dorfman were "broke" and "lacked the expertise" to produce concerts of the size contemplated in the Engagement Letter. *Id.* ¶21. Plaintiffs also contend that on or before February 18, 2011, Dorso conveyed to Plaintiffs that unidentified

representatives of Live Nation allegedly told the New Jersey Sports and Exposition Authority (the "Authority"), which owns the Meadowlands where the State Fair takes place, that Plaintiffs associated with thieves and could not be trusted. *Id.* ¶26.

**D.    The March 3, 2011 Meeting**

The Complaint alleges that on or about March 3, 2011, Barrett and Dorfman met with representatives of Live Nation (the "March 3 Meeting"). Complt. ¶29. At this meeting, in an alleged attempt to "coerce" Juice into making Live Nation its partner in connection with the State Fair concert, Live Nation allegedly told Juice that Live Nation would "use its influence" with talent agents to prevent Juice from signing artists for the State Fair event. *Id.* A Live Nation representative is alleged to have said to Juice that "I know your contract, there are loopholes, I can kick you guys out of the contract at any time." *Id.* ¶30. Plaintiffs do not allege that they told Live Nation any details of their plans for the State Fair electronic dance concert, such as the artists whom they hoped to book, at the March 3 Meeting.

**E.    Juice Contracts With SFEM**

Plaintiffs admit that on or about March 7, 2011, despite Live Nation's alleged attempts to prevent Plaintiffs from entering into a finalized contract with SFEM and <u>after</u> all of the allegedly defamatory statements are alleged to have been made, Plaintiffs succeeded in entering a contract with SFEM. The Complaint

6

explicitly concedes that "[n]otwithstanding this interference [the alleged defamatory statements], SFEM finalized a formal contract with Juice Entertainment on March 7, 2011" (the "Agreement"). Complt. ¶22. Under the Agreement, Juice was granted the right to broker, stage and promote an electronic dance event on the first weekend of the State Fair for 4 years beginning in 2011, with an additional 5 year option. *Id.* However, the Agreement provided that "Juice must provide by March 1st of each year a copy of talent/acts/entertainment, a list of all interested parties, a list of equipment, copies of all contracts." Complt., Ex. A, Section 3(c).

The Agreement was signed on March 7, 2011 (later than the already expired March 1 deadline in the Agreement) and the parties contemporaneously signed a 30 day extension of the March 1 deadline for Juice to provide copies of contracts of artists signed for the 2011 State Fair. Complt., Ex. B. Juice therefore had until April 1, 2011, or approximately three weeks, to deliver to SFEM a roster of signed artists who would be performing at the State Fair concert in June 2011, and if Juice failed to timely produce such a roster, SFEM had the right to terminate the Agreement.

**F.    Live Nation's Alleged Threats To "Block" Artists**

The Complaint also contends that, in addition to the allegedly defamatory statements described above, sometime before February 18, 2011, Live Nation told

7

Dorso that it was "blocking" Tiesto, an electronic dance music DJ, from performing at the State Fair by threatening that Tiesto would not be permitted to play at other venues controlled by Live Nation if he appeared at the State Fair. Complt. ¶23. In early March 2011, Live Nation is further alleged to have stated that William Morris belonged "exclusively" to Live Nation and that no artists represented by William Morris would be permitted to sign contracts with Juice to appear at the State Fair. *Id.* ¶24. At the March 3 Meeting, Barrett and Dorfman were allegedly told that Live Nation "would use its influence with talent agents" to prevent Plaintiffs from signing artists for the State Fair if Plaintiffs did not partner with Live Nation. *Id.* ¶30.

### G.    Juice Fails To Perform Under The Contract

The Complaint alleges, in a cursory and conclusory manner, that Juice "sent out over $1 million in offers to artists for contracts to perform at the 2011 New Jersey State Fair." Complt. ¶24. The Complaint does not allege when such offers were sent out or to whom such offers were made. The Complaint does not indicate if the $1 million in offers was extended to one artist, two artists or twenty. The Complaint does not allege if these offers were made verbally or in writing. The Complaint does not allege what, if any, response Juice received in connection with these alleged offers, or if such responses were made verbally or in writing and when such responses were received. To the extent Juice received any responses,

the Complaint does not convey their substance.  The Complaint does not allege that a single artist or agent indicated that he or she was rejecting an offer from Juice because of something that Live Nation said or did.  In short, the Complaint does not contain a single specific allegation that any artist wanted and was available to appear at the 2011 State Fair but declined to do so because of any interference by Live Nation.

