# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 2:11-cv-07318-WHW-MCA |
| LIVE NATION ENTERTAINMENT, INC. | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

David S. Stone
David B. Harrison
STONE & MAGNANINI LLP
150 JFK Parkway
Short Hills, NJ 07078
Tel: (973) 218-1111
Fax: (973) 218-1106

Thomas R. Ajamie
David S. Siegel
AJAMIE LLP
Pennzoil Place – South Tower
711 Louisiana Street, Suite 2150
Houston, Texas 77002
Tel:  (713) 860-1600
Fax: (713) 860-1699

**ATTORNEYS FOR PLAINTIFFS
JUICE ENTERTAINMENT LLC,
THOMAS DORFMAN AND CHRIS
BARRETT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii-v

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................... 4

    A. Plaintiffs' Background Gave Them The Required Expertise
    To Perform The Contract .......................................................................... 4

        1.  The Latin Music Festival ................................................................ 5

        2.  Plaintiffs Secured An Engagement Letter To Produce the
        2011 State Fair Concerts................................................................ 5

        3.  Plaintiffs Began To Plan For the 2011 State Fair ................................. 6

    B. Defendant Wrongfully Interfered With Plaintiffs' Contract
    With SFEM ................................................................................................ 6

        1.  Defendant Immediately Began To Defame Plaintiffs And Interfere
        With The Contract ........................................................................ 6

        2.  Defendant Began To Assert Pressure To Be Cut Into The
        Contract ....................................................................................... 7

    C. Defendant Possessed The Requisite Market Power To
    Block Plaintiffs' Efforts........................................................................... 8

        1.  Defendant's Behavior Is Consistent With Its History .......................... 8

        2.  Defendant Violated The Agreed Final Judgment With The Justice
        Department Which Recognized And Sought To Control
        Defendant's Market Power ............................................................ 9

i

III.    STANDARD OF REVIEW ........................................................... 10

IV.    ARGUMENT ........................................................................... 13

    A. Plaintiffs Have Sufficiently Pled A Claim For Defamation ................... 13

        1. Rule 8(a)'s Pleading Standards Apply ................................. 15

        2. Plaintiffs Amply Pled Defamatory Statements ..................... 16

        3. Plaintiffs Sufficiently Pled Damages ................................. 18

    B. Plaintiffs Have Plausibly Alleged Wrongful Interference And
       Unfair Competition ........................................................ 19

        1. Plaintiffs' Allegations Sufficiently Support Their Claims ................ 21

        2. The Restatement Describes Such Conduct as
           Tortious Interference.......................................................... 22

        3. Interference With Prospective Relations Is Also Actionable ............ 23

        4. Authorities Cited By Defendant Are Inapposite.................................. 24

        5. Plaintiffs Adequately Pled Causation ................................. 26

V.    CONCLUSION ........................................................................ 29

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson News, L.L.C. v. Am. Media, Inc.*, 2012 WL 1085948
(2nd Cir. April 3, 2012)..................................................................... 12, 28, 29

*Anderson v. Bessemer City,* 470 U.S. 564, 575 105 S.Ct. 1504,
85 L.Ed.2d 518 (1985) .............................................................................. 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d. 868
(2009) ........................................................................................................ 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,
167 L.Ed.2d 929 (2007) ......................................................................... 11, 27

*Broughel v. Battery Conservancy,* 2009 WL 928280 (S.D.N.Y.
Mar. 30, 2009).......................................................................................... 26

*Crestron Elec. Inc. v. Cyber Sound & Sec. Inc.*, 2012 WL 426282
(D.N.J. Feb. 9, 2012).............................................................................. 6, 17

*Cristelli v. Filomena II, Inc.*, 1999 WL 1081290 (D.N.J. Dec. 1, 1999).......... 15, 16

*DeAngelis v. Hill*, 847 A.2d 1261 (N.J. 2004)........................................... 14

*Decosta v. English,* 2012 WL 528760 (D.N.J. Feb. 16, 2012) ................. 25

*Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977) ............. 27

*Edelman v. Croonquist*, 2010 WL 1816180 (D.N.J. May 4, 2010)........ 13

*Erikson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).......... 11

*Farris v. County of Camden*, 61 F.Supp. 2d 307 (D.N.J. 1999) .......... 23

*Genesis Int'l Holdings v. Northrop Grumman Corp.*, 238 Fed. Appx. 799

(3rd Cir. 2007) .......................................................................................... 17

*Johnson Serv. Group, Inc. v. France,* 2011 WL 248552 (N.D. Tex.
    Jan. 27, 2011) ..................................................................................... 26

*Lawrence v. Bauer Publ'g & Printing Ltd.,* 446 A.2d 469 (N.J. 1982) ................. 14

*MacDougall v. Weichert,* 677 A.2d 162 (N.J. 1996) ...................................... 20
*McLaughlin v. Rosanio, Bailets & Talamo, Inc.,*  751 A.2d 1066
    (N.J. Super. Ct. App. Div. 2000) ......................................................... 18

*Mangan v. Corporate Synergies Group, Inc.,* 2011 WL 3328785
    (D.N.J. Aug. 1, 2011) .......................................................................... 13

*Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 104 S.Ct. 1464,
    79 L.Ed.2d 775 (1984) ......................................................................... 13

