UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT,<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>　　　　　　　　　Defendant. | Civil Action No. 11-07318 (WHW) (MCA)<br><br>*Oral Argument Requested* |

## DEFENDANT LIVE NATION ENTERTAINMENT INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

**GREENBERG TRAURIG, LLP**
Philip R. Sellinger (PS 9369)
Ian S. Marx (IM 1704)
200 Park Avenue
P. O. Box 677
Florham Park, N.J. 07932
(973) 360-7917 (Telephone)
(973) 301-8410 (Facsimile)
*Attorneys for Defendant*
*Live Nation, Entertainment, Inc*

# **TABLE OF CONTENTS**

**Page**

POINT I
PLAINTIFFS CONCEDE THEIR UNLAWFUL INTERFERENCE
WITH CONTRACT CLAIM IS DUPLICATIVE OF THEIR
TORTIOUS INTERFERENCE WITH CONTRACT CLAIM, SO IT
MUST THEREFORE BE DISMISSED .................................................................... 1

POINT II
COUNT III OF THE COMPLAINT MUST BE DISMISSED BECAUSE
PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED INTERFERENCE
WITH ANY PROSPECTIVE ECONOMIC ADVANTAGE OTHER THAN
THE AGREEMENT ITSELF ................................................................................. 3

POINT III
PLAINTIFFS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED ON THEIR INTERFERENCE AND UNFAIR COMPETITION
CLAIMS BECAUSE PLAINTIFFS DO NOT GO BEYOND CONCLUSORY
ALLEGATIONS OF LIABILITY ........................................................................... 7

POINT IV
COUNT FOUR OF THE COMPLAINT MUST BE DISMISSED BECAUSE
PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CLAIM FOR
DEFAMATION ..................................................................................................... 11

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson News, L.L.C. v. American Media, Inc., et. als.*, No. 10-4951,
   2012 WL 1085948 (2d Cir. 2012) ...................................................................9

*Arcand v. Brother Int'l Corp.*, 673 F.Supp.2d 282 (D.N.J. 2009) ............................8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................10

*Bartone v. NetJets, Inc.*, No. 11-8 (MLC), 2011 WL 2532497
   (D.N.J. June 24, 2011) ....................................................................................15

*Bell Atl Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................7, 10

*Brennan v. Palmieri*, No. 07-4364 (FSH), 2008 WL 2355203
   (D.N.J. June 4, 2008) ........................................................................................2

*Broughel v. Battery Conservancy*, No. 07-v-7755 (GBD), 2009 WL 928280
   (S.D.N.Y. Mar. 30, 2009) ................................................................................11

*CBS Outdoor Inc. v. New Jersey Transit Corp.*, No. 06-2428 (HAA), 2007 WL
   2509633 (D.N.J. Aug. 30, 2007), *aff'd*, 550 F.3d 302 (3d Cir. 2008) ...............3

*Crestron Elec., Inc. v. Cyber Sound & Sec. Inc.*, No. 11-3492 (FSH),
   2012 WL 426282 (D.N.J. Feb. 9, 2012) ..........................................................12

*Cristelli v. Filomena II, Inc.*, No. 99-2862, 1999 WL 1081290 (D.N.J. Dec. 1,
   1999) ................................................................................................................13

*Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460 (D.N.J. 1998) ..........................8

*Genesis Int'l Holdings v. Northrop Grumman Corp.*, 238 Fed. Appx. 799
   (3d Cir. 2007) ..................................................................................................13

*Goff v. Hukill*, No. 08-cv-71-TCK-FHM, 2010 WL 2595785
   (N.D.Okla. June 24, 2010) ..............................................................................11

*Johnson Serv. Group, Inc. v. France,* No. 10-cv-1988-D, 2011 WL 248552
(N.D.Tex. Jan. 27, 2011)..........................................................................................11

*Lum v. Bank of America,* 361 F.3d 217 (3d Cir. 2004)..............................................8

*Managan v. Corporate Synergies Group, Inc.,* No. 10-5829 (JBS/KMW),
2011 WL 3328785, *2 (D.N.J. Aug. 1, 2011).....................................................12, 13

*Metromedia Energy, Inc, v. Griffin,* No. 101692 (JAP), 2011 WL 4343801
(D.N.J. Sept. 13, 2011)..............................................................................................5

*Novartis Pharms. Corp. v. Bausch & Lomb, Inc.,* No. 07-5945 (JAG),
2008 WL 4911868 (D.N.J. Nov. 13, 2008)..............................................................12

