**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, and CHRIS BARRETT, | : : : | **OPINION** |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 11-7318 (WHW) |
| LIVE NATION ENTERTAINMENT, INC., | : : | |
| Defendant. | : : : : | |

**Walls, Senior District Judge**

Defendant Live Nation Entertainment, Inc. (Live Nation) brings a Motion to Dismiss the

Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The Court will decide the Motion

on the papers. Fed. R. Civ. P. 78(b). The Motion is granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

All factual background consists of facts as alleged by Plaintiffs, which are accepted as

true for the purpose of deciding this Motion to Dismiss. On December 1, 2010, the President of

State Fair Event Management (SFEM) granted Plaintiffs the right to produce a dance event for

the New Jersey State Fair for the next five years. Compl. ¶ 18. This verbal agreement was

memorialized in an Engagement Letter stating that a formal contract would be signed later. Id. In

January or February 2011, William Morris Talent Agency (William Morris) expressed interest in

working with Plaintiffs. Id. at ¶ 19. Plaintiffs' March 7, 2011 contract with SFEM gave them the

right to produce the dance event for four years starting in 2011. There was an option to renew for

1

**NOT FOR PUBLICATION**

an additional five years. Id. Ex. A 2. Plaintiffs had 30 days from March 1, 2011 to provide copies

of contracts with artists signed to perform at the 2011 Fair. Id. at ¶ 22, Ex. A 3-4, Ex. B.

Prior to the contract between SFEM and Plaintiffs being signed, Plaintiffs allege that

representatives of Live Nation told SFEM that Plaintiffs were "broke" and lacked expertise. Id.

at ¶ 21. Plaintiffs claim that "Live Nation falsely stated to the [owner of the venue where the Fair

was to take place] that Plaintiffs associated with 'thieves' and could not be trusted." Id. at ¶ 26.

On or before February 18, 2011, Live Nation representatives told SFEM that they were

"blocking" Tiesto, a DJ, from performing under Plaintiffs' contract. Id. at ¶ 23. Live Nation

threatened Tiesto "that he would not be permitted to play at other venues controlled by Live

Nation if he appeared at the State Fair." Id. at ¶ 23. Live Nation told SFEM and Plaintiffs that

"the William Morris talent agency belonged 'exclusively' to Live Nation and that no artists

represented by William Morris would be permitted to sign contracts with Juice Entertainment to

appear at the State Fair." Id. at ¶ 24. Two named representatives of Live Nation told Plaintiffs

"that Live Nation would use its influence with talent agents to prevent Juice Entertainment from

signing artists if Live Nation were not permitted to become a partner …." Id. at ¶ 29-30.

Plaintiffs also allege that on or before February 18, 2011, Live Nation "applied pressure"

on the venue, with which Live Nation has an exclusive contract to provide ticketing services. Id.

at ¶ 25. "Live Nation representatives threatened that unless they were given part of the contract

…, they would make ticketing services unavailable for the State Fair …." Id. at ¶ 27. Plaintiffs

allege that they were told directly by two named representatives of Live Nation that it "would

use its relationship" with the venue "to pressure SFEM" to cancel Plaintiffs' contract. Id. at ¶ 30.

Plaintiffs allege that "Live Nation carried out its threats and blocked Plaintiffs from

signing artists in time to meet the requirements of the Agreement [with SFEM]." Id. at ¶ 31. On

2

**NOT FOR PUBLICATION**

April 26, 2011, SFEM cancelled its contract with Plaintiffs due to their failure to furnish copies

of contracts with artists who were to perform at the 2011 Fair. Id. Plaintiffs claim that the

contract was terminated due to "defamatory statements made to representatives of SFEM,

pressure applied to artists and their agents, and pressure applied to SFEM" and the venue. Id.

Plaintiffs' Complaint consists of five counts: I) Tortious Interference with Contract; II)

Unlawful Interference with Contract; III) Tortious Interference with Business Relations; IV)

Defamation; and V) Unfair Competition. On March 16, 2012, Defendant moved to dismiss the

Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**STANDARD OF REVIEW**

On a 12(b)(6) motion to dismiss, courts are required to accept all well-pleaded allegations

in the complaint as true and draw all reasonable inferences in favor of the non-moving party.

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). "[A] court looks only to the

facts alleged in the complaint and its attachments without reference to other parts of the record."

