# EXHIBIT B

## AGREEMENT

This Agreement (the "Agreement") is made and entered into as of 7 day of March 2011, by and between the State Fair Event Management (SFEM), a New Jersey corporation having executive offices located at 229 Main Street, Belleville, New Jersey 07109 (State Fair) and Juice Entertainment, LLC a New Jersey Corp with offices at 471 N. Midland Ave Saddle Brook, NJ 07663. (Juice)

## WITNESSETH:

Whereas State Fair conducts an event known as State Fair at the Meadowlands Fair Grounds, East Rutherford, New Jersey by reason of an exclusive contract with the New Jersey Sports and Exposition Authority(The Authority); and

Whereas, State Fair sought proposals from third parties for the production of concert events in the designated special event area of the fair; and

Whereas Juice and Entity with experience in producing such events; and submitted a proposal to State Fair for the production of such concert event.

Whereas State Fair accepted Juice's proposal for the production of such events, subject to the execution of a definitive agreement by the parties setting forth mutually acceptable terms and conditions upon which Juice will produce such events; and

Whereas the State Fair and Juice desire to enter into this Agreement which sets forth the mutually acceptable terms and conditions upon which Juice will produce such events

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1

Section 1.      Grant of the right to produce concerts

(a)      Subject to the terms and conditions of this agreement State Fair grants Juice the exclusive
right to broker stage and promote an electric dance event to include DJ and live acts with
musical genre to include House, Techno, Trance, and any sub genre of electric dance. In the
designated special event area of the fair. For 2 days on the first Saturday and Sunday of the
fair for 4 consecutive years commencing in 2011 with an additional 5 year option (provided
State Fairs contract is renewed with The Authority).

(b)      The Fair for 2011 shall commence on June 24th and end of July 10, 2011.
The Electric Dance Event for 2011 shall be held June 25 and June 26, 2011.
The hours of operation for these days shall be 2pm to 2am. Entertainment shall not
commence prior to 2pm and must end no later than 1:30 am.

(c)      State Fair also grants Juice      the exclusive right to broker, stage and promote concerts
events in the designated special event area of the fair and will diligently work towards
producing top talent for the duration of the fair.

C.B
24,000
(d) State Fair shall supply designated concert space to hold at least 30,000 attendees per day. ⊗T/U

(e) The admission fee for such event shall be at the sole discretion of Juice. This fee may be
increased or decreased at the sole discretion of Juice.

All acts are subject to the approval of State Fair.

Section 2.      Permitted Occupation of Special Event Area. The State Fair acknowledges that a
minimum of seventy -two (72) hours is required for (i) the installation of equipment and
preparation of the Licensed Area for the event in any particular year and (ii) the dismantling
and removal of equipment and clean-up of the Licensed Area upon completion of the Event in
any particular year. Accordingly, for each year in which Juice is producing the Event pursuant
to this Agreement and subject to the reasonable approval of State Fair, Juice and its
subcontractors, shall be entitled to occupy the Licensed Area for a period commencing seventy-
two (72) hours prior to the commencement of the Event in such year and ending seventy-two
(72) hours following the completion fo the Event in such year; provided that, the occupation of
the Licensed Area is solely for purposes related to the production of the event (including the
preparation for and clean-up of the Event).

Section 3.     Financial Terms.

(a)     For purposes of the Agreement, the term (i) "Electric Dance Net Revenue s" shall mean, with respect to the Event for a particular year, all revenue generated by Juice from Revenue Generating Activities ) less the applicable New Jersey sales tax

for all ticket and other sales (which sales tax is currently seven percent (7%)) and all reasonable and verifiable out-of-pocket costs (the Event Expenses) (including, without limitation, to cost of paying artists, bands and other acts to perform and "State Fair Reimbursable Expenses" with respect to all Revenue Generating Activities, (ii) The "Revenue Sharing Formula" shall be defined as the balance remaining (the "Net Proceeds") after deducting Juice Expenses and State     Fair Reimbursable Expenses from the Event Net Revenues; Net Proceeds shall be split as follows: 2011- 100% of net proceeds to Juice, 2012- 93% to Juice 7% State Fair, 2013-2014 90%

