

COMPLEX COMMERCIAL LITIGATION

NEW JERSEY OFFICES     150 JFK Parkway, Short Hills, NJ 07078    P 973.218.1111    F 973.218.1106

July 22, 2013

**VIA CM/ECF & REGULAR MAIL**

Honorable Steven C. Mannion
United States Magistrate Judge
United States District Court
For the District of New Jersey
Martin Luther King Courthouse
50 Walnut Street, Courtroom MLK 4A
Newark, NJ 07101

   Re: *Juice Entertainment, LLC, et al. v. Live Nation Entertainment, Inc.*,
     Civ. Action No. 11-7318 (WHW)(SCM)

Dear Judge Mannion:

   We represent Plaintiffs Juice Entertainment, LLC, Thomas Dorfman, and Chris Barrett in the above-captioned matter. Counsel for Plaintiffs and Defendant apprised the Court, by letter dated June 28, 2013, of the current status of discovery. As noted in that letter, the parties have been engaged in paper discovery, meeting and conferring regarding discovery disputes and scheduling party and non-party depositions. Last week, the parties took three non-party depositions.

   The current fact discovery end date is July 31, 2013. Though the parties have been cooperating toward scheduling depositions, the calendar is to some extent beyond the control of counsel given that non-parties are involved and have to be accommodated. Accordingly, while depositions have begun, they will not be completed at least until Mid August. As we noted in our last correspondence the parties request that this be considered a joint application to formally extend the fact discovery end date and all other remaining dates. However, existing discovery disputes prevent the parties from being able to know with certainty how much time will be required to complete discovery. Simply put, the parties have disagreements about the permissible scope of discovery, the resolution of which will largely determine how much additional time is required.

   Set forth below are Plaintiffs' positions followed by Defendant's positions on the discovery issue. Defendant's positions are in italics.

NEW YORK OFFICES    575 Lexington Avenue, New York NY 10022    P 212.644.5854
www.stonemagnalaw.com    www.false-claims.net

Honorable Steven C. Mannion
July 22, 2013
Page 2


At this point the discovery disputes solely involve Defendant's responses to Plaintiffs' discovery requests. *Live Nation's objections to Plaintiffs discovery requests are primarily based on three grounds:  1 Live Nation produces and promotes events worldwide and does not maintain any centralized storage facility of documents and communication -- accordingly it would be unduly burdensome for Live Nation to produce such documents and communications; 2) Events in music genres other than electronic dance, events in venues other than live outdoor concerts or festivals such as night clubs or arenas and events in markets outside the greater New Jersey area are irrelevant to Plaintiffs' allegations in their Amended Complaint; and 3) Live Nation is willing to stipulate that it has relationships with William Morris Endeavor Agency ("William Morris"), AM Only Agency ("AM Only") and the Windish Agency ("Windish") thereby eliminating the need to produce documents and communications to that effect.*

Initially, Plaintiffs object to certain of Defendant's General Objections, which have the effect of impermissibly and arbitrarily limiting the scope of discovery.  With regard to Plaintiffs' Requests for Production of Documents, Defendant's General Objection #5 arbitrarily limits the time frame for which it is willing to produce documents to January 1, 2010 forward.  A Key aspect of Plaintiffs' case is that Live Nation has longstanding relationships with artists and agents that give it influence with such parties.  Plaintiffs should be entitled to develop evidence of the depth of those ties by reviewing documents from January 1, 2008 to the present.

*Live Nation objects to the production of documents prior to January 1, 2010 on the grounds that Plaintiffs themselves allege in their Amended Complaint that the facts giving rise to action began in 2010 after Plaintiffs produced the Latin Festival at the 2010 New Jersey Meadowlands State Fair.  See Am. Compl. ¶ 4.  Furthermore, Live Nation is willing to stipulate that it has extensive relationships with William Morris, AM Only and Windish thereby evidencing ties to the three agencies..  Any discovery prior to January 1, 2010 is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.*

Document Request 6 seeks documents related to contracts between Defendant and any of the artists named in Plaintiffs Complaint.  Defendant has offered only to generate a list of artists for whom Defendant produced or promoted a concert or a tour.  This response is insufficient because Plaintiffs need to review the actual contracts at issue to determine, among other things, whether they contain provisions related to the artist's ability to appear for other producers or promoters.

