**Greenberg Traurig**

Ian S. Marx
Tel. (973) 360-7951
Fax. (973) 301-8410
marxi@gtlaw.com

March 12, 2014

**VIA ELECTRONIC FILING**

Honorable Cathy L. Waldor, U.S.M.J.
United States District Court
　for the District of New Jersey
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

　　　　Re:　*Juice Entertainment, LLC v.*
　　　　　　*Live Nation Entertainment, Inc.,*
　　　　　　**11 Civ. 07318 (WHW) (CLW)**

Dear Magistrate Judge Waldor:

　　　On behalf of defendant Live Nation Entertainment, Inc. ("Live Nation"), we are responding to the letter that Plaintiffs' counsel, David S. Siegel, Esq., sent to Your Honor on March 7, 2014 regarding a discovery issue. Specifically, Mr. Siegel asserts that Live Nation has failed to comply with an August 7, 2013 Order from Judge Mannion that, among other things, required Live Nation to identify all electronic dance concerts that it has produced within a five-state area from 2008 to the present and to provide documents relating to such events. In fact, Live Nation has already complied with the August 7, 2013 Order. Before delving deeper into the non-issue raised by Mr. Siegel, however, Your Honor may find a concise description of this case useful.[1]

---

[1] Plaintiffs' initial Complaint [Dkt. # 1] essentially alleged that Live Nation wrongfully interfered with a contract between Plaintiff Juice Entertainment, LLC ("Juice") and State Fair Event Management ("SFEM"), under which Juice had the right to produce an electronic dance music festival ("the Event") in the parking lot at the Meadowlands during the New Jersey State Fair in June 2011 and that such alleged interference resulted in SFEM's terminating their contract. The Court partially granted Live Nation's motion to dismiss the initial Complaint [*see* Dkt. #s 20 and 21], resulting in an Amended Complaint [Dkt. # 24]. The surviving claims against Live Nation are tortious interference with contract and business relations and defamation. Plaintiffs essentially complain that Live Nation prevented them from procuring agreements to appear at the Event from 34 artists represented by 3 major talent agencies [*see* Complaint ¶¶ 70-72], which resulted in SFEM's termination of Juice's contract (and that such termination was also the result of defamatory comments from Live Nation).

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH

Greenberg Traurig, LLP | Attorneys at Law | 200 Park Avenue, Post Office Box 677 | Florham Park, New Jersey 07932 | Tel. 973.360.7900 | Fax 973.301.8410

www.gtlaw.com

Honorable Cathy L. Waldor, U.S.M.J.
March 12, 2014
Page 2

_____

### Brief background:  Plaintiffs' claims versus the evidence[2]

Fact discovery in this matter has been substantially completed.[3]  Live Nation has deposed, among others, Plaintiffs Thomas Dorfman and Christopher Barrett (the principals of Juice), as well as non-parties Al Dorso, Sr. (the principal of SFEM), John DiMatteo (alleged to be Plaintiffs' "agent" and the person upon whom Plaintiffs relied to book the talent for the Event), Alan Sacks (also alleged by Plaintiffs to be responsible for booking talent) and Vito Bruno (who Plaintiffs allege had agreed to provide financing for the Event).  Plaintiffs have deposed Jason Miller and John D'Esposito of Live Nation, who Plaintiffs allege were the Live Nation agents responsible for the "interference" and "defamation" that led SFEM to terminate Plaintiffs' contract.  These depositions reveal the following facts.

In Fall 2010, Plaintiffs were rank amateurs in the music festival industry.  They had big dreams, however, one of which was to produce a two-day electronic music festival as part of the 2011 New Jersey State Fair.  But as Plaintiffs began to try to cobble an event together, their lack of experience became obvious.  In fact, Plaintiffs made virtually every mistake imaginable, from picking concert dates that conflicted with well-established big-name events, to waiting to approach talent until well past what experienced advisors told them was the cut-off date, to failing to obtain the funding necessary for an event of the size they were contemplating.  Unable to comply with the terms of their contract with SFEM (which obligated Plaintiffs to produce a roster of talent by a date certain), SFEM canceled their contract.

Unwilling to accept responsibility for their failure, Plaintiffs looked around for someone to blame.  Live Nation (which, as a concert producer, was everything Plaintiffs were not) became the target, and Plaintiffs wasted no time concocting an elaborate tale of intrigue with Live Nation as villain.  In this suit, Plaintiffs accuse Live Nation of having pressured talent agencies to withhold their artists, of having pressured headline artists to break their "firm agreements" to perform at Plaintiffs' event, and of having defamed Plaintiffs to SFEM, all of which (according to Plaintiffs) resulted in their contract with SFEM being canceled and their reputations being ruined.

Plaintiffs have no evidence whatsoever to support any of their claims; indeed, the evidence that has been adduced actually disproves them.  For starters, Plaintiffs have no

---

[2] The facts summarized below are fully established by deposition testimony and/or documents and, thus, are either undisputed or undisputable.  Should Plaintiffs suggest otherwise, Live Nation requests that it be allowed to substantiate any challenged statements with citations to the record.

[3] As Mr. Siegel indicates, Plaintiffs have served Live Nation with a Rule 30(b)(6) deposition notice, seeking testimony on 35 topics.  Based on discussions with Plaintiffs' counsel, Live Nation anticipates producing a witness (or witnesses) to testify on those topics that have been properly identified and are the proper subject of discovery following the Court's resolution of this document dispute.

