**GREENBERG TRAURIG, LLP**
Philip R. Sellinger (PS 9369)
Ian S. Marx (IM 1704)
500 Campus Drive, Suite 400
Florham Park, New Jersey  07932
(973) 360-7900 (Telephone)
(973) 301-8410 (Facsimile)
*Attorneys for Defendant*
*Live Nation Entertainment, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT,<br><br>                              Plaintiffs,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>                              Defendant. | Civil Action No. 11-07318 (WHW) (CLW)<br><br>**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 IN CONNECTION WITH ITS MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Rule 56.1, Defendant Live Nation Entertainment, Inc. ("Live Nation"), hereby submits this Statement of Undisputed Facts in support of its motion for summary judgment.

**THE UNDISPUTED FACTS OF RECORD**[1]

A. **The SFEM Contract**

1. On March 7, 2011, Plaintiff Juice Entertainment, LLC ("Juice") and State Fair

---

[1] The undisputed facts of record are set forth in the deposition transcripts, pleadings, and documents appended to the accompanying Certification of Ian S. Marx, dated October 17, 2016 (the "Marx Cert."), which are summarized below.

1

Event Management ("SFEM") entered into a contract giving Juice the right to stage an electronic dance music ("EDM") event during the 2011 State Fair (the "Event"). *See* Marx Cert. Ex. 5 (Mar. 7, 2011 contract between Juice and SFEM (the "Contract")).

2. The Contract specified that the Event would be held on June 25 and 26, 2011. *Id.* at Sect. 1(a).

3. The Contract required Plaintiffs to provide SFEM, by March 1, 2011 (the "Talent Contract Deadline"), with "a copy of talent/acts/entertainment" booked for the Event, as well as "copies of all [corresponding] contracts." *Id.* at Sect. 3(c).

4. SFEM extended the Talent Contract Deadline by 30 days (i.e., to April 1). *See* Marx Cert. Ex. 25 (March 7, 2011 Request for Extension) (granting Juice's request for 30-day extension "pertaining to section 3 item (c)).

### B. Plaintiffs Fail to Meet the Talent Contract Deadline

5. In early 2011, Plaintiffs sought help from non-party John DiMatteo to produce the Event. *See* Marx Cert. Ex. 3 (Dorfman Dep. at 141:19-23).

6. In particular, Plaintiffs relied on John DiMatteo to convey offers to the three talent agencies representing EDM artists – AM Only, the Windish Agency ("Windish") and William Morris Entertainment ("WME") – in an attempt to procure artists to appear at the Event. *See* Marx Cert. Ex. 1 (Barrett Dep. at 42:21-23).

7. DiMatteo was in charge of all talent offers and received all responses to offers made in connection with the Event. *See* Marx Cert., Ex. 3 (Dorfman Dep. at 121:1-5) (confirming that "John DiMatteo made all of the offers … and received all of the responses from the agents to whom the offers had been made"); Marx Cert. Ex. 13 (Bruno Dep. 36:1-20) (testifying that DiMatteo was in charge of talent and received all responses to offers); Marx

Cert., Ex. 1 (Barrett Dep. at 45:20-46:7) (acknowledging that he (Barrett) never bought talent through AM Only, Windish or WME, and never had any direct communications with any of them).

8. Plaintiffs believed at least one of the following three artists had to play at the Event if it was to be successful: Tiesto, David Guetta or Steve Angello. *See* Amended Compl. ¶ 7 (alleging that "Tiesto, David Guetta, and Steve Angello" were important to Event's success); *id.* at ¶ 76 (identifying "[t]hree artists, in particular ... Tiesto, Steve Angello, and David Guetta").

9. On January 26, 2011, DiMatteo sent Tiesto's talent agent, Paul Morris, at the AM Only talent agency, an offer for Tiesto to play at the Event. *See* Marx Cert. Ex. 20 (Jan. 26, 2011 e-mail from DiMatteo to Morris).

10. Tiesto never accepted this offer. *See* Marx Cert., Ex. 11 (DiMatteo Dep. at 34:10-12 ("Tiesto's offer was not accepted because ... he was going to Electric Zoo.") and at 108:3-109:2 (finding it reasonable that Tiesto's agreement with Electric Zoo prohibited him from playing at Plaintiffs' Event: "It happens all the time.").

11. Tiesto's agent, Paul Morris never agreed that Tiesto would appear at the Event for $400,000. *See* Marx Cert. Ex. 11 (DiMatteo Dep. at 77:3-19); *see also id.* at 77:20-22 (reiterating that Morris never agreed that Tiesto would appear at the Event);

12. DiMatteo also expressed an interest in 20 other artists represented by AM Only, including potential headliner David Guetta and on February 16, 2011, DiMatteo sent Guetta's agent Paul Morris an offer for Guetta to play at the Event. *See* Marx Cert. Ex. 20 (Feb. 16, 2011 e-mail from DiMatteo to Morris).

13. David Guetta never accepted this offer. *See* Marx Cert., Ex. 11 (DiMatteo Dep. at

3

78:2-15).

14. David Guetta's agent Paul Morris never agreed that Guetta would appear at the Event. *Id.* at 78:2-15 (Marx Cert. Ex. 11).

15. On or around February 21, 2011, DiMatteo sent talent agent Steve Goodgold, at the Windish Agency, an offer for Steve Angello to play at the Event. *See* Marx Cert. Ex. 22 (Feb. 21-22, 2011 e-mail exchange between DiMatteo and Goodgold).

16. Steve Angello never accepted this offer. *See* Marx Cert. Ex. 11 (DiMatteo Dep. at 82:19-83:2 and 83:22-84:14) (DiMatteo's discussions with Angello's agent never got beyond "a back and forth dialogue about the Event" and that Angello was declining the offer).

