# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT,<br>Plaintiffs,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>Defendant. | Civil Action No. 11-cv-7318 (CCC)(CLW) |

**DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STRIKE PLAINTIFFS' EXPERT REPORT AND FOR RELATED RELIEF**

**GREENBERG TRAURIG, LLP**
500 Park Avenue, Suite 400
Florham Park, N.J. 07932
(973) 360-7900
*Attorneys for Defendant
Live Nation Entertainment, Inc.*

August 23, 2019

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.........................................2

ARGUMENT

    I.    THE COURT SHOULD STRIKE PLAINTIFFS' PROFFERED EXPERT REPORT FOR FAILING TO COMPLY WITH THE COURT'S SCHEDULING ORDERS ..................................................................5

    II.    DEFENDANTS ARE ENTITLED TO REASONABLE ATTORNEY'S FEES ........................................................................................8

CONCLUSION..................................................................................................................9

i

# TABLE OF AUTHORITIES

**CASES**:                                                                                                                                          **PAGE**

*D&D Assocs. v. Bd. of Educ. of N. Plainfield*,
 03-1026, 2006 U.S. Dist. LEXIS 101611 (D.N.J. June 8, 2006)..............................................5

*E.M. Sergeant Pulp & Chem. Co. Travelers Indem. Co.*,
 12-1741, 2015 U.S. Dist. LEXIS 170497 (D.N.J. Dec. 22, 2015)...........................................6

*Konstantopoulos v. Westvaco Corp.*,
 112 F.3d 710 (3d Cir. 1997)......................................................................................................6

*Nicholas v. Pa. State Univ.*,
 227 F.3d 133 (3d Cir. 2000)..................................................................................................5, 8

*United States v. 68.94 Acres of Land*,
 918 F.2d 389 (3d Cir. 1990)......................................................................................................5

*Wachtel v. Health Net, Inc.*,
 239 F.R.D. 81 (D.N.J. 2006).....................................................................................................8

## Other Authorities

Fed. R. Civ. P. 16.............................................................................................................................2

Fed. R. Civ. P. 26.............................................................................................................................5

Fed. R. Civ. P. 26(a) .......................................................................................................................5

Fed. R. Civ. P. 26(a)(2)(D) .............................................................................................................5

Fed. R. Civ. P. 37.............................................................................................................................5

Fed. R. Civ. P. 37(b)(2)...................................................................................................................8

Fed. R. Civ. P. 37(c)(1)...................................................................................................................5

ACTIVE 45223896v1

Defendant Live Nation Entertainment, Inc. ("Live Nation") respectfully submits this Memorandum of Law in Support of its motion: to strike an expert report of Dr. Richard Barnet, which was served by Plaintiffs Juice Entertainment, Thomas Dorman, and Chris Barrett ("Plaintiffs"), three years after the deadline for expert disclosures; to preclude Dr. Barnet from testifying at trial; awarding Live Nation reimbursement of the reasonable fees and costs it was required to expend to make this unnecessary motion; and to grant Live Nation such other and further relief as the Court deems appropriate.

## PRELIMINARY STATEMENT

Discovery in this case has been closed for more than three years; the deadline for serving affirmative expert reports was **May 2, 2016**. Last year, in a comprehensive and well-reasoned written decision, the Court granted summary judgment in favor of Live Nation, limiting Plaintiffs' potential recovery in this case to nominal damages on their defamation claim and precluding Plaintiffs from seeking lost profits on their claim for tortious interference (lost profits are, indeed, the only damages that Plaintiffs seek). Now, out of the blue, Plaintiffs served Live Nation with an undated and undisclosed expert report from a Dr. Richard Barnet, whom Plaintiffs contend is an "expert" in the entertainment industry.[1] After the report was belatedly served, Live Nation attempted to persuade Plaintiffs to withdraw the report and to provide assurances that Dr. Barnet would not improperly use Live Nation's confidential information, to which he was not entitled access. Plaintiffs refused Live Nation's reasonable requests, thus requiring Live Nation to make

---

[1] Not only does this disobey the Court's Scheduling Orders – which contemplated the close of discovery by March 31, 2016 – but it also violates the Court's Discovery Confidentiality Order, which prohibits the dissemination of confidential information to unauthorized individuals. This, in turn, raises serious concerns for Live Nation, since Plaintiffs have shared Live Nation's confidential documents with an unauthorized individual, who is alleged to work in Live Nation's industry.

this motion for relief. For these reasons, Live Nation respectfully requests that the Court strike Plaintiffs' late-produced expert report, bar Dr. Barnet from testifying at trial, require Plaintiffs to reimburse Live Nation the reasonable fees and costs it was required to incur to make this motion, and grant Live Nation such other and further relief as the Court deems appropriate.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Given the Court's familiarity with the case, Live Nation limits its recitation of the facts and procedural history only to those pertinent for purposes of the present motion.

