# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUICE ENTERTAINMENT LLC, THOMAS DORFMAN and CHRIS BARRETT,<br><br>Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>Defendant. | **Civil Action No. 11-7318-WHW-MCA** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO BAR EXPERT REPORT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL ARGUMENT ..................................................................................................... 9

   1.   **Plaintiffs Did Not Violate The Confidentiality Order And The Issue Is Irrelevant Anyway.** ................................................................................................................... 10

   2.   **Third Circuit Case Law Mandates The Motion Must Be Denied.** ................................. 12

   3.   **A Review Of The Four Factors Test Outlined By Defendants Themselves Weighs In Favor Of Denial Of The Motion, And Especially So After Consideration Of The Two Additional Factors Cited In The Applicable Case Law.** ............................................. 15

   4.   **An Award Of Fees Is Highly Inappropriate Here.** ................................................... 18

   **CONCLUSION** ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

Bridgestone Sports Co., Ltd. v. Acushnet Co.,  2007 WL 521894 at *4 (D.Del. Feb. 15, 2007). 12

Gautier–James v. Hovensa, L.L.C.,  2011 WL 4500153, at *8 (D.V.I. Sept. 27, 2011) ............. 13

Hartle v. FirstEnergy Generation Corp., 7 F. Supp. 3d 510, 517 (W.D. Pa. 2014) .................... 13

Holbrook v. Woodham, 2008 WL 544719 (W.D.Pa. Feb. 28, 2008) ......................................... 13

In re Mercedes-Benz Anti-Trust Litigation, 225 F.R.D. 498, 504-05 (D.N.J. 2005) ............ 10, 12

In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 791–92 (3d Cir. 1994) ............. 12, 13, 14, 15

Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904 (3d Cir.1977) 9, 10, 12, 15

In re TMI Litig., 193 F.3d 613, 722 (3d Cir.1999) ................................................................... 13

Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000) ............... 12, 16, 17

Ponden v. Ponden, 374 N.J. Super. 1, 11 (App. Div. 2004) ...................................................... 15

Santone v. Fusiek, 2010 WL 6813737 (Law Div. Dec. 9, 2010) ................................................. 15

Szalontai v. Yazbo's Sports Café, 183 N.J. 386, 398 (2005) ..................................................... 15

Tucci v. Tropicana Casino, 364 N.J. Supper. 48, 52 (App. Div. 2003) ................................. 10, 15

Velez v. QVC, Inc., 2004 WL 1175726, at *1 (E.D.Pa. May 25, 2004) ............................... 10, 12

Withrow v. Spears, 967 F. Supp. 2d 982, 1000–01 (D. Del. 2013) ...................................... 10, 17

## PRELIMINARY STATEMENT[1]

Defendant Live Nation Entertainment, Inc.'s ("Defendant") motion to strike (the "Motion") is fraught with inaccuracies, half-truths and omissions. Initially, Defendant focuses on the completely false and irrelevant assertion that Plaintiffs somehow violated the Confidentiality Order in this case by giving an expert confidential documents despite the fact that experts are clearly allowed access to such information, and then exacerbated the false accusation by assuming, wrongly, that Dr. Barnet did not sign the proper documentation per the Confidentiality Order. Of course, none of that has anything to do with whether Dr. Barnet's report at issue here (the "Expert Report") should be stricken.

Defendant further omits relevant facts when failing to even mention the important substantive issues the Expert Report address, and completely ignoring its' extensive history of failing to produce discovery – something imminently more relevant to the Motion than the issues surrounding the Confidentiality Order. In fact, Defendant's brief in support of the Motion ("Defendant's Brief") relies heavily on their assertions that Plaintiffs violated a discovery order by failing to produce the Expert Report by the deadline set by the Court's February 3, 2016 Order. Defendant omits the relevant case law regarding service of late expert reports, relying almost entirely on Plaintiffs' alleged failure to comply with the deadlines in the February 3, 2016 Order, even using the alleged violation as justification for sanctions against Plaintiffs, yet fails to mention

---

[1] Defendant submitted a "Brief in Further Support of Motion to Strike" stating that Plaintiffs are one week late in submitting their Opposition. However, per the Federal Rules of Civil Procedure, the opposition is not due on September 3, as suggested by Defendant. While the minute entry on August 23, 2019 gave an opposition date of September 3, the subsequent notice three (3) days later setting the return date of September 16 seemed to override that entry and subject it to the Rule. In any event, Plaintiffs' counsel had a trial call on September 3, the day after Labor Day, and believed the opposition was due today. Defendant's should have no issue with this as the pre-trial conference it referenced was rescheduled for October 3 at the request of Defendant with the consent of Plaintiffs, after the September 16 return date was set, adding additional time here. As such, Plaintiffs request that this Court allow this opposition and disregard Defendant's additional brief.

its own clear violation of that exact same Order to the massive prejudice of Plaintiffs which was itself a cause of Plaintiffs' late service of the Expert Report.

