**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT, <br><br> Plaintiffs, <br><br> vs. <br><br> LIVE NATION ENTERTAINMENT, INC., <br><br> Defendant. | Civil Action No. 11-cv-7318 (CCC)(CLW) |

_____

**DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' OBJECTION TO THE MAGISTRATE'S
ORDER ENTERED ON SEPTEMBER 27, 2019**

_____


**GREENBERG TRAURIG, LLP**
500 Park Avenue, Suite 400
Florham Park, N.J. 07932
(973) 360-7900
*Attorneys for Defendant*
*Live Nation Entertainment, Inc.*


Dated:  October 21, 2019

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ADDITIONAL RELEVANT FACTS ............................................................................... 3

    A.    Mr. Ma's Lack of Personal Knowledge ................................................. 3

    B.    Magistrate Waldor's Extensive Oversight of Discovery in this Case.................... 4

    C.    The Agreed-Upon and Court Ordered Sequencing of Discovery .......................... 5

    D.    Plaintiffs had Over Two Months from the Completion of Document Discovery to Complete their Expert Report........................................................... 6

    E.    The First Complaint from Plaintiffs that Live Nation's Document Production was Incomplete was Made in September 2019 .................................. 7

    F.    The Barnet Report is Irrelevant to the Remaining Issues in the Case .................. 8

    G.    The Magistrate Grants Live Nation's Motion to Strike ........................................ 10

ARGUMENT ................................................................................................................... 11

    I.    LEGAL STANDARD .......................................................................... 11

    II.    PLAINTIFFS IMPROPERLY RELY UPON THE CERTIFICATION OF A DECLARANT WHO LACKS PERSONAL KNOWLEDGE ........................ 11

    III.    THE MAGISTRATE DID NOT ERR IN STRIKING DR. BARNET'S REPORT SINCE PLAINTIFFS FAILED TO SUBSTANTIALLY JUSTIFY THEIR UNTIMELY SERVICE OF THE REPORT .......................... 12

    IV.    THE MAGISTRATE'S DECISION IS CONSISTENT WITH THE COURT'S SUMMARY JUDGMENT OPINION ................................................ 15

CONCLUSION ................................................................................................................. 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrews v. Goodyear Tire & Rubber Co.*,
    191 F.R.D. 59 (D.N.J. 2000) ................................................................................11

*Constr. Drilling, Inc. v. Chusid*,
    63 F. Supp. 2d 509 (D.N.J. 1999) .......................................................................12

*D&D Assocs. v. Bd. of Educ. of N. Plainfield*,
    03-1026, 2006 U.S. Dist. LEXIS 101611 (D.N.J. June 8, 2006) ........................12

*Exxon Corp. v. Halcon Shipping Co.*,
    156 F.R.D. 589 (D.N.J. 1994) ............................................................................11

*Fowler v. Borough of Westville*,
    97 F. Supp. 2d 602 (D.N.J. 2000) .......................................................................11

*Haas v. Burlington Cty.*,
    955 F. Supp. 2d 334 (D.N.J. 2013) .....................................................................11

*Hartle v. Firstenergy Generation Corp.*,
    7 F. Supp. 3d 510 (W.D. Pa. 2014) ....................................................................15

*Holbrook v. Woodham*,
    No. 05-304, 2008 U.S. Dist. LEXIS 15099 (W.D. Pa. Feb. 28, 2008) ...............15

*Konstantopoulos v. Westvaco Corp.*,
    112 F.3d 710 (3d Cir. 1997) ...............................................................................13

*Marks v. Struble*,
    347 F. Supp. 2d 136 (D.N.J. 2004) .....................................................................11

*Nicholas v. Pa. State Univ.*,
    227 F.3d 133 (3d Cir. 2000) ...............................................................................14

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ...........................................................................14, 15

*Steele v. Depuy Orthopaedics, Inc.*,
    295 F. Supp. 2d 439 (D.N.J. 2003) .....................................................................12

*United States v. 68.94 Acres of Land*,
    918 F.2d 389 (3d Cir. 1990) ...............................................................................12

*Wyeth v. Abbott Labs.*,
    692 F. Supp. 2d 453 (D.N.J. 2010) .....................................................................11

**Statutes**

28 U.S.C. § 636(b)(1)(A) ...........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 16(f) ...........................................................................................................12

Fed. R. Civ. P. 26 ..............................................................................................................10

Fed. R. Civ. P. 37 ..............................................................................................................10

Fed. R. Civ. P. 37(b)(2)(B) ...............................................................................................12

Fed. R. Civ. P. 37(c)(1) .....................................................................................................12

Fed. R. Civ. P. 56(d) ...........................................................................................................8

Fed. R. Civ. P. 72(a) .........................................................................................................11

L. Civ. R. 7.2(a) ...........................................................................................................11, 12

Defendant Live Nation Entertainment, Inc. ("Live Nation") respectfully submits this Memorandum of Law in Opposition to the objection made by Juice Entertainment, LLC, Thomas Dorfman, and Chris Barrett ("Plaintiffs") to the Order entered on September 27, 2019 by Magistrate Judge Cathy L. Waldor (the "September 27 Order"), which granted Live Nation's motion to strike the expert report of Dr. Richard D. Barnet (the "Barnet Report") and barred Dr. Barnet from testifying at trial.

