UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., <br><br> Defendant. | Civil Action No.: 11-07318 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court on the appeal by plaintiffs Juice Entertainment, LLC, Thomas Dorfman, and Chris Barrett's (collectively, "Plaintiffs") of Magistrate Judge Cathy Waldor's Order (ECF No. 113) granting defendant Live Nation Entertainment, Inc.'s ("Defendant") motion to strike Plaintiffs' expert report (ECF No. 105). ECF No. 117. Defendant filed an opposition (ECF No. 118) and Plaintiffs replied (ECF No. 119). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' appeal is denied and the order striking Plaintiffs' expert report (ECF No. 113) is affirmed.

**I.   BACKGROUND**

This dispute arises out of Defendant's alleged tortious interference with Plaintiffs' business relations concerning their efforts to produce a live electronic music concert for the 2011 New Jersey State Fair, as well as Defendant's alleged tortious interference with a contract relating to the same concert, and Defendant's alleged defamation of Plaintiffs.[1] In December 2010, Plaintiffs negotiated and neared an agreement with State Fair Event Management ("SFEM"), which was handling the State Fair in 2011, to produce the concert. Upon reaching an agreement on March 7,

---

[1] Plaintiffs also initially brought claims of unlawful interference with contract and unfair competition, which were subsequently dismissed. ECF No. 21.

1

2011, Plaintiffs sought to engage various DJs to perform but were ultimately unsuccessful, resulting in the cancellation of the contract with SFEM pursuant to a rider that required Plaintiffs to book all performers by April 1, 2011. Plaintiffs claim that Defendant, the largest promoter of live popular music concerts in the United States, essentially prevented Plaintiffs from signing any artists for the concert by pressuring talent agencies not to work with Plaintiffs. Plaintiffs make similar claims with respect to Defendant's interference with their relations and contract with SFEM and, further, assert that Defendant defamed Plaintiffs in communications with SFEM.

The procedural history of this case is particularly relevant here and thus requires a more detailed explanation. After an initial scheduling order that established a fact discovery deadline of July 31, 2013, *see* ECF No. 28, discovery was extended multiple times by consent of both parties and with the Court's approval. *See, e.g.,* ECF No. 39 (extending fact discovery deadline to November 29, 2013 with expert disclosures 30 days after); ECF No. 41 (seeking fact discovery extension to February 1, 2014); ECF No. 43 (letter from Plaintiffs on behalf of parties seeking extension to March 14, 2014 and noting "[t]he names and subject of expect testimony of all affirmative expert witnesses have also been disclosed"); ECF No. 66 (seeking January 31, 2016 deadline); ECF No. 68 (amending to March 31, 2016 deadline). Despite certain discovery disputes concerning the scope of Defendant's production that were ultimately resolved by the Court, *see* ECF Nos. 38, 40, discovery progressed until the parties were referred to mediation on March 27, 2014. *See* ECF No. 52. Mediation was subsequently unsuccessful, and, after additional joint requests to extend discovery, a deadline for affirmative expert reports was ultimately set for June 15, 2016. ECF No. 70.

On October 17th, 2016, after the close of fact and expert discovery, Defendant moved for summary judgment on all of Plaintiffs' existing claims, ECF No. 73, which the Court granted in

part. ECF No. 81 (the "SJ Decision").² The SJ Decision disposed of Plaintiffs' claim for tortious interference of contract (Count I) because any conduct possibly amounting to tortious interference occurred prior to the existence of a contract. *Id.* at 10-11. However, Plaintiffs' remaining claims— tortious interference of prospective business relationships (Count II) and defamation (Count III)— could proceed, subject to certain limitations. Plaintiffs would be barred at trial from seeking lost profits under Count II due to the "new-business rule." *Id.* at 18-20. Additionally, the defamation claim was narrowed to a single comment in an email from Defendant on February 23, 2011, and was found to be able to support only nominal damages, since special and general damages were precluded by the timing of the alleged statement. *Id.* at 16-18. Accordingly, the triable issues of fact for trial concern whether Defendant engaged in certain conversations and communications in which it unlawfully pressured SFEM and talent agencies not to work with Plaintiffs and, further, whether the February 23, 2011 email was in fact defamatory. *Id.* at 6-7, 16-18.

