**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT,<br><br>Plaintiffs,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br>                              Defendant. | Civil Action No. 11-07318 (CCC) (CLW) |

**DEFENDANT'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTIONS *IN LIMINE***

 

**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, New Jersey  07932
(973) 360-7900 (Telephone)
(973) 301-8410 (Facsimile)
*Attorneys for Defendant*
*Live Nation Entertainment, Inc.*

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

SUMMARY OF FACTS PERTINENT TO ALL MOTIONS ......................................................2

    A.     Plaintiffs' Claims and the Summary Judgment Opinion .........................................2

    B.     Lost Profits Are Again Ruled Out ..........................................................................4

    C.     Lost Profits are the Only Damages Sought and Identified in Discovery .................5

    D.     The Court Again Identifies the Remaining Issues to be Tried ................................6

    E.     Plaintiffs' Case/the Final Pretrial Order .................................................................7

MOTION I

    PLAINTIFFS SHOULD BE BARRED FROM SEEKING
    TO INTRODUCE ANY EVIDENCE ABOUT DAMAGES .................................8

MOTION II

    THE COURT SHOULD DISMISS COUNT II OF THE
    COMPLAINT ALLEGING INTERFERENCE FOR
    FAILURE TO SATISFY PRIMA FACIE CASE .....................................................9

MOTION III

    THE COURT SHOULD LIMIT THE TRIAL TO
    THE FOUR TRIABLE ISSUES PREVIOUSLY IDENTIFIED ...........................10

CONCLUSION ............................................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES**                                                                              **PAGE**

*Christianson v. Colt Industries Operating Corp.*,
   486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) ............................................................8

*Eli Lilly and Co. v. Roussel Corp.,*
   23 F. Supp. 2d 460, 494 (D.N.J.1998) ....................................................................................10

*Graco Inc. v. PMC Global, Inc.*,
   No. 08–1304, 2012 WL 762448, 2012 U.S. Dist. LEXIS
   188865 (D.N.J. Feb. 15, 2012) ................................................................................................10

*Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*,
   123 F.3d 111 (3d Cir. 1997) .....................................................................................................8

*New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*,
   141 F. Supp. 3d 298 (D.N.J. 2015) .........................................................................................10

**OTHER AUTHORITIES**

FED. R. EVID. 401, 402 ..............................................................................................................9, 10

18 Charles A. Wright, Arthur R. Miller, Edward Cooper,
   Federal Practice and Procedure § 4478 at 788 (1981) ..............................................................9

N.J. Stat. Ann. § 2A:15-5.13 ...........................................................................................................7

**PRELIMINARY STATEMENT**

Senator Daniel Patrick Moynahan once famously stated that: "Everyone is entitled to their own opinions, but they are not entitled to their own facts." These days however people seem to increasingly embrace the concept of "alternative facts" to justify their non-compliance with realities they would prefer to avoid. Here, this Court previously has made a series of clear rulings, explained in three written opinions, which: mandate the conclusion that Plaintiffs cannot obtain any potential monetary damage award given the Court's order barring the recovery of lost profits (which is the only type of damages Plaintiffs disclosed during discovery); and identify a handful of issues that remain left in his case to be tried. These motions *in limine* are necessary because Plaintiffs propose a framework for the trial of this case that simply ignores the effect of the Court's prior decisions. Plaintiffs: (a) intend to call at least 10 witnesses (nine fact witness and an expert on damages); (b) identify another 17 witnesses they "reserve the right" to call; and (c) identify 385 exhibits they intend to introduce into evidence. Plaintiffs propose conducting the trial before a jury that they intend to ask to sit for two weeks on liability and an additional one or two days on damages. *See* Final Pretrial Order (ECF # 133). Virtually none of Plaintiffs' proposed witnesses, exhibits or facts pertain to any of the handful of issues that remain alive and given the Court's clear rulings, any evidence about damages would be plainly irrelevant. These motions *in limine* are necessary to address the wide chasm between the fact-based realities of this case based on the Court's prior rulings and the expansive trial Plaintiffs intend to present and rulings on them will assist the Court in the administration of its trial calendar and will spare Defendant Live Nation the burden of trial preparation on issues that have been eliminated from the case.