Ultimately, Juice was not able to secure a roster of committed talent for the 2011 State Fair by April 1, 2011, the deadline imposed in the Agreement.  *Id.* ¶30. Juice concedes that it failed to meet its contractual obligations because it "was not able to sign artists sufficient to stage the shows at the State Fair."  *Id.* ¶31.  As a result of Juice's failure to provide the requisite roster of committed artists, SFEM exercised its option to terminate the Agreement.  *Id.*

The Complaint offers the hypothesized conjecture that Juice's failure to obtain a roster of talent to appear at the concert and to perform under the Agreement was caused by "a combination of defamatory statements made to representatives of SFEM, pressure applied to artists and their agents, and pressure applied to SFEM and the Authority" (Complt. ¶31).  The Complaint is silent as to any other potential reasons Juice was unable to secure a talent roster, such as the extremely short three week timeframe within which Juice was required to provide a roster of signed artists, the short notice being provided to artists, or any other

9

factor.  Plaintiffs do not explain how they reach the conclusion that Live Nation is responsible for their failure.  Instead, the Complaint assumes that Plaintiffs could not succeed because Live Nation "blocked" artists, without any factual allegations supporting this theory.  The Complaint does not contain a _single_ allegation concerning a _single_ artist or a _single_ agent who was pressured by Live Nation not to appear at the 2011 State Fair concert.  Plaintiffs' conclusory theory is further undermined by the fact that Plaintiffs do not allege that Live Nation became involved in any way with the 2011 State Fair after Juice failed to perform under the Agreement.  Thus, Live Nation is not alleged to have derived any benefit from Plaintiffs' failure to perform under the contract with SFEM.

## ARGUMENT

### POINT I

**COUNT FOUR OF THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD A CLAIM FOR DEFAMATION WITH SUFFICIENT PARTICULARITY AND FAIL TO ALLEGE THAT THEY SUFFERED ANY DAMAGES AS A RESULT OF THE ALLEGED DEFAMATORY STATEMENTS**

To establish a claim for defamation, "a plaintiff must show that the defendant communicated a false statement about the plaintiff to a third person that harms the plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff." *Gumbs v. O'Connor,* No. 10–1520 (MLC),

2011 WL 1322238, at *8 (D.N.J. Apr. 4, 2011) (citing *Dello Russo v. Nagel,* 358 N.J. Super. 254, 262–263 (App. Div. 2003)).

As set forth below, Plaintiffs fail to allege the requisite elements of a claim for defamation because the Complaint fails to identify with sufficient particularity the speakers and recipients of the allegedly defamatory statements and fails to allege that those statements caused them damage.

### A.    Plaintiffs' Allegations Regarding Live Nation's Allegedly Defamatory Statement Are Insufficiently Specific

A complaint alleging defamation must identify the defamatory words, the person who spoke them, and the fact of their publication. *F.D.I. C. v. Bathgate,* 27 F.3d 850, 875 (3d Cir. 1994) (citing *Zoneraich v. Overlook Hosp.,* 212 N.J. Super. 83 (App. Div. 1986)). "A vague conclusory allegation is not enough." *Zoneraich,* 514 A.2d at 63.

A claim for defamation also must identify with particularity the utterer of the allegedly defamatory statements. *Crestron Elec., Inc. v. Cyber Sound & Security Inc.*, No. 11–3492 (FSH), 2012 WL 42628, *11 (D.N.J. Feb. 9, 2012), citing *Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, No. 07–5945, 2008 WL 4911868, at *5 (D.N.J. Nov. 13, 2008). In *Crestron*, plaintiff alleged that the defendant company made defamatory statements regarding plaintiff to plaintiff's customers, including that plaintiff was incompetent and not likely to be in business for long. The District Court dismissed plaintiff's defamation claim as insufficiently pleaded

11

because, for among other reasons, the allegations "fail[ed] to state who at [the defendant company] made such statements." *Id. See also, e.g., Ives v. Guilford Mills, Inc.*, 3 F.Supp.2d 191, 199 (N.D.N.Y. 1998) (dismissing defamation claim where plaintiff alleged only that "defendants" made statements as not clear whether this referred to the defendant corporation's Chairman or to other parties capable of speaking on behalf of the corporate defendant); *D.W. v. Radisson Plaza Hotel Rochester*, 958 F.Supp. 1368, 1381 (D.Minn. 1997) (dismissing defamation claim on the grounds that allegations that "Defendants" made false statements "fail[ed] to adequately identify the individual defendants who made the allegedly defamatory remarks").