*Nostrame v. Santiago,* 22 A.3d 20 (N.J. Super. Ct. App. Div. 2011), *cert
    granted,* 34 A.2d 780 (N.J. Nov. 18, 2011) ......................................... 20

*Parker v. Roche Holdings Ltd.* 292 F.3d 361 (3rd Cir. 2002) .................................. 11

*Phillips v. County of Allegheny,* 515 F.3d 224 (3rd Cir. 2008) ............................... 11

*Printing Mart-Morristown v. Sharp Elecs. Corp.,* 563 A.2d 31
    (N.J. 1989) ....................................................................................... 17, 20

*Solutions Partners, Inc. v. Thomas,* 2010 WL 2036139 (D.N.J. 2010) ............ 24, 25

*Starr v. Sony BMG Music Entm't,* 592 F.3d 314 (2nd Cir. 2010) ............................ 28

*Swanson v. Citibank, N.A.,* 614 F. 3d 400 (7th Cir. 2010) .................................... 26

*United States v. Ticketmaster Entm't, Inc.,* 2010 WL 5699134
    (D. D.C. 2010) ...................................................................................... 9

*Ward v. Zelikovsky,* 643 A.2d 972 (N.J. 1994) ....................................... 18

## Federal Statutes, Regulations And Rules

FED. R. CIV. P. 8(a) ................................................................ 4, 10, 12, 14

FED. R. CIV. P. 8(a)(2) ................................................................ 10, 12

FED. R. CIV. P. 9(b) ................................................................ 4, 15

FED. R. CIV. P. 12(b)(6) ................................................................ 1, 3 11

## Other

2 *Areeda & Hovenkamp* §307d1 (3d ed. 2007) ................................................ 28

RESTATEMENT (SECOND) OF TORTS, §766 (1979) ................................................ 20

RESTATEMENT (SECOND) OF TORTS, §767 (1979). ................................................ 20

Plaintiffs Juice Entertainment, LLC ("Juice Entertainment"), Thomas Dorfman, and Chris Barrett (collectively "Plaintiffs"), respectfully submit this brief in opposition to the motion to dismiss submitted by Defendant Live Nation Entertainment, Inc ("Live Nation") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.    INTRODUCTION

Since 2005, Live Nation has dominated the business of providing venues for, and promoting, live concerts, standing alone as the global titan of the immensely lucrative live popular music industry. Live Nation's dominance stems, in part, from its connection to entertainment conglomerate Clear Channel Entertainment Inc. ("Clear Channel"); but also, to the strategies and tactics Defendant employs to crush any semblance of a threat to its market influence.

In 2010, Plaintiffs, two young, up and coming entrepreneurs in the New Jersey music scene, came upon an opportunity to get ahead in the industry. Having found success with promoting several New Jersey shows which routinely averaged thousands in attendance, the partners were able to secure a contract with New Jersey's State Fair Event Management ("SFEM") to produce concert events for the 2011 State Fair at the Meadowlands (the "Contract").

1

Leading up to the State Fair, SFEM gave Plaintiffs the opportunity to prove themselves through the promotion of a major Latin Music Festival. The huge success of the festival convinced SFEM to offer Plaintiffs an exclusive contract to promote an electronic dance event for the 2011 State Fair. Almost immediately, Plaintiffs began booking talent and preparing for what would involve an exciting and lucrative venture.

Plaintiffs were well along in planning for the event when Live Nation interfered. Despite initially showing no interest in Plaintiffs' plans for the upcoming show, Live Nation soon began to perceive these local promoters as a threat based on their early success in recruiting high-quality talent. Live Nation then proceeded with a heavy-handed campaign to destroy any chance Plaintiffs had of putting on a successful show by infecting the relationships that Plaintiffs had carefully developed. Live Nation lied to SFEM's President about the Plaintiffs' experience and financial stability, blocked the show's most popular talent by threatening to shut artists out of future engagements, and threatened to kick Plaintiffs out of their contract with SFEM.

Significantly, Live Nation also threatened to withhold ticketing for the concert – a violation of the agreed Final Judgment entered by the Justice Department and Live Nation on July 30, 2010, as a condition of Live Nation's merger with Ticketmaster Entertainment, Inc. ("Ticketmaster"). Live Nation's

2

conduct amounted to tortious and unlawful interference with Plaintiffs' contract, tortious interference with business relations, defamation, and unfair competition.

Plaintiffs' Complaint is based upon these facts, and many more detailed below. In its attempt to dismiss this well pled complaint, Live Nation makes two meritless arguments: 1) under the *Twombly* and *Iqbal* pleading standard, the allegations in Plaintiffs' complaint do not state a plausible claim; and, 2) various claims made by Plaintiffs are not pled with sufficient particularity.

In making the first argument, Live Nation erroneously suggests that if it can conjure up any other plausible explanation for the facts alleged by Plaintiffs, then the complaint must be dismissed. In a resounding denunciation of this very argument, the Second Circuit recently held, "A court ruling on [a Rule 12(b)(6)] motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 2012 WL 1085948, at *19 (2nd Cir. April 3, 2012). Under *Twombly* and *Iqbal*, Plaintiffs' complaint need only state "a plausible claim for relief" to survive a motion to dismiss, which it does convincingly for each of the claims.

And second, in arguing that Plaintiffs' allegations are not sufficiently particular, Live Nation mistakenly assumes that Plaintiffs are required to plead their claims with particularity. Plaintiffs have not made claims based in fraud.