*Starr v. Sony BMG Music Entertainment,* 592 F.3d 314 (2nd Cir. 2010).................9

## State Cases

*C. B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co.,*
14 N.J. 146 (1954)......................................................................................................1

*Jenkins v. Region Nine Housing Corp.,* 306 N.J. Super. 258 (App. Div. 1997)...3, 5

*Ward v. Zelikovsky,* 136 N.J. 516 (1994)................................................................13

## Federal Rules

Fed. R. Civ. P. 12(b)(6).............................................................................................1

Defendant Live Nation Entertainment, Inc. ("Live Nation" or "Defendant") respectfully submits this reply brief in further support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint of Plaintiffs Juice Entertainment, LLC ("Juice"), Thomas Dorfman ("Dorfman") and Chris Barrett ("Barrett") (collectively, "Plaintiffs") for failure to state a claim upon which relief can be granted. For the reasons set forth in our Opening Brief,[1] those set forth below and those that may be advanced at oral argument (which is respectfully requested), the motion should be granted and Plaintiffs' Complaint should be dismissed.

## POINT I

### PLAINTIFFS CONCEDE THEIR UNLAWFUL INTERFERENCE WITH CONTRACT CLAIM IS DUPLICATIVE OF THEIR TORTIOUS INTERFERENCE WITH CONTRACT CLAIM, SO IT MUST THEREFORE BE DISMISSED

Defendant's moving papers established that: (a) Counts I and II of the Complaint alleging "Tortious Interference with Contract" (Count I) and "Unlawful Interference with Contract" (Count II) are entirely duplicative;[2] and (b) Plaintiffs

---

[1] Capitalized terms used in this Reply Brief shall have the same meaning as set forth in Defendant's Opening Brief, filed on March 16, 2012.

[2] Defendant was able to locate only a single New Jersey state or federal case that substantively discusses a claim for "unlawful interference with contract". The claim is described as one that "sounds in tort," but which offers no elements for the cause of action other than those for tortious interference. *C. B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co.*, 14 N.J. 146, 163 (1954). Plaintiffs'

cannot be permitted to allege the same claim in separate counts.[3] Plaintiffs' opposition fails to distinguish or address either of these two premises or the authority on which such conclusions are based. Plaintiffs' failure to explain or attempt to justify its duplicative pleading of Counts I and II is a tacit concession that the pleading is indefensible.

Plaintiffs' opposition does not refer to a single New Jersey judicial decision that identifies the elements of Court II of its Complaint for "unlawful interference"; instead Plaintiffs apparently rely upon references to the *Restatement (Second) of Torts* to discuss the elements of the claim that Count II seeks to advance. *See* Opposition Br. at 19-20. To the extent Plaintiffs' Complaint seeks to assert a cause of action for "unlawful interference" that has elements other than a claim for tortious interference, there is no basis for such a claim under New Jersey law. To the extent that Plaintiffs are not asking this Court to recognize a new tort, then the unlawful interference claim is entirely duplicative of the tortious interference claim, and Count II must therefore be dismissed, because a party cannot maintain the same claim in separate counts. *Brennan*, 2008 WL 2355203,

---

opposition does not identify a single case indentifying the elements of a claim for "unlawful interference" under New Jersey law.

[3] *See* Moving Brief at pp. 24-25 (citing *Brennan v. Palmieri*, No. 07-4364 (FSH), 2008 WL 2355203, at *4 (D.N.J. June 4, 2008); *CBS Outdoor Inc. v. New Jersey Transit Corp.*, No. 06-2428 (HAA), 2007 WL 2509633, at *20 (D.N.J. Aug. 30, 2007), *aff'd*, 550 F.3d 302 (3d Cir. 2008)).

2

at *4; *CBS Outdoor Inc.*, 2007 WL 2509633, at *20. Thus, Count II of the Complaint must be dismissed.

## POINT II

### COUNT III OF THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED INTERFERENCE WITH ANY PROSPECTIVE ECONOMIC ADVANTAGE OTHER THAN THE AGREEMENT ITSELF

To state a viable claim for intentional interference with economic advantage against Live Nation (which is the basis for Count III of the Complaint), Plaintiffs must allege: (1) that Plaintiffs have a protected interest, not necessarily amounting to an enforceable contract; (2) Live Nation's intentional interference with that interest without justification; (3) reasonable likelihood that the benefit Plaintiffs anticipated from such protected interest would have continued but for the interference of Live Nation; and (4) resulting damage. *See Jenkins v. Region Nine Housing Corp.*, 306 N.J. Super. 258, 265 (App. Div. 1997) (*citing Printing Mart-Morristown v. Sharp Electronics,* 116 N.J. 739, 751-52 (1989)). Defendant's Opening Brief established Plaintiffs' failure to allege that there was any protected interest in anticipated benefits beyond the Agreement with SFEM or that any such anticipated benefits would reasonably likely have been achieved but for Live Nation's interference.