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court

determines "whether, under any reasonable reading of the complaint, the Plaintiff may be

entitled to relief." Pinker v. Roche Holding Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). Courts

conduct a two-part analysis:

> First, the factual and legal elements of a claim should be separated.  The District
> Court must accept all of the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (quoting Ashcroft v.Iqbal,

129 S.Ct. 1937, 1949-50 (2009)). Facial plausibility arises when "the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

3

**NOT FOR PUBLICATION**

misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Although … we must take all of the factual

allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion

couched as a factual allegation.'" Id. at 1949-50 (citing Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 555 (2007)). A pleading that consists of "labels and conclusions" or a "formulaic

recitation of the elements of a cause of action will not do." Id. at 1949.

## DISCUSSION

The Defendants move to dismiss the Complaint in its entirety; the Court addresses each

claim in turn.

> I.   **Plaintiffs have not sufficiently pled tortious interference with contract, but they have sufficiently pled tortious interference with a business relationship.**

Plaintiffs allege two potential instances of intentional interference: first, that

Defendant prevented them from performing their contract with SFEM, and second, that

Defendant interfered with their prospective business relationships with artists. Plaintiffs'

allegations that Defendant blocked artists from performing at their event do not state a

claim for tortious interference with contract. They do state a claim for tortious

interference with business relations.

> Under New Jersey law the five elements of a claim of tortious interference with a prospective or existing economic relationship are: (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference. In formulating this definition of the cause of action, New Jersey courts have relied on the Restatement (Second) Torts §§ 766A and 766B.

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993) (internal citations

omitted).

4

**NOT FOR PUBLICATION**

Plaintiffs have not sufficiently alleged that they would have received the

economic benefit of their contract with SFEM in the absence of interference. The claim

that Defendant prevented Plaintiffs from performing under its contract with SFEM falls

under § 766A of the Restatement (Second) of Torts, as adopted by New Jersey courts.

Section 766A reads:

> One who intentionally and improperly interferes with the performance of a
> contract (except a contract to marry) between another and a third person, by
> preventing the other from performing the contract or causing his performance to
> be more expensive or burdensome, is subject to liability to the other for the
> pecuniary loss resulting to him.

Section 766A governs where "the defendant prevents or impedes the plaintiff's own

performance." See Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 660 (3d

Cir. 1993).

Plaintiffs allege that their contract with SFEM gave them a reasonable expectation

of economic benefit and that Defendant Live Nation knew about this contract. Plaintiffs

allege that Live Nation representatives blocked artists from working with Plaintiffs. This

is not a conclusion of law; it is a factual allegation that, if true, is intentional interference.

But Plaintiffs have not alleged sufficient facts to show a reasonable probability that they

would have succeeded in booking artists in the absence of interference. Plaintiffs allege

that they had successfully organized previous events on short notice, that William Morris

had expressed interest in working with them on this event, and that they made over one

million dollars in offers to artists. But they do not allege the specifics of offers to any

artist or agency or why those agencies did not accept their offers. It is not clear that

interference is the reason their offers were not accepted. Even taking all of Plaintiffs'

allegations as true, it may have been the unavailability of artists on short notice or

insufficiency of offers made by Plaintiffs, rather than interference by Defendant, that

**NOT FOR PUBLICATION**

caused Plaintiffs' inability to perform under their contract. Plaintiffs have not sufficiently

pled that there was a reasonable probability that they would have succeeded in carrying

out their contract with SFEM in the absence of interference. Plaintiffs' claim for tortious

interference with contract is dismissed without prejudice.

Plaintiffs' allegations are sufficient to state a claim for tortious interference with

business relations with William Morris. The tortious interference with business relations

claim falls under § 766B of the Restatement (Second) of Torts, as relied on by New

Jersey courts. Section 766B reads:

> One who intentionally and improperly interferes with another's prospective
> contractual relation (except a contract to marry) is subject to liability to the other for
> the pecuniary harm resulting from loss of the benefits of the relation, whether the
> interference consists of
> > (a) inducing or otherwise causing a third person not to enter into or continue the
> > prospective relation or
> > (b) preventing the other from acquiring or continuing the prospective relation.

Plaintiffs allege tortious interference with business relations between themselves and

"SFEM, the various recording artists, William Morris, and/or the Authority [the venue]."

Compl. ¶ 51. Under the Restatement, inducing a third person not to enter into the

prospective relation includes inducement by refusal to deal with the third person. See

Rest. 2d Torts § 766B, Comment e; Rest. 2d Torts § 766, Comment l (inducement by

refusal to deal includes threats to discontinue a business relationship with a third party).