Juice ard 10% to State Fair(iii) " Minimum Payment" shall mean 9.00 per ticket sold for the Event: the Minimum Payment for any Event is in addition to the payment of the State Fair Reimbursable Expenses for such Event, (iv) State Fair Reimbursable Expenses" shall mean all of State Fair costs for labor, security, box office services, materials, supplies, rentals, contract services, management personnel services, State Police services, permits, fees, taxes, utilities, capital improvements agreed upon by State Fair and Juice and other costs incurred by Sate Fair in connection with providing services or supplies deemed necessary for the Event to by Juice during the term of this Agreement.

(b)

On the terms and condition set forth herein, Juice shall reimburse the State Fair for State Fair Reimbursable Expenses. Subject to the Authority's presentation of appropriate vouchers documenting the Authority Expenses for a particular Event, Juice shall reimburse State Fair for State Fair Reimbursable Expenses out of the Event net Revenues following the Preliminary Accounting (as defined in Section 3(f) below) for such Event. State Fair shall provide a detailed accounting of State Fair Reimbursable Expenses incurred by it with respect to a particular year's Event within three (3) business days following the completion of such Event. (i) If ticket sales for the Event exceed 30,000 patrons over 2 days- State Fair will deduct up to $30,000 from reimbursable expenses.

(c) Juice must provide by February 20 of each year a budget estimate as well as attendance estimates and ticket pricing. Juice must provide by March 1st of each year a copy of

talent/acts/entertainment, a list of all interested parties, a list of equipment, copies of all contracts. ~~This shall provision shall be waived for 2011.~~ 

(d) Juice must deliver 70% of attendance estimates in each year of the Event.

(e) State Fair shall be responsible for running the box office and for admission ticket sales and concert ticket sales. Juice shall be responsible for all other Revenue Generating Activities. Fair shall hold all of the proceeds from concert ticket sales in its possession until the Preliminary Accounting for such Event, at which time the proceeds all be distributed in accordance with Section 3(a) hereof. Except as set forth below, Juice shall hold all of the proceeds from all other Revenue Generation Activities in its possession until the Preliminary Accounting for such Event, at which time the proceeds shall be distributed in accordance with Section 3 (a) hereof. Not withstanding anything to the contrary contained herein, Juice shall be entitled to use, at any time (including prior to the Preliminary Accounting), the proceeds from all other Revenue Generating Activities to cover its costs and expenses related to the production of the Event and any and all Revenue Generating Activities. Juice shall provide State Fair with a monthly statement of the use of such proceeds prior to Preliminary Accounting.

(i)     With Respect to concert ticket sales for each day of operation of the Event, State Fair shall provide Juice with a daily accounting statement detailing the amounts collected from concert ticket sales for such day of operation of the Event to be provided to Juice by 4:00 p.m. on the next following day.

(ii)    With respect to vendor and concession rental charges and sponsorship income, Juice shall provide State Fair an accounting statement detailing all income collected by Juice or due and owing to Juice on the first Wednesday prior to the Event.

(f)   Within three (3) business days following the conclusion of the Event of any particular year, Juice shall provide a detailed breakdown to State Fair of (i) the Event Net Revenues Event (which calculation shall be based upon the accounting statements provided in accordance with this Section 3 less the applicable New Jersey sales tax for all ticket and other sales (which sales tax is currently seven percent (7%)) and all out-of-pocket cost and expenses of Juice with respect to all Revenue Generation Activities) and (ii) State Fair's share of the Event Net Revenues ( the "Preliminary Accounting"). State Fair shall have three (3) business days from receipt of the Preliminary Accounting to review the Preliminary Accounting and to notify Juice of any errors in its calculation. If State Fair does not notify Juice of any errors in its calculation of the Preliminary Accounting within three (3) business days after receipt thereof, State Fair shall be deemed to have accepted the Preliminary Accounting. In the event State Fair notifies Juice of any errors in its calculation with in such three (3) business-day period, the parties shall work together in good faith to resolve any such dispute, and in the event the parties are still unable to