*Live Nation objects to production of the actual contracts for any artist because Live Nation produces and promotes live concerts, events and festivals globally.  Thus, for example, a contract for a night club event in Ibiza, Spain, has no bearing on the outdoor music festival in New Jersey upon which Plaintiffs base their claims.  Additionally, Live Nation does not maintain all of its contracts in a central repository.  Accordingly, to locate all contracts for events by Plaintiffs' list of 34 artists all over the world would be unduly time consuming and costly.  Live Nation objects to production of the actual contracts and any related documents as overbroad,*

Honorable Steven C. Mannion
July 22, 2013
Page 3

*unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.*

Document Requests 7-9 seek documents, including communications, concerning contracts between Defendant and the three major talent agencies involved in this case. Again, Defendant has offered to possibly produce a list of such contracts (indeed, Counsel has only suggested that he would ask Defendant whether it would be willing to prepare such a list). This is insufficient because the contracts themselves may contain evidence of conditions imposed on the agencies by Defendant. Moreover, a list does not address the element of the Requests that seek communications about the contracts, which could contain relevant information beyond the contracts themselves.

*Live Nation enters into contracts with artists represented by William Morris, AM Only, and Windish for the performance of live concerts worldwide and for artists of all types of music genres and accordingly, Live Nation is willing to stipulate that it has relationships with William Morris, AM Only and Windish. Plaintiffs have not identified what relevant information may arise from contracts or communications regarding live music concerts worldwide or involving all music genres. Live Nation objects to Requests 7-9 as irrelevant, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.*

Document Requests 10-13 seek documents related to Defendants acquisition of Hard Events, Inc., and Cream Holdings, Inc., two companies involved in the electronic dance segment of the music industry, as well as documents related to the business performance of those entities. Defendant has refused to produce any documents related to its acquisition of these companies, or their business performance. Plaintiffs believe that such material is relevant to the calculation of damages in this case because the operating results of such businesses as well as the price Defendant was willing to pay to acquire them are relevant to what a business venture in the same segment of the music industry might be worth.

*Live Nation's acquisition of Hard Events, Inc. and Cream Holdings has nothing to do with this case as the Amended Complaint alleges that Live Nation interfered with Plaintiffs' attempt to produce a concert in New Jersey in 2011. The process of acquiring a company is completely separate from the process of promoting or producing a music festival. Similarly the valuation of a company, including its business performance, is distinct from the ticket pricing, cost and revenue calculations associated with a music festival. Additionally, as Cream Holdings was based in United Kingdom and Hard Events was based in Los Angeles, those companies served different geographic markets that have different characteristics from the New Jersey market. Live Nation objects to Requests 10-13 as irrelevant, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Live Nation further objects to these Requests to the extent that it seeks documents available in the public domain as Live Nation is a public company required to make Securities and Exchange Commission filings.*

Honorable Steven C. Mannion
July 22, 2013
Page 4


Document Request 20 seeks documents and communications related to any electronic dance music concerts or festivals produced or promoted by Defendant from January 1, 2008 to the present.  Again, counsel has represented that he will ask Defendant to produce a list showing such concerts.  Leaving aside that it is unclear at this point whether Defendant has consented to produce such a document, it would not sufficiently respond to the Request.  Plaintiffs believe the Request is relevant insofar as responsive documents could show production costs, revenue figures, artists who appeared,  locations of the shows, and ticket prices, among other relevant facts.  And, again, a list of such shows, even if it contained all the categories of information just enumerated, would not encompass communications about the shows, which may also contain relevant information.