Honorable Cathy L. Waldor, U.S.M.J.
March 12, 2014
Page 3

---

evidence, either testimonial or documentary, showing that Live Nation ever pressured any talent agency to withhold their artists. (Tellingly, Plaintiffs have never sought to depose anyone from any of the talent agencies, nor have Plaintiffs sought to depose any of the supposedly "pressured" headline artists.)[4]  Moreover, the evidence definitively shows that Plaintiffs never had any agreement, "firm" or otherwise, with any headline artist. As a final coup de grâce, the person at SFEM (with whom Plaintiffs negotiated their contract) has testified that Live Nation did not defame Plaintiffs and that the reason Plaintiffs' contract was canceled by SFEM was that they failed to perform it.

Given the foregoing, it is plain that having information concerning the concerts Live Nation has produced within a five-state region over the past five years will not advance Plaintiffs' baseless claims one iota. The only theoretical "relevance" these concerts have to this case (and the only relevance Plaintiffs have attempted to argue) is that they might somehow be relevant to Plaintiffs' damages claim. Despite there being no proffered nexus between these 246 concerts and SFEM's termination of its contract with Plaintiffs in April 2011, in compliance with the August 7, 2013 Order, Live Nation has provided the information requested.

**Live Nation has already complied with Judge Mannion's August 7, 2013 Order**

The August 7, 2013 order entered by Judge Mannion resolved an extensive number of disputes between the parties concerning dozens of issues. The present dispute concerns one of them – specifically, the Court's requirement that Live Nation identify the electronic dance music ("EDM concerts") it produced in the mid-Atlantic region and produce documents relating to such concerts. Live Nation has complied with the Court's Order.

On December 13, 2013, Live Nation identified for Plaintiffs 246 EDM concerts that it produced in a five-state area (plus the District of Columbia) from 2008 to present, and, on February 12, 2014, Live Nation provided Plaintiffs with documents relevant to those concerts. With respect to the latter, Live Nation produced electronic data that, for each of the 246 EDM concerts, contained 3,690 data points reflecting the following information:

- name of the headline artist;
- talent agency through which the artist was booked;
- name of the venue and its location;
- date the deal with the talent agency was consummated;
- booking promoter who handled the deal on behalf of Live Nation;
- offer ID number (an internal tracking number for the event at Live Nation);

---

[4] Plaintiffs initially served deposition subpoenas on the three talent agencies with whom they allege Live Nation interfered. When documents produced by those talent agencies showed no evidence of interference by Live Nation, Plaintiffs decided not to depose the talent agents after all. Thus, Plaintiffs deliberately opted not to depose the "targets" of Live Nation's alleged interference.

Honorable Cathy L. Waldor, U.S.M.J.
March 12, 2014
Page 4

- number of shows involved;
- paid attendance (i.e., the number of tickets sold);
- "drop count" (i.e., the number of actual attendees);
- revenue from ticket sales;
- show expenses;
- talent expenses;
- co-promoter expenses (where applicable);
- other expenses; and
- gross profit (i.e., revenues minus expenses).

The foregoing electronic data produced by Live Nation concerning the 246 EDM concerts was extracted from Live Nation's official books of record from the only centralized source of data Live Nation maintains concerning its live music events.

The information produced by Live Nation concerning the 246 EDM concerts adequately addresses the August 7, 2013 Order. Plaintiffs, however, are not satisfied and are now demanding that Live Nation produce every shred of paper generated in connection with each and every one of these 246 concerts. Not surprisingly, Plaintiffs cannot articulate a single plausible reason why they could possibly need such documents. The one they give Your Honor is simply double-talk. *See* Siegel letter at 1 (claiming that "Plaintiffs require the documents at issue both for the contents of the documents themselves, to be able to conduct meaningful depositions of 30(b)(6) witnesses still to be proffered by Live Nation, and to provide to their expert"). The real reason Plaintiffs are engaging in this pseudo-dispute is to prevent this case from being decided on its merits, as it has none. Plaintiffs would rather try to force Live Nation to expend time, energy and resources on the kind of meaningless and burdensome discovery they demand here, in the hope that settlement discussions will ensue.[5]

Mr. Siegel concludes his letter with a request that the Court schedule a call to discuss his request for leave to file a formal motion for leave to seek relief under Rule 37. For the reasons summarized above, upon which we would be pleased to expand in a call or at a

---

[5] As noted, the electronic data that Live Nation has produced is the only information concerning the 246 EDM concerts that can be accessed from a centralized source; there is no other centralized data or document storage system that can be searched for documents relating to these events. If Live Nation were required to search alternative sources for documents, it would have to review the personal files maintained by each of the 27 Live Nation booking agents who were involved in the 246 shows or possibly attempt to retrieve documents from the 38 venues at which the EDM concerts were held. Given the low probative value of the extensive discovery Plaintiffs seek, the high degree of burden on Live Nation to produce such discovery, and the fact that Live Nation has already provided the results of the 246 EDM concerts (which, although not connected in any way to Plaintiffs' claims against Live Nation, is the only information that could conceivably be of any use to a damages expert), the Court should find that Live Nation has complied with its obligations.

Honorable Cathy L. Waldor, U.S.M.J.
March 12, 2014
Page 5

_____

conference, there is no basis for any such relief. Plaintiffs additionally state that the unreasonable discovery demands they make here are "the sole remaining reason why fact discovery cannot be completed by the current [March 14, 2014] deadline." Siegel letter at 2. Live Nation would put it differently: if Plaintiffs' unreasonable discovery demands are denied, fact discovery will be substantially completed as of March 14, 2014. Live Nation respectfully requests that Your Honor rule that the requirements of the August 7, 2013 Order have been satisfied, that fact discovery will close and that this case should move forward as scheduled.

                                              Respectfully submitted,

                                              /s/ Ian S. Marx
                                              IAN S. MARX

cc: Amy Walker Wagner, Esq. (via ECF)
    David S. Siegel, Esq. (via ECF)