17. In addition to the three potential headliners, DiMatteo also made offers to about 30 lesser-known artists represented WME. *See* Marx Cert. Ex. 23 (Feb. 3, 2011 e-mail from DiMatteo to Joel Zimmerman, *et al,* at WME).

18. All of the WME offers expired on February 12, 2011. *See id.; see also* Marx Cert., Ex. 11. (DiMatteo Dep. at 55:17-21) (confirming that all WME offers expired February 12, 2011).

19. On February 22, 2011, DiMatteo sent Windish offers for five of its artists. *See* Marx Cert. Ex. 24 (Feb. 22, 2011 e-mail from DiMatteo to Plaintiffs and others attaching copies of Windish offers). All of the Windish offers expired on March 1, 2011. *See id.*

20. Of the approximately 57 offers made by DiMatteo to artists represented by AM Only, Windish and WME, to play at the Event only one was accepted; the rest of the offers expired or were rejected. The one acceptance was from Windish artist Matthew Dear. No contract was signed with Dear, however, "because [Plaintiffs] didn't have headliners." *See* Marx Cert. Ex. 11 (DiMatteo Dep. at 86:20-87:21).

21. Many of the artists to whom DiMatteo had made offers to appear at Plaintiffs' Event (including all three of the potential headliners -- Tiesto, Steve Angello and David Guetta) appeared at Electric Daisy Carnival ("EDC") in Las Vegas, which fell on the same days that the Plaintiffs' Event was to be held in New Jersey. *See* Marx Cert. Ex. 6 (list of performers at EDC); *see also* Marx Cert., Ex. 3 (Dorfman Dep. at 121:22-124:5) (confirming that Tiesto, Angello, Guetta and many others to whom DiMatteo had made offers had, in fact played at EDC in Las Vegas on the same days as plaintiffs' proposed Event in New Jersey).

22. Live Nation did not pressure anyone at WME, AM Only or Windish to withhold their artists from the Event. *See* Marx Cert. Ex. 11 (DiMatteo Dep. at 85:6-14).

C. **SFEM Cancels the Contract**

23. When Plaintiffs did not meet their April 1, 2011 deadline to produce signed contracts with artists, SFEM canceled Plaintiffs' contract. *See* Marx Cert. Ex. 4 (Dorso Dep. at 10:6-16); *id.* at 85:15-86:1 ("My decisions were made based on a contract, and they [i.e., Plaintiffs] couldn't perform.") (emphasis added).

24. SFEM did not cancel the Contract based on any alleged defamatory statements by Live Nation. No one from Live Nation ever told Dorso that Plaintiffs "associated with thieves," "lacked funding" or "lacked the experience necessary to put on a show of the type [they were contemplating]." *See* Marx Cert. Ex. 4 (Dorso Dep. at 84:12-16; 85:8-19; 86:19-87:3).

25. Even if such allegedly defamatory statements *had* been made to Dorso, it would not have led SFEM to terminate the Contract. *Id.* at 85:2-7 ("[I]t wouldn't have mattered. I mean, there is a contract in place, and why would any of that matter?").

26. In addition, having learned, post-Contract, that EDM is not consistent with the family-friendly atmosphere of the State Fair, even had Plaintiffs been able to produce the first

5

day of the Event in 2011 (on June 25), SFEM would have exercised its contractual right to terminate both day two of the Event (June 26) and any contract renewal. *See* Marx Cert. Ex. 4 (Dorso Dep. at 45:8-46:2; 91:6-8).

### D. Plaintiffs' Lack of Relevant Experience

27. Prior to the formation of Juice in 2009, Plaintiffs had never produced an outdoor festival event, an EDM event, or any concert or event with more than 5,000 patrons in attendance. *See* Marx Cert. Ex. 1 (Barrett Dep. at 273:9-12) (testifying that his only previous experience with outdoor music festivals had been as a performer); Marx Cert. Ex. 3 (Dorfman Dep. at 29:9-30:10 (he was not involved with any large scale event festivals prior to 2010) at 35:1-6 (at most Dorfman's club events had 5,000 attendees) and at 38:16-39:1 (Dorfman's largest talent contract was $150,000 for Jonathan Peters)).

28. The only moderately large scale music festival Plaintiffs ever produced lost money. *See* Marx Cert. Ex. 1 (Barrett Dep. at 23:7-8; 23:14-24:1) (testifying that Plaintiffs lost between $5,000 and $10,000 on the Latin festival); Marx Cert., Ex. 3 (Dorfman Dep. at 30:4-10, 70:25-71.8, 73:1-5 ("We rushed the event and we actually didn't land an anchor.") and 81:14-83.8 (testifying that "[w]e lost money" and that they had anticipated 10,000 attendees but only about 1,500 to 2,000 showed up)); Marx Cert. Ex. 4 (Dorso Dep. at 21:15-22:11) ("[W]as [Plaintiffs' 2010 Latin festival] successful? No, it was not ... It was poorly attended and I think it was poorly marketed.").

29. Juice did not conduct any business, and consequently earned no profit, prior to executing the Contract with SFEM in 2011. *See* Marx Cert. Ex. 3 (Dorfman Dep. at 175:15-176:9).

                              GREENBERG TRAURIG, LLP

By: _____/s/ Ian S. Marx_____
Philip R. Sellinger
Ian S. Marx
500 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 360-7951
Facsimile: (973) 301-8410
marxi@gtlaw.com
*Attorneys for Defendant Live Nation Entertainment, Inc.*

Dated: October 17, 2016