On December 16, 2011, Plaintiffs initiated this action by filing its Complaint against Live Nation for allegedly interfering with their ability to sign artists to perform at the 2011 New Jersey State Fair, which ultimately resulted in the State Fair terminating its contract with Plaintiffs. (ECF No. 1). Thereafter, Live Nation moved to dismiss, which the Court granted in part in a written decision issued on July 3, 2012. (ECF Nos. 13, 20-21). Two months later, on September 4, 2012, Plaintiffs filed an Amended Complaint against Live Nation, asserting claims of: tortious interference with contract (Count I); tortious interference with business relations (Count II); and defamation (Count III). (ECF No. 24, "Amended Complaint").

After Live Nation answered the Amended Complaint on November 7, 2012, (ECF No. 25), a Rule 16 scheduling conference was held on January 31, 2013, to discuss, among other things, a discovery plan. (ECF No. 28). To ensure that confidential information exchanged between the parties would be protected, Magistrate Mannion issued a Discovery Confidentiality Order on April 18, 2013. (ECF No. 31, "Confidentiality Order"). Significantly, Paragraph 4 of the Order specifies *who* is entitled to review confidential matter:

> Confidential material and the contents of Confidential material may be disclosed only to the following individuals under the following conditions:
>
> * * *

2

    (b) Outside experts or consultants retained by outside counsel for purposes of this action, ***provided they have signed a non-disclosure agreement***. . . .

(*Id.* at ¶ 4(b) (emphasis added)).

  The Court also issued Scheduling Orders, which contemplated Plaintiffs' affirmative expert disclosures be made by **May 2, 2016**, with affirmative and rebuttal expert reports due **June 15, 2016** and **August 15, 2016**, respectively. (ECF Nos. 69, 70) (emphasis added). Plaintiffs timely disclosed Marianne L. DeMario as their proffered expert and served Live Nation with her June 15, 2016 expert report. Dr. Richard D. Barnet was never disclosed as a potential expert.

  After the parties completed an extensive amount of fact and expert discovery, Live Nation moved for summary judgment, seeking dismissal of Plaintiffs' three remaining claims. (ECF No. 73). In its May 23, 2018 written decision, the Court granted Live Nation's motion as to Count I (Plaintiffs' tortious interference with contract claim), but denied in part Live Nation's motions as to Count II (Plaintiffs' tortious interference with business relations claim) and Count III (Plaintiffs' defamation claim). (ECF No. 81, "Summary Judgment Opinion" at 10-11, 16-18). However, the Court concluded that Plaintiffs were barred from seeking lost profits on Count II because any potential lost-profits would be "too remote and speculative to meet the legal standard of reasonable certainty." (*Id.* at 20 (quoting *RSB Lab. Servs., Inc. v. BSI Corp.*, 847 A.2d 599, 609 (N.J. App. Div. Super. Ct. 2004)). The Court also ruled that Plaintiffs were entitled, at most, only to "nominal" damages on the defamation claim advanced in Count III. (*Id.* at 16-18).

  Five months later, on October 24, 2018, Plaintiffs filed a motion, requesting the Court modify its Summary Judgment Opinion, so that Plaintiffs could file an interlocutory appeal challenging the Court's application of the "new business rule." (ECF No. 91). In denying Plaintiffs' motion the Court explained that an appeal would not advance the determination of the litigation, since, "even if the new business rule did not act as an absolute bar to recovery, [Plaintiffs] would still be prohibited from

3

showing lost profit damages at trial under the reasonable certainty test." (ECF No. 98, "Motion to Amend Opinion" at 8).

On June 6, 2019, Plaintiffs' counsel disclosed to Live Nation for the very first time an expert report, prepared by Dr. Richard Barnet, whose "expert" testimony Plaintiffs apparently intend to present at trial. *See* Marx Cert., Ex. A (Andrew Smith June 6, 2019 Letter). This disclosure comes more than three years after all relevant deadlines, long after discovery closed in this case, and more than a year after summary judgment was decided.[2] Without first seeking leave to disclose a new expert, or making a motion to seek a modification of the Scheduling Orders to do the same, Plaintiffs simply served this report on Live Nation with no prior warning. As justification for their significantly late disclosure, Plaintiffs point to "the fact that discovery here was produced extremely late, and that said discovery was intentionally produced in a manner to hide key documents. . . ." Marx Cert., Ex. A. Notably, Plaintiffs never advanced this newly-minted accusation during the discovery period, which ended over three years ago. Moreover, Dr. Barnet's report explicitly states that he reviewed and relied upon confidential documents produced by Live Nation. Thus, Live Nation advised Plaintiffs of its violation of the Confidentiality Order and requested Plaintiffs undertake remedial measures to ensure that its confidential material was not further disseminated. *See* Marx Cert., Ex. C (Ian Marx June 11, 2019 Letter). Plaintiffs flatly refused, based on a misguided reading of the Confidentiality Order and inapplicable case-law. *See* Marx Cert., Ex. D (Andrew Smith June 12, 2019 Letter).