Even when Defendant did attempt to apply relevant case law, it attempted to trick the Court by substituting irrelevant and factually inaccurate assertions as fitting into the established four (4) point test for allowing a late expert report. When applying the actual facts to the actual law, it is clear that justice requires the Court allow the Expert Report. Plaintiffs had a justifiable and good faith reason for filing the Expert Report when they did, there is no prejudice to Defendant here that can not or could not have been cured had Defendant's sought to do so, and the Expert Report, rather than "disrupt the orderly and efficient trial of the case," will do the opposite. For those reasons, to be articulated further below, Defendant's motion must be denied.

## **STATEMENT OF FACTS**

Plaintiff Juice Entertainment LLC, its principals, Plaintiffs Thomas Dorfman and Chris Barrett, and its predecessors Base Production Inc. and Deluna Inc., all had successful experience producing live music shows. Mr. Dorfman has been working in the music industry since 1997 producing events featuring top artists and entertainers. Mr. Dorfman produced events including top artists and entertainers such as Charlie Sheen, Tommy Lee, Snoop Dog, Kid Cudi, Paris Hilton, Jonathan Peters, and L.M.F.A.O., among others. Mr. Dorfman operated Bliss Night Club from 2007-2010 and routinely grossed more than $1 million a year in revenues. Mr. Dorfman's success in the industry has led to his receiving a stellar reputation along with many accolades including a notable 2011 nomination in the Star-Ledger for Best Promoter in New Jersey.

Mr. Barrett has enjoyed a similar reputation as a rising promotor and entrepreneur in the music industry. He began performing as a professional DJ in 1998, playing alongside accomplished DJs such as Victor Calderone, Junior Vasquez, Paul Oakenfold, Erick Morillo, and

Jonathan Peters, among others.  Together, Mr. Barrett and Mr. Dorfman have been promoting and staging shows at various New Jersey venues for years, frequently producing concerts with an average attendance of thousands of people.

In June 2010, under the name Base Production Inc., Plaintiffs entered into an agreement with SFEM to produce a one-day show for a Latin Music Festival on July 4, 2010.  Due to Plaintiffs' diligence and ability to competently promote the Latin Music Festival despite facing significant challenges along the way, Al Dorso, President of SFEM, wanted to work with Plaintiffs again on the following year's New Jersey State Fair events at the Meadowlands.  Plaintiffs and Mr. Dorso entered a verbal agreement for exclusive rights to produce an electronic dance music ("EDM") event, as well as any and all concerts in the designated special events area of the State Fair in December 2010.  This agreement was formalized on March 7, 2011 (the "Contract").

In January and early February of 2011, before the Contract was even formalized, Plaintiffs began contacting talent agencies and artists to perform at the Event. Their initial efforts were well received and they were well on track to putting on a successful event.  However, at the same time Plaintiffs were working toward producing the Event contemplated in their contract, Defendant was establishing an entire division to capitalize on the popularity of EDM and was working to consolidate its dominance in the EDM market through various tours and arrangements with artists and venues.

Defendant had previously rejected an agreement similar to the one Plaintiffs had with SFEM.  However, upon learning of Plaintiffs' Contract they began a systematic campaign to prevent Plaintiffs from being able to perform.  At the outset, when Defendant first perceived the risk posed by Plaintiffs, talent agents were already optimistic about Plaintiffs' Event.  But after Defendant's efforts, artists that were initially very interested in Plaintiffs' Event in January, a

month or so later suddenly were not. Talent agents that expressed enthusiasm about Plaintiffs'
Event in early 2011 were no longer interested in working with them. Consequently, Plaintiffs were
not able to sign artists sufficient to stage the shows at the State Fair.

Defendant also began making defamatory statements about Plaintiffs directly to Mr. Dorso.
At the same time, in an attempt to eliminate Plaintiffs as competition, Defendant offered a contract
with Plaintiffs, essentially giving them the option of taking their deal or being destroyed by their
anti-competitive efforts.  Plaintiffs rejected the proposal.  Then, during the last meeting Plaintiffs
had with Al Dorso before he terminated the contract, Dorso reminded Plaintiffs that he had warned
them that Defendant would interfere with Plaintiffs ability to sign talent.  On April 26, 2011, the
SFEM, through Dorso, informed Plaintiffs that the Contract was terminated pursuant to Section
3(c), which required Plaintiffs to furnish copies of contracts with the artists who would perform at
the State Fair. Through a combination of defamatory statements made to representatives of SFEM
and the Authority, pressure applied by Defendant to artists and their agents, and pressure applied
to SFEM and the Authority, Plaintiffs' Contract with SFEM was terminated.