## PRELIMINARY STATEMENT

Plaintiffs served the Barnet Report in June 2019, ***three years*** after the relevant, Court ordered, deadline for the service of expert reports.  The September 27 Order entered by Magistrate Judge Waldor (who presided over discovery matters in this case for more than six years, conducted at least 13 conferences, and entered at least 6 scheduling order modifications, during that timeframe) correctly and appropriately granted Live Nation's motion to strike the Barnet Report and bar Dr. Barnet from testifying at trial.  The September 27 Order is not clearly erroneous or contrary to law.  Plaintiffs' objection to the Order should be overruled.

*First*, Plaintiffs' factual assertion that their extremely late service of the Barnet Report in June 2019 was "substantially justified," is unsupported by competent evidence and is flatly contradicted by the record.  Plaintiffs complain about events that took place during the discovery phase of the case from 2013 through 2016, when Plaintiffs were concurrently represented by lawyers at two law firms, Stone & Magnanini LLP and Ajamie LLP.  Plaintiffs' objection, however, contains no factual submission from any of those lawyers who were actually involved in the case during that timeframe and have first-hand knowledge of the facts.  Instead, Plaintiffs ask the Court to accept the "facts" presented by Mike Ma, who describes himself as a "consultant and legal assistant" to Plaintiffs.  Mr. Ma seems to have reviewed the record after the fact and offers

conjecture as to what he believes may have happened.  As a result, Plaintiffs' objection offers a version of secondhand "facts" that, as discussed below, is demonstrably untrue.

*Second*, Plaintiffs' objection relies heavily upon the contention that the failure to timely serve the Barnet Report three years ago was "substantially justified" because Live Nation did not complete its production of documents until April 13, 2016, which gave Plaintiffs' experts only two weeks in which to review these documents before the deadline for the service of Plaintiffs' expert reports.  Plaintiffs argue this two-week window afforded them too little time in which to process the information.  Even assuming, for argument's sake, this were factually true, it is unclear how this would justify Plaintiffs' service of the Barnet Report three years later, in June 2019.  Plaintiffs' present version of the facts, however, ignores the reality that after Live Nation completed its document production in April 2016, the parties agreed to an extension of time until June 15, 2016 for Plaintiffs to produce expert reports, so that Plaintiffs and their experts would have sufficient time to digest the information.  That extension was negotiated by Plaintiffs' counsel, discussed with the Court, and is embodied in an Order.

*Third*, Plaintiffs' objection is based on unsound legal arguments.  For example, Plaintiffs argue that there would be "no prejudice" suffered if the Court permits late service of the Barnet Report, because the Court could permit Live Nation the chance to take Dr. Barnet's deposition and engage a rebuttal expert.  This ignores the fact that the parties negotiated, and the Court entered Orders, embodying an agreed-upon sequencing of events in this case, comprised of: (a) fact discovery; (b) expert disclosures and discovery; and (c) motions for summary judgment.  In reliance upon this Court ordered sequencing, following the close of expert discovery, Live Nation served and substantially prevailed on a motion for summary judgment, which: dismissed Count I of Plaintiffs' Complaint entirely; allowed Count II (alleging tortious interference) to narrowly

survive, but barred Plaintiffs from recovering lost profits; allowed Count III (alleging defamation) to survive, but limited Plaintiffs to a recovery of only nominal damages; and narrowed the case to only four triable issues. The Barnet Report, however, addresses none of these remaining issues and claims. Rather, it focuses on claims and issues that have been dismissed. Contrary to Plaintiffs' assertions, the Barnet Report is not "extremely important" to any of the few remaining issues, as it pertains only to issues that were dismissed on summary judgment. Finally, there is a final pretrial conference scheduled in this matter for November 15, 2019 and if late service of the Barnet Report is permitted, and Dr. Barnet is permitted to testify at trial, the Court's orderly administration of this case obviously would be impacted.

Live Nation therefore respectfully requests that the Court overrule Plaintiffs' objection and affirm the September 27 Order striking the Barnet Report and barring Dr. Barnet from testifying at trial.