Plaintiffs then moved to amend the summary judgment order so that they could seek interlocutory appeal of the Court's decision to preclude lost profits under the new-business rule. ECF No. 91-1. Plaintiffs argued that resolving whether the new-business rule was the correct standard before trial (rather than waiting to appeal as of right) was in the interest of efficiency and would conserve the Court's resources since, without the ability to seek lost profits, "any trial would be over nominal damages." *Id.* at ¶ 7. The Court denied the motion, finding that its prior determination that Plaintiffs were engaged in a new business was discretionary and thus not appropriate for interlocutory appeal and, moreover, that even if the new-business rule did not act

---

² The motion for summary judgment was decided by Judge William Walls on May 23, 2018. This matter was reassigned to this Court on July 26, 2019. ECF No. 103.

3

as an absolute bar to recovering lost profits, they would still be precluded under the reasonable certainty test. ECF No. 98 at 4, 8.

On June 6, 2019, nearly three years after the close of discovery and over a year after summary judgment, Plaintiffs served Defendant with the expert report of Dr. Richard Barnet. *See* ECF No. 117-2 (the "Barnet Report"). The Barnet Report offered two principal opinions: (1) Plaintiffs' decision not to partner with Defendant was sound given Defendant's financially predatory business model; and (2) Plaintiffs had the necessary experience to perform their contract with State Fair and thus were not a "new business." *Id.* at 3. Defendant then moved to strike the Barnet Report because it was untimely and disregarded the Court's scheduling order. ECF No. 109. Judge Waldor issued an opinion on the record which granted Defendant's motion to strike based on lack of timeliness. ECF No. 115 (the "Opinion"); *see also* ECF No. 113 (order). In addition, Judge Waldor noted that the Barnet Report offered opinions which contravened the Court's summary judgment decision. *Id.*

Plaintiffs now appeal Judge Waldor's decision to strike the Barnet Report. ECF No. 117.

## II.   LEGAL STANDARD

A district court "will only reverse a magistrate judge's order on pretrial matters if it is 'clearly erroneous or contrary to law.'" *Haas v. Burlington County*, 955 F. Supp. 2d 334, 336 (D.N.J. 2013) (citing 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (recognizing the district court's ability to "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law"); L. Civ. R. 72.1(c)(1)(A). A decision is clearly erroneous "when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citation omitted); *see*

4

*also Simoni v. Meridian Health Sys., Inc.*, No. 11-cv-7528, 2014 WL 1050453 (D.N.J. Mar. 14, 2014). A decision is contrary to law when it misinterprets or misapplies applicable law. *Kounelis*, 529 F. Supp. 2d. at 518. Because "the magistrate judge is accorded wide discretion in addressing non-dispositive motions," *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004), "the party [challenging the decision] bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law." *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996).

**III.    DISCUSSION**

In their appeal, Plaintiffs argue the Judge Waldor erred in granting Defendant's motion to strike the Barnet Report for two principal reasons. Plaintiffs contend that Judge Waldor's Opinion was contrary to law because it failed to apply the appropriate legal test for excluding evidence when it struck the Barnet Report on account of its untimeliness. ECF No. 117 at 15. In addition, Plaintiffs argue that Judge Waldor excluded the Barnet Report based on purportedly erroneous findings that (i) the SJ Decision precluded all damages on Plaintiffs' tortious interference with prospective business relations claim (Count II) and (ii) the Barnet Report is itself only relevant to damages. *Id.* at 10. In response, Defendant counters that Plaintiffs' untimely service of the Barnet Report—nearly three years after the Court-ordered deadline—was not "substantially justified or [] harmless," as required under Fed. R. Civ. P. 37(c)(1) when an expert is not properly disclosed. ECF No. 118 at 12-15. Defendant also submits that Judge Waldor's Opinion correctly concluded that the Barnet Report failed to offer an opinion on any of the remaining triable issues after summary judgment. *Id.* at 15-17. For the reasons discussed below, the Court finds Plaintiffs' arguments unpersuasive and agrees with Defendant.

### a. **The Barnet Report's Lack of Timeliness**

As an initial matter, a "court's failure to state on the record its reason(s) for excluding experts is not necessarily an abuse of discretion." *Konstantopoulous v. Westvaco Corp.*, 112 F.3d 710, 720 n.5 (3d Cir. 1997) (citing *Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 302 (3d Cir.1991). In such cases, the reviewing court can apply the relevant test and determine if the exclusion was warranted. *See id.* (citing *Beissel v. Pittsburgh and Lake Erie R.R. Co.*, 801 F.2d 143, 150-51 (3d. Cir. 1986)). Accordingly, although Judge Waldor's Opinion did not explicitly cite the applicable factors for evidence exclusion, the Court finds, based on its own review of the factors below, that Judge Waldor reached the correct result in striking the Barnet Report.