- **First**, the Court should enter an Order barring Plaintiffs from seeking to introduce any evidence on damages, including both fact and proposed expert testimony. The Court's

prior rulings, which are law of the case, have made clear that: (a) Plaintiffs may not recover lost profits on their claim for tortious interference with prospective economic opportunity (and lost profits are the *only* form of damages Plaintiffs identified and attempted to quantify and establish in discovery); (b) Plaintiffs' recovery on their claim for defamation is limited to an award of nominal damages; and (c) without compensable damages, there can be no claim for punitive damages. Consequently, any evidence about alleged damages is irrelevant to any issue to be tried.

- **Second**, the Court should enter an Order dismissing Plaintiffs' claim for tortious interference with prospective business relationships, because absent proof of damages, Plaintiffs will be unable to state a *prima facie* case for this cause of action, which requires as an essential element, specified proof of economic harm, an element that Plaintiffs simply cannot establish because of the Court's prior rulings.

- **Third,** the Court should enter an Order limiting the presentation of evidence at the trial to the four triable issues previously identified by the Court as being the only "live" issues, because evidence about any other issues is irrelevant.

## SUMMARY OF FACTS PERTINENT TO ALL MOTIONS

### A.   Plaintiffs' Claims and the Summary Judgment Opinion

After Plaintiffs' initial Complaint was dismissed without prejudice following an initial motion to dismiss, Plaintiffs filed their operative pleading, an Amended Complaint, which asserts three claims against Live Nation. Count I alleges that Live Nation tortiously interfered with Plaintiffs' contractual relationship with State Fair Event Management ("SFEM"). Count II alleges that Live Nation tortiously interfered with Plaintiffs' prospective ability to book artists represented by the talent agencies William Morris Endeavor ("WME"), AM Only ("AMO") and The Windish

Agency ("Windish"). Count III of the Complaint alleges that Live Nation defamed Plaintiffs. *See* Amended Complaint (ECF # 24).

Following extensive document, deposition and expert discovery, the parties' cross-moved for summary judgment; the Court's rulings on which were embodied in a 20-page Opinion. Count I, alleging tortious interference with SFEM, was dismissed by the Court. *See* ECF No. 81, "Summary Judgment Opinion" at 11 ("Because all alleged interference pre-dates Plaintiffs' March 7, 2011 contract, the Court grants summary judgment to Live Nation on Count 1"). Count II, alleging interference with WME, AMO and Windish, narrowly survived, based on the Court's determination that there were three specifically identified disputed facts on the alleged interference. *Id.* at 11-13. Still, the Court ruled that Plaintiffs were barred from seeking lost profits relating to their narrowly surviving claim for interference, because the alleged lost profits were "too remote and speculative to meet the legal standard of reasonable certainty." *Id.* at 20 (internal quotation marks and citation omitted.) Count III, alleging defamation, again narrowly survived, based on the conclusion that there was one allegedly defamatory statement that could support a claim. *Id.* at 16. Yet although the Court found that an email from Live Nation was potentially defamatory, it also ruled that any recovery for defamation would be limited to "nominal" damages. Summary Judgment Opinion at 16-18.[1] Thus, the Court found that, under the "presumed

---

[1] Specifically, the Court found that because the email was sent on February 23, 2011 to SFEM, and SFEM subsequently contracted with Plaintiffs on March 7, 2011, the email could not support a claim for "special" damages (which the Court described as compensating Plaintiffs for "specific economic or pecuniary loss"). Summary Judgment Opinion at 16-17. The Court also found that Plaintiffs failed to adduce any evidence, and thus to create an issue of fact for trial, concerning "general" damages suffered as a consequence of the alleged defamation. *Id*. at 17 (describing general damages as "address[ing] harm that is not capable of precise monetary calculation, including impairment to reputation and standing in the community, along with personal humiliation, mental anguish and suffering to the extent that they flow from the reputational injury.").

3

damages" doctrine, Plaintiffs could proceed to trial on their claim that the February 23 email is defamatory, but they are limited at trial to a recovery of only nominal damages.

The Court's Summary Judgment Opinion thus limited the scope of this case to four triable issues (referenced below as the Four Triable Issues):

- Issue 1 (Count II) – whether Live Nation engaged in interference with the WME talent agency based on Jason Miller's February 15, 2011 email. *See* Summary Judgment Opinion at 6-7 ("whether [Ms. Kirby of WME's] opinion of [Plaintiffs' Agent John] DiMatteo as 'flaky' and having poor marketing performance was colored by Miller's comments [in his February 15, 2011 email] is a disputed fact.").