As in *Crestron*, Juice fails to state a claim for defamation because the Complaint "fails to allege by whom . . . the allegedly defamatory statements were made". *Id.* For each of the allegedly defamatory statements in the Complaint, Plaintiffs fail to allege who at Live Nation made the statement. Complt. ¶¶ 21, 26. Plaintiffs merely allege that "representatives of Live Nation" allegedly told Dorso that Plaintiffs were "broke" and lacked expertise. *Id.* ¶21. Even more vaguely, Plaintiffs allege that Dorso told them that unidentified representatives of Live Nation told unidentified individuals at the Authority that Plaintiffs associated with thieves. *Id.* ¶26. These allegations are insufficiently specific as to both the

12

speaker and recipient of the alleged defamatory statements. For this reason alone, Count IV of the Complaint must be dismissed.[2]

**B.    Plaintiffs Were Not Damaged By The Allegedly Defamatory Statements**

Plaintiffs also fail to state a claim for defamation because they admittedly suffered no damages as a result of the allegedly defamatory statements. To state a defamation claim, Plaintiffs must allege a false and defamatory statement of fact about Plaintiffs, that Defendants knew or should have known was false, and that was communicated to third parties, <u>causing damages</u>. *Beck v. Tribert*, 312 N.J.Super. 335, 349 (App. Div. 1998).

Here, each allegedly defamatory statement is alleged to have been made <u>prior to</u> Juice's signing of the Agreement with SFEM, and, according to Plaintiffs' apparent theory, for the purpose of dissuading SFEM from contracting with Juice. Accordingly, because Plaintiffs succeeded in entering into the Agreement despite the alleged defamation, none of the allegedly defamatory statements caused Plaintiffs any harm. Juice's subsequent failure under the Agreement is alleged to

---

[2]    In addition, the assessment that Plaintiffs lacked the expertise to produce an event of the magnitude of the State Fair dance event is a non-actionable expression of opinion. *See Lecours v. Mobil Corp.*, 2005 WL 3500802, at *6 (App. Div. Dec. 23, 2005) (finding that statements regarding a plaintiff's job performance constitute opinion and are not actionable under a defamation claim); *Serian v. Penguin Group (USA), Inc.*, No. 1:08-cv-74, 2009 WL 2225412, at *9 (N.D.W.Va. July 23, 2009) (statement that the plaintiff was a "bad businessman" was a subjective opinion not actionable as defamation).

13

be the result of artists not agreeing to contract with Juice to perform at the State Fair. No artist or their agent is alleged to be the recipient of any of the alleged defamatory statements, all of which are alleged to have been made to either SFEM or the Authority.

Count IV of the Complaint must therefore be dismissed for this additional reason.[3]

## POINT II

## PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ON THEIR INTERFERENCE AND UNFAIR COMPETITION CLAIMS BECAUSE PLAINTIFFS DO NOT GO BEYOND CONCLUSORY ALLEGATIONS OF LIABILITY

Plaintiffs' remaining claims -- alleging three counts of interference and unfair competition -- all hinge on Live Nation's alleged "blocking" of artists, are devoid of factual and legal support, and consist entirely of conclusory allegations. As a result, none of Counts I, II, III or V states a viable claim for relief.[4]

---

[3]     As a result, to the extent that Plaintiffs' other claims are based on the alleged defamatory statements, such statements cannot provide support for Plaintiffs' tortious interference or unfair competition claims. *See G.D. v. Kenny*, 205 N.J. 275, 307 (App. Div. 2009) (holding that if a defamation claim fails, so should other intentional tort claims, if predicated on the same conduct).

[4]     Plaintiffs' claim for Tortious Interference with Business Relations (Count III) fails for the additional reason that Plaintiffs fail to allege any prospective business relation outside of the Agreement with SFEM, *see* Point III below, and the Unlawful Interference with Contract claim (Count II) also must be dismissed because it is entirely duplicative of Count I (Tortious Interference with Contract), *see* Point IV below.

14

## A. Juice Does Not Satisfy The *Twombly/Iqbal* Standard Of Pleading Facially Plausible Claims Against Live Nation.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide the "grounds" of his or her "entitle[ment] to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, Fed. R. Civ. P. 8(a) requires that "[f]actual allegations ... be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must create at least "plausible" grounds for a claim. *Id.* at 556. Otherwise, "a plaintiff with 'a largely groundless claim' [could] ... 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Id.* at 558 (internal citation omitted).

The Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), further defined the pleading requirements under Rule 8(a). *Iqbal* places great emphasis on the difference between factual allegations and legal conclusions, the former being accepted as true on motions to dismiss, while the latter are not. *Id.* at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Instead, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* By contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

15

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 1955).

In light of *Twombly* and *Iqbal*, the Third Circuit explained that "a court must take three steps" in evaluating the sufficiency of a claim:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and internal citations omitted).

### B. Plaintiffs' Allegations Regarding Live Nation's "Blocking" of Artists Are Wholly Conclusory, Which is Fatal To Counts I, II, III and V

Plaintiffs' theory of Live Nation's liability under its tortious interference and unfair competition claims is based on the concept that, despite Plaintiffs' success in entering into the Agreement with SFEM, Live Nation somehow prevented Juice from performing under that Agreement.[5] Juice failed under the Agreement because it did not secure contracts with a sufficient number of artists to perform at the 2011

---

[5]     By the terms of the Complaint, each of Live Nation's allegedly defamatory or threatening statements made to SFEM were made prior to the signing of Juice's Agreement with SFEM. *See* Complt. ¶ 21, 22, 26. Even assuming, *arguendo*, that every statement attributed to Live Nation in the Complaint was actually said to SFEM, SFEM nevertheless entered into the Agreement with Juice.

16

State Fair prior to April 1, 2011. *See* Complt. ¶ 31. The only conduct of Live Nation that could theoretically have contributed to Juice's failure under the Agreement is its alleged "blocking" of artists. Plaintiffs' claims, therefore, hinge on Live Nation's supposed threats to artists, which are pled in wholly conclusory fashion. Noticeably absent from the Complaint, for example, are allegations of **any** of the following requisite facts to support such a claim:

> 1. Live Nation's knowledge of the specific artists that Juice either made offers to or to whom it intended to make offers.

> 2. Live Nation's communication to artists or their agents that Live Nation would "block" them if they contracted with Juice to perform at the State Fair, including when, how and to whom such threats were made.

> 3. Responses by artists or their agents to Juice's offers that implicate Live Nation in their decision to refuse Juice's offers in any way.

Instead, the Complaint offers only "naked assertions" and "formulaic statements of the elements of a cause of action". *Twombly*, 550 U.S. at 555, 557.

This Court has routinely found that such allegations are insufficient to support a cause of action. For example, in *Solutions Partners, Inc. v. Thomas*, the District Court dismissed a counterclaim for tortious interference that was similarly flawed. *See* No. 09-4778 (NLH), 2010 WL 2036139 (D.N.J. 2010). In *Solutions*, an independent consultant alleged that a company for which he consulted

17

interfered with another client of the consultant by threatening and harassing the consultant's client.   The court granted the motion to dismiss the tortious interference claim on the grounds that the it was based on "only vague accusations" that the company "harassed and threatened" the client.   "In the absence of a more vivid description" of the alleged harassment and threats, the court found the allegations insufficient to plead a claim under *Iqbal. See Solutions*, 2010 WL 2036139 at \*3 citing *Iqbal,* 129 S.Ct. at 1949 (stating that federal pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and that a pleading fails if it "offers labels and conclusions" or "tenders naked assertion[s] devoid of further factual enhancement") (citations and internal quotation marks omitted).

Similarly, in *Decosta v. English*, plaintiff alleged that in connection with a business relationship that went sour, the defendants tortiously interfered with plaintiff's other business relationships.   *See* No. 11-2651 (MAH), 2012 WL 528760 (D.N.J. Feb. 16, 2012).   The plaintiff alleged that the "defendants have purposefully contacted those who were associated with [plaintiff] and create [sic] a riff [sic] between [plaintiff] and those who the plaintiff enjoyed a positive relationship."   The District Court found such allegations were insufficient, as they "fail [to] identify any conduct or facts showing how defendants purposefully 'created a riff' between [plaintiff] and those with whom she enjoyed a 'positive

relationship.' . . . Such threadbare allegations do not raise [plaintiff's] 'right to relief above the speculative level.'" *Id.* at *7, *citing Twombly,* 550 U.S. at 555; *see also, e.g., Johnson Serv. Group, Inc. v. France,* No. 10-cv-1988-D, 2011 WL 248552, *2 (N.D.Tex. Jan. 27, 2011) (granting motion to dismiss tortious interference claim where the allegations failed to plead "factual content" regarding the nature of the alleged interference); *Broughel v. Battery Conservancy*, No. 07-v-7755, 2009 WL 928280, *10 (S.D.N.Y. Mar. 30, 2009) (granting motion to dismiss tortious interference claim where complaint contain no allegations of "specific conduct" that interfered with plaintiff's current or prospective contractual relations).