3

Thus, Plaintiffs allegations must only meet those pleading standards under Rule 8(a), not under the heightened pleading standard of Rule 9(b).

For these reasons, the Court should deny Live Nation's motion to dismiss, as Plaintiffs have pled facts that give rise to a plausible claim for relief.

## II.   STATEMENT OF FACTS

Plaintiffs Dorfman and Barrett are young entrepreneurs who were rising in the concert promotion business at the time they were awarded the Contract by SFEM. Al Dorso, President of SFEM, did not decide to contract with Plaintiffs in a vacuum or without a basis for believing that Plaintiffs could perform. In the summer of 2010, a full year before the first year covered by the Contract, Plaintiffs produced a Latin Music Festival for the New Jersey State Fair. They did so on short notice and succeeded in obtaining headliner acts for the one-day group of concerts. This successful collaboration led Mr. Dorso to grant Plaintiffs the Contract the following year.

### A.   Plaintiffs' Background Gave Them The Required Expertise To Perform The Contract

Plaintiffs were uniquely equipped to perform the Contract. Plaintiff Dorfman operated a successful nightclub from 2007-2010. ¶ 15.[1] Plaintiffs Dorfman and

---

[1] All paragraph references are to Plaintiffs' Complaint, Docket No. 1, unless otherwise indicated.

Barrett had cooperated together for years in producing various shows in a myriad of New Jersey venues which routinely attracted thousands of people. ¶ 15.

### 1.    The Latin Music Festival

In 2010, Plaintiffs Dorfman and Barrett, operating as Bare Production Inc., entered into an agreement with SFEM to produce a one-day Latin Music Festival. ¶ 17. This show was produced at the behest of Mr. Dorso, and this successful collaboration led to his willingness to enter into the Contract with Plaintiffs. ¶ 18.

### 2.    Plaintiffs Secured An Engagement Letter To Produce the 2011 State Fair Concerts

Building on the success of the 2010 Latin Music Festival, Plaintiffs Dorfman and Barrett began discussions in the fall of 2010 with SFEM with the goal of entering into a long-term agreement for the production of concerts at the State Fair. On December 1, 2010 Al Dorso verbally granted Mr. Barrett and Mr. Dorfman exclusive rights to produce an electronic dance event, as well as any and all concerts in the designated special events area of the State Fair, for the next five years.

These verbal promises were reduced to writing in an engagement letter, also dated December 1, 2010, granting Deluna Inc. (the predecessor to Plaintiff Juice Entertainment, LLC) "the right to broker, stage, and promote musical and dance

events in the designated special event area of the fair, held yearly between mid June and mid July." ¶ 18.

### 3. Plaintiffs Began To Plan For the 2011 State Fair

Acting in reliance on the December 1, 2010 engagement letter, Plaintiffs Dorfman and Barrett began to arrange for the electronic dance event at the 2011 State Fair. At the outset their efforts were successful. For example, in early 2011, a representative of the William Morris Talent Agency informed Vito Bruno and John Dimatteo, Plaintiffs' agents, that William Morris wanted to facilitate the success of Plaintiffs' production, and that it wanted to be the wind behind Plaintiffs' sails. ¶ 19.

## B. Defendant Wrongfully Interfered With Plaintiffs' Contract With SFEM.

### 1. Defendant Immediately Began To Defame Plaintiffs And Interfere With The Contract

As soon as Defendant learned that Plaintiffs had been awarded the Contract, it began almost immediately to try to prevent the parties from being able to perform. Defendant did this largely through defaming Plaintiffs to Al Dorso and others. ¶¶ 21, 26. At some point prior to February 18, 2011, Defendant told Mr. Dorso that Plaintiffs would not succeed in signing the electronic DJ Tiesto, one of Plaintiffs' intended main attractions, because Defendant would block Tiesto's appearance at the State Fair. ¶ 23. It would do so by threatening Tiesto or his agent

that he would not be permitted to play at other venues controlled by Defendant. ¶ 23. Near this same time, Defendant told the New Jersey Sports and Exposition Authority (the "Authority") that Plaintiffs associated with thieves and could not be trusted as business partners. ¶ 26.  During this same time period of February to early March of 2011, Defendant told Mr. Dorso of SFEM that Plaintiffs were broke and could not afford to pay the artists necessary to perform under the Contract. ¶ 21. They also told Mr. Dorso that Plaintiffs lacked the expertise needed to produce the concerts contemplated under the Contract. ¶ 21.

### 2. Defendant Began To Assert Pressure To Be Cut Into The Contract

In February of 2011, after Defendant made the defamatory statements described above, Defendant also began pressuring Mr. Dorso and the Authority to convince Plaintiffs to agree to give Defendant part of the Contract.¶ 25. Defendant also threatened to withhold ticketing to the State Fair unless it was given part of the Contract. ¶ 27. This was no idle threat as Defendant, upon information and belief, has an exclusive contract with the Authority to provide ticketing services for events held at The Meadowlands, including concerts, sporting events and special events such as the State Fair. ¶ 25.