In attempting to overcome the deficiencies of its prospective interference claim, Plaintiffs point to the Complaint's conclusory contention that "Plaintiffs offered [contracts] to numerous artists [the ("Unidentified Artists")] and which were not accepted". *See* Opposition Br. at 23. Plaintiffs claim that Defendant threatened to not allow any artists represented by the William Morris Agency to appear at the State Fair and to block one artist -- DJ Tiesto -- from contracting with the Plaintiffs. Based on these assertions, Plaintiffs contend they have conjured up a "plausible theory of liability" that raises a "reasonable expectation" that "discovery will reveal evidence on the necessary elements". Opposition Br. at 24.

Plaintiffs readily concede there is no evidence that any potential act refused to accept an offer to perform tendered by Plaintiffs because of Defendant's alleged interference. Instead, Plaintiffs argue their pleading obligations have been satisfied because the Complaint contains allegations that Defendant "dominates" the concert market and is alleged to have a history of engaging in "coercive conduct" and from this, Plaintiffs argue that it is plausible to infer that Plaintiffs' failure to sign DJ Tiesto and any of the Unidentified Artists by April 1, 2011 to perform at the State Fair in June 2011 was the result of Defendant's wrongful interference. *See* Opp. Br. at 27.

Plaintiffs' conclusory allegations as to Defendant's alleged interference with such theoretical prospective relationships with the Unidentified Artists and DJ

Tiesto are wholly insufficient to establish any "reasonable likelihood" that Plaintiffs would have been able to enter into contracts with the Unidentified Artists or DJ Tiesto but for the interference of Live Nation. *See Jenkins*, 306 N.J. Super. at 265.

The Complaint does not advance a single specific fact to support the conclusory allegations that Live Nation blocked the Unidentified Artists or DJ Tiesto from contracting with Juice to perform at the 2011 State Fair. Taking DJ Tiesto as an example, the Complaint is wholly silent as to whether Plaintiffs even attempted to contract with DJ Tiesto to appear at the State Fair, whether Plaintiffs were able to offer him an acceptable financial inducement to appear, whether he was even available to appear at the State Fair in June 2011, what DJ Tiesto's response was to Plaintiffs' alleged offer, or any other fact making it "reasonably likely" that DJ Tiesto would have accepted Plaintiffs' offer absent Defendant's alleged interference. The Complaint is equally silent with respect to the "reasonable likelihood" that Plaintiffs would have been able to sign contracts with any of the Unidentified Artists or clients of the William Morris Agency prior to April 1, 2011 to perform at the June 2011 State Fair.[4]

---

[4] This claim also fails because Plaintiffs allege no damages that are the "but for" result of the supposed interference. To prevail on a tortious interference claim, plaintiff must demonstrate that defendant's wrongful acts were the "but for" cause of the alleged loss of economic advantage. *See Metromedia Energy, Inc, v. Griffin*, No. 101692 (JAP), 2011 WL 4343801 *4 (D.N.J. Sept. 13, 2011) ("to state

5

Finally, Plaintiffs attempt to justify their inability to advance any facts in support of their prospective interference claims on the contention that "proof of these elements is within the sole possession of Defendant at this juncture". *See* Opp. Br. at p. 27. Plaintiffs of course know to whom they made offers and what responses they received in return. There is no reason why Plaintiffs' Complaint cannot provide the identities of the Unidentified Artists and/or William Morris clients and explain why it was "reasonably likely" that they would have signed contracts by April 1, 2011 to appear at the State Fair in June 2011, but for the Defendant's interference. There is similarly no reason the Complaint cannot contain specific allegations concerning any offer to DJ Tiesto, if one was made, and how it was "reasonably likely" that he would have accepted an offer by April 1, 2011 to appear at the State Fair that June, but for the Defendant's interference. These facts are not in the Defendant's possession and, if such facts exist, there is no reason they could not have been alleged in the Complaint. For these reasons as well, Count III of the Complaint must be dismissed.