Plaintiffs have sufficiently pled tortious interference with business relations

between themselves and William Morris. They have pled the existence of a potential

business relationship with William Morris. William Morris' statements to Plaintiffs gave

rise to a reasonable expectation of economic benefit. Plaintiffs have pled that Defendant

knew about this expectation. They allege that Defendant told them and SFEM that

William Morris belonged exclusively to Live Nation, which indicates that Defendant

6

**NOT FOR PUBLICATION**

knew about the prospective business relationship between William Morris and Plaintiffs.

Plaintiffs have alleged that Defendant prevented William Morris' artists from signing

contracts with them. There is a reasonable probability that William Morris would have

worked with Plaintiffs in the absence of interference. Plaintiffs have pled damages

because their contract with SFEM would have resulted in profit for them had they booked

artists through William Morris. Sufficient facts have been pled to satisfy every element of

a tortious interference with business relations claim as to William Morris.

Plaintiffs have not pled sufficient facts to state a claim for tortious interference

with business relations as to SFEM, the various recording artists, or the venue. Plaintiffs

had an existing contract with SFEM, not a potential business relationship. Plaintiffs have

not pled a potential business relationship with any artist. Plaintiffs have failed to plead a

reasonable probability that they would have signed any particular artist in the absence of

interference. Plaintiffs have not pled that Tiesto ever showed any interest in working with

them or that they made an offer to him which he refused because of interference.

Plaintiffs have also failed to plead a prospective business relationship directly with the

venue, since all dealings with the venue were mediated through SFEM.

**II.     Neither unfair competition nor unlawful interference with a contractual relationship is an independent claim.**

Neither the unfair competition claim nor the unlawful interference with a contractual

relationship claim state separate causes of action. "There is no distinct cause of action for unfair

competition. It is a general rubric which subsumes various other causes of action." <u>C.R. Bard v.

Wordtronics Corp.</u>, 561 A.2d 694, 696 (N.J. Super. Ct. Law Div. 1989). The Court treats it as an

umbrella for the tortious interference claims. New Jersey case law treats "unlawful interference

with contract" as a synonym for tortious interference with contract. <u>See, e.g.</u>, <u>C.B. Snyder Realty</u>

7

**NOT FOR PUBLICATION**

Co. v. National Newark & Essex Banking Co. of Newark, 14 N.J. 146, 152 (N.J. 1953) (unlawful interference claim sounds in tort); Akselrad v. Township of West Windsor, L-1767-05, 2007 WL 1261107, at *5 (N.J. Super. Ct. App. Div. May 2, 2007) (referring to Count Two alternately as "unlawful interference with a contractual relationship" and "tortious interference"). These claims are duplicative of the tortious interference claims and are dismissed. Amendment would be futile; outside the intellectual property context, these claims are not independent causes of action.

      **III.    Plaintiffs have failed to state a claim for defamation.**

      Plaintiffs have failed to state a claim for defamation because they have not shown that they were damaged by the allegedly defamatory statements. To assert a claim for defamation, a Plaintiff must show, "in addition to damages, ... (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence by the publisher." DeAngelis v. Hill, 847 A.2d 1261, 1267–68 (N.J. 2004) (emphasis added). To state a claim for defamation, Plaintiffs must plead "harm of a material or pecuniary nature[,]" known as special damages. Ward v. Zelikovsky, 643 A.2d 972, 984 (N.J. 1994); see also Sisler v. Gannett Co., Inc., 516 A.2d 1083, 1096 (N.J. 1986). The damages Plaintiffs allege consist of the cancellation of their contract with SFEM. Plaintiffs have not alleged that any defamatory statements were made to artists they were trying to sign. All of the alleged defamatory statements made to SFEM and the venue predated the finalization of Plaintiffs' contract. No defamatory statements to SFEM or a third party, such as the venue, are alleged after the contract finalization. The Court cannot reasonably infer that SFEM cancelled Plaintiffs' contract as a result of defamation that predated signing the contract. Plaintiffs have not sufficiently pled damages because the defamatory statements did not cause the cancellation.

**NOT FOR PUBLICATION**

## CONCLUSION

Defendant's Motion to Dismiss Plaintiffs' tortious interference with business relations

claim as to William Morris is denied. Plaintiffs' defamation claim and other tortious interference

claims are dismissed without prejudice to permit Plaintiffs an opportunity to amend. Plaintiffs'

unfair competition and unlawful interference with contract claims are dismissed with prejudice.


**/s William H. Walls**
United States Senior District Judge