4

resolve such dispute, the resolution of such dispute shall be referred for decision by arbitration in the State of New Jersey by a neutral arbitrator mutually selected by State Fair and Juice. Any arbitration proceeding shall be governed by the Rules of American Arbitration Association then in effect and the decision of the arbitrator shall be final, conclusive and binding on State Fair and Juice. Juice and State Fair shall each bear their own costs (including the fees and disbursements of counsel) incurred in connection with any such arbitration and shall each pay one-half of the costs of such arbitrator. At the conclusion of the arbitration, the prevailing party shall have all of its cost reimbursed by losing party. Within forty-eight (48) hours following the earlier of Juice's acceptance of Preliminary Accounting or the resolution of disagreement the Preliminary Accounting (the Preliminary Accountings as accepted by State Fair or amended pursuant to the resolution of any disagreement between the parties is referred to as, the "Preliminary Accounting") , State Fair and Juice shall disburse the proceeds from the Event. State Fair shall retain at least $35,000 or some other sum as State Fair shall deem necessary for payment of late submitted invoices. The amount so retained, or the remainder thereof after payment of late submitted invoices, shall be released to Juice within thirty (30) days of conclusion of the Event for any given year.

(g) During the term of this Agreement, and for a 24-month period following its conclusion, State Fair and its representatives shall have the right, for the primary purpose of confirming the Event Net Revenues, to inspect the relevant books, records (including tax returns), documents and vouchers relating to the business and affairs of Juice  and to make extracts and copies of such books, records, documents and vouchers. Any such inspection shall be conducted during regular business hours of Juice. Claims, if any must be made within two years of the conclusion of fair for any given year.

During the term of this Agreement, and for a 24-month period following its conclusion, Juice and its representatives shall have the right, solely for the purpose of confirming the concert ticket sales and State Fair Reimbursable Expenses for the Event, to inspect the relevant books, records (including tax returns), documents and vouchers relating to the business and affairs of State Fair and to make extracts and copies of such books, records, documents and vouchers. Any such inspection shall be conducted during regular business hours of State Fair.


Section 4. Letter of Credit. By the later of (i) March 1st of each year in which Juice is required to produce and Event pursuant to the terms of this Agreement or (ii) one hundred and twenty (120) days prior to the commencement of the Event for such year, Juice shall submit to State Fair an irrevocable, unconditional letter of credit of its benefit in the amount of $250,000 to guarantee "State Fair Reimbursable Expenses" and "Minimum Payment " due to State Fair under this Agreement for such particular year. The Letter of Credit shall be issued by New Jersey financial institution approved by State Fair.

In the event Juice    does not produce the Event in a particular year during the term of this Agreement (other than as a result of an Event of Occupation (as defined in Section 21), a Force Majeure Event (as defined in Section 27), or due to a breach by State Fair of its obligation under this Agreement), State Fair shall have the right to obtain a third party to produce such Event. State Fair may draw upon the letter of credit to the extent the Minimum Guaranteed Revenue for such particular year exceeds the amount received by State Fair for the production of the Event by such third party. The letter of credit for each particular year of the Event shall expi upon the disbursement of proceeds for such Event pursuant to the Preliminary Accounting.

The rights granted under this Section 4 shall be in addition to and shall not limited any other rights granted to State Fair pursuant to the terms of this Agreement, including, but not limited to , (i) termination rights; (ii) the right to sue for specific performance;(iii) State Fair's right to recover damages.