*As discussed above, Live Nation produces concerts and festivals all over the world and for venues of all different sizes.  Thus, production costs, revenue figures and ticket prices in other markets are not relevant and electronic dance concerts at venues other than outdoor events are not relevant.  Moreover, production costs, revenue figures, artists, show locations and ticket prices are generally publicly available information, as demonstrated by certain documents Plaintiffs themselves produced.  Beyond these categories, Plaintiffs have not identified what relevant information may be gleaned from communications regarding these other events that are not the subject of this lawsuit.  Live Nation objects to this Request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.*

Document Requests 21-23 seek documents and communications concerning instances where Defendant hired artists represented by the three major agencies to appear at concerts or festivals promoted or produced by Defendant.  These are companion requests to Requests 7-9, discussed above.  Plaintiffs concede there may be some degree of overlap in these Requests, depending on the particulars of how a particular artist is engaged.  For example, the actual contract for an artist to appear might be between the Defendant and the artist directly, in which case there would not be a document directly responsive to Requests 7-9, even though there might be a document responsive to Requests 21-23, for example communications discussing the artist's engagement.  If, on the other hand, Defendant contracts directly with the agency, then the same documents might be responsive to each Request.  The larger point here is that Plaintiffs are entitled to documents concerning agreements between Defendant and either the artist directly, or its agent, because such documents constitute evidence of the relationship between Defendant and the artists and agencies and those relationships are directly relevant to Plaintiffs' claim that Defendant had the requisite leverage to interfere with Plaintiffs' business relationships with the same parties.

*Live Nation is willing to provide a list of artists in the Amended Complaint for which it has produced or promoted events.  As with Requests 7-9 Live Nation is also willing to stipulate that it has relationships with William Morris, AM Only and Windish.  The same objections to Requests 7-9 apply to Requests 21-23, even if this Court considers the two sets of requests as not entirely overlapping.  Live Nation objects to Requests 21-23 as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Live Nation further objects to Requests 21-23 as unreasonably cumulative, duplicative, oppressive, or intended to harass.*

Honorable Steven C. Mannion
July 22, 2013
Page 5

Document Request 39 seeks documents related to the criminal records, if any, of Jason Miller and John D'Esposito, as well as records reflecting judgments or liens against them. This mirrors a request from Defendant to Plaintiffs for similar records. Plaintiffs responded to this request by indicating that it had no such documents. Defendant, however, has taken the position that the Request is irrelevant and will not state whether responsive documents exist or not. Plaintiffs contend that if the Request was relevant when posed to them it is equally relevant when posed to Defendant. A criminal history could certainly be relevant given that the essence of Plaintiff's claim is that Defendant competed unfairly and used strong-arm tactics.

*While Plaintiffs' criminal history, if any, is relevant to Live Nation's defenses against defamation, Jason Miller and John D'Esposito's criminal history, if any, will not in any way support Plaintiffs claims. Neither Miller nor D'Esposito were named as defendants by Plaintiffs in this lawsuit. Their criminal histories, if any, could not be imputed to Live Nation, the named defendant, and would not have any bearing whether "Defendant competed unfairly and used strong-arm tactics." Live Nation objects to this Request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*

Regarding Plaintiffs' Interrogatories, Defendant's General Objection No. 5 states that Defendant will limit its answers, as it did with the document requests, to the period from and after January 1, 2010 and also to a specific geographical region it refers to as "the greater part of New Jersey." As discussed above in connection with document requests, Plaintiffs believe that a time period beginning January 1, 2008 is not overly burdensome and is relevant to Plaintiffs' position that Defendant's long term relationships with artists and agents are relevant to its ability to interfere with Plaintiffs' business relationships. Regarding the attempted limitation on geographical grounds, Plaintiffs contend that any instance of Defendant doing business with either an artist or an agent involved in this case is relevant, whether it happened in New Jersey or California or anywhere in between. What matters is that Defendant transacts a certain type and volume of business with the agents and artists. A contract between Defendant and a particular artist or agent does not become any less relevant here because it relates to a show in California as opposed to New Jersey.

*Live Nation asserts the same objections to Plaintiffs' requested time period as set forth above regarding Live Nation's General Objection 5 to Plaintiffs' Document Requests. With respect to geographic scope, the greater part of New Jersey, including the Meadowlands, is the relevant market because factors such as ticket pricing and costs vary from market to market and type of venue. However, Live Nation is willing to treat geographic location on a case by case basis, and expand the geographical boundaries accordingly. Furthermore, again, Live Nation concedes that it has relationships with the three agencies Plaintiffs reference in the Amended Complaint. Thus, Live Nation already admits that it "transacts a certain type and volume of business with the agents and artists," which Plaintiffs themselves deem significant.*

Honorable Steven C. Mannion
July 22, 2013
Page 6

Defendant's General Objection No. 6 states that all information regarding Cream Holdings and Hard Events is irrelevant. Plaintiff disagrees for the reasons stated above. Information regarding the operating results of these companies and the purchase price Defendant paid to acquire them is relevant to damages in this case.