Because of Plaintiffs' brazen disregard of the Court's Confidentiality Order and clear efforts to circumvent long expired deadlines in the Scheduling Orders, Live Nation now brings the present

---

[2] Even more troubling, since Plaintiffs' counsel became the attorney of record in September 2018, there have been three telephone conferences with the Court, wherein Plaintiffs' counsel could have, and should have, informed Live Nation and the Court of his intention to retain a new expert.

4

motion to strike Plaintiffs' late-produced expert report, bar the proposed expert from testifying at trial, and to request reimbursement of its reasonable attorneys' fees for having to engage in such unnecessary motion practice.

## ARGUMENT

**I. THE COURT SHOULD STRIKE PLAINTIFFS' PROFFERED EXPERT REPORT FOR FAILING TO COMPLY WITH THE COURT'S SCHEDULING ORDERS**

Federal Rule of Civil Procedure 26(a) authorizes a court to issue scheduling orders that address initial disclosures of experts and the time for completing expert discovery. Further, Rule 26 requires parties to "make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party who is alleged to have failed to comply with Rule 26 has the burden of demonstrating substantial justification and harmlessness." *D&D Assocs. v. Bd. of Educ. of N. Plainfield*, 03-1026, 2006 U.S. Dist. LEXIS 101611, at *13 (D.N.J. June 8, 2006).

Where, as here, a party disobeys a discovery order, "the Federal Rules of Civil Procedure authorize district courts to prohibit the admission of evidence proffered by the disobedient party." *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990) (citing Fed. R. Civ. P. 16(f), 37(b)(2)(B)). In exercising such discretion, the Court must consider: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d

5

133, 148 (3d Cir. 2000). All of these factors weigh in favor of excluding the late-produced expert report.

First, Live Nation was clearly surprised by Plaintiffs' submission of a new expert report, which was disclosed more than three years after the close of discovery. Up until this point, the only expert disclosed by Plaintiffs was Marianne L. DeMario, whose deposition was already taken, and whose report and testimony focus on quantifying lost profit damages. Yet, three years after the close of discovery, Plaintiffs now disclose a report from Dr. Barnet. This lapse in time, alone, demonstrates Live Nation's prejudice and surprise. *See*, *e.g.*, *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719-20 (3d Cir. 1997) (prejudice and surprise demonstrated where expert was disclosed eighteen months after the close of discovery and three weeks prior to trial). This prejudice is further underscored by the fact that Dr. Barnet's report opines on a wholly new and distinct subject matter that was not the subject of prior opinion testimony.

Second, Plaintiffs' willful and unjustified violation of the Court's Scheduling and Confidentiality Orders further supports exclusion. *E.M. Sergeant Pulp & Chem. Co. Travelers Indem. Co.*, No. 12-1741, 2015 U.S. Dist. LEXIS 170497, at *15 (D.N.J. Dec. 22, 2015) ("Violation of scheduling orders, when accompanied by unsatisfactory explanations, 'may be characterized fairly as willful and bad faith.'" (quoting *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 592 (D.N.J. 1994)). Plaintiffs clearly violated the Court's Scheduling Orders in serving Dr. Barnet's report more than three years after the close of discovery. Plaintiffs did not seek prior leave of the Court or make a motion to re-open discovery or amend the Court's prior scheduling orders. Further, Plaintiffs' attempt to blame Live Nation's "extremely late" discovery as an excuse for their three-year delay is patently untrue and unsupported by the record. At no point during discovery did Plaintiffs ever once raise Live Nation's purported discovery delays or

6

inadequacies as an issue to the Court, because there never was, in fact, any discovery delay or issue. Moreover, Plaintiffs do not identify with any degree of specificity *what* discovery was produced "extremely late" by Live Nation, nor do they otherwise explain how this alleged delay justifies disclosing a report from Dr. Barnet three years after the relevant deadline. Simply put, Plaintiffs' excuse for disclosing Dr. Barnet three years after the close of discovery is belied by its own conduct during discovery.