As a result of the termination of the Contract, which granted Plaintiffs an exclusive right
to stage concerts at the State Fair for four years, with an option for an additional five years
thereafter, Plaintiffs lost all the potential benefits associated with the proposed Events and were
left with damaged reputations, so much so that both Dorfman and Barrett no longer work in the
music industry.  As such, they filed the Complaint at issue here.[2]

The Motion is the result of the Expert Report, served on Defendant on June 6, 2019.  See
Exhibit G to Certification of Mike Ma in Support of Plaintiffs' Opposition to Motion to Strike
("Ma Cert.").  For context, Plaintiffs have had an extremely difficult time obtaining discovery in

---

[2]        The above facts are taken from Complaint here and/or the record before the Court.

this case, to say the least.  <u>See</u> Ma Cert. at ⁋ 2.  Plaintiffs had to compel discovery from the

Defendant in 2013.  <u>See id.</u> at ⁋ 3.  However, even after the order was issued by the Court ordering

the production of documents, Defendant still refused to produce the ordered discovery.  <u>See id.</u> at

⁋ 5.  Plaintiffs proceeded to seek leave to file for Rule 37 sanctions against the Defendant.  <u>See id.</u>

Before the issue was resolved, a telephone conference was held before the Honorable Cathy

Waldor on March 27, 2014, whereby, recognizing the impasse between the Defendant and the

Plaintiffs regarding the issue of discovery, it was agreed between the parties that the case would

be stayed for ninety (90) days in order for the parties to participate in Court Ordered mediation.

<u>See id.</u> at ⁋ 7.  After the mediation failed, the parties resumed discovery.  <u>See id.</u> at ⁋ 9.

Between 2014 and 2016, varies extensions were given to Defendant to allow production of

discovery.  <u>See id.</u>  Numerous telephone conferences were also held before the Court during that

time whereby Plaintiffs continued to seek production of discovery.  <u>See id.</u>  Despite this, Defendant

missed virtually every deadline for production of discovery.  <u>See id.</u>  The last extension of

discovery was granted on February 3, 2016, setting the fact discovery end date as <u>March 31, 2016</u>.

<u>See id.</u> at ⁋ 11.

However, Defendant produced the most significant documentation relevant to the contents

of the expert report at issue on or about <u>April 13, 2016</u>, almost three (3) years after first ordered

by the Court in 2013 and well after that Court-ordered fact discovery end date of March 31, 2016,

prejudicing Plaintiffs.  <u>See id.</u> at ⁋ 13.  Per Defendant's own papers, that meant that Plaintiffs had

just over two (2) weeks to review thousands of pages of documents, which were produced in such

a way as to hide documents, find an expert, have him review the documents, and have him write a

report, in order to meet the May 2, 2016 deadline for experts.  <u>See id.</u> at ⁋ 14.  This does not even

consider the fact that by producing documents three (3) years late and after the fact discovery end

5

date, Plaintiffs were deprived of the opportunity to depose any of Defendant's witnesses on their most significant production of documents.  See id.

Importantly, 90% of all documents analyzed by Dr. Barnet for his expert report came from the last discovery effort made by the Defendants, almost three (3) years after the original order by the Court and after the fact discovery end date.  See id. at ¶ 15.  Further, some of the issues in the expert report at issue were not raised by Defendant until well after the fact discovery end date.  See id.

Moreover, despite all this, Defendant still did not produce the relevant documentation ordered.  See id. at ¶ 16.  As of the date of this Certification, the Defendant still has not produced all documents requested by the Plaintiffs and Ordered by the Court in 2013.  See id.  For example, due to the public nature of live entertainment events, Plaintiffs went to the extraordinary effort of listing every single event for which it sought documents from the Defendants.  See id. at ¶ 17.  Out of approximately 40 comparative NY/NJ events Plaintiffs obtained from public events database, including from Defendant's own website during the relevant times, documents relating to approximately 5 have been produced by the Defendants to date.  See id.  Most of the documents produced by Defendant related to events are not from NJ/NY despite Plaintiff's request and particularization of same.  See id.  Even with the clear public record of events by Defendant, almost all the documents related to events sought by the Plaintiffs remain unproduced by the Defendant to date.  See id.