## ADDITIONAL RELEVANT FACTS

Live Nation offers the following discussion of additional facts relevant to Plaintiffs' objection, to respond to the inaccuracies offered in Plaintiffs' Opening Brief.

### A. Mr. Ma's Lack of Personal Knowledge

Plaintiffs attempt to establish the factual predicate for their "substantial justification" defense of their three years' late service of the Barnet Report through the Certification of Mike Ma, dated September 9, 2019. ECF No. 109-1, ("Ma Cert."). Mr. Ma is not an attorney licensed to practice in New Jersey, nor is he a member of this Court. He has not entered an appearance in this case on Plaintiffs' behalf and he does not appear to have been employed by either of the two firms who represented Plaintiffs during the relevant timeframe. Mr. Ma describes himself as "a consultant and legal assistant of Plaintiff Juice Entertainment, LLC." Ma Cert. at ¶ 1. Mr. Ma also claims to be "fully familiar with all matters discussed" in his Certification, which then purports

to describe how Plaintiffs had "an extremely difficult time obtaining discovery in this case." *Id.* at ¶¶ 1-2. Mr. Ma does not disclose how and when he became Juice's "consultant and legal assistant," nor does he describe the process through which he claims to have acquired personal knowledge of any relevant facts here.

Although Mr. Ma's Certification purports to describe issues that occurred during the discovery phase of this case, from 2013 through 2016, and to identify the reasons why Plaintiffs could not have timely served the Barnet Report in 2016, Mr. Ma does not explain his alleged basis for the "knowledge" of such facts. Indeed, Plaintiffs were represented for almost seven years in this matter by two law firms, Stone & Magnanini LLP and Ajamie LLP, from the outset of this case on December 16, 2011 through September 7, 2018, when a substitution of counsel was filed.[1] Given that the crux of Plaintiffs' "substantial justification" concerns issues relating to the discovery process from 2013 to 2016, one would expect that the facts underpinning their position would be offered through a Certification from someone who actually served as Plaintiffs' counsel during that time, who would have first-hand and accurate knowledge of the facts. Instead, Plaintiffs have offered a version of the "facts" through Mr. Ma's Certification, which is not based on his personal knowledge. As discussed below, many of the "facts" offered in Plaintiffs' opposition are demonstrably false.

**B. <u>Magistrate Waldor's Extensive Oversight of Discovery in this Case</u>**

Magistrate Judge Waldor has presided over discovery in this case for over six years, since being assigned to the case on September 11, 2013, and during which time Judge Waldor developed extensive familiarity with issues related to discovery and scheduling. *See* Sept. 11, 2013 ECF

---

[1] Mr. Ma does not state that he was employed by either of these firms and, based upon our frequent interaction with those firms and their personnel throughout the litigation, we never encountered Mr. Ma.

Minute Entry ("Case Reassigned to Magistrate Judge Cathy L. Waldor."). During this timeframe, Magistrate Waldor held no less than eleven status conferences, a settlement conference, and a final pretrial conference. *See* ECF Nos. 51, 54, 60, 65, 67, 69, 70, 72, 87, 88, 90, 102, and 114. Judge Waldor also entered at least six Orders concerning discovery deadlines. *See* ECF Nos. 44, 56, 58, 61, 69, and 70.

### C. The Agreed-Upon and Court Ordered Sequencing of Discovery

Plaintiffs' service of the Barnet Report in June 2019 ignores the parties' agreed upon and Court ordered framework for the phasing of this case. This framework was agreed to and implemented in a telephonic conference with the Court on July 29, 2015, when all disputes and past grievances concerning discovery were resolved. *See* ECF No. 65 (setting conference date and minute entry for conference held on July 29, 2015). Thereafter, the parties agreed upon and presented the Court with a proposed framework to complete discovery, close the record, and proceed to summary judgment in the case, which involved an agreed upon sequencing. *See* ECF No. 66 (August 26, 2015 letter outlining the parties' agreed framework). The agreed and relied upon sequencing involved was as follows: the completion of document production; the completion of fact depositions; the service of Plaintiffs' expert reports and the deposition of Plaintiffs' experts; the service of Defendant's expert reports and the deposition of Defendant's experts; and then, after the record was closed, the filing of summary judgment motions. This sequencing was followed in several subsequent Orders, which reframed the dates, but maintained the foregoing sequence. *See*, *e.g.*, ECF Nos. 69, 70. The parties then followed the agreed upon and Court ordered schedule for the completion of discovery, the record was closed, and then Live Nation moved for summary judgment, ECF No. 73, which the Court substantially granted, largely disposing of Plaintiffs' claims. ECF Nos. 81, 82.