In determining whether evidence—including expert reports—should be excluded, the Third Circuit typically looks to four factors: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). At times, courts add two additional factors to their analysis—namely "the explanation for failure to disclose; and [] the importance of the testimony to be sought"—although these are often simply "taken into account in relation to the 'bad faith or willfulness' factor" rather than articulated separately. *Withrow v.* Spears, 967 F. Supp. 2d 982, 1000, 1001 n.11 (D. Del. 2013). Relatedly, the "[v]iolation of scheduling orders, when accompanied by unsatisfactory explanations, 'may be characterized fairly as willful and bad faith.'" *E.M. Sergeant Pulp & Chem. Co., Inc. v. Travelers Indem. Co. Inc.*, No. 12-1741, 2015 WL 9413094, at *5 (D.N.J. Dec. 22, 2015) (quoting *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 592 (D.N.J. 1994)). And although "[t]he

6

exclusion of evidence is an extreme sanction," *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 791092 (3d Cir. 1994), courts in this Circuit have explained that both "extreme neglect," *In re Mercedes-Benz Antitrust Litig.*, 225 F.R.D. 498, 506 (D.N.J. 2005), and "litigation conduct that is clearly unprofessional or inappropriate," *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, 2007 WL 521894 at *4 (D. Del. Feb. 15, 2007) may justify exclusion.

Turning to these factors, Defendant was understandably and justifiably surprised by an expert report disclosed nearly three years after the close of discovery, more than two years after summary judgment briefing, and nearly a year after summary judgment itself—without Plaintiffs having ever sought leave for a modification of the scheduling order or even having raised the issues to the Court that purportedly led to the three-year delay. While the prejudice here is not quite as severe as in cases where trial is already scheduled, *see, e.g., Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir. 1985), Defendant would nonetheless be prejudiced by having to address, depose, and rebut an expert report on a wholly new and distinct subject matter that has appeared long since settled. *Cf. id.* at 905 (noting prejudice minimized where defendant had "familiarity with [the witness]"); *see also Konstantopoulos*, 112 F.3d at 719-20 (prejudice and surprise demonstrated where expert was disclosed eighteen months after the close of discovery and three weeks prior to trial).

On balance, the other factors also support exclusion. Although prejudice could perhaps be cured by potentially reopening discovery and amending the scheduling order to allow Defendant to depose Dr. Barnet and offer a rebuttal expert (who would subsequently have to be deposed, in turn, by Plaintiffs), such means would directly and substantially undermine the third factor—"the extent to which waiver of the rule . . . would disrupt the orderly and efficient trial of the case or of

7

other cases in the court. *Nicholas*, 227 F.3d at 148. And crucially, with respect to the fourth factor, serving the expert report nearly three years late without ever alerting Defendant or the Court beforehand suggests "flagrant disregard" of the Court's scheduling order, *Paoli*, 35 F.3d at 792, or at the least "extreme neglect," *Mercedes-Benz*, 225 F.R.D. at 506—which may constitute bad faith or willfulness in this context. This is further underscored by Plaintiffs' failure to offer a satisfactory explanation for their delay. *See Withrow*, 967 F. Supp. 2d at 1000. First, Plaintiffs point to Defendant's own document production delays during discovery, explaining that Defendant produced "the most significant documentation relevant to the contents of the expert report at issue on or about April 13, 2016, almost three (3) years after first ordered by the Court in 2013 and well after that Court-ordered fact discovery end date of March 31, 2016." ECF No. 109-1 at ¶ 13. Of course, Defendants' two-week lateness (March 31, 2016 to April 13, 2016) does not explain Plaintiffs' need for *an additional three years*—indeed, the Court modified the scheduling order accordingly so that expert reports would be due June 15, 2016 instead of June 1, 2016. *See* ECF No. 70. Nor does Defendant's three year "delay" justify Plaintiffs' untimeliness, since Plaintiffs concede that Defendant's delays were permitted by Court-approved extensions and exacerbated by mediation. *Id.* at ¶¶ 9-11. Second, Plaintiffs offer a conclusory assertion that the relevant documents produced by Defendant "were produced in such a way as to hide documents," ECF No. 109-1 at ¶ 14, but offer no explanation for their failure to alert the Court of this conduct during discovery or at any point before serving the Barnet Report, when the Court could have addressed it through discovery rules designed precisely for such behavior if indeed true. Moreover, the "key spreadsheet" that Plaintiffs say was "produced in pieces" and "impossible to pick up" appears to be, according to Plaintiffs' own certification, the consecutive documents numbered LN003587 through LN003614—hardly scattered throughout Defendant's entire production. ECF No. 109 at