- Issue 2 (Count II) – whether, as Plaintiff Dorfman alleges, Jason Miller of Live Nation made a threat in a meeting with Plaintiffs on March 3, 2011 and, if so, whether Live Nation carried out the threat. *See* Summary Judgment Opinion at 7 (finding a triable issue as to whether Mr. Dorfman's recollection of the meeting was accurate and whether, if Mr. Miller made the alleged statements, Live Nation carried through on its "threats.").

- Issue 3 (Count II) – whether, as Plaintiffs allege, Jason Miller of Live Nation made a threat in a meeting with Plaintiffs on April 22, 2011 (which Plaintiffs secretly recorded) and, if so, whether Live Nation carried out the threat. *See* Summary Judgment Opinion at 8 (finding that, assuming Plaintiffs can establish the authenticity of the tape recordings, Mr. Miller's statements provide a triable issue about alleged interference).

- Issue 4 (Count III) – whether a February 23, 2011 email from Live Nation's John D'Esposito to Al Dorso, Jr. of SFEM was defamatory. *See* Summary Judgment Opinion at 16-18 (finding that while the February 23 email was potentially defamatory, even if it were found to be defamatory, it could support only a claim for "nominal" damages.).

**B.     Lost Profits Are Again Ruled Out**

Plaintiffs then sought to pursue an interlocutory appeal of the Court's decision to preclude lost profits. *See* ECF # 91-1. Plaintiffs contended that a determination by the Third Circuit whether the Court had properly relied on the "new-business rule" to rule out lost profits (rather than waiting to appeal as of right) was in the interest of efficiency and would conserve the Court's resources since, without the ability to seek lost profits, "any trial would be over nominal damages." *Id.* at ¶ 7. The Court denied the motion, in an 8-page published opinion (353 F. Supp. 3d 309 (2018)) in which the Court also

4

took the opportunity to refine its prior ruling, moreover, that even if the new-business rule did not act as an absolute bar to recovering lost profits, they would still be precluded under the reasonable certainty test, which Plaintiffs touted as the proper standard. *See* ECF #98 at 4, 8.

### C. Lost Profits are the Only Damages Sought and Identified in Discovery

Throughout discovery, the only type of damages Plaintiffs identified they were seeking to recover on the interference claim they advanced in Count II was lost profits. For example, when asked in Interrogatories to identify and describe the type, factual basis for and calculation of damages they were seeking to recover, Plaintiffs responded as follows:

> Plaintiffs have sustained actual and economic damages in the form of lost revenues as a result of the concerts contemplated by their Contract not taking place. These lost revenues include but are not limited to revenues from ticket sales and liquor sales at each of the concerts contemplated under Plaintiffs' contract with SFEM.

*See* Certification of Ian S. Marx, dated March 14, 2024 ("Marx Cert."), Ex. A (Answer to Interrogatory No. 6.)

Similarly, Marianne Demario, Plaintiffs' proposed expert witness on damages, and the only witness on Plaintiffs' behalf who purported to establish and quantify damages, served a report in which she clearly and unequivocally focused solely on lost profits as the only type of damages Plaintiffs were purporting to quantify through her testimony. In relevant part, her report explains that:

> Plaintiffs' damages are equal to the ***profits*** Plaintiffs would have made under the Agreement with State Fair. ***In this report I calculate lost profits*** from the electronic dance concerts.

Marx Cert., Ex. B (emphasis added). She also explained:

> ***I estimated lost profits*** from Electronic Dance Concerts to be held during the New Jersey State Fair in the years 2011 through 2014

5

>plus additional amounts assuming Plaintiffs exercised their option for a five year extension to the Contract (see Exhibits C and D). Plaintiffs are claiming additional damages related to two smaller concerts (Latin and Rock Festivals) as well as secondary concerts, and after parties.  As of this report, I have not calculated damages for these additional lost profits.

*Id.* (emphasis added).