Here, Plaintiffs offer no specific facts to support their conclusory allegations that Live Nation blocked artists from contracting with Juice to perform at the 2011 State Fair.  Plaintiffs allege that they sent out over $1 million in offers to artists to perform at the State Fair.  However, Plaintiffs do not specify to whom those offers were made, whether the offers were verbal or written, or even whether the offers were made to one, two or twenty artists.  Furthermore, Plaintiffs do not allege that they received any response to their offers from any artist or agent, let alone that any responses indicated that a single artist would not agree to perform as a result of pressure from Live Nation, as opposed to any other reason, such as the short notice

of the event in question, the artist's previously set performance schedule or insufficient offered payment.

Plaintiffs claim that William Morris appeared favorably disposed to their efforts at the New Jersey State Fair. Complt. ¶19. Plaintiffs also allege that they were later told by Live Nation that William Morris "belonged" to Live Nation. *Id.* ¶24. However, Plaintiffs do not allege that they made offers to any artists represented by William Morris or that such offers were rejected, or that anyone from William Morris told them they would no longer support their efforts at the State Fair, or that anyone from William Morris stated that any change in position was the result of Live Nation's influence. Similarly, Plaintiffs do not allege that Tiesto, the one artist specified in the Complaint, is represented by William Morris, that they made Tiesto an offer, that such offer was rejected, or that the reason for such rejection implicated Live Nation. Without such allegations, there is no basis to infer that Live Nation took any action to prevent artists from agreeing to perform at the State Fair.

Furthermore, the entire premise of Live Nation's alleged liability is utterly implausible, within the meaning of *Twombly* and *Iqbal*. Plaintiffs would have the Court believe that Live Nation, without knowing the specific artists to whom Plaintiffs had made or planned to make offers, was able to "block" an entire genre of artists to make it impossible for Juice to sign a single artist to perform at the

20

State Fair.  Such sweeping action is alleged to be possible based on Live Nation's purported statement that William Morris "belonged" to it.  Even assuming, *arguendo*, that a Live Nation representative made such a statement, there are no facts alleged to support a theory under which Live Nation could control William Morris, an entirely separate business entity, in that manner.  Furthermore, there are no allegations that William Morris represented all or even a majority of electronic dance artists, so that Plaintiffs would be unable to sign artists from other agencies. The Court need not accept this wholly fantastic story as true, particularly when any factual support is lacking.  *See Twombly*, 550 U.S. at 565 (sufficiency and plausibility of allegations in complaint "turns on the suggestions raised by [the alleged] conduct when viewed in light of common economic experience").

Counts I, II, III and V, Plaintiffs' tortious interference and unfair competition claims, all hinge on Plaintiffs' threadbare and conclusory allegation that Live Nation engaged in "blocking" of artists and must therefore be dismissed, because they do not plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

## POINT III

## PLAINTIFFS FAIL TO STATE A TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS CLAIM BECAUSE PLAINTIFFS HAVE NOT ALLEGED ANY PROSPECTIVE ECONOMIC ADVANTAGE OTHER THAN THE AGREEMENT

To state a viable claim for intentional interference with economic advantage[6] against Live Nation, Plaintiffs must allege: (1) that Plaintiffs have a protected interest, not necessarily amounting to an enforceable contract; (2) Live Nation's intentional interference with that interest without justification; (3) reasonable likelihood that the benefit Plaintiffs anticipated from such protected interest would have continued but for the interference of Live Nation; and (4) resulting damage. *See Jenkins v. Region Nine Housing Corp.*, 306 N.J. Super. 258, 265 (App. Div. 1997) (*citing Printing Mart-Morristown v. Sharp Electronics,* 116 N.J. 739, 751-52 (1989)). As set forth below, Plaintiffs fail to allege that there was any protected interest in anticipated benefits beyond the Agreement with SFEM or that any such anticipated benefits would have been achieved but for Live Nation's interference.