Defendant also began insisting that Plaintiffs meet with it. ¶ 28. On or about March 3, 2011, Plaintiffs did meet with Jason Miller, Sr. Vice President of

7

Bookings for Defendant, and John D'Esposito, Vice President of Talent for Defendant. ¶ 29. Miller and D'Esposito repeated the same threats they had made to Mr. Dorso directly to Plaintiffs, including the threat that Tiesto and talent managed by William Morris would be prevented from appearing at the State Fair. ¶¶ 29, 30. Miller and D'Esposito also told Plaintiffs that unless Defendant was permitted to become partners with Plaintiff under the Contract, Defendant would use its clout with the Authority to get Plaintiffs terminated from the Contract. ¶ 30.

## C. Defendant Possessed The Requisite Market Power To Block Plaintiffs' Efforts

### 1. Defendant's Behavior Was Consistent With Its History

At its inception, as a spin-off from Clear Channel, Defendant was the largest promoter of live popular music concerts within the United States, responsible for approximately 70% of the live music tickets sold in the nation in 2005. ¶ 12. Defendant achieved this dominance through the same sorts of coercive behavior alleged here. That is, Clear Channel limited access to its radio airwaves to acts which used its promotional services. ¶ 12. Defendant, after it was spun off from Clear Channel, pursued various means to solidify its control of performers such as guaranteeing artists more compensation than expected from gross ticket sales and threatening to reduce artists' revenue if they refused to allow Defendant to promote

entire seasonal tours or if they appeared at venues not controlled by Defendant. ¶ 13.

In a situation remarkably similar to the facts of this case, Defendant made it crystal clear that it will retaliate when it loses business to a competitor. In 2009, Defendant lost the contract to promote concerts at the New York State Fair. In response, a representative of Defendant stated that it would not allow any of the acts it promotes to appear at the Syracuse-based fair. ¶ 14. Defendant then demonstrated a history of retaliating when it does not get its way. Against this backdrop, it is entirely plausible that Defendant would actively seek to frustrate Plaintiffs' ability to perform under the Contract and that Defendant had the market clout with artists and venue operators to succeed in doing so.

### 2. Defendant Violated The Final Judgment With The Justice Department Which Recognized And Sought To Control Defendant's Market Power

Plaintiffs allege in their Complaint that, in a particularly egregious instance of wrongful interference, Defendant threatened to withhold ticketing for the State Fair unless it was cut into the Contract. ¶ 27. In addition to constituting wrongful interference with the Contract, this action violated the Final Judgment governing Defendant's merger with Ticketmaster. On July 30, 2010, the United States District Court for the District of Columbia, in *United States v. Ticketmaster Entertainment, Inc.,* Case 1:10-CV-00139, entered its Final Judgment setting out

9

the terms and conditions under which Defendant was permitted to merge with Ticketmaster. A copy of the Final Judgment, of which the Court may take judicial notice, is attached hereto as Exhibit A.[2]

Pursuant to Section IX A 3 of the Final Judgment, Defendant agreed not to "condition or threaten to condition the provision of Primary Ticketing Services to a Venue Owner based on that Venue Owner refraining from contracting with a company other than Defendants for the Provision of Live Entertainment Events." Under the Final Judgment, simply threatening to withhold ticketing constitutes a violation of the terms to which Defendant and the Justice Department agreed. If Defendant is willing to blithely violate an Agreed Judgment with the federal government, it is certainly plausible that it followed through on its threats and blocked the talent Plaintiffs needed to perform under the Contract.

## III.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is plausible when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that

---

[2] Should the Court determine that additional allegations are necessary, Plaintiffs respectfully request leave to amend their Complaint to add this factual material.

the defendant is liable for the conduct alleged. *Id.*; *Bell Int'l Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the... claim is and grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Twombly*, 550 U.S. at 555). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement *does not* call for proof at the pleading stage, but rather merely "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of necessary elements of the plaintiff's cause of action." *Id.* A plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

In deciding the Defendant's motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff and determine whether, under any reasonable reading of the complaint, 'the plaintiff may be entitled to relief.'" *Phillips,* 515 F.3d at 231 (quoting *Parker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3rd Cir. 2002)). Thus, to survive a motion to dismiss, a "complaint must contain sufficient

factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 544).

The requirements of plausibility and fair notice do not create a heightened fact pleading standard. The *Twombly* Court noted that Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. And, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Defendant hints in its Motion that there are other plausible theories which might explain Plaintiffs' inability to sign the artists it needed to contract to perform at the State Fair. (Motion, Docket No. 13-1, pp.9-10)  Even if any such theories were plausible, which Plaintiffs do not concede, they would be irrelevant at this stage.  Plaintiffs need not show that their theory is more likely than not true, nor do they need to rule out alternate explanations. *Anderson News,* 2012 WL 1085948 (holding with respect to antitrust allegations that plaintiff was not required to rule out the possibility of independent, as opposed to concerted, action by defendants). A given set of actions may easily be subject to multiple plausible interpretations. *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 85 L.Ed.2d 518 (1985) ("two or more witnesses" may tell mutually inconsistent but "coherent and

12

facially plausible stories"). And "[t]he choice between two reasonable interpretations of . . . testimony properly [i]s left for the jury." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 767 n.12, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).

In short, plausibility is not synonymous with, nor does it require, a large amount of detailed factual pleading. And as between multiple plausible explanations for the conduct complained of and the harm alleged to flow from it, "a well-pleaded complaint may proceed even it if strikes a savvy judge that actual proof of the facts alleged is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation and quotation omitted).