---

a claim that is plausible on its face, [plaintiff] must allege an injury" that is the "but for" result of defendant's actions, rather than set forth "a recital of the necessary elements of . . . a [tortious interference] claim supported by mere conclusory statements.") (internal citations omitted).

6

## **POINT III**

## **PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ON THEIR INTERFERENCE AND UNFAIR COMPETITION CLAIMS BECAUSE PLAINTIFFS DO NOT GO BEYOND CONCLUSORY ALLEGATIONS OF LIABILITY**

Plaintiffs' theory of Live Nation's liability under its interference claims (Counts I, II, III and V) is based on the concept that, despite Plaintiffs' success in entering into the Agreement with SFEM, Live Nation somehow prevented Juice from performing under that Agreement. Juice failed under the Agreement because it did not secure contracts with a sufficient number of artists to perform at the 2011 State Fair prior to April 1, 2011. *See* Complt. ¶ 31. The only conduct of Live Nation that could theoretically have contributed to Juice's failure under the Agreement is its alleged "blocking" of artists. Plaintiffs' claims, therefore, hinge on Live Nation's supposed threats, which are pled in wholly conclusory fashion, offering only "naked assertions" and "formulaic statements of the elements of a cause of action". *Bell Atl Corp. v. Twombly*, 550 U.S. 544 (2007) at 555, 557.

In further recognition of the insufficiency of the Complaint's allegations, Plaintiffs attempt to support their allegation that Defendant may have carried through on an alleged threat to withhold ticketing services to SFEM, because that subject is mentioned in a Consent Judgment entered into in an unrelated action. *See* Opp. Br. at pp. 9-10.

The Consent Judgment is wholly irrelevant to the sufficiency of the interference claims proffered in Plaintiffs' Complaint (which makes no reference whatsoever to the Consent Judgment) and simply may not be considered in opposition to this motion. To begin with, the Consent Judgment provides, in relevant part (at Page 2), that it was entered into "before any testimony is taken, without trial or adjudication of any issue of fact or law". Moreover, when deciding a Rule 12(b)(6) motion, "the Court cannot consider material outside the pleadings." *Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 475, n.21 (D.N.J. 1998) (excluding attorney certification and exhibits submitted in opposition to a motion to dismiss). Although a court may consider documents that are "integral to or explicitly relied upon in the complaint." *Arcand v. Brother Int'l Corp.*, 673 F.Supp.2d 282, 293 (D.N.J. 2009). This is a "narrow exception" to the general rule that does not allow the consideration of merely "tangentially related documents". *Id.* Furthermore, "[w]hile a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *See Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004). Here, the Consent Judgment does not form the basis for Plaintiffs' claims, is not referenced explicitly or implicitly in the Complaint, is not a judicial opinion and cannot be used to establish the truth of the facts set forth therein, particularly when,

8

as noted in the document itself, it was entered into "before any testimony is taken, without trial or adjudication of any issue of fact or law." Accordingly, the Consent Judgment must be excluded from the Court's analysis of Defendant's motion to dismiss and it may not be relied upon to salvage the Plaintiff's inadequately pleaded interference claims.

The Complaint concedes that Juice's failure under the Agreement was the result of its failure to timely secure contracts with a sufficient number of artists to perform at the 2011 State Fair. *See* Complt. ¶ 31. Plaintiffs' opposition readily concedes that absent from the Complaint, for example, is the specific pleading of **any** of the following requisite facts to support a claim that the failure to secure such contracts by April 1, 2011 was the result of Live Nation's conduct: (i) Live Nation's knowledge of the specific artists that Juice either made offers to or to whom it intended to make offers; (ii) Live Nation's communication to artists or their agents that Live Nation would "block" them if they contracted with Juice to perform at the State Fair, including when, how and to whom such threats were made; or (iii) responses by artists or their agents to Juice's offers that implicate Live Nation in their decision to refuse Juice's offers in any way.

Instead, Plaintiffs rely upon two inapposite anti-trust cases, *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2nd Cir. 2010) and *Anderson News, L.L.C. v. American Media, Inc., et. als.*, No. 10-5491, 2012 WL 1085948 (2d Cir.