Notwithstanding anything to the contrary in this Section, State Fair, in its sole discretion, may waive this provision for any contract year providing written notice to ~~Deluna~~ of its intention, to do so.                                                                                      Juice CB ƗꞶ,

Section 5. <u>Box Office Facilities and Admissions Control.</u> The Authority shall generate tickets for the concert event through the Ticketmaster system or such other ticketing agent selected by the Authority. The cost of producing such tickets shall be a State Fair Reimbursable Expense. The Authority shall be responsible for advance and day of event concert tickets sales and for certain related services including, without limitation, setting up the event on the Ticketmaster system. The Authority will handle over the counter, advance and day of event sales for State Fair at IZOD center ticket offices and at ticket booths as furnished by State Fair. If the Authority  State Fair and Juice agree that  the Authority shall consign ticket sal es to outside agencies, State Fair shall pay the sales fee, commission charge, refund fee or any other fee of the outside agency which sells admission tickets to the Event. The sales fees, commission charges, refund fees or any other fees of the aforementioned outside agency are reimbursable expenses of State Fair ·for purposes depositing all monies from admission ticket sales and holding such amounts pending the Preliminary Accounting and preparing accounting statement detailing all admission ticket sales and State Fair Reimbursable Expenses related thereto and such other reports as are necessary and required.

Section 6. <u>Lien on Admission Ticket Sales.</u> State Fair shall have a first lien against admission ticket office receipts and all property of Juice located upon the premises of the Licensed Area, to the extent not subject to a prior lien for all amounts due and owing to State

Fair under this Agreement including, without limitation, its share of the Event Net Revenues. State Fair is authorized to withhold the proceeds from admission ticket sales in an amount equal to the total due and owing State Fair under this Agreement.

Section 7. Licenses and Permits. Juice   shall promptly pay all taxes excise or license fees, including music licensing fees to ASCAP, BMI and SESAC and obtain all licenses or permits necessary for the use of the Licensed Area and the production of the Event as required by Federal, State or Local laws or ordinances; and Juice,   shall provide evidence of such requisite licenses or permits or payment of such taxes, excise or license fees upon request from State Fair Juice shall advise all vendors, concessionaries and other exhibitors offering goods for sale that applicable sales tax numbers must be filed prior to the commencement of the Event and sales taxes must be filed designating sales made in East Rutherford, New Jersey. State Fair shall deduct New Jersey State sales tax out of revenue collected from the sale of tickets and shall be responsible for the remittance of New Jersey State sales tax relating to admission ticket sales on behalf of Juice.

Section 8. Compliance with Laws and Regulations. Juice and its employees shall, use its commercially reasonable efforts to cause any of its subcontractors and the vendors and concessionaries to, conform to and comply with all laws of the United State and the State of New Jersey and the written rules and regulations of the New Jersey regulatory agencies, together with all rules and regulations of the New Jersey State Police and Meadowlands Fire Department. If the Authority notifies State Fair of a violation of any such laws, rules or regulations by any of the aforementioned parties, Juice shall, in the case of any violation Juice or its employees, immediately desist from and correct such violation and, use its commercially reasonable efforts to cause such party to immediately desist from and correct such violation.

Section 9. Insurance.

(a) Juice its subcontractors and all vendors shall provide evidence of workers'
     compensation insurance for those employees working on Licensed Area premises;
     and such workers' compensation insurance policies shall insure the obligations of
     such entity under the New Jersey Workers Compensation and Occupational Disease

7

Laws with respect to the performance of the services to be provided by such entity at the Event. Evidence of such insurance coverage shall be provided to State Fair at least 30 days prior to the commencement of the Event in any given year.

(b)  Juice   shall provide or shall have another entity provide on its behalf, at Juice's own cost and expense, commercial general liability insurance to insure Juice's use of the Licensed Area premises and all operations of Juice and State Fair contemplated by this Agreement and any contractual assumptions of legality reflected by this Agreement. Both State Fair and the Authority shall be listed as named insured under such commercial general liability policy shall have a limit of $5,000,000 per occurrence for bodily and property damage liability, personal injury liability and product liability claims.   Coverage may be provided under one policy naming both State Fair and the Authority as named insured or under separate policies. Evidence of such insurance coverage shall be provided to State Fair at least 30 days prior to the commencement of the Event in any given year.