*Live Nation maintains that any information regarding Cream Holdings and Hard Events is irrelevant, overbroad, unduly burdensome, beyond the scope of discovery and not reasonably calculated to lead to the discovery of admissible evidence as stated above.*

In response to Interrogatory 8, which asks Defendant to identify any electronic dance music concerts or festivals it had produced or promoted from January 1, 2008 to the present, Defendant listed three shows, all in New Jersey, from 2010 to the present. Plaintiffs do not agree that Defendant may arbitrarily limit its answer to the time period or geographic region of its choosing. For the reasons previously stated Plaintiffs believe that concerts from around the country going back to 2008 are relevant. Also, Plaintiffs note that the fact that there were only 3 shows in New Jersey since 2010 belies Defendant's contention that it would be burdensome to identify all such concerts nationally for two additional years.

*Live Nation reasserts its objections to Plaintiffs' time period and unbounded geographic scope as stated above. While Live Nation is willing to identify other events in the greater New Jersey area for 2008 and 2009, Live Nation objects to the production of any contracts or communications related to those events also for the reasons stated above. As Live Nation does not store all of its contracts in one location, locating contracts and communications for events across the country for a four-year period would be unduly burdensome and involve searching countless databases and employees' files.*

Interrogatories 9-11 ask Defendant to identify its employees with primary responsibility for working with each of the three agencies involved in this case when Defendant seeks to hire an artist represented by the agency. Defendant identified Jason Miller as the relevant person for each agency, with respect to electronic dance music events. Plaintiffs do not concede that Defendant should be permitted to limit its answer to electronic dance music events. Plaintiffs' contend that a relationship between a Live Nation employee and an agency is relevant to whether Defendant has the requisite leverage to influence the agencies decisions, whether that relationship concerns electronic dance music or any other genre in the business.

*Live Nation's admission that it has relationships with William Morris, AM Only and Windish includes relationships in other genres of music as well. Additionally, Live Nation is willing to stipulate that there is no one central point of contact at Live Nation for each of the three agencies. Because Plaintiffs allege in their Amended Complaint that Messrs. Miller and D'Esposito interfered with Plaintiffs' contract for an electronic dance music festival at the New Jersey State Fair at the Meadowlands by threatening the three agencies, identification of any other Live Nation employee and other genres of music are irrelevant, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.*

Honorable Steven C. Mannion
July 22, 2013
Page 7


        Interrogatories 12 and 13 ask Defendant to identify the employees who assisted in the
Cream Holdings and Hard Events acquisitions.  Defendant refuses to identify such persons on
the same basis that it refuses to provide documents about the acquisitions, that the deals are
irrelevant to this case.  For the reasons stated above, Plaintiffs contend that those acquisitions are
relevant to damages in this case.  Plaintiffs are entitled to review documents related to the
acquisitions and to depose people with knowledge of the acquisitions.

        *In addition to the objections regarding Cream Holdings and Hard Events Live Nation set
forth above, Live Nation objects to the identification of employees who assisted in the two
acquisitions because those employees are attorneys and business people who have no role in
producing or promoting events.  Interrogatories 12 and 13 are irrelevant, overbroad, unduly
burdensome, seeking privileged information and not reasonably calculated to lead to the discovery of
admissible evidence.*

                                        *        *        *


        The parties appreciate the Court's kind consideration of and attention to this matter.
Counsel will make themselves available for a conference, or a conference call, to discuss these
issues, at the Court's earliest convenience.

                                                Sincerely,


                                                 s/ David S. Stone
                                                David S. Stone
                                                *Counsel for Plaintiffs Juice Entertainment,
                                                LLC, Thomas Dorfman and Chris Barrett*

cc:     Ian S. Marx, Esq. (via CM/ECF and e-mail)
        David S. Siegel, Esq. (via CM/ECF and e-mail)