Likewise, because Dr. Barnet is not authorized to review the confidential documents and information that Live Nation produced to Plaintiffs, Plaintiffs have violated the Court's Confidentiality Order. As noted above, Paragraph 4(b) of the Confidentiality Order permits outside experts to review confidential material produced during discovery if: (1) they were "retained by outside counsel for purposes of this action"; and (2) "they have signed a non-disclosure agreement. . . ." (Confidentiality Order at ¶ 4(b)). Plaintiffs' violation of this order is twofold. First, the only expert retained by Plaintiffs, consistent with the Court's prior Scheduling Orders, was Dr. Marianne L. DeMario. As noted above, because Plaintiffs failed to comply with the Court's Scheduling Orders in disclosing Dr. Barnet three years after the close of discovery, Dr. Barnet was not properly retained for purposes of this litigation. Second, even assuming that Dr. Barnet was properly retained and Plaintiffs complied with the Court's prior Scheduling Orders – which they did not – Plaintiffs have still violated the Confidentiality Order, because they provided Dr. Barnet with Live Nation's confidential materials and there is no evidence that Dr. Barnet signed the Court's non-disclosure agreement form. (*Id.* at ¶ 5). This, in turn, raises significant concerns for Live Nation, since an unauthorized individual, who is alleged to work in the same industry as Live Nation, is in active possession of confidential proprietary information. These concerns are further underscored by the fact that Plaintiffs' counsel has refused to retrieve and destroy the documents that were wrongfully

7

provided to Dr. Barnet, or even confirm that no other unauthorized individuals have possession of Live Nation's confidential material. *See* Marx Cert., Ex. D. This flies in the face of the Confidentiality Order, which Live Nation relied upon in producing confidential information.

Finally, the admission of this late-produced expert report would undoubtedly "disrupt the orderly and efficient trial of the case." *Nicholas*, 227 F.3d at 148. Discovery has been closed for more than three years. Summary Judgment was decided more than a year ago. And, a joint final pretrial order is due next month. (ECF No. 104).

In sum, given the prejudice to Live Nation, as well as Plaintiffs' blatant disobedience of the Court's Orders, Live Nation respectfully requests that the Court strike Plaintiffs' late-produced expert report. In addition, because Dr. Barnet is in current possession of confidential documents, Live Nation also requests that Plaintiffs be ordered to retrieve from Dr. Barnet and destroy any confidential documents that were disseminated to him.

## II. **DEFENDANTS ARE ENTITLED TO REASONABLE ATTORNEY'S FEES**

Live Nation also requests that Plaintiffs be ordered to pay Live Nation's reasonable attorneys' fees and costs for having to prepare and argue this motion, which should have been unnecessary, and which Live Nation was required to make because of Plaintiffs' violation of the Court's orders. Rule 37(b)(2) "permit[s] the court to order a party to pay the opposing party's 'reasonable expenses — including attorney's fees' caused by noncompliance, unless the noncompliance 'was substantially justified or other circumstances make an award of expenses unjust.'" *E.M. Sergeant Pulp & Chem. Co.*, 2015 U.S. Dist. LEXIS 170497 at *20 (quoting Fed. R. Civ. P. 37(b)(2), 16(f)(2)). "This Court also has the authority, under its inherent powers, to impose a fine on parties who interfere with the efficient functioning of the Court." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 111 (D.N.J. 2006).

8

Here, as discussed above, Plaintiffs have no legitimate basis for serving Dr. Barnet's report more than three years after the close of discovery and for providing him with confidential materials in violation of the Court's Order and thereafter, from refusing to provide Live Nation with any assurance that Plaintiffs would take appropriate measures to safeguard such information. Plaintiffs' conduct has caused Live Nation to incur unnecessary expenses and costs in bringing and prosecuting its motion to strike. For these reasons, Live Nation respectfully requests that the Court order Plaintiffs pay Live Nation's reasonable fees and expenses associated with this motion. *See E.M. Sergeant Pulp & Chem. Co.*, 2015 U.S. Dist. LEXIS 170497 at *20-21 (awarding attorney's fees, including "amounts expended in bringing and arguing th[e] motion to strike," where the non-moving party included an expert report in its summary judgment papers, despite previously waiving its right to call an expert).

## CONCLUSION

For all of the foregoing reasons, Live Nation respectfully requests that its motion to strike Plaintiffs' report from Dr. Barnet, bar him from testifying at trial, and that its request for attorneys' fees be granted.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:    /s/ *Ian S. Marx*
      Philip R. Sellinger
      Ian S. Marx
      GREENBERG TRAURIG, LLP
      500 Campus Drive, Suite 400
      Florham Park, New Jersey 07932
      Attorneys for Defendant
      Live Nation Entertainment, Inc.

Dated: August 23, 2019

ACTIVE 45223896v1