This is a frequent tactic of Defendant.  See id. at ¶ 19.  They simply fail to produce documents, forcing plaintiffs to expend significant resources fighting for production, and hope they eventually give up or time runs out.  See id.  Unfortunately, that is what happened here, as after fighting with the Defendant over discovery for three (3) years, Plaintiffs were nearing the end

of their resources and could not continue to fight with a $1.7 billion dollar a year company over production of documents.  See id.

In addition, the limited discovery that was actually produced was produced in a manner designed to hide the information contained in the discovery.  See id. at ¶ 20.  For example, a key spreadsheet was produced in pieces over thousands of pages of production in 2016, so that it took a massive effort just to identify and then piece together the document itself.  See id. at ¶ 21.  In fact, it was almost by accident that Plaintiffs discovered the relevant information that is the subject of this current motion from the last production made by the Defendant in 2016, as it would have been impossible to pick up by contemporary AI driven E-Discovery methodologies, or by anyone without (simultaneously), a legal, accounting, live events/entertainment and financial fraud expertise.  See id. at ¶ 22.

Plaintiffs' efforts were made more difficult with the withdrawal of Plaintiffs' original counsel through no fault of Plaintiffs in the summer of 2018.  See id. at ¶ 23.  New counsel then had to get up to date on seven (7) years of litigation, all while moving to appeal the summary judgment motion interlocutory.  See id.  As such, it was not until recently that the information necessary to seek the expert at issue was discovered.  See id. at ¶ 24.

In addition, Plaintiffs had tremendous difficulty finding any expert in the specific industry willing to testify against Defendant.  See id. at ¶ 25.  While experts approached did not doubt Plaintiffs, there was concern about retaliation by Defendant for even just providing a report to Plaintiffs at all, regardless of what it said.  See id.  Dr. Barnet was the first expert who was willing to even look at any documents or review the issues at all.  See id.  Considering all these difficulties, Plaintiffs provided the expert report at issue as expeditiously as they could.  See id. at ¶ 26.

In any event, Plaintiffs made Dr. Barnet available for deposition at any time as of June 6, 2019, over three (3) months ago, and Defendant made no attempt to depose Plaintiffs' expert, nor have they served any counter-report, despite Plaintiffs' offer for them to do so.  See id. at ¶ 27.

The expert report at issue is important to this case in a variety of ways.  See id. at ¶ 28. First, it provides necessary context for Plaintiffs rejection of the gun-to-head offer of Defendant. See id.  Defendant's claim that Plaintiffs were not damaged because they could have taken Defendant's offer, but Plaintiffs argued that it was because they knew that Defendant, who has a virtual monopoly in the industry, has effectively destroyed numerous independent promotors like them with similar deals.  See id.  It is well known that Defendant is and has been involved in a number of anti-competitive lawsuits and investigations, including one recent investigation by the Department of Justice, and they have settled cases like this one for significant sums.  See id. at ¶ 29.

Plaintiffs are one of very few litigants to get past summary judgment against Defendant, and their persistence despite significant obstacles allowed them to obtain by way of the expert report at issue significant evidence to back up their claim that Defendant's tactics, like those implemented here, have been used by Defendant to ensure that not only all independent promoters like Plaintiffs are put out of business, but that 90% of the money goes to Defendant (the remainder going to the few venues they don't own and the artists themselves).  See id. at ¶ 31.  These tactics have also been largely responsible for the massive increase in ticket prices.  See id.

Without the expert report at issue, it will be difficult for Plaintiffs to articulate this complex scheme, which goes to the very heart of the case.  See id. at ¶ 32.  An expert perspective will be crucial to the jury's understanding of the key issues in this case.  See id.

8

Further, the expert report at issue helps resolve another hotly contested issue, that of Plaintiffs' ability to perform the contract at issue in the case. See id. at ⁋ 33. Defendants have argued that Plaintiffs lacked the requisite experience to have been successful, and the expert report at issue provides a non-party industry expert opinion would significantly help a jury understand that issue. See id.

Finally, contrary to the assertions by Defendant, Plaintiffs not only retained Dr. Barnet as an expert witness but had him sign the applicable documentation per the Confidentiality Order in this case. See id. at ⁋ 34. He was retained as an expert and signed the applicable documents per the Confidentiality Order.

As of the date of this brief, no trial date has been set. See id. at ⁋ 36. Although a pre-trial conference is scheduled for October 3, 2019, no pre-trial conference was scheduled until months after the report was served. See id. Plaintiffs will continue to make their expert available for his deposition, and further will not object if Defendant wants time to serve a counter-expert report, as Plaintiffs stated on June 6, 2019. See id. at ⁋ 37. Therefore, for the reasons provided stated above and within Plaintiffs' papers, Plaintiffs respectfully request that Defendant's motion to strike be denied.