### D.  Plaintiffs had Over Two Months from the Completion of <u>Document Discovery to Complete their Expert Report</u>

Plaintiffs' currently advanced justification for serving Dr. Barnet's report now, three years after the close of discovery, is based upon their contention that they could not have timely produced a report from Dr. Barnet, because they only had two weeks in which to process documents produced by Live Nation before the deadline for the service of expert reports and this amount of time was insufficient.  Plaintiffs' contention is factually inaccurate.

Plaintiffs concede that Live Nation completed its document production on April 13, 2016.  *See* Ma Cert. at ¶ 13.  Yet, Plaintiffs now complain that this "late" production of documents was the reason they could not comply with deadline for serving their expert report.  Relying on Mr. Ma's second-hand (and inaccurate) understanding of the facts, Plaintiffs argue that Live Nation's completion of its document production on April 13:

> meant that Plaintiffs had just over two (2) weeks to review thousands of pages of documents, which were produced in such a way as to hide documents, find an expert, have him review the documents, and have him write a report, in order to meet the May 2, 2016 deadline for experts.

Plaintiffs' Brief at 5 (citing Ma Cert. at ¶ 14).

However, Plaintiffs ignore the fact that the parties subsequently agreed to extend the May 2 deadline, such that Plaintiffs' expert reports could be served on June 15, 2016, two months after Live Nation completed its document production.  The parties' agreement to extend the deadline to June 15 was: (a) specifically entered into to provide Plaintiffs sufficient time to prepare their expert reports; (b) discussed in a telephonic conference with the Court on May 16, 2016; and (c) is embodied in a Court order entered on that same date.  *See* ECF No. 70 (ordering that "Amended Scheduling Order: Affirmative expert: 6/15/16; Affirmative expert deposition: 7/15/16; Responsive expert: 7/15/16; Expert end: 8/15/16.").  Plaintiffs did not complain during the May

16 conference with the Court that Live Nation's document production, completed the month prior, was inadequate in any way, that it was made in a way to "hide" documents, or that Plaintiffs lacked sufficient time in which to prepare and serve expert reports by the newly agreed upon and Court ordered deadline of June 15, 2016.  Nor did they complain about the timeliness or completeness of the document production any time thereafter, until Live Nation's motion to strike was made, more than three years later, in August 2019.  Indeed, without complaint, incident or protestation, Plaintiffs produced a report from their damages expert Marianne Demario on June 15, 2016.

### E.  The First Complaint from Plaintiffs that Live Nation's Document Production was Incomplete was Made in September 2019

Plaintiffs suggest that Live Nation's document production, completed on April 13, 2016, was somehow incomplete and now complain about the manner in which certain documents were produced.  Ma Cert. at ¶¶ 16-17.  Not only does this contention fail to explain Plaintiffs' inability to timely produce Dr. Barnet's three years ago, but it also stands in contrast with Plaintiffs' actions at the time, during which Plaintiffs made no complaints about any alleged inadequacies to the Court.

For example, at the May 16, 2016 conference with the Court, Plaintiffs' counsel conceded, after having a month to review Live Nation's documents, that Live Nation's document production was complete.  Plaintiffs' counsel did not complain about the form or manner in which the documents were produced and, instead, agreed that Plaintiffs' expert reports could be produced the following month, June 15, 2016.  *See* ECF No. 70.

On October 13, 2016, Plaintiffs' counsel wrote to the Court to complain about what it contended was Live Nation's untimeliness in serving its motion for summary judgment.  *See* ECF No. 71.  The letter from Plaintiffs' counsel, sent six months after Live Nation completed its document production on April 13, 2016, did not complain about an alleged failure to produce

documents. *Id.* To the contrary, the letter requested that the Court forego summary judgment and schedule the case for trial – a position they would not have taken had there been any doubt that Live Nation had not completed its document production. *Id.*[2]

Finally, on December 19, 2016, Plaintiffs filed their opposition to Live Nation's motion for summary judgment. *See* ECF No. 75. Notably, Plaintiffs did not file an Affidavit pursuant to Federal Rule of Civil Procedure 56(d), contending that Live Nation had failed to provide document discovery, a position they surely would have taken, had they believed it to be true. Again, Plaintiffs' silence on the issue belies their current claim, advanced three years later, that Live Nation's document production was somehow deficient.