7; ECF No. 109-1 at ¶¶ 14, 21. Third, Plaintiffs' excuse of changing counsel in the summer of 2018 fares no better as it offers no explanation for the two years before that and, again, does not explain why Plaintiffs did not seek leave of the Court at that time. Accordingly, this Court finds Plaintiffs have failed to justify their delay.

Additionally, the "importance of the testimony to be sought," *Withrow*, 967 F. Supp. 2d at 1000, also favors Defendants. As set forth above, the Barnet Report offered two principal opinions—concerning Plaintiffs' decision not to partner with Defendant in light of its predatory business model and Plaintiffs' promotion experience such that they were not a "new business." ECF No. 117-2 at 3. The live issues after summary judgment, however, relate to whether Defendant had specific conversations and communications in which it pressured third parties not to engage with Plaintiffs and/or defamed Plaintiffs. *See* SJ Decision at 6-12, 16. Neither opinion speaks directly to these issues. Further, it is unclear precisely how the Defendant's general business model relates to punitive damages, as Plaintiffs contend, *see* ECF No. 117 at 11-12, given that New Jersey law requires "circumstances of aggravation or outrage, such as spite or malice," or "an evil-minded act," *Di Giovanni v. Pessel*, 260 A.2d 510, 511 (N.J. 1970), and the Barnet Report does not speak to Defendant's subjective wrongful motive.[3] *See Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1230 (N.J. 1984) ("The right to award exemplary damages primarily rests upon the single ground—wrongful motive."); *see also Buono Sales, Inc. v. Chrysler Motor Corp.*, 449 F.2d 715, 723 (3d Cir. 1971) (denying punitive damages in tortious interference claim because defendant was motivated "by a desire to promote its own business, and not by

---

[3] Further questions concerning the Barnet Report's relevance to punitive damages arise when considering that punitive damages require compensatory damages and Plaintiffs have acknowledged that, without reversal of the SJ Decision, "any trial would be over nominal damages." ECF No. 91-1 at ¶ 7; *see* N.J. Stat. Ann. § 2A:15-5.13 ("Punitive damages may be awarded only if compensatory have been awarded . . . . An award of nominal damages cannot support an award of punitive damages.")

9

malice, ill-will, or evil motive"). Moreover, the Barnet Report's second principal opinion explicitly asserts that Plaintiffs were not a "new business"—in direct contravention of the summary judgment decision, and thus necessarily irrelevant to the live issues. In fact, Plaintiffs acknowledge that they sought to introduce the Barnet Report in part because it would be helpful "in front of the Third Circuit on appeal, as it directly contradicts the Judge's erroneous finding [on summary judgment.]" ECF No. 117-2, Cover Letter. Therefore, the lack of the Barnet Report's importance to the remaining issues at trial also weighs in favor of exclusion.

Finally, Plaintiffs' failure to comply with the Court's scheduling order is neither "substantially justified" nor "harmless." Fed. R. Civ. P. 37(c)(1) (providing that "the party is not allowed to use [undisclosed] information or [an undisclosed] witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"). Substantial justification, requires either a "genuine dispute concerning [Plaintiffs'] compliance" with the Court's order or circumstances which "could satisfy a reasonable person that parties could differ as to whether [Plaintiffs were] required to comply." *Vaskas v. Kenworth Truck Co.*, No. 10-1024, 2013 WL 1207963, at *3 (M.D. Pa. Mar. 25, 2013) (citations omitted). Of course, Plaintiffs do not suggest here that they complied with the Court-ordered deadline or, instead, that compliance was unnecessary. Further, Plaintiffs' failure to comply was not harmless because a failure to disclose an expert or expert report is harmless "if it involves an honest mistake, *coupled with sufficient knowledge by the other party of the material that has not been produced.*" *Id.* at *3 (emphasis added). As discussed above, however, Defendants were justifiably surprised by both the identity of the expert and the new subject matter of his report.