Ms. Demario further confirmed at deposition that her report contained all of the opinions Plaintiffs' intended to offer at trial, which were comprised solely of lost profits and nothing else. *See* Marx Cert., Ex. C (Demario Tr. 15:18-16:16; 34:11-36:25)

### D.    The Court Again Identifies the Remaining Issues to be Tried

Subsequent motion practice resulted in a third relevant written decision from this Court which, again, embraced the validity of the reached conclusions about the exclusion of damages and the narrow scope of issues remaining to be tried.  The motion arose because of a "new" expert report served by Plaintiffs in June 2019, ***three years*** after the relevant, Court ordered, deadline for the service of expert reports.  On September 27, 2019, the Magistrate Judge (who presided over discovery matters in this case for more than six years, conducted at least 13 conferences, and entered at least 6 scheduling order modifications, during that timeframe) entered an Order that correctly and appropriately granted Live Nation's motion to strike the report and bar the alleged "new" expert from testifying at trial.  ECF # 113.  Plaintiffs appealed that ruling, which resulted in a 13-page Opinion from the Court.  ECF # 127.  Relevant here, the Court identified and agreed that are four issues are left for trial:

>The SJ Decision disposed of Plaintiffs' claim for tortious interference of contract (Count I) because any conduct possibly amounting to tortious interference occurred prior to the existence of a contract. *Id.* at 10-11. However, Plaintiffs' remaining claims—tortious interference of prospective business relationships (Count II) and defamation (Count III)— could proceed, subject to certain limitations. Plaintiffs would be barred at trial from seeking lost profits under Count II due to the "new-business rule." *Id.* at 18-20.

6

> Additionally, ***the defamation claim was narrowed to a single comment in an email from Defendant on February 23, 2011***, and was found to be able to support only nominal damages, since special and general damages were precluded by the timing of the alleged statement. *Id.* at 16-18. ***Accordingly, the triable issues of fact for trial concern whether Defendant engaged in certain conversations and communications in which it unlawfully pressured SFEM and talent agencies not to work with Plaintiffs and, further, whether the February 23, 2011 email was in fact defamatory***. *Id.* at 6-7, 16-18.[2]

*See* ECF # 127 at __.

The Court's Opinion also explained that, in light of the Court's prior rulings, and Plaintiffs' admission in its prior motion, punitive damages are unavailable here. *See* ECF # 127 ("punitive damages require compensatory damages and Plaintiffs have acknowledged that, without reversal of the SJ Decision . . . any trial would be over nominal damages.")(citing N.J. Stat. Ann. § 2A:15-5.13 ("Punitive damages may be awarded only if compensatory have been awarded . . . . An award of nominal damages cannot support an award of punitive damages.")).

### E.  Plaintiffs' Case/the Final Pretrial Order

Despite the reality of the above Orders of the Court, Plaintiffs propose occupying a jury and the Court for several weeks in an expansive trial with dozens of witnesses and hundreds of exhibits. As explained in Live Nation's proposed trial format in the Final Pretrial Order, based on the Court's prior rulings and what remains of the case, this should be a one-day trial limited to liability only on four narrowly defined issues, as damages have been ruled out based on prior orders of the Court. *See* PTO (ECF # 133). Plaintiffs (unrealistically and in a manner that simply ignores the Court's prior rulings), believe this trial should be expansive. They intend to introduce at least 385 exhibits and estimate the trial will take two weeks on liability and one to two more day

---

[2] The Court further observed: "The live issues after summary judgment, however, relate to whether Defendant had specific conversations and communications in which it pressured third parties not to engage with Plaintiffs and/or defamed Plaintiffs." *See* ECF #127.

7

on damages, with nine "will call" liability witness (and 17 "may call" witnesses) and three witnesses on damages, including an expert whose only opinion was on lost profits (Plaintiffs apparently still intend to present lost profits evidence and witnesses despite the Court's clear rulings). *See* ECF 133. Specifically concerning lost profits, Plaintiffs explain in the Final Pretrial Order that:

> ***Plaintiffs*** plan to introduce expert testimony on damages related to the contract at issue here and hence ***will oppose any attempt to limit damages and/or the scope of the case*** to the "Four Triable Issues" as indicated by Defendants below. While the previous summary judgment order was clearly entered erroneously, particularly given the current New Jersey Supreme Court case law on lost profits, ***Plaintiffs' damages are not related to future lost profits, but rather the profits lost on related to the actual contract at issue***.

ECF # 133 at p. 2 (emphasis added).