---

[6]     New Jersey courts have referred to a claim of tortious interference with business relationships as tortious interference with: "prospective economic relationship", "prospective business advantage", "business relations" or "economic relations." Regardless of the terms employed, the elements necessary to establish such a claim remain identical. *See Eli Lilly and Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 493-94 (D.N.J. 1998).

22

All of the allegations specific to this Count concern the Agreement between Juice and SFEM, not any other business relations.   For example, in connection with this Count, Plaintiffs allege:

- "Live Nation made Juice Entertainment's performance of the Agreement impossible[.]" Complt. 53.

- "Live Nation . . . desired to bring about the result that the Agreement be terminated[.]" *Id.* 54.

- "Live Nation knew that termination was certain or substantially certain to occur as a result of its actions." *Id.*

- "Live Nation had no existing economic interest in the Agreement between SFEM and Juice Entertainment." *Id.* 55.

The complete absence of any alleged protected interest or prospect of economic advantage beyond the Agreement (which is addressed by Count I, tortious interference with contract) is fatal to Juice's claim for tortious interference with business relations.

This claim also fails because Plaintiffs allege no damages that are the "but for" result of the supposed interference.  To prevail on a tortious interference claim under New Jersey law, plaintiff must demonstrate that defendant's wrongful acts were the "but for" cause of the alleged loss of economic advantage.   *See Metromedia Energy, Inc, v. Griffin*, No. 101692 (JAP), 2011 WL 4343801 *4 (D.N.J. Sept. 13, 2011) ("to state a claim that is plausible on its face, [plaintiff]

must allege an injury" that is the "but for" result of defendant's actions, rather than set forth "a recital of the necessary elements of . . . a [tortious interference] claim supported by mere conclusory statements.") (internal citations omitted).

Even if Plaintiffs had alleged that there was some prospective economic advantage reasonably anticipated from their business relations beyond the Agreement with SFEM, the Complaint contains no allegations to support an inference that such prospects were lost as a result of actions by Live Nation. In particular, there are no allegations that any individuals at William Morris or the Authority, or any individual artists or agents ever told Plaintiffs that they had been interested in doing business with them, but were no longer interested in doing so because of statements or actions by Live Nation.

Thus, for these reasons as well, Count III of the Complaint must be dismissed.

## POINT IV

**PLAINTIFFS' UNLAWFUL INTERFERENCE WITH CONTRACT CLAIM IS DUPLICATIVE OF PLAINTIFFS' TORTIOUS INTERFERENCE WITH CONTRACT CLAIM AND MUST BE DISMISSED**

Plaintiffs cannot allege the same claim in separate counts. *See, e.g., Brennan v. Palmieri*, No. 07-4364 (FSH), 2008 WL 2355203, at *4 (D.N.J. June 4, 2008) (dismissing, with prejudice, plaintiff's municipal malfeasance, misfeasance and nonfeasance claims, finding them "[a]t best, ... duplicative of other substantive

24

claims ... pled elsewhere in the complaint"); *CBS Outdoor Inc. v. New Jersey Transit Corp.*, No. 06-2428 (HAA), 2007 WL 2509633, at *20 (D.N.J. Aug. 30, 2007), aff'd, 550 F.3d 302 (3d Cir. 2008) (where outdoor advertiser alleged property interest in license to operate billboards on NJ Transit property, court finds advertiser's claim that NJ Transit lacked statutory authority to terminate license "necessarily duplicative of those alleging violation of substantive due process, and will be dismissed").

Counts I and II allege wrongful interference with contract claims. *See* Complt. Count I ("Tortious Interference with Contract"); *id.* at Count II ("Unlawful Interference with Contract"). The sole New Jersey state or federal case that substantively discusses a claim for "unlawful interference with contract" described it as a claim that "sounds in tort." *C. B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co.*, 14 N.J. 146, 163 (N.J. 1954). Plaintiffs' wrongful interference with contract claim fails for the reasons set forth at Point II, *supra*. However, to the extent Plaintiffs may have alleged sufficient facts to support a claim for wrongful interference with contract, they should be limited to one tortious interference with contract claim. Count II should therefore be dismissed with prejudice as duplicative of Count I.

25

## <u>CONCLUSION</u>

For the foregoing reasons, Live Nation respectfully requests that this Court dismiss the Complaint in its entirety.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:    /s/  Ian S. Marx
      Ian S. Marx (IM 1704)

200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410
marxi@gtlaw.com

*Attorneys for Defendant*
*Live Nation Entertainment, Inc.*

26