## IV.    ARGUMENT

### A.    Plaintiffs have Sufficiently Pled a Claim for Defamation

To state a claim for defamation, Plaintiffs must allege "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence by the publisher." *Edelman v. Croonquist*, 2010 WL 1816180, at *3 (D.N.J. May 4, 2010) (citations and quotations omitted). In *Mangan v. Corporate Synergies Group, Inc.*, therefore, the court held that it was sufficient that plaintiff, the former CEO of defendant corporation, alleged that the defendant made false

and disparaging remarks about the plaintiff at an employee meeting the day after he was terminated. 2011 WL 3328785, at *5 (D.N.J. Aug. 1, 2011).

Here, Plaintiffs have alleged: 1) Live Nation stated that that Plaintiffs were broke and did not have the funds necessary to procure the required talent for the State Fair shows ¶21; 2) Live Nation stated that Plaintiffs lacked the experience and expertise needed to produce the contemplated shows ¶21; and 3) Live Nation stated that Plaintiffs associated with thieves ¶ 26. Plaintiffs have also alleged that these statements are false; that, in fact, Plaintiffs had sufficient capital to promote the event, they had extensive experience with larger venues, and they did not associate with criminals. Further, Plaintiffs have alleged that the statements go directly to the business and reputation they were trying to build, making the statements unquestionably defamatory.[3]

Plaintiffs have also alleged that the statements were made directly to the SFEM President Al Dorso, the person who hired Plaintiffs, in a deliberate attack on the Plaintiffs' character and in a calculated attempt to get Mr. Dorso to void the Contract. And, that defamatory statements were made to the Authority for the same purpose. Thus, Plaintiffs have alleged facts that support each factor of a

---

[3] Words that subject a person to ridicule or contempt, or "that clearly 'sound to the disreputation' of an individual are defamatory on their face." *DeAngelis v. Hill*, 847 A.2d 1261, 1268 (N.J. 2004) (quoting *Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451, 459 (1982)).

14

defamation claim.   Taken as true, the allegations go beyond the pleading requirements of Rule 8(a).

### 1.   Rule 8(a)'s Pleading Standards Apply

Rule 8(a)'s standard requires Plaintiffs to merely state facts that give rise to a plausible claim for relief. *Iqbal*, 556 U.S. at 678.   Plaintiffs have met this standard by alleging who made the defamatory statements (Live Nation), to whom the statements were made (SFEM President Al Dorso), what those statements were (that Plaintiffs were broke, inexperienced, and fraternized with thieves), and when the statements were made (March 7, 2011, and sometime before February 18, 2011). Such allegations would survive a motion to dismiss even under the heightened pleading standards of Rule 9(b), if particularity were required for defamation claims under the Federal Rules of Civil Procedure. But, because Plaintiffs' defamation allegations need only put Live Nation on notice of the allegations made against it, Plaintiffs have pled more than enough facts to survive the motion to dismiss brought by Live Nation. *See Cristelli v. Filomena II, Inc.*, 1999 WL 1081290, *3 (D.N.J. Dec. 1, 1999).

In its zealous but misguided effort to dismiss the defamation claims, Live Nation has misread authority, misapplied case law, and confused the standards which govern pleadings in federal court.   The entire thrust of Live Nation's argument for dismissing Plaintiffs' claim is that Plaintiffs must plead  defamation

15

with particularity.   Motion, p. 11.   Live Nation, however, has confused the pleading requirements of the rules of procedure for New Jersey state courts with the Federal Rules of Civil Procedure.  Because Plaintiffs have brought this case in federal court, the pleadings must abide by the latter.  Citing ample authority, this District recently explained the distinction:

> A federal court sitting in diversity applies the Federal Rules of Civil Procedure, provided the rule in question is valid and on-point. Here, Rule 8 is on-point because it articulates the required federal pleading standard. Moreover, Defendants do not contend that Rule 8 embodies an invalid exercise of power under the Rules Enabling Act. Thus, the federal pleading standards, not New Jersey pleading standards, govern the sufficiency of the Complaint.
>
> Under the federal pleading standard, a plaintiff alleging defamation needs to plead a short and plain statement of the claim showing that the pleader is entitled to relief. Under Rule 8, pleadings are to be liberally construed, and alerting the defendant of the allegations made against him is generally sufficient.

*Mangan,* 2011 WL 3328785, at *4-5 (citations and quotations omitted). "According to Rule 8, a defamation pleading does not need to cite precise defamatory statements, it must only provide sufficient notice to the other party of the allegations made against him." *Cristelli,* 1999 WL 1081290, at *3. Plaintiffs' complaint more than satisfies this "notice" threshold.

### 2.   Plaintiffs Amply Pled Defamatory Statements

Live Nation makes much of Plaintiffs' failure to name those specific people at Live Nation who made the defamatory statements. Relying on *Crestron Elec.*

16

*Inc. v. Cyber Sound & Security Inc.*, Live Nation argues that Plaintiffs' Complaint must be dismissed because it does not specifically allege the identity of the persons who published the defamatory statements. Motion, p. 11. In *Crestron*, however, it was entirely unclear whether the speaker was the named defendant or other unnamed non-parties because the statements were alleged to have been made "with and through" plaintiff's competitors, rather than directly spoken by the defendant. *Crestron Elec. Inc. v. Cyber Sound & Sec. Inc.*, 2012 WL 426282, at *11 (D.N.J. Feb. 9, 2012). Here, on the other hand, Plaintiffs have named Live Nation, the corporation to which the statements of its representatives are attributable.