9

2012), for the premise that in determining whether the allegations of a complaint are "plausible" under Rule 12(b)(6), the complaint need not plead facts to rule out possible alternative explanations for a defendant's challenged behavior. *See* Opp. Br. at pp. 28-29. Plaintiffs have misplaced their reliance upon *Starr* and *Anderson News*, which are anti-trust cases in which plaintiffs alleged facts they claimed established an conspiratorial agreement amongst multiple defendants to engage in anti-trust violations (the claims were not for interference, such as plaintiffs attempt to assert here). Defendants there sought to dismiss complaints because they failed to rule out that defendants' challenged actions could have been the result of independent, rather than improperly collusive behavior and thus the conspiracy claims were not "plausible". This is not a case, however, of two competing plausible theories: Plaintiffs' complete silence with regard to the identity of the artists with whom they supposedly attempted to contract and the responses received there from leaves them with nothing but a wholly conclusory theory of interference.

None of Counts I, II, III or V states a viable claim for relief; and they should therefore be dismissed. *See Twombly*, 550 U.S. at 565 (sufficiency and plausibility of allegations in complaint "turns on the suggestions raised by [the alleged] conduct when viewed in light of common economic experience"); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (the complaint does not allege "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").[5]

## POINT IV

## COUNT FOUR OF THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CLAIM FOR DEFAMATION

Defendant's Opening Brief established that Count Four of the Complaint must be dismissed because the Complaint: (1) fails to adequately allege the necessary elements of a defamation claim with the requisite specificity required by Rule 8; and (2) fails to adequately allege a plausible nexus between the alleged defamation and the "damage" it allegedly caused. Plaintiffs' opposition does nothing to overcome these essential failings and therefore Count Four of the Complaint must be dismissed.

As set forth in Defendant's Opening Brief, Juice fails to state a claim for defamation because the Complaint "fails to allege by whom . . . the allegedly

---

[5] *See also, e.g., Johnson Serv. Group, Inc. v. France,* No. 10-cv-1988-D, 2011 WL 248552, *2 (N.D.Tex. Jan. 27, 2011) (granting motion to dismiss tortious interference claim where the allegations failed to plead "factual content" regarding the nature of the alleged interference); *Goff v. Hukill,* No. 08-cv-71-TCK-FHM, 2010 WL 2595785, *7 (N.D.Okla. June 24, 2010) (dismissing tortious interference claims on the grounds that the complaint insufficiently pleaded "facts regarding the nature of Defendants' allegedly tortious conduct"); *Broughel v. Battery Conservancy,* No. 07-v-7755 (GBD), 2009 WL 928280, *10 (S.D.N.Y. Mar. 30, 2009) (granting motion to dismiss tortious interference claim where complaint contain no allegations of "specific conduct" that interfered with plaintiff's current or prospective contractual relations).

11

defamatory statements were made". *See Crestron Elec., Inc. v. Cyber Sound & Sec. Inc.*, No. 11–3492 (FSH), 2012 WL 426282, *11 (D.N.J. Feb. 9, 2012), citing *Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, No. 07–5945 (JAG), 2008 WL 4911868, at *5 (D.N.J. Nov. 13, 2008). As in *Crestron* (a district court case), this pleading deficiency is fatal to Plaintiffs' defamation claim under the pleading standards set forth in Rule 8. It would be equally fatal under New Jersey state court pleading standards, but Defendant does not rely on those standards in this motion.[6]

For each of the allegedly defamatory statements in the Complaint, Plaintiffs fail to allege who at Live Nation is alleged to have made the statement. Complt. ¶¶ 21, 26. Allegations regarding "representatives of Live Nation" simply are insufficiently specific to sustain a claim. *See Crestron* at *11 (dismissing plaintiff's defamation claim as insufficiently pleaded because, for among other reasons, the allegations "fail[ed] to state who at [the defendant company] made such statements"). The cases upon which Plaintiffs rely are inapposite because in

---

[6] As Plaintiffs note in their Opposition, the New Jersey and federal pleading standards differ with respect to the degree to which the specific words used to allegedly defame a plaintiff must be set forth in the complaint. *See Managan v. Corporate Synergies Group, Inc.*, No. 10-5829 (JBS/KMW), 2011 WL 3328785, *2 (D.N.J. Aug. 1, 2011). However, Defendant's motion is based on Plaintiffs' failure to sufficiently identify the speaker of the allegedly defamatory statements, *not* whether or not Plaintiffs sufficiently identified the precise words used. *See* Opening Brief at 11-12.

each case, the speaker of the allegedly defamatory statement was specifically identified in the complaint.[7]

Accordingly, Plaintiffs' defamation claim must be dismissed pursuant to Rule 8, because the Complaint merely attributes alleged defamatory statements to "representatives of Live Nation", and thus is insufficiently specific to sustain a claim.