(c)  Juice   shall obtain evidence of commercial general liability insurance from all subcontractors, & vendors in an amount equal to at least $1,000,000 per occurrence (combined single limit) including personal injury and product liability coverage. Each policy shall name State Fair and the Authority as additional insured with respect to all operations associated with the Event to be held on the Licensed Area premises.     Juice        shall    provide evidence of such insurance coverage to State Fair prior to commencement of Event in any given year.

Section 10. Indemnification Agreement from Subcontractors, & Vendors.

(a) Juice         shall not permit any subcontractor, or vendor to provide any services relating to the Event unless appropriate evidence of insurance coverage with respect to such subcontractor, or vendor has been provided to State Fair.

(b) Juice    shall obtain a signed Indemnification Agreement from each subcontractor or vendor which contains an agreement from such subcontractor, vendor or concessionaire to indemnify State Fair and the Authority with regard to any claims that arise out of such subcontractor's or vendors operation relating to the Event to the extent not otherwise covered by the insurance referenced in Section 9 hereof.

Section 11. Public Safety. Juice    shall, at all times during any Event being produced by it pursuant to the terms of this Agreement, conduct its activities with full regard to public safety and observe and abide by all applicable regulations and request by duly authorized governmental agencies responsible for public safety.

Section 12. Broadcast Rights. The Authority expressly reserves all rights and privileges for outgoing radio, television or simulcast broadcast originating from Licensed Area

8

during the operation of the amusement fair. In the event the Authority grants such rights and privileges to State Fair, the terms and conditions of such grant shall be evidenced by separate written agreement between the Authority and State Fair which shall provide for among other things, the indemnification of the Authority, its officers, representatives, agents and employees from and against any and all claims, damages, liabilities, cost and expenses, including reasonable attorney's fees, arising from any radio, television or simulcast broadcasting (including ad---lib remarks of announcers, including, but not limited to responsibility or liability for any violation of any rights of others by such broadcasting) to the extent Juice is responsible for the origination of such broadcasting.

Section 13. <u>Copyright.</u> Juice shall assume all cost arising from the use of patented, trademarked, franchised or copyrighted music material, devices, process or dramatic rights ("Copyright Materials") used on or incorporated into the event. State Fair and the Authority and its officers, representatives, agents and employees from and against any and all claims, damages, liabilities, costs and expenses, including reasonable attorney's fees, arising from the unauthorized use of such Copyright Materials by Juice.

Section 14. <u>Utilites.</u>

    (a) Juice shall be responsible, at its sole cost and expense, for all necessary equipment required to operate the Event in any given year of this Agreement including, but not limited to staging, generators, lighting, tenting, electrical wiring, and any other equipment Juice deems necessary to operate the Event. State Fair shall supply Juice with Toilettes and waste removal for a fee of $500.

Section 15. <u>Electricity.</u> In the event extra lights, such as spotlights, television lights of other special lights, shall be required by Juice shall use a approved electrical contractor for installation of any extraordinary electrical connections or other services relating to such lights.

Section 16. <u>Staffing.</u> Juice shall reimburse State Fair in accordance with Section 3 hereof for all necessary staffing relating to the services, including security, to be provided by State Fair under this agreement. The cost of such staffing shall be as set forth in accordance with the Authority's prevailing collective bargaining agreements. The Authority and State Fair shall consult upon the appropriate number of security and other staff personnel to properly serve and protect the public during the operation of the Event. However, it is understood the determination of security and other department staffing is solely the Authority's decision. All special services that the Authority is requested to provide, including, without limitation, decorations, erection of

9

platform stands, staging and props and any employee overtime resulting from such special services, shall be deemed to be State Fair Reimbursable Expenses.

Section 17. Signs and Posters. Juice shall not post or allow to be posted any signs, cards, advertising, banners or posters (collectively "Signs") on the licensed Area premises without the express written permission of State Fair. The content of any Signs shall be subject to approval by State Fair.