## **LEGAL ARGUMENT**

It is well settled that an expert report may be admissible even where it is served after the discovery end date. See Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904 (3d Cir.1977) (holding that before excluding evidence provided late, the Court should consider (1) the prejudice or surprise to the party against whom the evidence would be presented; (2) the ability to cure the prejudice; (3) the extent to which the evidence, if admitted, would disrupt trial of the case; and (4) bad faith or willfulness in failing to comply with the Court's Order); In re Mercedes-

Benz Anti-Trust Litigation, 225 F.R.D. 498, 504-05 (D.N.J. 2005) (stating that the Third Circuit has expressed a distinct aversion to the exclusion of important evidence unless there is evidence of extreme neglect or bad faith on the part of the proponent of the testimony, and the Court should exercise particular restraint in deciding a motion to preclude evidence); Withrow v. Spears, 967 F. Supp. 2d 982, 1000–01 (D. Del. 2013) (citing to Meyers and naming six factors when deciding whether to allow a late expert report, adding the explanation for the failure to disclose and the importance of the testimony sought to be excluded); Velez v. QVC, Inc., 2004 WL 1175726, at *1 (E.D.Pa. May 25, 2004) (stating that before imposing the "extreme sanction" of preclusion of evidence, the Court must either find that the party "(1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of due diligence."), *quoting* Meyers, 559 F.2d at 905; see also Tucci v. Tropicana Casino, 364 N.J. Supper. 48, 52 (App. Div. 2003) (stating that New Jersey courts have long held that it is "particularly indulgent in not barring a late expert's report where the report was critical to the claim or defense, the late report was submitted well before trial, the defaulting counsel was not guilty of any willful misconduct or design to mislead, any potential prejudice to the adverse party could be remediated, and the client was entirely innocent."). Here, there is both a legitimate reason for the late issuance of the report and a lack of prejudice to Defendant such that the Motion must be denied. See id.

1. **Plaintiffs Did Not Violate The Confidentiality Order And The Issue Is Irrelevant Anyway.**

As an initial matter, Defendant attempts to confuse the Court with the irrelevant issue of whether Plaintiffs violated the Confidentiality Order entered here. The issue is a red herring, as not only did Plaintiffs comply with the Confidentiality Order, but the issue has no relevance to whether the Expert Report should be stricken. This Court does not even have to reference the

Confidentiality Order itself to know that Plaintiffs having an expert review confidential documents was not a violation of the Confidentiality Order. The Confidentiality Order, like virtually every confidentiality order ever, itself specifically allows experts to review confidential documents. To not so allow would allow litigants to deprive experts of key information just by classifying it confidential.

Apparently, Defendant takes the position that Dr. Barnet is not an expert here because his report was issued late.[3] However, as the above case law and the experience of the Court no doubt demonstrates, Plaintiffs are not the only litigants ever to submit an expert report late. Defendant has not, and cannot, cite to any authority which suggests that simply serving an expert report late renders the expert not an expert for the purposes of a confidentiality order. Since the Expert Report here clearly is, and was submitted as an "expert" report, Plaintiffs have fully complied with their obligations under the Confidentiality Order.

Defendant, desperate to exclude the Expert Report, assumes, without any basis and without even asking, that Dr. Barnet did not sign the Agreement to Be Bound by Discovery Confidentiality Order attached to the Confidentiality Order. However, as demonstrated by Exhibit I of the Ma Cert., Dr. Barnet did indeed sign that agreement, which is the protection Defendant's are entitled to with regard to the confidential information exchanged here. As such, there can be no doubt but that Plaintiffs have fully complied with their obligations per the Confidentiality Order.[4]

Importantly, the issue is really nothing more than a distraction anyway. Defendant lists this issue in the series of arguments they make regarding the Nicholas four-point test for

---

[3]     Plaintiffs' responded to Defendant outlining all this long before the Motion was filed, and yet not only does Defendant repeated the clearly erroneous argument in Defendant's Brief, but fails to address how the expert here is not allowed to review confidential documents. See Second Letter attached as Exhibit G to Ma Cert.