### F. The Barnet Report is Irrelevant to the Remaining Issues in the Case

In an attempt to satisfy their "substantial justification" defense, Plaintiffs contend the Barnet Report "is important to this case in a variety of ways." Ma Cert. at ¶ 29. As discussed below, however, the Barnet Report only addresses issues that were already dismissed on summary judgment. Specifically, Dr. Barnet seeks to offer two opinions:

1. To a reasonable degree of certainty, Plaintiffs' decision not to accept the offer of the Defendant to co-promote/produce the State Fair event was both sound and necessary, considering evidence here that suggest a business model adopted by the Defendant that is extremely financially predatory against, among others, co-independent promoters;

2. To a reasonable degree of certainty, Plaintiffs had all the necessary experience and physical/practical requisites to perform their contract with State Fair. While Juice Entertainment is a new "Corporation," when examining the necessary disciplines, subject matter, industry and the background/experience of the Plaintiffs as well as their strategic associations with Partners, it is my view that they are not in fact a "New Business" in their Meadowlands endeavor from each practical standpoint within the live event/entertainment industry.

---

[2] Thereafter, on October 18, 2016, the Court held a telephone conference with the parties, during which it rejected Plaintiffs' position and accepted as timely Live Nation's summary judgment motion. *See* ECF Nos. 72, 73. Again, at no point during this call did Plaintiffs' counsel raise any alleged failure by Live Nation to complete its document production.

*See* ECF No. 117-2, "Barnet Report" at 3. These opinions, however, fail to address the "triable issues" that remain in the case.

Plaintiffs' Amended Complaint asserted three claims against Live Nation. Count I alleged that Live Nation tortiously interfered with Plaintiffs' contractual relationship with State Fair Event Management ("SFEM"). This claim was dismissed entirely by the Court. *See* ECF No. 81, "Summary Judgment Opinion" at 11 ("Because all alleged interference pre-dates Plaintiffs' March 7, 2011 contract, the Court grants summary judgment to Live Nation on Count 1"). Count II alleged that Live Nation tortiously interfered with Plaintiffs' prospective ability to book artists represented by the talent agencies William Morris Endeavor ("WME"), AM Only, and The Windish Agency ("Windish"). The Court's Summary Judgment Opinion exhaustively reviewed the evidence concerning this claim, *id.* at 6-8, and denied Live Nation's motion for Summary Judgment, based upon the Court's determination that there were three specifically identified disputed facts concerning the alleged interference. *Id.* at 11-13. Count III of the Complaint alleged that Live Nation defamed Plaintiffs. Again, the Court exhaustively analyzed Plaintiffs' contentions, the evidence and the allegedly defamatory statements, and concluded that there was one allegedly defamatory statement that could support a claim. *Id.* at 16.

The Court's Summary Judgment Opinion also eliminated Plaintiffs' potential damages relating to the two remaining claims. With respect to Count II, the Court found that Plaintiffs were barred from seeking lost profit relating to their narrowly-surviving claim for interference, on the basis that the alleged lost profits were "too remote and speculative to meet the legal standard of reasonable certainty." *Id.* at 20 (internal quotation marks and citation omitted). The Court reiterated this determination in a subsequent, published Opinion and Order dated December 19, 2018, which denied Plaintiffs' motion to seek interlocutory review. *See* ECF No. 98 at 8

("even if the new business rule did not act as an absolute bar to recovery, [Plaintiffs] would still be prohibited from showing lost profit damages at trial under the reasonable certainty test."). With respect to Count III, although the Court found that an email from Live Nation was potentially defamatory, it further ruled that any recovery for defamation would be limited to "nominal" damages. Summary Judgment Opinion at 16-18.

In light of the Court's rulings, Plaintiffs do not, and cannot, identify any remaining triable issue as to which Dr. Barnet's report seeks to address.  Dr. Barnet's proffered Opinion 1 does not opine on whether Live Nation interfered with Plaintiffs' ability to book talent or whether Live Nation defamed Plaintiffs, which are the only two remaining issues.   Moreover, Dr. Barnet's proffered Opinion 2 attempts to reargue the "new business" issue that was previously litigated and dismissed by the Court.  Twice now the Court has explicitly held that Plaintiffs are barred from recovering lost profits, thereby making Dr. Barnet's proffered Opinion 2, which focuses on the issue of lost profits, wholly irrelevant.

### G.  **The Magistrate Grants Live Nation's Motion to Strike**

Despite the fact that expert disclosures were due three years ago, and summary judgment decided last year, Plaintiffs disclosed to Live Nation, for the very first time, Dr. Barnet's report on June 6, 2019. ECF No. 105-3 at 2-3.  Live Nation advised Plaintiffs of its violation of the Court's Scheduling and Confidentiality Orders, and requested that Plaintiffs withdraw Dr. Barnet's report and agree that they will not use it in any way. *Id.* at 25-26.  When Plaintiffs refused, Live Nation submitted the underlying motion to strike, pursuant Federal Rules of Civil Procedure 26 and 37. ECF No. 105.  Specifically, Live Nation argued that Plaintiffs lacked any colorable basis for producing this report three years after such disclosures were to be made, and that the admission of the report would severely prejudice Live Nation and completely disrupt the trial of this case. *Id.* The September 27 Order granted Live Nation's motion. ECF No. 113.