Therefore, the Court finds that Judge Waldor's decision to exclude the Barnet Report on account of its untimeliness was not contrary to applicable law, nor is reversal required because of

10

a failure to state the factors guiding exclusion of evidence.[4]

### b. The Barnet Report's Contravention of the Summary Judgement Decision

Plaintiffs further argue that Judge Waldor's conclusion that the Barnet Report contravened the Court's SJ Decision was premised on two faulty findings: that summary judgment precluded Plaintiffs from seeking all damages in their tortious interference claim; and that the Barnet Report was only relevant to damages. As a result, Plaintiffs contend, the decision to exclude the Barnet Report was clearly erroneous.

To start, the thrust of Defendant's motion to strike and Judge Waldor's Opinion was concerning timeliness. Defendant's motion to strike, ECF No. 105-1, focused on Plaintiffs' failure to comply with the Court's scheduling order and Plaintiffs' opposition was similarly focused on the timeliness issue, ECF No. 109. Indeed, the Opinion itself suggests Defendant's narrow argument on timeliness was the basis for the decision. *See* ECF No. 115 at 4:19-21 ("Defendant moves to strike the report due to a lack of timeliness, which with [sic] the Court agrees.").

Nevertheless, even if not controlling as to her decision, Judge Waldor's conclusion that the Barnet Report contravened the SJ Decision was substantially correct. Although part of the Opinion can be interpreted to suggest that the SJ Decision prevented *all* damages from Plaintiffs' tortious interference claim (instead of just lost profits), the Opinion accurately describes the underlying decision elsewhere. *Compare* ECF No. 115 at 4:13-16 *with id.* at 3:24 – 4:12; *see also supra* at 9 n.3. Moreover, as discussed above in detail, the Barnet Report is indeed in contravention of the SJ Decision. *See supra* at 9-10. Simply put, it expressly opines that Plaintiffs were not a new business. *Compare* Barnet Report at 3 ("[I]t is my view that they are not in fact a "New Business.") *with* SJ

---

[4] To the extent Plaintiffs argue Judge Waldor did not consider their arguments, that is belied by the record. The Opinion expressly acknowledged Plaintiffs' argument that their failure to timely serve the Barnet Report was justified by an "unclean hands theory in that the defendant was often recalcitrant, or late, or non-compliant with discovery." ECF No. 115 at 3.

Decision at 19 ("The new-business rule operates here to bar Plaintiffs from recovering lost profits."). Further, the procedural history of this case underscores that the Barnet Report is being introduced not in accordance with the SJ Decision but to attack it: Plaintiffs unsuccessfully contested application of the new-business rule at summary judgment, ECF No. 75; Plaintiffs then unsuccessfully moved for interlocutory appeal on the same ground, ECF No. 91; and finally, nearly eight months later, Plaintiffs submitted the Barnet Report opining on this same issue with an explanation to this Court that the report would be helpful "in front of the Third Circuit on appeal." Barnet Report, Cover Letter. Accordingly, Judge Waldor was well within her discretion to determine that the Barnet Report contravened the SJ Decision and sought to revisit issues already disposed of by the Court. *See Marks*, 347 F. Supp. 2d at 149. There is thus nothing that leaves this Court "with the definite and firm conviction that a mistake has been committed.'" *Kounelis*, 529 F. Supp. 2d at 518. Because the Court's own analysis shows that Judge Waldor reached the right result in striking Plaintiffs' expert report, it concludes that Judge Waldor's finding as to the scope of the Barnet Report was not clearly erroneous.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' appeal of Judge Waldor's decision to exclude the Barnet Report is denied.

Accordingly, **IT IS** on this 18th day of July, 2022:

**ORDERED** that Plaintiffs' appeal (ECF No. 117) is **DENIED**; and it is further

**ORDERED** that the order striking Plaintiffs' expert report (ECF No. 113) is **AFFIRMED**, and, in accordance with that order:

    (a) Defendant's motion to strike (ECF No. 105), is granted;

    (b) Any and all reports prepared by Dr. Barnet are excluded from use in this litigation;

12

(c) Dr. Barnet is excluded from testifying as an expert witness at trial in this litigation;

(d) Dr. Barnet shall destroy all Live Nation Confidential Documents in his possession, custody, or control.

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**