## MOTION I

### PLAINTIFFS SHOULD BE BARRED FROM SEEKING TO INTRODUCE ANY EVIDENCE ABOUT DAMAGES

As discussed above, this Court has ruled clearly, unequivocally and without qualification, that Plaintiffs are not entitled to recover lost profits on their claim for tortious interference and that Plaintiffs' potential recovery on their claim for defamation is limited to nominal damages. Enforcing these prior rulings promotes judicial economy, finality and fairness – the main goals of the law-of-the-case doctrine.

The law-of-the-case doctrine directs courts to "refrain from re-deciding issues that were resolved earlier in the litigation*." Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).[3] As explained by the Court of Appeals, "the doctrine

---

[3] The doctrine applies "as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988).

8

promotes finality and judicial economy" "Because it prevents courts from entertaining endless appeals on the same issue." *Id.* (citing 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, Federal Practice and Procedure § 4478 at 788 (1981)("Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.").

As discussed above, on Plaintiffs' interference claim, the only damages Plaintiffs quantified and attempted to establish during discovery were lost profits and plaintiffs are barred from seeking lost profits of any sort (regardless of whether they are future, present or past). On Plaintiffs' defamation claim, the Court has clearly limited Plaintiffs recovery to nominal damages. The Court has also observed that punitive damages are unavailable here, given that compensatory damages cannot be awarded and award of nominal damages cannot support an award of punitive damages. The above rulings of the Court should be enforced and an order should therefore be entered, barring Plaintiffs from seeking to introduce any evidence about damages, as such evidence is irrelevant and thus inadmissible. *See* FED. R. EVID. 401, 402.

## MOTION II

### THE COURT SHOULD DISMISS COUNT II OF THE COMPLAINT ALLEGING INTERFERENCE FOR FAILURE TO SATISFY PRIMA FACIE CASE

If the Court grants Motion I and bars Plaintiffs from offering any evidence of damages (as the Court should based on its prior rulings), then the Court should as a natural and logical next step, dismiss Count I of the Amended Complaint, because Plaintiffs are required to establish particularlized economic harm as an essential element of this claim and Plaintiffs would be unable to do so.

Under New Jersey law, tortious interference with prospective economic benefit has four essential elements that must be established at trial to state the *prima facie* case: "(1) a protected

9

interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." *New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 309 (D.N.J. 2015); *see Graco Inc. v. PMC Global, Inc.,* No. 08–1304, 2012 WL 762448, at *17, 2012 U.S. Dist. LEXIS 188865, at *49–50 (D.N.J. Feb. 15, 2012) ("Economic damages are a substantive element of a tortious interference claim. These damages must be identified with a certain degree of specificity.") (quoting *Eli Lilly and Co. v. Roussel Corp.,* 23 F. Supp. 2d 460, 494 (D.N.J.1998)).

The Court has already ruled that Plaintiffs have not established the economic damages necessary to state a *prima facie* case of interference. Consequently, the Court should enter an Order dismissing Count I of the Amended Complaint.

## MOTION III

### THE COURT SHOULD LIMIT THE TRIAL TO THE FOUR TRIABLE ISSUES PREVIOUSLY IDENTIFIED

As discussed, the Court has identified Four Triable Issues that are "live" for trial in what remains of Plaintiffs' Amended Complaint. Any evidence the Plaintiffs seek to introduce that is not germane to these narrowly defined issues is therefore irrelevant and should be excluded. *See* FED. R. EVID. 401, 402. The Court should enforce its prior rulings and enter an Order barring Plaintiffs from offering facts or witnesses not germane to the Four Triable Issues.

### **CONCLUSION**

Live Nation asks the Court to grant its motions and enter an order:

1.      Barring Plaintiffs from attempting to introduce any evidence on damages;

2. Dismissing Count II of Plaintiffs' Amended Complaint because plaintiffs are unable to establish damages and damages are an essential element of *prima facie* case for tortious interference; and

3. Barring Plaintiffs from offering any witnesses or facts that are not germane to the Four Triable issues remaining.

        Respectfully submitted,

        **GREENBERG TRAURIG, LLP**

By: /s/ *Ian S. Marx*
    Ian S. Marx
    500 Campus Drive, Suite 400
    Florham Park, New Jersey 07932
    (973) 360-7900

    Attorneys for Defendant

Dated: March 15, 2024

11