Furthermore, such a minute deficiency is in no way fatal. Again, the purpose of Rule 8(a) is to ensure that defendants are sufficiently placed on notice of the allegations made against them. Live Nation knows which of its corporate representatives made the alleged defamatory statements. Thus, the notice standard of Rule 8(a) is met by naming the corporation itself, rather than the specific speakers of the defamatory statements.

Moreover, corporations can, and have, been held vicariously liable for defamatory statements made by their corporate representatives. *Genesis Int'l Holdings v. Northrop Grumman Corp.*, 238 Fed. Appx. 799, 802 (3rd Cir. 2007) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 47-48 (N.J. 1989)). This, of course, is why corporations are routinely named in complaints for

17

defamation based on statements made by employees who acted within the scope of their employment. Plaintiffs have sufficiently alleged that these statements were made by Live Nation's corporate representatives within the scope of their employment. The identity of those Live Nation employees will undoubtedly be revealed through discovery.

### 3.    Plaintiffs Sufficiently Pled Damages

Finally, with regard to damages, Plaintiffs have alleged that the defamatory statements ultimately contributed to the loss of the contract with SFEM, and have alleged extensive reputational damage based on the fact that the statements go directly to their competence in the music industry.[4] The damages alleged by Plaintiffs, therefore, are both "material and pecuniary in nature." *See Ward v. Zelikovsky*, 643 A.2d 972, 984 (N.J. 1994) ("[P]roof that an existing relationship has been seriously disrupted or testimony of third parties detailing a diminished reputation will be necessary to satisfy the requirement that special damages exist . . . .").

Defendants argue that because the defamatory statements were made before the signing of the agreement with SFEM, any negative pecuniary impact

---

[4] Because the defamatory statements made by Live Nation accuse Plaintiffs of "having a condition or trait incompatible with his or her business," they are slander per se and damages are presumed. *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066 (N.J. Super. Ct. App. Div. 2000).

disappears once the agreement was signed. Motion, p. 13.    In making this argument, Live Nation mischaracterizes the Complaint, suggesting that Plaintiffs' only allegations with regard to damages are that the defamatory statements operated to dissuade SFEM from contracting with Plaintiffs.    On the contrary, Plaintiffs allege that the defamatory statements directly affected the business relationship between SFEM and Plaintiffs and ultimately caused the dissolution of the Contract.    Further, Plaintiffs allege that the defamatory statements caused reputational damage to Plaintiffs that would ultimately affect future business opportunities.

Accordingly, Plaintiffs' defamation claims withstand Live Nation's motion to dismiss.

## B.    Plaintiffs Have Plausibly Alleged Wrongful Interference And Unfair Competition

Plaintiffs have alleged four causes of action which depend upon the same essential allegations of wrongful conduct: tortious interference with contract, unlawful interference with contract, tortious interference with business relations, and unfair competition.  As Defendant rightly notes, each cause of action hinges on Defendants' efforts to both pressure SFEM into cutting it in for part of the business as well as on its efforts to prevent artists from performing at the State Fair. Plaintiffs' allegations with respect to each cause of action state particular facts and

go beyond more recitation of the elements of a cause of action. These allegations state a plausible theory of liability on their face, and certainly go far enough to create a reasonable inference that discovery will yield proof of any missing elements.

To state a claim for tortious interference with contract and unlawful interference with contract, a plaintiff must show that defendant intentionally and improperly interfered with the performance of a contract between plaintiff and a third person by inducing or otherwise causing the third person not to perform the contract. *Nostrame v. Santiago*, 22 A.3d 20, 24 (N.J. Super. Ct. App. Div. 2011); *cert. granted*, 34 A.2d 780 (N.J. Nov. 18, 2011); *Restatement (Second) of Torts*, §766 (1979) (the" *Restatement* "). To state a claim for tortious interference with prospective business relations, a plaintiff must show the same elements with respect to a prospective relationship as opposed to an existing one. *Printing Mart-Morristown*, 563 A.2d at 37. In deciding whether the alleged interference was "improper," New Jersey has applied the general factors set out in §767 of the *Restatement (Second) of Torts*. *MacDougall v. Weichert*, 677 A.2d 162, 174 (N.J. 1996). The *Restatement* sets forth the following factors: a) the nature of the actor's conduct, b) the actor's motive, c) the interests of the other (e.g. plaintiff) with which the actor's conduct interferes, d) the interests sought to be advanced by the actor, e) the social interests in protecting the freedom of action of the actor and the

20

contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and g) the relations between the parties. The question is "whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect or harm to another." *Restatement*, §767 cmt. B

### 1.    Plaintiffs' Allegations Sufficiently Support Their Claims

Against this backdrop Plaintiffs have sufficiently alleged plausible claims for tortious interference with contract and unlawful interference with contract. Plaintiffs' Complaint contains detailed factual allegations in support of their claims for wrongful interference. Plaintiffs contend that Defendants 1) exerted pressure on SFEM not to do business with Plaintiffs by telling Mr. Dorso that Plaintiffs were broke and could not pay artists, that they lacked the expertise to produce the contemplated shows, and that they were thieves (¶¶ 21, 26); 2) told Mr. Dorso that Plaintiffs would not sign Tiesto, one of their intended artists, because Defendant would not permit Tiesto to appear (¶ 23); 3) told Mr. Dorso that no performers represented by William Morris would be permitted to appear at the State Fair and that William Morris "belonged to" Defendant (¶ 24); 4) pressured the Authority to coerce both SFEM and Plaintiffs to cut Defendant in for part of the business (¶ 25); 5) threatened to withhold ticketing to the State Fair unless Defendant was given part of the Contract (¶ 2); 6 ) forced SFEM to instruct Plaintiffs, the parties with