Even if Plaintiffs could overcome their failure to specifically allege the requisite elements of the defamation claim, the claim is still fatally defective because it fails to adequately allege special damages caused by the alleged defamation. It is undisputed that a defamation plaintiff must plead and ultimately prove special damages, which are defined as 'harm of a material or pecuniary nature.' *Ward v. Zelikovsky,* 136 N.J. 516 (1994). As set forth in Defendant's Opening Brief, the only alleged recipients of the allegedly defamatory statements were SFEM and the Authority, and after allegedly hearing each and every alleged defamatory statement set forth in the Complaint, SFEM chose to sign the Agreement with Plaintiffs for the production of a music event at the Authority's

---

[7] *See Genesis Int'l Holdings v. Northrop Grumman Corp.*, 238 Fed. Appx. 799, 802-03 (3d Cir. 2007) (corporate employee who wrote allegedly defamatory letter and employee who circulated it were both identified by name in the complaint); *Mangan*, 2011 WL 3328785 at *1 (individual corporate executive identified in the complaint as the speaker of the allegedly defamatory statements); *Cristelli v. Filomena II, Inc.*, No. 99-2862, 1999 WL 1081290 (D.N.J. Dec. 1, 1999) (defamation counterclaim identified the individual plaintiff as the speaker of the allegedly defamatory statement).

13

venue. Accordingly, because Plaintiffs succeeded in entering into the Agreement despite the alleged defamation, none of the allegedly defamatory statements caused Plaintiffs any harm. Pursuant to the allegations of the Plaintiffs' own Complaint, SFEM terminated the contract because Plaintiffs failed to procure a roster of talent by the April 1, 2011 deadline for doing so. Since the allegedly defamatory statements failed to prevent the consummation of the Agreement, it is wholly implausible to argue that the statements nevertheless "caused the dissolution" of that Agreement. Opp. Br. at 19. If the allegedly defamatory statements negatively affected SFEM's opinion of Plaintiffs, SFEM would never have entered into the contract in the first place.

The failure to plausibly plead damages proximately caused by the alleged defamation is fatal to Plaintiffs' defamation claim.[8] *See Bartone v. NetJets, Inc.*,

---

[8] Plaintiffs are not excused from pleading special damages by characterizing the allegedly defamatory statements as slander *per se* on the grounds that they allegedly describe Plaintiffs as "having a condition or trait incompatible with his or her business." The alleged defamatory statements that Plaintiffs are "broke" (Compl. ¶ 21) and could not be trusted (Compl. ¶ 26) are not specific to Plaintiffs' business abilities, but could be said about *any* individual irrespective of their profession or business. Such statements are "too general to fall within the scope of occupational incompetence or misconduct." *Bartone* at *6. Furthermore, Plaintiffs' failure to specifically allege slander *per se* renders the question academic. *Id.*, citing *Nat'l Bowl–O–Mat Corp. v. Brunswick Corp.*, 264 F.Supp. 221, 227 (D.N.J. 1967). (As set forth in Defendant's Opening Brief at 13, the remaining allegedly defamatory statement - that Plaintiffs lacked expertise - is non-actionable opinion.)

14

No. 11–8 (MLC), 2011 WL 2532497 (D.N.J. June 24, 2011).[9] Here, as set forth in Defendant's opening Brief and above, Plaintiffs' alleged "reputational damage" (Opp. at 19) is similarly unsupported by the very timeline of events alleged in the Complaint.

Accordingly, Count Four of the Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, those set forth in Defendant's Opening Brief and those that may be advanced at oral argument, which is requested, Live Nation respectfully requests that this Court dismiss the Complaint in its entirety.

Respectfully submitted,
GREENBERG TRAURIG, LLP

By:   /s/  *Ian S. Marx*
         Ian S. Marx (IM 1704)

200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932
Telephone: (973) 360-7900

---

[9] In *Bartone*, plaintiff brought a defamation claim against a former employer for allegedly defamatory statements made about plaintiff to his current employer. *Id.* at *2. However, plaintiff failed to allege that his relationship with his current employer or any other person or entity was disrupted by the alleged defamation. *Id.* at *7. The court found that plaintiff's "bare assertion" that the allegedly false statements harmed his reputation was "an unsupported conclusion and deficient under the *Iqbal* pleading standard." *Id.*

15

                                        Facsimile: (973) 301-8410
                                        marxi@gtlaw.com

                                        *Attorneys for Defendant*
                                        *Live Nation Entertainment, Inc.*

Dated: May 29, 2012