Section 18. Advertising. Juice acknowledges that all advertising of the Event fair shall be honest and true and shall include accurate information regarding the hours of operation and ticket prices for the Event.

All advertising space located outside of the Licensed Area premises but on the Meadowlands Sports Complex shall be the exclusive property of the Authority or NMSCO as their interests appear.

Juice acknowledges that State Fair the Authority and NMSCO have exclusive relationships in particular advertising categories, which may not be encroached upon without express consent.

Section 19. Occupancy Interruption. If, as a result of any action or activity undertaken or authorized by the Authority, (a) the Licensed Area or any part thereof becomes unavailable for use by Juice or (b) the maximum days and hours of operation as determined pursuant to Section 1 hereof are materially reduced, or (c) access or means of ingress to the Licensed Area is materially restricted or impeded (an "Event of Occupation") and such Event of Occupation shall Juice's reasonable Judgement, adversely impact its ability to conduct and/or maximize Revenue Generating Activities, Juice hereby waives any claims for damages or compensation should this Agreemen be suspended by an Event of Occupation.

Section 20. Objectionable Persons. State Fair reserves the right to eject or cause to be ejected for the Licensed Area premises any objectionable person or persons; provided that, any such ejection is handled in accordance with Authority policy and does not violate any person's civil or other rights. Neither State Fair the Authority nor any of its officers, agents or employees shall be liable to Juice for any damages that may be sustained by it through the exercise by State Fair or the Authority of such right accordance with preceding sentence.

Section 21. Refund of Ticket Revenue. The Authority and State Fair reserve the right to make admission ticket refunds for cause in keeping with the State Fair policy of retaining go od faith. This shall include, without limitation, the failure of any act to show or to go

on stage within a reasonable time of its scheduled appearance or the failure of Juice to produce or deliver the performance, product or service that has been advertised to the public.

Section 22. <u>Announcements.</u> The State Fair reserves the right, from time to time, to make announcements during the hours of operation of the Event relating to public safety. Juice      shall, and shall cause its employees and agent to, cooperate with the instructions concerning public safety including, but not limited to, announcements requiring patrons to exit the licensed Area.

Section 23. <u>Agreement to Quit the Licensed Area Premises.</u> Juice      shall leave the licensed Area premises in a condition equal to that at the commencement of the Event for such year, ordinary wear and tear excepted. Failure of Juice      to use its commercially reasonable efforts to leave the Licensed Area Premises within the time permitted by this Agreement may make Juice      liable for additional payments to State Fair.

Section 24. <u>Lost Articles.</u>  The Authority shall have the sole right to collect and have the custody of articles left on or in the proximity of the License Area premises by persons attending the Event. Juice shall not interfere with the Authority's collection or custody of such articles and shall turn over to the Authority any articles collected by it.

Section 25. <u>Civil Rights.</u> Juice      shall not discriminate against any employee or any applicant for employment because of race, religion, national origin or any other reason prohibited by law nor shall Juice      discriminate against any customers of the Event on the basis of race, religion, national origin or any other reason prohibited by law.

Section 26. <u>No Joint Venture.</u> This Agreement does not create a partnership, joint venture, agency or other similar relationship or business arrangement between the parties. Neither party is authorized to make any warranties, guarantees, and contracts or other commitments or to incur any obligation on behalf of the other party.

Section 27. <u>Force Majeure.</u> In the event that all or any portion of the amusement fair in any particular year cannot take place because of Force Majeure Event, neither party shall have any obligation or liability whatsoever to the other party during the occurrence of such Force Majeure Event as a result of the failure to  fulfill its obligations under this Agreement. For purposes of this Agreement, a "<u>Force Majeure Event</u>" shall mean an occurrence of any of the following events  which is a contributing factor in precluding or impairing the ability  of either party to perform its obligations under this Agreement: Act of God, war or other hostility (including acts of terrorism), national emergency, actual or threatened dissemination of chemical or biological weapons or substances (including

11

the actual or threatened dissemination of a disease, such as anthrax or smallpox, through any form or medium), fire, storm, flood, rebellion, riot, explosion, labor disturbances, sabotage, disaster, civil unrest or any other cause not within the reasonable control of Juice or State Fair, as the case may be.