[4]     Defendant's hypocrisy on this issue is evident in the fact that despite crying foul and demanding the Expert Report be destroyed as confidential, Defendant itself submitted the Expert Report to this Court without even seeking to mark it confidential.

admissibility, making it look like it addresses one of the four considerations outlined in <u>Nicholas</u>. See <u>Nicholas v. Pennsylvania State University</u>, 227 F.3d 133, 148 (3d Cir. 2000).  However, it does not fit into any of the four considerations listed by the Third Circuit in that case.  <u>See</u> <u>id.</u>  This is of course because this issue is not relevant to the Motion here, which involves questions of prejudice, ability to cure prejudice, disruption of trial and willfulness in the failure to comply with deadlines.  When those relevant considerations are reviewed, it is clear the Motion must be denied.

### 2.  Third Circuit Case Law Mandates The Motion Must Be Denied.

The Third Circuit has repeatedly held that although the Federal Rules clearly contemplate the exclusion of untimely or improper expert disclosures, because "[t]he exclusion of critical evidence is an extreme sanction," the remedy of exclusion should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence."  <u>See</u> <u>In re Paoli R.R. Yard PCB Litigation</u>, 35 F.3d 717, 791–92 (3d Cir. 1994) (internal quotation marks and citations omitted); <u>see also</u> <u>In re Mercedes-Benz Antitrust Litig.</u>, 225 F.R.D. 498, 506 (D.N.J.2005) ("'The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony.'") (citations omitted); <u>Bridgestone Sports Co., Ltd. v. Acushnet Co.</u>, 2007 WL 521894 at *4 (D.Del. Feb. 15, 2007) (noting that while the decision to exclude expert testimony is context-specific, "evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered"); <u>Velez</u>, 2004 WL 1175726, at *1 (stating that before imposing the "extreme sanction" of preclusion of evidence, the Court must either find that the party "(1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of due diligence."), <em>quoting</em> <u>Meyers</u>, 559 F.2d at 905.

12

Case 2:11-cv-07318-CCC-CLW Document 117 Filed 09/11/19 Page 17 of 23
Case 2:11-cv-07318-CCC-CLW Document 109 Filed 09/09/19 Page 16 of 22 PageID: 1735
PageID: 2055

Moreover, the Third Circuit has found a party to have violated a scheduling order willfully or in bad faith where the violation at issue was one in a line of violations by the non-moving party.  See In re TMI Litig., 193 F.3d 613, 722 (3d Cir.1999) (finding bad faith where defendants engaged in a "pattern of filings that constituted a flagrant violation" of court's orders); see also Gautier–James v. Hovensa, L.L.C., 2011 WL 4500153, at *8 (D.V.I. Sept. 27, 2011) (finding this factor satisfied where, *inter alia,* a party's repeated untimely disclosures "cement[ed]" a finding of bad faith).  Willfulness or bad faith has **not** been found, however, where a party's actions have amounted to a mere "'[l]ack of diligence.'"  See Paoli, 35 F.3d at 793 (internal citation omitted); see also Holbrook v. Woodham, 2008 WL 544719 (W.D.Pa. Feb. 28, 2008) (noting that a finding of willfulness should be reserved for repeated disregard for court orders or otherwise "flagrant" disregard of those orders, and that an "egregious" showing of bad faith was necessary for exclusion); Hartle v. FirstEnergy Generation Corp., 7 F. Supp. 3d 510, 517 (W.D. Pa. 2014) (finding a report issued a year late was admissible where there was no bad faith and there was an opportunity to cure).

Here, there is no evidence at all of "willful deception or flagrant disregard of a court order by" Plaintiffs.  See Paoli, 35 F.3d at 791–92.  Unlike the cases where such bad faith has been found, Defendant has not pointed to a single other instance of late service – in stark contrast to Defendant's conduct as described above.  See id.; In re TMI Litig., 193 F.3d at 722.  Moreover, the fact that Plaintiffs are using new counsel indicates this was not a "pattern of filings" such that bad faith can be found.  See In re TMI Litig., 193 F.3d at 722.  Defendant simply has no basis for suggesting bad faith here, especially considering that Plaintiffs have made every effort to cure any prejudice by making Dr. Barnet available and offering to give Defendant time for a rebuttal report. See Exhibit G to Ma Cert.; Hartle, 7 F. Supp. 3d at 517.

13

At best, the late report was due to a mere "'[l]ack of diligence'" not by Plaintiffs or their current attorney, but by their previous attorney who left the case a year ago, which is not grounds to strike.  See Paoli, 35 F.3d at 793 (internal citation omitted); Ma Cert. at ¶ 23.  However, the uncontroverted reality here is that Plaintiffs reasonably did not discover the information and expert needed to produce the report until recently, due in large part to Defendant itself failing to comply with the same Order they now want to use to preclude the Expert Report, and despite significant hardships produced the Expert Report as quickly as it possibly could.  See Ma Cert. at ¶¶ 2-26.  In fact, it was Plaintiffs who were prejudiced by Defendant's service of documents three (3) years after being ordered to do so by this Court, after the fact discovery end date, which is the underlying reason for Plaintiff's own late service of the Expert Report.  See id.  As will be discussed further below, any prejudice to Defendant can easily be cured, and the Expert Report is extremely important to this case.  See id. at ¶¶ 27-34.