## ARGUMENT

### I.    LEGAL STANDARD

Decisions by a Magistrate Judge are accorded great deference, which "[a] district court judge will only reverse . . .  if it is 'clearly erroneous or contrary to law.'" *Haas v. Burlington Cnty.*, 955 F. Supp. 2d 334, 336 (D.N.J. 2013) (citing 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)).  "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 455 (D.N.J. 2010) (quoting *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004)).  "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co.*, 191 F.R.D. 59, 68 (D.N.J. 2000).  The burden rests on the moving party to demonstrate that the magistrate's decision was clearly erroneous. *Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 589, 591 (D.N.J. 1994).

### II.    PLAINTIFFS IMPROPERLY RELY UPON THE CERTIFICATION OF A DECLARANT WHO LACKS PERSONAL KNOWLEDGE

At the outset, there is no basis for the "statement of facts" set forth in Plaintiffs' Opening Brief, as it is based solely upon the Certification of Mike Ma, who has not established that he has any personal knowledge of the facts he offers.  Local Civil Rule 7.2(a) states:

> Affidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact ***within the personal knowledge of the signatory.*** Argument of the facts and the law shall not be contained in such documents. Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both.

L. Civ. R. 7.2(a) (emphasis added).  In accordance with this rule, courts frequently disregard statements made in a declaration that are not based on the declarant's personal knowledge. *See*, *e.g.*, *Fowler v. Borough of Westville,* 97 F. Supp. 2d 602, 607 (D.N.J. 2000) (citing cases).  Here,

Mr. Ma attempts to summarize the alleged deficiencies of Live Nation's document production in this case and justify the late service of the Barnet Report. Ma Cert. at ¶¶ 13-29.[3]  However, as discussed above, this Certification is bereft of any foundation establishing Ma's personal knowledge of such facts and the Court should disregard them in deciding the pending motion. *Steele v. Depuy Orthopaedics, Inc.*, 295 F. Supp. 2d 439, 445-46 (D.N.J. 2003) (striking an affidavit that summarized the FDA's review of a medical knee replacement, where the affiant did not participate in the approval or review of the device); *see also Constr. Drilling, Inc. v. Chusid*, 63 F. Supp. 2d 509, 514 (D.N.J. 1999) (striking a supporting declaration that was based on a separate lawsuit and otherwise lacked personal knowledge).

### III. THE MAGISTRATE DID NOT ERR IN STRIKING DR. BARNET'S REPORT SINCE PLAINTIFFS FAILED TO SUBSTANTIALLY JUSTIFY THEIR UNTIMELY SERVICE OF THE REPORT

The Magistrate did not err in granting Live Nation's motion to strike, because Dr. Barnet was not timely disclosed as an expert, his report was not timely served, and because Plaintiffs' failure to do so was not substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).  Where, as here, a party is alleged to have violated the court's scheduling order, "the Federal Rules of Civil Procedure authorize district courts to prohibit the admission of evidence proffered by the disobedient party." *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990) (citing Fed. R. Civ. P. 16(f), 37(b)(2)(B)).  The disobedient party bears the "burden of demonstrating substantial justification and harmlessness" for failing to comply with the court's scheduling order. *D&D Assocs. v. Bd. of Educ. of N. Plainfield*, 03-1026, 2006 U.S. Dist. LEXIS 101611, at *13

---

[3] In addition to these statements, Mr. Ma's Certification is replete with legal argument and argument of facts, in direct contravention of Local Rule 7.2(a), which prohibits "[a]rgument of the facts and the law" from being included in a certification.  *See, e.g.*, Ma Cert. at ¶¶ 16-17, 19, 32-34.

(D.N.J. June 8, 2006).   Here, the September 27 Order properly concluded that Plaintiffs failed to meet their burden.

Plaintiffs' "substantial justification" argument, based on the contention that Plaintiffs could not have timely served the Barnet Report because of alleged deficiencies in Live Nation's document production, is factually unsupported.   As discussed above, and as Plaintiffs concede, Live Nation completed its document production on April 13, 2016. Ma Cert. at ¶ 13.   In an agreement discussed with the Court, which is embodied in a Court order, the parties extended Plaintiffs' deadline for the service of expert reports to June 15, 2016, which Plaintiffs agreed was sufficient time for their experts to process the documents and information. ECF No. 70.   At no time prior to June 6, 2019 did Plaintiffs complain about the adequacy or manner of Live Nation's document production, despite numerous interactions with the Court. *See, e.g.*, ECF Nos. 51, 54, 60, 65, 67, 69, 70, 72, 87, 88, and 90.   Plaintiffs timely served a report from their damages expert on June 15, 2016, without incident or complaint.   Plaintiffs then requested that the case be set for trial, without complaining about any alleged discovery deficiencies, and Plaintiffs later opposed Live Nation's summary judgment motion, again, without complaining that discovery was incomplete. ECF Nos. 71, 75.