21

whom SFEM had a contract, to attend a meeting with Defendant for the sole purpose of discussing how to cut Defendant into the Contract (¶ 28); 7) held this meeting with Plaintiffs and during the course of the meeting repeated all the threats Defendant had previously made to SFEM (¶¶ 29, 30); 8) threatened Plaintiffs that unless Defendant was permitted to become a partner under the Contract it would use its influence with the Authority to have the Contract terminated (¶ 30).

Given that the merger between Defendant and Ticketmaster required the approval of the federal government and Defendant's agreement to play by certain rules, it is entirely plausible that Defendant engaged in the exact conduct the government feared, as well as the other conduct alleged by Plaintiffs. And, as discussed herein, Plaintiffs need not marshal proof of these allegations at this point. Plaintiffs must simply allege facts that rise to the level of plausibility.

## 2.   The Restatement Describes Such Conduct as Tortious Interference

The *Restatement* gives illustrative examples of improper conduct, such as economic pressure and unlawful conduct. *Restatement,* §767 cmt. c. Comment C to §767 explains that improper economic pressure may exist where "A refuses to deal with B if B enters into or continues a relation with C." This is precisely the charge Plaintiffs make when they allege that Defendant wrongfully and improperly threatened to withhold ticketing services from the State Fair unless SFEM did not

abrogate its Contract with Plaintiffs and give part or all of the business to Defendant, and when Defendant threatened to bar artists from Defendant's venues if they agreed to perform for Plaintiffs at the State Fair.

Comment C to §767 of the *Restatement* also explains that "unlawful conduct" includes conduct that is contrary to established public policy or conduct in violation of judicial holdings. As noted above, Plaintiffs' allegations concerning Defendant's threats regarding ticketing, if proven true, would mean that Defendant has violated the Final Judgment governing its merger with Ticketmaster and the public policy inherent in the conditions set out in the Final Judgment.

### 3.    Interference With Prospective Relations Is Also Actionable

As noted above, the elements of a cause of action for tortious interference with business relations are substantially identical to those for tortious interference and unlawful interference with an existing contract. The salient distinction is that the relationship may be prospective as opposed to pre-existing. *See Farris v. County of Camden*, 61 F. Supp. 2d 307, 321 (D.N.J. 1999). Defendant's argument with respect to this cause of action boils down to the claim that Plaintiffs do not identify any prospective business relationship beyond the Contract with SFEM. Motion, p. 23. The Defendant's argument ignores the contracts that Plaintiffs offered to numerous artists and which were not accepted. The key allegation here is that Defendant improperly used market clout and intimidation to coerce artists

23

and their talent agents to refuse to appear for Plaintiffs at the State Fair. Plaintiffs specifically allege that Defendant threatened that it would not allow any artists represented by William Morris to appear at the State Fair. ¶ 24. Defendant also specifically threatened to prevent Tiesto from contracting with Plaintiffs. ¶ 23. These specific facts are sufficient to create a plausible theory of liability and should certainly be viewed as stating enough facts to raise a reasonable expectation that discovery will reveal evidence on the necessary elements. *Twombly*, 550 U.S. at 556.

Defendant's argument also ignores the prospective nature of the Contract, which contained a five-year option beyond the initial four-year term. All of the wrongful interference alleged above not only affected the 2011 State Fair but also the prospect of a continuing relationship for eight additional years.

### 4.   Authorities Cited By Defendant Are Inapposite

The cases on which Defendant relies are distinguishable. In *Solutions Partners, Inc. v. Thomas,* 2010 WL 2036139 (D.N.J. 2010), the court dismissed a complaint alleging tortious interference because the claimant alleged only, and vaguely, that a third party with whom it had a business relationship had been "harassed and threatened." The complaint lacked <u>any</u> specifics as to what the harassment and threats consisted of. Here, Plaintiffs have alleged specific forms of interference and threats, including threatening to withhold ticketing and block

24

artists from appearing at the State Fair. These allegations go beyond those present in *Solutions Partners* and provide the "vivid description" the Court found lacking there. *Id.* at *3.

Similarly, in *Decosta v. English*, 2012 WL 528760 (D.N.J. Feb. 16, 2012), the Court dismissed the tortious interference claim because plaintiff did not identify existing or prospective contracts or economic relationships that had been interfered with, and because the complaint failed to specify the conduct which had allegedly driven a wedge between the plaintiff and her customers. *Id.* at *7. Again, Plaintiffs' Complaint is distinguishable. Plaintiffs identify a specific contractual relationship, as well as prospective relationships with artists such as Tiesto, with which Defendant interfered. And Plaintiffs are quite specific about the precise acts constituting the interference— the threats to withhold ticketing, the meetings with Al Dorso at SFEM to convince him to cut Defendant into Plaintiffs' Contract, the meeting with Plaintiffs in which Defendant threatened and intimidated Plaintiffs by boasting that it could have the Contract terminated, the threats to prevent artists from appearing at the State Fair.