Section 28.  Term. The term of this Agreement shall commence on the date hereof and shall continue in full force and effect until the completion of the 2014 Fair and the distribution of the Event Net Revenues for 2014 in accordance with the Preliminary Accounting.

Section 29.  Binding Agreement; No Assignment; Amendment. This Agreement shall be binding upon and inure to benefit of the parties and their respective successors and assigns. This Agreement may not be assigned without the prior written consent of the other party. This Agreement may not be amended except by an instrument in writing executed by both parties.

Section 30.  Notices. All notices, request, demands and other communications required or permitted under this Agreement shall be given in writing and, unless otherwise provided herein, shall be deemed duly given if delivered personally, by facsimile transmission (receipt of which is confirmed) or upon receipt by the receiving party of any notice sent by registered or certified mail (first-class mail, postage pre-paid, return receipt requested) or by overnight courier or similar courier service, addressed as follows:

If to State Fair:               State Fair, Inc.

                                229 Main Street

                                Belleville, New Jersey 07109

                                Facsimile: (973) 751-7397

                                Attention: Al Dorso


If Juice Entertainment.          Juice Entertertainment, LLC.

                                471 N. Midland Ave

                                Saddle Brook, New Jersey,    07663

Or at such other address as such party may designate by notifying the other party in writing in accordance with this Section 30. Delivery of notice to a party's legal counsel shall not constitute the delivery of notice to such party.

Section 31. Non-Discrimination. Both Sate Fair and Juice agree that in the performance of the Agreement there will be no discrimination against any employee or applicant for employment because of any reason prohibited by law.

Section 32. Governing Law; Jurisdiction; Venue. This Agreement, and all matters arising directly or indirectly hereunder, shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without regard to the choice of conflicts of law provisions thereof. Each of the parties hereby (i) irrevocably consents and submits to the exclusive jurisdiction of the state and federal courts located in the Sate of New Jersey in connection with any suit, action or other proceeding directly or indirectly arising out of or relating to this Agreement, the (ii) irrevocably waives, to the fullest extent permitted by law, any objection that any of them may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum.

The prevailing party of any such suit, action or proceeding shall have its counsel fees and cost reimbursed by the losing party.

Section 33. Severability. The invalidity of any portion of this Agreement shall not affect the validity, force or effect of the remaining portions of this Agreement, which shall in such event be interpreted to give effect, as nearly as possible, to the original intent of the parties with respect to this Agreement as a whole, if it is ever held that any provision hereunder is too broad to permit enforcement of such provision it its fullest extent, such provision shall be enforced to the maximum extent permitted by law.

Section 34. Headings. The headings in this Agreement are for convenience and reference only and shall not limit or otherwise affect the meaning hereof.

Section 34. Counterparts. This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

13

Section 35.  Confidentiality. The parties agree that all financial terms, personal and proprietary information, shall be held strictly confidential, and shall not be released to a third-party without the prior written consent of the non-releasing party, which consent may be withheld in the sole discretion of the non-releasing party ("Confidential Information"). Notwithstanding the foregoing, either party may disclose the Confidential Information to its Board of Trustees and to their officer's agents or employees who may be involved in analyses and decision making with respect to these discussions, provided that each such recipient of the Confidential Information is first advised of the contents of this Agreement.

[Execution Page Follows]

14

IN WITNESS WHEREOF, this Agreement has been duly executed by each of the parties hereto as of the date first written above.

STATE FAIR, INC.

By: _____

Name: AL DORSO

Title: PRES.

Juice Entertainment, LLC

By: _____

Name: John SANDBERG          Thomas Peterman

Title: PARTNER               PARTNER

Christopher Barrett
Partner

15