Defendant, after having served documents three (3) years after being ordered to do so in a manner designed to hide key documents, depriving Plaintiffs not just of the ability to obtain an expert report, but depriving them of the opportunity to depose witnesses on the most important documents produced, attempt to use Plaintiffs' failure to meet the unrealistic May 2, 2016 expert deadline as justification to exclude extremely important evidence.  See id. at ¶¶ 2-22, 29-34.  There was simply no way Plaintiffs could have reviewed the thousands of late produced documents which comprised of 90% of the documents used by Dr. Barnet, pieced together the hidden documents, gotten them to an expert, and had the expert write a report in the nineteen (19) days between the production and the deadline.  See id.  As such, if there was any bad faith here, it was on the part of Defendant.

Finally, it is well settled that the standard for admission of late expert reports prior to a trial date being set is relaxed.  See Meyers, 559 F.2d at 904; see also Szalontai v. Yazbo's Sports Café, 183 N.J. 386, 398 (2005) (discovery rules are more relaxed before arbitration has been held and/or a trial date has been set); Tucci, 364 N.J. Supper. at 52 (courts should be "indulgent" were there is no trial date set); Ponden v. Ponden, 374 N.J. Super. 1, 11 (App. Div. 2004) (finding that trial judge mistakenly exercised discretion in barring plaintiff's expert report when trial date was not yet scheduled and such report was crucial to plaintiff's claim); Santone v. Fusiek, 2010 WL 6813737 (Law Div. Dec. 9, 2010) (courts will allow late expert reports where the late report was submitted well before trial, the defaulting counsel was not guilty of any willful misconduct or design to mislead, any potential prejudice to the adverse party could be remediated, and the client was entirely innocent).  Here, no trial date, or even pre-trial conference date was set at the time of service of the Expert Report, and to date there is no trial date set.  See Ma Cert. at ⁋ 37.  Defendant has had and will continue to have the opportunity to depose Dr. Barnet and to issue a rebuttal report.  See id. at ⁋ 38.  Since there is no evidence of bad faith on the part of Plaintiffs, any prejudice can be cured and no trial date has been set, per established Third Circuit law, this Court should not order the "extreme sanction" of striking the Expert Report, and the Motion must be denied.  See Paoli, 35 F.3d at 791–92.

### 3. A Review Of The Four Factors Test Outlined By Defendants Themselves Weighs In Favor Of Denial Of The Motion, And Especially So After Consideration Of The Two Additional Factors Cited In The Applicable Case Law.

Even according to Defendant's own case law, the Expert Report where, like here, there is "substantial justification" for the late report.  See Defendant's Brief at 5.  As noted at length above, Defendant itself was three (3) years late in producing the documents needed for the Expert Report. Plaintiffs did not even have 90% of the documents used by Dr. Barnet until after the fact discovery end date and just days before expert reports were due.  See Ma Cert. at ⁋⁋ 13-15.  Defendant hid

15

documents in the thousands of pages of production which made it practically impossible to find. See id. at 20-22. Plaintiffs had extreme difficulty finding experts who would work with them at all due to the same tactics used against them at issue in this case, and they changed attorneys in the middle of all this through no fault of their own. See id. at ¶¶ 23-25. And the report itself is extremely important to this case. See id. at ¶¶ 29-33.

Further, applying the four-point test repeatedly articulated by the Third Circuit and cited to by Defendant in Defendant's Brief at page 5, the Motion must be denied. See Nicholas, 227 F.3d at 148. Looking at the first factor, "the prejudice or surprise" to Defendant here, Defendant focuses on the "surprise" factor. However, the more important and frequently cited factor is "prejudice," and there is no prejudice to Defendant here. The Expert Report was based almost entirely on documents produced by Defendant itself, as well as some transcripts that have been in Defendant's possession for quite some time. See Ma Cert. at ¶¶ 13, 15. Defendant has had and will continue to have plenty of time to depose Dr. Barnet, as Plaintiffs will make him available for his deposition upon request. See id. at 38. Further, Defendant also has time to submit a counter-expert report if it deems one necessary, and Plaintiffs will of course consent to any extensions of time necessary for it to do so if needed. See id.