Plaintiffs contend that permitting late service of the Barnet Report would not cause "prejudice" because Live Nation could be afforded the opportunity to depose Dr. Barnet and be given leave to retain a rebuttal expert.   This argument ignores the fact that Live Nation relied upon the parties' agreement, and the Court's orders, which provided for an orderly sequence of this case, pursuant to which fact discovery would proceed and be closed, expert discovery would proceed and be closed, and then the parties could move for summary judgment. ECF Nos. 66, 69, and 70. Live Nation relied on the foregoing phased administration of this case and the Court substantially

granted Live Nation's motion for summary judgment.  Permitting Plaintiffs to go back in time to the expert discovery phase of this case, three years later, would prejudice Live Nation and the Court. *See*, *e.g.*, *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719-20 (3d Cir. 1997) (prejudice and surprise demonstrated where expert was disclosed eighteen months after the close of discovery and three weeks prior to trial).

Plaintiffs also contend that permitting the late service of the Barnet Report would not disrupt the orderly and efficient trial of the case.  This ignores the fact that a pretrial conference is scheduled for November 15, 2019 and, if Plaintiffs' position is accepted, the case would be returned to the expert discovery phase, despite the fact that the Court already has dismissed on summary judgment any issues as to which the Barnet Report could possibly be relevant, causing obvious disruption to orderly and efficient case administration.  *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

Plaintiffs also claim that late service of the Barnet Report should be excused because "[it] is extremely important to multiple liability issues that go to the very heart of this case."  Plaintiffs' Brief at 22.  But, Plaintiffs' position ignores the fact that these issues were disposed of by the Court, and the Barnet Report does not speak at all to any of the four triable issues that remain.

Plaintiffs argue that because their violation of the Court Scheduling Orders was not "willful" or in "bad faith," the late-served Barnet Report should be excused.  *See* Plaintiffs' Brief at 21-22.  Here, Plaintiffs served an expert report three years after the deadline for expert disclosures, which seeks to offer opinions on issues that are no longer relevant to the case, and they object to the Magistrate's decision based upon a series of inaccurate factual assertions offered by a declarant without personal knowledge.  In fact, although it is not necessary for the Court to

14

make such a finding to support exclusion of the Barnet Report, the foregoing would readily support such a finding of willfulness or bad faith.

Finally, none of the cases relied upon by Plaintiffs condone the filing of an expert report three years after the close of discovery. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994) (substance of expert report disclosed one month after the court's deadline); *Hartle v. Firstenergy Generation Corp.*, 7 F. Supp. 3d 510, 517 (W.D. Pa. 2014) (report served "a year after the court's deadline"); *Holbrook v. Woodham*, No. 05-304, 2008 U.S. Dist. LEXIS 15099, at *3-5, 7 (W.D. Pa. Feb. 28, 2008) (report served five months after the court's deadline). The Third Circuit's opinion in *Paoli*, upon which Plaintiffs heavily rely, is readily distinguishable. There, the trial court excluded the plaintiff's proffered expert, since disclosure of his report was made one month after the court-issued deadline. 35 F.3d at 791. In reversing, the Third Circuit noted that although the defendants were unaware of the actual substance of the report, they were nevertheless familiar with the general subject matter of his testimony. *Id.* at 792. In addition, because the disclosure was made 60 days before the end of discovery, the Third Circuit reasoned, "the defendants had abundant time to depose [the expert] regarding the specifics of his [report]." *Id.* Here, the facts could not be more different from *Paoli*. Plaintiffs first disclosed Dr. Barnet as an expert more than ***three years after the close of discovery***. As an undisclosed expert, whose proffered testimony seeks to opine on a wholly new and distinct subject matter, Live Nation could not have been aware of the "basic substance of the witness' testimony." *Id.*

## IV.    THE MAGISTRATE'S DECISION IS CONSISTENT WITH THE COURT'S SUMMARY JUDGMENT OPINION

Plaintiffs' service of the Barnet Report three years after the relevant deadline was not substantially justified and thus it was properly excluded. Moreover, the Barnet Report is not relevant to any issue remaining in the case.

The Court's Summary Judgment Opinion limited the scope of this case to four triable issues:

- Issue 1 (Count II) – whether Live Nation engaged in interference with the WME talent agency based on Jason Miller's February 15, 2011 email.  *See* Summary Judgment Opinion at 6-7 ("whether [Ms. Kirby of WME's] opinion of [Plaintiffs' Agent John] DiMatteo as 'flaky' and having poor marketing performance was colored by Miller's comments [in his February 15, 2011 email] is a disputed fact.").