Interestingly, the Court in *Decosta* was also asked to dismiss the plaintiff's breach of contract claim and refused to do so. In holding that the failure to "produce the contract or identify its terms and conditions with more specificity" did not render the claim futile, the court reaffirmed the liberal pleading regime

25

under Rule 8 even in the wake of *Twombly* and *Iqbal*: "[A]s one court explained, plausibility requires only that the pleader supply enough details 'to present a story that holds together,' and courts will only ask '*could* these things have happened, not *did* they happen.'" *Id.* at 6 (quoting *Swanson v. Citibank, N.A.*, 614 F. 3d 400, 404 (7th Cir. 2010).

*Johnson Service Group, Inc. v. France*, 2011 WL 248552 (N.D. Tex. Jan. 27, 2011) and *Broughel v. Battery Conservancy*, 2009 WL 928280 (S.D.N.Y. Mar. 30, 2009) are each inapposite for the same reasons. Each involved a complaint which failed to allege *any* specific conduct in support of its interference claims, offering instead mere labels of the elements of causes of action and legal conclusions. That simply cannot be said of Plaintiffs' Complaint.

### 5.   Plaintiffs Adequately Pled Causation

Defendant also argues that Plaintiffs fail to make any allegations concerning "but for" causation.  In Defendants' formulation of the matter, this means that the Complaint contains "no allegations that any individuals at William Morris or the Authority, or any individual artists or agents, ever told Plaintiffs that they had been interested in doing business with them, but were no longer interested in doing so because of statements or actions by Live Nation." Motion, p. 24.  Similarly, "there are no facts alleged to support a theory under which Live Nation could control William Morris" and "no allegations that William Morris represented all or even a

majority of electronic dance artists, so that Plaintiffs would be unable to sign artists from other agencies." Motion, p. 21.

Defendant ignores the facts alleged in paragraphs 12-14 of the Complaint. Defendant's dominance of the market for live concerts, its history of coercive behavior with artists and venue operators, and its track record of boycotting a particular venue if it does not get a contract it wants (e.g., the New York State Fair, 2009) all make it plausible that Defendant did in fact interfere in the manner alleged here. Such facts do make it plausible that such interference was effective to cause the termination of the Contract and the refusal of artists to appear at the State Fair.

Of course much of the proof of these elements is within the sole possession of Defendant at this juncture. Plaintiffs cannot know the precise identity of all talent agents whom Defendant may have contacted. Where information is in the sole possession of a defendant, "the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). This need for discovery illustrates the central defect with Defendant's Motion: it demands proof at the pleading stage, when all that is required is plausibility. As has already been noted above, plausibility is not synonymous with proof, and all that must be shown now

is "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. *Twombly*, 550 U.S. at 556.

The context for the "illegal agreement" in *Twombly* was a claim of antitrust violations. In *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2nd Cir. 2010), the court was faced with another alleged illegal agreement under the antitrust laws. The court in *Starr* parsed *Twombly* closely in defining the parameters of plausibility. Plausibility does not mean that a complaint must exclude possible alternative explanations for a defendant's behavior. In the *Starr* court's words, *Twombly* "held that, to survive a motion to dismiss, plaintiffs need only 'enough factual matter (taken as true) to suggest that an agreement was made.'" *Id.* at 325; *see also* 2 Areeda & Hovenkamp §307d1 (3d ed. 2007) ("[T]he Supreme Court did <u>not</u> hold that the same standard applies to a complaint and a discovery record … The 'plausibility suggesting' threshold for a conspiracy complaint remains considerably less than the 'tends to rule out the possibility' standard for summary judgment").

Likewise, in *Anderson News*, supra, the court also faced a complaint alleging antitrust violations. In overturning the district court's dismissal of the complaint, the Second Circuit again had occasion to construe *Twombly*. Again the Court held that "the plaintiff need not show that its allegations suggesting an agreement are more likely than not true or that they rule out the possibility of independent action,

28

as would be required at later litigation stages such as a defense motion for summary judgment." 2012 WL 1085948, at \*18. And, "[b]ecause plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, of which is plausible … [T]he choice between or among plausible inferences or scenarios is one for the fact finder." *Id.*

## V.    CONCLUSION

In conclusion, the *Twombly/Iqbal* pleading standard does not require Plaintiffs to prove their allegations at this juncture. The allegations contained in Plaintiffs' Complaint state plausible claims for relief whose ultimate validity should be judged by a fact finder on a complete evidentiary record. Plaintiffs have stated ample facts to be entitled to develop such a record.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Defendant's motion to dismiss Plaintiffs' claims, and for such other and further relief to which Plaintiffs may show themselves justly entitled.

By: s/ David S. Stone
    David S. Stone
    David B. Harrison
    STONE & MAGNANINI LLP
    150 JFK Parkway
    Short Hills, NJ 07078
    Tel:  (973) 218-1111
    Fax: (973) 218-1106

    Thomas R. Ajamie
    David S. Siegel
    AJAMIE LLP
    Pennzoil Place – South Tower
    711 Louisiana Street, Suite 2150
    Houston, Texas 77002
    Tel:  (713) 860-1600
    Fax: (713) 860-1699

**ATTORNEYS FOR PLAINTIFFS
JUICE ENTERTAINMENT LLC,
THOMAS DORFMAN AND CHRIS
BARRETT**