As for the second factor, "the ability to cure that prejudice," to the extent there was such prejudice, it can hardly be questioned that Defendant has the ability to cure any such prejudice.[5] See Nicholas, 227 F.3d at 148. Again, no trial date has been set. See Ma Cert. at ¶ 37. Defendant can depose Dr. Barnet and submit a counter-report, the only things they could have done had the

---

[5]   Defendant does not even address the second or forth factors of the very test they attempt to utilize in Defendant's Brief, for the obvious reason that those factors clearly weigh in favor of Plaintiffs. Defendant's "[s]econd" and subsequent arguments have nothing to do with "curing" but rather focus on the false accusation of a violation of the Confidentiality Order, and, of course, the fact that the Expert Report was filed after the deadline for expert reports in the scheduling order. But the late filing outside the scheduling order is not relevant to the analysis, since it is assumed there was a late filing outside a scheduling order or there would be no need for such analysis.

report been issued earlier.  See id. at ¶ 38.  If Defendant so chooses, it can be in the exact same position it would have been if the report was issued on May 2, 2016.  See id.

The third factor, the extent the Expert Report would "disrupt the orderly and efficient trial of the case" is barely addressed by Defendant, and only by pointing out once again that the Expert Report was late, which is the very reason for the analysis in the first place.  See Defendant's Brief at 8; See Nicholas, 227 F.3d at 148.  But again, there has been no trial date set here, meaning it can't possibly disrupt a trial simply by being late.  See Ma Cert. at ¶ 37.  Moreover, the Expert Report itself will make trial much more efficient, as it will allow complex issues to be explained by an industry expert.  See id. at 29-33.  There is simply no reason to think that the Expert Report will make trial any less efficient.

The fourth factor, "bad faith or willfulness in failing to comply" was not addressed at all by Defendant and is addressed by Plaintiffs at length above.  See Nicholas, 227 F.3d at 148.  The analysis above demonstrates that this factor too weighs in favor of Plaintiffs.  But there are two other factors which have been cited by the Court which Defendant did not even list, and which clearly tip the scales in Plaintiffs' favor, it the scales weren't already there.

The Court in Withrow v. Spears, 967 F. Supp. 2d 982, 1000–01 (D. Del. 2013) citied six factors when deciding whether to allow a late expert report, including two additional factors which are frequently mentioned in the applicable case law: the explanation for the failure to disclose and the importance of the testimony sought to be excluded.  As discussed at length above, one simply need to read the Ma Cert. to understand that Plaintiffs have adequately explained their reason for the Expert Report.  Similarly, the Ma Cert. addresses the importance of the Expert Report.  The Expert Report is extremely important to two issues that go to the very heart of this case – Defendant's tactics in eliminating the competition by the very method Defendant uses as a defense

17

here, and Plaintiffs' ability to have complied with the contract at issue.  <u>See</u> Ma Cert. at ¶¶ 29-33. The former in particular is extremely complicated and industry specific, and the Expert Report is crucial for a full understanding of Plaintiffs' case.

Since all six of the factors here weigh in favor of Plaintiffs, the Motion must be denied.

### 4.  An Award Of Fees Is Highly Inappropriate Here.

Defendant's main justification for an award of fees is Plaintiffs' alleged violation of the scheduling order – the very same order Defendant itself violated to the extreme prejudice of Plaintiffs.  <u>See</u> Ma Cert. at ¶¶ 2-14.  Defendant further argues that Plaintiffs' failure to comply with its ridiculous demand to destroy the Expert Report and all documents related thereto due to a ridiculous allegation of a violation of the Confidentiality Order justifies sanctions, even though Defendant itself failed to address Plaintiffs' response to that demand and went ahead and made a frivolous argument regarding the Confidentiality Order anyway.  <u>See id.</u> at ¶¶ 35-36, Exhibit G.

As amply argued above, Plaintiffs have significant justification for service of the Expert Report, and their refuse to cede to Defendant's demands to withdraw and destroy the Expert Report.  This case is not like the one cited by Defendant, as there was no waiver here, among other distinguishing factors.  There is simply no justification for an award of fees here.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that Defendant's Motion to Strike the

Plaintiffs' Expert Report be denied with prejudice.

                                        **SMITH + SCHWARTZSTEIN LLC**

                                        /s/ Andrew Smith

BY:           _____

                                 ANDREW B. SMITH, ESQ.
                                 71 Maple Avenue
                                 Morristown, NJ 07960
                                 Telephone: 973-206-1725
                                 Fax: 973-794-2589

DATED: September 9, 2019