- Issue 2 (Count II) – whether, as Plaintiff Dorfman alleges, Jason Miller of Live Nation made a threat in a meeting with Plaintiffs on March 3, 2011 and, if so, whether Live Nation carried out the threat.  *See* Summary Judgment Opinion at 7 (finding a triable issue as to whether Mr. Dorfman's recollection of the meeting was accurate and whether, if Mr. Miller made the alleged statements, Live Nation carried through on its "threats.").

- Issue 3 (Count II) – whether, as Plaintiffs allege, Jason Miller of Live Nation made a threat in a meeting with Plaintiffs on April 22, 2011 (which Plaintiffs secretly recorded) and, if so, whether Live Nation carried out the threat.  *See* Summary Judgment Opinion at 8 (finding that, assuming Plaintiffs can establish the authenticity of the tape recordings, Mr. Miller's statements provide a triable issue with respect to alleged interference).

- Issue 4 (Count III) – whether a February 23, 2011 email from Live Nation's John D'Esposito to Al Dorso, Jr. of SFEM was defamatory.  *See* Summary Judgment Opinion at 16-18 (finding that while the February 23 email was potentially defamatory, even if it was found to be defamatory, it could support only a claim for "nominal" damages.).

The Court also severely limited Plaintiffs' potential damages recovery.  With respect to Count II, the Court found that Plaintiffs were barred from seeking lost profits in connection with their narrowly-surviving claim for interference on the basis that the alleged lost profits were "too remote and speculative to meet the legal standard of reasonable certainty."  Summary Judgment Opinion at 20 (internal quotation marks and citation omitted). The Court reiterated this determination in a subsequent, published Opinion and Order dated December 19, 2018, which denied Plaintiffs' motion to seek interlocutory review. ECF No. 98 at 8.  Because the only damages Plaintiffs sought were lost profits, there is no evidence or facts that can be adduced concerning damages on Count II.

With respect to Count III, while the Court found that the February 23 email was potentially defamatory, it further found that even if it was found to be defamatory, it could support only a

16

claim for "nominal" damages. Specifically, the Court found that because the email was sent on February 23, 2011 to SFEM, and SFEM subsequently entered into a contract with Plaintiffs on March 7, 2011, the email could not as a matter of law support a claim for "special" damages (which the Court described as compensating Plaintiffs for "specific economic or pecuniary loss"). Summary Judgment Opinion at 16-17. The Court also found that Plaintiffs failed to adduce any evidence, and thus to create an issue of fact for trial, concerning "general" damages suffered as a consequence of the alleged defamation. *Id.* at 17 (describing general damages as "address[ing] harm that is not capable of precise monetary calculation, including impairment to reputation and standing in the community, along with personal humiliation, mental anguish and suffering to the extent that they flow from the reputational injury."). Thus, the Court found that, under the "presumed damages" doctrine, Plaintiffs could proceed to trial on their claim that the February 23 email is defamatory, but they are limited at trial to a recovery of only nominal damages.

The September 27 Order correctly concluded that Dr. Barnet offers no opinion on any of the remaining triable issues. Instead, the Report focuses on Live Nation's "business model," designed to cast Live Nation in a negative light – describing it as "predatory." *See* Barnet Report at 3-5. Putting aside the inflammatory language of the report and the questionable credentials of this "expert," an analysis of Live Nation's business model does not address the remaining issues concerning tortious interference or defamation. Even more troubling, despite the Court **twice** finding Plaintiffs to be a new business, Dr. Barnet purports to offer an opinion to the contrary. *Id.* at 3. This directly conflicts with the Court's prior rulings and is a clear attempt by Plaintiffs to re-litigate the same issue. Simply put, Plaintiffs' effort to broaden the issues remaining in this case, so as to justify the need for the Barnet Report, finds no support in the record or the Court's Summary Judgment Opinion.

17

## CONCLUSION

For all of the foregoing reasons, Live Nation respectfully requests that the Court overrule

Plaintiffs' objection and affirm the September 27 Order striking Plaintiffs' report from Dr. Barnet

and barring him from testifying at trial.

> Respectfully submitted,
> GREENBERG TRAURIG, LLP
>
> By:    /s/ Ian S. Marx
>         Philip R. Sellinger
>         Ian S. Marx
>         GREENBERG TRAURIG, LLP
>         500 Campus Drive, Suite 400
>         Florham Park, New Jersey 07932
>         Attorneys for Defendant
>         Live Nation Entertainment, Inc.

Dated: October 21, 2019