**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 360-7900 (Telephone)
(973) 301-8410 (Facsimile)
*Attorneys for Defendant*
*Live Nation Entertainment, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT,<br><br>                Plaintiffs,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>                Defendant. | Civil Action No. 11-07318 (CCC) (CLW)<br><br><br>**CERTIFICATION OF IAN S. MARX IN CONNECTION WITH MOTIONS *IN LIMINE*** |

I, IAN S. MARX, of full age, certify as follows:

1.     I am a shareholder of the law firm of Greenberg Traurig, LLP, attorneys for Defendant Live Nation Entertainment, Inc. in this matter. I make this certification on the basis of my familiarity with the documents described below and in support of Live Nation's motions *in limine*.

2.     Attached as Exhibit A is a true and correct copy of Plaintiffs' Response to Interrogatory Nubmer 6 of Defendant's First Set of Interrogatories, dated March 15, 2013.

3.     Attached as Exhibit B is a true and correct copy of the Expert Report of Marianne L. Demario, dated June 15, 2016.

4.      Attached as Exhibit C is a true and correct copy of excerpts from the deposition of Marianne Demario, taken on June 21, 2016.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____/s/ Ian S. Marx_____
IAN S. MARX

Dated:  March 14, 2024

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT, | ) ) ) | Civil Action No. 2:11-cv-07318-WHW-SCM |
| Plaintiffs, | ) ) | Hon. Steven C. Mannion |
| vs. | ) ) | PLAINTIFFS' RESPONSES TO |
| LIVE NATION ENTERTAINMENT, INC., | ) ) ) | DEFENDANT'S FIRST SET OF INTERROGATORIES |
| Defendant. | ) ) | |

TO: Ian S. Marx
Greenberg Traurig, LLP
200 Park Avenue
Florham Park, NJ 07932
Attorney for Defendants

    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and this Court's January 31, 2013 Initial Scheduling Order, Plaintiffs, Juice Entertainment, LLC, Thomas Dorfman, and Chris Barrett, ("Plaintiffs"), by and through their attorneys AJAMIE, LLP, and STONE & MAGNANINI LLP, hereby responds to the following interrogatories:

## GENERAL STATEMENTS & OBJECTIONS

    The following general objections apply to all responses and are incorporated by reference into the objections to each response. These responses are made without waiver of, or prejudice to, these or other objections Plaintiffs may make. All such objections are expressly preserved.

    1.    Plaintiffs object to the Interrogatories, Instructions, and Definitions to the extent they seek to impose obligations on Plaintiffs beyond those imposed by the Federal Rules of Civil Procedure.

financial resources to stage the contemplated concerts, lacked the necessary expertise to stage the contemplated concerts, and could not be trusted.

Prior to these statements being made each of the Plaintiffs had a good reputation in the concert promotion and production industry. This is based on their past record of success. See Plaintiffs' Answer to Interrogatory No. 2 for names of persons with knowledge of Plaintiffs past success in the industry. Also, see Plaintiffs' document production for documents evidencing Plaintiffs past successes in the industry.

After the defamatory statements Plaintiffs have not been able to work in the industry in any substantial way.

Plaintiffs will produce the documentary evidence, in their possession, custody and control, of these defamatory statements with their document production. Plaintiffs will supplement this Answer as discovery proceeds.

6.   For all damage You allegedly sustained as a result of Defendant's actions, identify and describe:

        a.   The type of the damage;

        b.   The factual basis for the damage;

        c.   The calculation of the damage;

        d.   All witnesses with knowledge concerning the damage; and

        e.   All documents concerning the damage.

**Response:**   Plaintiffs assert the General Objections. Subject to and without waiving the General Objections, Plaintiffs have sustained actual and economic damages in the form of lost revenues as a result of the concerts contemplated by their Contract not taking place. These lost revenues include but are not limited to revenues from ticket sales and liquor sales at each of the concerts contemplated under Plaintiffs' contract with SFEM. Plaintiffs have also sustained economic damages as the result of the defamatory statements made about them, consisting of not only lost revenues from the concerts which did not take place, but also lost revenues from their concert promotion and production business generally, as they have not been able to work in any substantial way in the industry since they were defamed. See Plaintiffs' Answer to Interrogatory No.2. for the names of people who may have knowledge concerning Plaintiffs' standing in the industry both before and after the events made the basis of this suit. Plaintiffs Dorfman and Barrett have also

Respectfully submitted,

*Attorneys for Plaintiffs Juice Entertainment, LLC, Thomas Dorfman, and Chris Barrett*

David S. Stone
Amy Walker Wagner
David B. Harrison
STONE & MAGNANINI LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Tel: (973) 218-1111
Fax: (973) 218-1106

Thomas R. Ajamie
David S. Siegel
AJAMIE LLP
Pennzoil Place – South Tower
711 Louisiana Street, Suite 2150
Houston, Texas 77002
Tel: (713) 860-1600
Fax: (713) 860-1699

`UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT,** ) ) ) ) | **Civil Action No. 2:11-cv-07318-WHW-SCM** |
| Plaintiffs, ) ) | Hon. Steven C. Mannion |
| vs. ) ) | |
| **LIVE NATION ENTERTAINMENT, INC.,** ) ) | |
| Defendant. ) ) | |

## VERIFICATION

BEFORE ME, the undersigned Notary Public, duly authorized to administer oaths in the State of New Jersey, personally appeared CHRIS BARRETT of JUICE ENTERTAINMENT, LLC, who, after first being duly sworn, testifies that the facts stated in Plaintiffs' Responses to Defendant's First Set of Interrogatories are true and correct, to the best of his knowledge, information and belief.

This 15 day of March, 2013.

By: _____
Chris Barrett

Sworn to and subscribed before me

this 15th day of March, 2013.

_____
Notary Public

My Commission expires:

Casey Choi
Notary Public of New Jersey
Commission Expires 08/02/2015
I.D. No: 2255863

## CERTIFICATE OF SERVICE

I certify that on March 15th, 2013, a true and correct copy of the foregoing document was served by certified mail, return receipt requested and email on all counsel of record, including:

> Ian S. Marx
> **GREENBERG TRAURIG, LLP**
> 200 Park Avenue
> Florham Park, New Jersey 07932

David S. Siegel

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, AND CHRIS BARRETT, <br><br> Plaintiffs, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., <br><br> Defendant. | Case No.2:11-cv-07318-WHW-CLW |

**EXPERT REPORT OF MARIANNE L. DEMARIO**

1.       I am a managing director of Spectrum Consulting Partners, LLC ("Spectrum"), a firm specializing in forensic, economic and financial analysis.  I have over 25 years of experience in public accounting, forensic investigations and financial consulting.  I am a Certified Public Accountant (CPA) with an accreditation in business valuation (ABV), certified in Financial Forensics (CFF), a CFA Charterholder, and an accredited member of the American Society of Appraisers with a specialty in business valuation.  I earned a Master of Business Administration (MBA) degree, with distinction, from New York University's Stern School of Business and a Bachelor of Science degree, summa cum laude, from New York University's Stern School of Business.

2.       Throughout my career, I have spent considerable time calculating lost profits damages involving contract and other disputes.  I have been retained as an expert and have testified in a variety of settings on various matters, including accounting, finance, accounting investigations, business valuation, lost profits, and commercial damages. I have been qualified as an expert witness and testified in federal and state courts as well as arbitrations.

1

3.    A copy of my resume and a list of cases in which I have testified at trial or by deposition within the last four years are attached as Exhibit A.

4.    I have been retained by counsel for Juice Entertainment ("Juice Entertainment"), Thomas Dorfman and Chris Barrett (collectively, the "Plaintiffs") to analyze and quantify certain damages incurred by Plaintiffs as a result of the actions of Live Nation Entertainment, Inc. ("Live Nation") as set forth in the Amended Complaint dated September 4, 2012.

5.    My analyses, conclusions, and opinions contained in this report are based on my experience and knowledge, and on the documents and other relevant information made available to me through pretrial discovery.  The documents that I relied on are identified in Exhibit B.  If additional relevant documentation or information is provided, I may update and supplement my analyses and this report.

## I.    INTRODUCTION.

6.    Juice Entertainment and State Fair Event Management ("State Fair") entered into an agreement dated March 7, 2011 (the "Agreement") granting Juice Entertainment "the exclusive right to broker stage and promote an electric dance event" at the New Jersey State Fair "for 2 days on the first Saturday and Sunday of the fair for 4 consecutive years commencing in 2011 with an additional 5 year option." (Agreement, Section 1(a))[1]  The Agreement also gave Juice Entertainment an exclusive right to broker, stage and promote other concerts in a designated special event area at the fair. (Agreement, Section 1(b))

7.    Under the Agreement, Juice Entertainment expected the first event to take place on June 25 and June 26, 2011.   On April 26, 2011, State Fair terminated the Agreement pursuant to Section 3(c), which required Juice Entertainment to provide State Fair with a list of "talents/acts/entertainment" as well as copies of contracts.   Plaintiffs assert that they were unable to sign up artists as a result of Live Nation's actions pressuring talent agencies and artists not to do business with Juice Entertainment. Plaintiffs also assert that Live Nation actively

---

[1] On December 1, 2010, State Fair entered into an engagement letter with Deluna, Inc., an entity owned by Mr. Dorfman, granting Deluna, Inc. the right to broker, stage and promote and electric dance event at the New Jersey State Fair from 2011 through 2014 with an additional 5 year option.  The letter states the intent to enter into a more formal contract at a later date. (JUICE0002202)

interfered with State Fair management to cause it to terminate the Agreement unnecessarily. Live Nation disparaged Plaintiffs' business competency to the State Fair in order to cause the State Fair to terminate the relationship before Plaintiffs had a chance to produce the first concert.

8.      Plaintiffs' damages are equal to the profits Plaintiffs would have made under the Agreement with State Fair. In this report I calculate lost profits from the electronic dance concerts. It is my understanding that Plaintiffs are seeking also punitive damages, damages for defamation, lost profits from other concerts and parties Plaintiffs expected to produce and sponsorship revenue related to discussions with Fashion TV.

## II.    SUMMARY OF OPINIONS AND CONCLUSIONS.

9.      Following is a summary of damages under two broad models: 1) assuming sold out capacity; and 2) 85% capacity.[2]

| SELL OUT CAPACITY | | | | | |
|---|---|---|---|---|---|
| Electronic Dance Concert | 2011 | 2012 | 2013 | 2014 | 2015-2019 |
| Total Attendees | 44,000 | 44,000 | 44,000 | 44,000 | 110,000 |
| Number of Days | 2 | 2 | 2 | 2 | 2 |
| Total Lost Revenue | 3,872,280 | 3,949,726 | 4,028,720 | 4,109,295 | 21,812,632 |
| Lost Profits | 1,212,180 | 1,157,356 | 1,149,663 | 1,179,896 | 6,374,580 |
| | | | | 2011-2014 | 2015-2019 |
| Present Value of Total Lost Profits | | | | $    3,477,956 | $    1,735,978 |
| Total | | | | | $    5,213,933 |

---

[2] The minimum capacity allowed under the contract is 70%. Plaintiffs believe it would have been possible to extend the fence line to allow an increased capacity of up to 50,000 attendees per day (November 19, 2103 deposition of Christopher Barrett at 99, 148-149). Assuming paid attendance of 45,000 per day beginning in 2012 and holding profit margins constant, damages are $9,397,585 (2011-2019). See Exhibit F.

| 85% CAPACITY | | | | | |
|---|---|---|---|---|---|
| **Electronic Dance Concert** | **2011** | **2012** | **2013** | **2014** | **2015-2019** |
| Total Attendees | 37,400 | 37,400 | 37,400 | 37,400 | 93,500 |
| Number of Days | 2 | 2 | 2 | 2 | 2 |
| Total Lost Revenue | 3,298,938 | 3,364,917 | 3,432,215 | 3,500,859 | 18,582,985 |
| Lost Profits | 698,238 | 668,726 | 666,268 | 685,765 | 3,735,198 |
| | | | | | **2011-2014** | **2015-2019** |
| **Present Value of Total Lost Profits** | | | | $    2,010,742 | $    $ 1,016,053 |
| **Total** | | | | | $    3,026,794 |

## ANALYSES AND OPINIONS.

### a. BUSINESS MODEL.

10.    Plaintiffs were granted, among other things, the exclusive right to stage four 2-day electronic dance concerts during the New Jersey State Fair beginning in 2011 and ending in 2014 (the "Electronic Dance Concerts" or "Concerts").   The Electronic Dance Concerts were to be festivals, which are defined as "organized event[s], typically lasting several days, featuring performances by various musicians, singers, and groups."[3]

11.    Plaintiffs prepared marketing materials to assist in planning the Concerts and signing talent (see, for example, WME000039, WME000445 and WME000473).  They enlisted an experienced talent buyer, John Dimatteo and Area Event, LLC.[4] In March 2011 to April 2011, Mr. Dimatteo made numerous offers to artists to perform at the 2011 Electronic Dance Concert.

12.    Plaintiffs and Mr. Dimatteo prepared detailed projections where they modeled revenues and expenses based on projected ticket sales.  In these projections, they estimated daily attendance and talent expenses for 3-4 headlining acts per day plus a dozen lesser entertainers.[5] They also estimated expenses for production, marketing, accounting, insurance, security and other expenses.

---

[3] www.oxforddictionaries.com, accessed on May 6, 2016.
[4] Joel Zimmerman, US head of William Morris Endeavor said, "John has the marketing and promo to get this done." (WME000103)
[5] Dimatteo Projection JUICE0002204-2215 and Juice Projection JUICE0001009-010.

13.      Plaintiffs sought and obtained funding to stage the 2011 event.  Plaintiffs obtained $300,000 in funding from John Chiusolo.   The agreement with Mr. Chiusolo required Plaintiffs to pay back the $300,000 plus 25% of Juice Entertainment's net profits from the 2011 Electronic Dance Concert.[6]  Plaintiffs also expected to receive an unspecified amount of funding from Vito Bruno as part of a partnership agreement between Plaintiffs and Area Event LLC, an entity owned by Messrs. Dimatteo and Bruno.[7]  Mr. Dimatteo testified that Mr. Bruno was to provide $1 million of additional funding.[8]  Messrs. Dorfman and Barrett testified that Mr. Bruno was to fund all of the expenses of the 2011 Electronic Dance Concert.[9]  Mr. Bruno testified that it was anticipated that he would provide $300,000 but that he could have provided more and that he had relationships to obtain the production and staging work without having to pay money up front.[10]  Mr. Bruno testified that $600,000 in financing was sufficient funding to put on the 2011 Electronic Dance Concert.[11]

**b.  STATE FAIR AGREEMENT.**

14.      The Agreement granted Plaintiffs "the exclusive right to broker stage and promote an electric dance event" at the New Jersey State Fair "for 2 days on the first Saturday and Sunday of the fair for 4 consecutive years commencing in 2011 with an additional 5 year option." (Agreement, Section 1(a))  The option was contingent on the renewal of State Fair's contract with the New Jersey Sports and Exposition Authority.  Plaintiffs were also granted "the exclusive right to broker, stage and promote concerts in the designated special event area … for the duration of the fair." (Agreement, Section 1(c))

15.      The Agreement contains the following additional terms for the "electric dance event:"

a.   The days for 2011 were specified as June 25 and 26, 2011. (Agreement, Section 1(b))

---

[6] JUICE0000396-400.
[7] July 17, 2013 deposition of John Dimatteo at pp. 13, 17.
[8] July 17, 2013 deposition of John Dimatteo at pp. 37-38.
[9] November 19, 2013 deposition of Chris Barrett at pp. 208-209; November 12, 2013 deposition of Tom Dorfman at pp. 136-139.
[10] February 4, 2014 deposition of Vito Bruno at pp. 38-39, 51-53.
[11] February 4, 2014 deposition of Vito Bruno at pp. 112-114

b.  Capacity was to be at least 24,000 attendees per day. (Agreement, Section 1(d))

c.  State Fair would receive $9.00 per ticket sold (Agreement, Section 3(a)) plus a percentage of Net Proceeds (7% in 2012 and 10% in 2013/2014). Net Proceeds are defined as revenues from all ticket and other sales less sales tax and out of pocket costs incurred by Plaintiffs and State Fair. (Agreement, Section 3(a))

d.  State Fair would be reimbursed for costs related to "labor, security, box office services, materials, supplies, rentals, contract services, management personnel services, State Police services, permits, fees, taxes, utilities" and capital improvements agreed to by Plaintiffs. (Agreement, Section 3(a))

e.  State Fair would reduce the amount due to it for reimbursable expenses by up to $30,000 if attendance exceeded 30,000. (Agreement, Section 3(b))

f.  Plaintiffs would supply budgets, attendance estimates and lists of performers, equipment, etc. (Agreement, Section 3(c))

g.  Plaintiffs would meet 70% of attendance estimates. (Agreement, Section 3(d))

h.  Plaintiffs would submit a $250,000 letter of credit. (Agreement, Section 4)

i.  State Fair would charge Plaintiffs $500 for restrooms. (Agreement, Section 14(a))

c.  **LOST PROFITS.**

16.    I estimated lost profits from Electronic Dance Concerts to be held during the New Jersey State Fair in the years 2011 through 2014 plus additional amounts assuming Plaintiffs exercised their option for a five year extension to the Contract (see Exhibits C and D). Plaintiffs are claiming additional damages related to two smaller concerts (Latin and Rock Festivals) as well as secondary concerts, and after parties. As of this report, I have not calculated damages for these additional lost profits.

6

17.     To determine lost profits, I relied on the Agreement, projections prepared by Plaintiffs (the "Juice Projection"),[12] projections prepared by Mr. DiMatteo (the "Dimatteo Projection"),[13] actual results for electronic dance concerts produced by Live Nation, projections prepared by Live Nation for a two day electronic dance concert to be held in Yankee Stadium in May 2012 with a daily capacity of 45,000 (the "Yankee Projections")[14] and industry and other publicly available data.

18.     Beginning in 2012, I increase my estimates of revenues and expenses by 2% per annum to reflect inflation.

**i. Revenues.**

19.     Revenues are a function of paid attendance and average ticket price.  As noted above, capacity was to be at least 24,000 per day.  Factoring in tickets that are given away, I use the attendance number from the Juice Projection of 22,000 attendees per day.[15]

20.     Attendance numbers at these levels can be supported by actual attendance at similar festivals:[16]

---

[12]  JUICE0001009-010.

[13]  JUICE0002204-2215.

[14]  LN0002173-5. Jason Miller, Live Nation executive, expressed belief in the accuracy of the projections and success of such a festival in the New York market (LN0002306-9).

[15] Juice Projection JUICE0001009-010.

[16] Electric Daisy (NJ): https://ravefaced.com/2014/06/feature-history-electricdaisycarnival/; http://artsbeat.blogs.nytimes.com/2015/11/18/electric-daisy-carnival-to-return-to-citi-field-in-2016/?_r=0; http://www.nytimes.com/interactive/2015/04/28/business/media/The-Music-Festival-Business-Who-Owns-What.html; http://www.axs.com/news/edc-new-york-2015-statistics-and-raver-poll-55230. Electric Zoo: http://www.nycgovparks.org/parks/randallsislandpark/events/2010/09/04/electric-zoo; http://www.musikbeats.com/electric-zoo-2011-nyc-recap; http://www.cnn.com/2013/09/01/us/new-york-music-festival-canceled/; http://www.forbes.com/sites/maggiemcgrath/2013/11/04/edm-obsessed-millennials-boost-sfx-entertainment-outlook/; http://www.axs.com/electric-zoo-2015-review-65677. Mysteryland: http://www.dancingastronaut.com/2013/08/mysteryland-using-electronic-music-to-create-an-intersection-of-culture-and-creativity/; http://www.onlythebeat.com/events/2013/09/13/mysteryland-2014-woodstock-edm/; http://freewilliamsburg.com/review-mysteryland-2015-returns-to-bethel-woods-bigger-and-better/; http://edmidentity.com/2016/01/21/mysteryland-usa-tickets/. All Others: CelebrityAccess EventWire - JUICE0000929-86.

| Event | Location | Year | Attendance | Days |
|-------|----------|------|-----------|------|
| Electric Daisy | Met Life Stadium, East Rutherford, NJ | 2012 | 90,000 | 2 |
| Electric Daisy | Citi Field, Queens, NY | 2013 | 90,000 | 2 |
| Electric Daisy | Met Life Stadium, East Rutherford, NJ | 2014 | 100,000 | 2 |
| Electric Daisy | Met Life Stadium, East Rutherford, NJ | 2015 | 80,000 | 2 |
| Ultra Music Festival | Bicentennial Park, Miami, FL | 2010 | 93,824 | 2 |
| Electric Zoo | Randall's Island, NY | 2010 | 50,000 | 2 |
| Electric Zoo | Randall's Island, NY | 2011 | 85,000 | 3 |
| Electric Zoo | Randall's Island, NY | 2012 | 110,000 | 3 |
| Electric Zoo | Randall's Island, NY | 2013 | 100,000 | 3 |
| Electric Zoo | Randall's Island, NY | 2014 | 80,000 | 3 |
| Electric Zoo | Randall's Island, NY | 2015 | 80,000 | 3 |
| Mysteryland | Bethel Woods, NY | 2013 | 48,000 | 3 |
| Mysteryland | Bethel Woods, NY | 2014 | 48,000 | 3 |
| Mysteryland | Bethel Woods, NY | 2015 | 50,000 | 3 |
| Mysteryland | Bethel Woods, NY | 2016 | 48,000 | 3 |
| Bamboozle | Giants Stadium, East Rutherford, NJ | 2006 | 61,117 | 2 |
| Bamboozle | Meadowlands Sports Complex, East Rutherford, NJ | 2007 | 85,100 | 2 |
| Bamboozle | New Meadowlands Stadium, Rutherford, NJ | 2010 | 62,624 | 2 |

21.     Average ticket prices ranged from $59.83 for a 2013 Swedish House Mafia concert to $97.58 for the Yankee Projections. To be conservative, I use the average ticket price (net of sales taxes and fees) from the Dimatteo Projection of $80.87.[17]

22.     The average ticket price I use is supported by actual ticket prices at similar festivals. For example, in 2012 a 3-day pass ticket to Electric Zoo was $299 and a 1 day ticket was $115.[18] By 2013, the price of a general admission 3-day pass ticket was $359 and a 1 day ticket ranged from $139- $179.[19] In 2012, a 2 day pass ticket to Electric Daisy New York was $129, and a 1 day ticket was $85 (while the basic VIP ticket was $300 for 2 days and $155 for 1

---

[17] Yankee Projection LN0002173, Swedish House Mafia LN00004963.xls, Dimatteo Projection JUICE0002204-2215.
[18] http://nypost.com/2012/07/08/hot-times-in-the-city/
[19] http://www.madeevent.com/ElectricZoo/2013/tickets.php

8

day).[20] By 2014, the price for tickets for a 2 day pass ticket was $290, and a 1 day pass ranged from $155-185.[21]

23.    Ancillary revenues range from $6 per head (net) from the Dimatteo Projection to $26 per head from the Yankee Projection. I calculate ancillary revenues at $6 per head (net). Sponsorship revenues range from $50,000 based on the Dimatteo Projection to $150,000 based on the Juice Projection.[22]  I use sponsorship revenue of $50,000.[23]

**ii.  Expenses.**

24.    Expenses are comprised primarily of contractual expenses plus expenses for talent, production and marketing. There is little data from other festivals to support expenses per attendee.  An analyst from UBS projected gross margins for outdoor festivals to be 30-40%, which is in line with the margins projected in the Dimatteo and Yankees projections.[24] Moreover, both the Dimatteo and Juice Projections and testimony by Mr. Bruno estimate that the total expenses for the 2011 Concert were to be approximately $2,000,000.

25.    I use the talent costs from the Juice Projection as they are based on offers actually made by Mr. Dimatteo and reflect the $400,000 offered to the artist Tiesto.  I use the production costs from the Dimatteo Projection as they are aligned with the costs estimated by Mr. Bruno, who was tasked with procuring the equipment and production of the Concert.  I use the marketing costs from the Juice Projection.[25]

26.    I adjusted profits for the profit share due to State Fair as stated in the Agreement - $9 per ticket plus 7% of profits in 2012 and 10% of profits in 2013 and 2014.  I assume all other out of pocket costs incurred by State Fair are offset by the $30,000 credit specified in the Agreement at Section 3(b). I also subtract from the net profits the cost of the letter of credit Plaintiffs are required to provide (at 2.5% of the face value). I assume all profits inure to Juice

---

[20] https://www.facebook.com/notes/electric-daisy-carnival-edc/edc-new-york-tickets-now-on-sale/305281102859166/
[21] http://www.stubhub.com/electric-daisy-carnival-new-york-edc-tickets/
[22] Plaintiffs believe sponsorship revenue had the potential to be significantly higher due to discussions with Fashion TV to broadcast the concerts.
[23] Dimatteo Projection JUICE0002204-2215, Juice Projection JUICE0001009-010.
[24] http://www.forbes.com/sites/maggiemcgrath/2013/11/04/edm-obsessed-millennials-boost-sfx-entertainment-outlook/
[25] Juice Projection JUICE0001009-010.

Entertainment and will be divided among the Plaintiffs, Messrs. Chiasullo, Dimatteo and Bruno and any other investors outside of this litigation.

### iii. Discount Rate.

27.    I discount all lost profits to July 1, 2011 (the approximate date of the 2011 Concert) using a discount rate that reflects the time value of money and the risk of this income stream. I determined the discount rate by reference to historical returns available in U.S. Capital Markets using the Summation (or Build-Up) Method. The formula for the Summation Method is:

$$[\text{risk-free rate} + \text{equity risk premium} + \text{size premium} + \text{company specific premium}] = \text{discount rate}$$

28.    Based on my analysis, as shown in Exhibit E, I conclude that 25% is an appropriate discount rate.

### iv. Prejudgment Interest.

29.    I understand that Plaintiffs are entitled to prejudgment interest from the date of the breach, estimated as July 1, 2011, through the date of the trial at the applicable statutory rate in New Jersey. I have not calculated prejudgment interest at this time but may be asked to at the time of the trial.

Marianne DeMario
June 15, 2016

10

**Exhibit A**

## Marianne L. DeMario, CPA, ABV, CFF, CFA, AM

Spectrum Consulting Partners LLC
2 Tower Place
Albany, NY 12203
Telephone: 518-694-9310
E-mail: mdemario@spectrum-consulting.com

Ms. DeMario is a Managing Director with Spectrum Consulting Partners LLC where she specializes in forensic accounting investigations, damages analyses, business valuations, and other litigation support services. Ms. DeMario is a Certified Public Accountant with an accreditation in business valuation, a certification in financial forensics, a CFA charterholder, and an accredited member of the American Society of Appraisers with a specialty in business valuation.

### Education

M.B.A., Finance, Stern School of Business, New York University (with distinction)
B.S., Accounting, Stern School of Business, New York University (summa cum laude)

### Certifications

Certified Public Accountant
Accredited in Business Valuation ("ABV")
Certified In Financial Forensics ("CFF")
Accredited Member, American Society of Appraisers
Chartered Financial Analyst

### Experience

Spectrum Consulting Partners LLC: Managing Director, 2005 to present

UHY Advisors, Inc.: Managing Director, 1993 to 2005

Bristol-Myers Squibb Company: Senior Accountant, 1992-1993

Coopers & Lybrand: Audit Staff, 1989-1992

### Selected Professional Experience

- Forensic accounting investigation and analysis of purchases re: price fixing conspiracy for purchasers of copper cathode
- Worldwide accounting investigation and corporate governance review for a multinational conglomerate.
- Forensic accounting investigation for a multinational media company.
- Forensic accounting services to determine amount due under purchase contract for a wound

care manufacturer.

- Forensic accounting and analysis of foreign exchange trading accounts to assist in defense against claims of unauthorized trading for a multinational bank based in France.
- Forensic accounting services related to a partnership agreement and partnership accounts for a law firm.
- Damage analyses for class certification relating to commercial lending practices.
- Damage analyses re: alleged antitrust violations for a multinational food and tobacco company.
- Damage and financial analyses related to residential and commercial mortgage brokers.
- Damage calculations and forensic accounting services for several shopping center partnerships.
- Damage calculations and economic analyses re: price discrimination in brand name prescription drugs.
- Damage calculations and economic analyses re: price-fixing conspiracy for direct and indirect purchasers of bulk vitamin products.
- Lost profits damages analysis for a leading direct television marketing company.
- Analysis of value of casino properties and quantum meruit damages to assist in defense of breach of contract claims against a hotel gaming and resort development company.
- Analysis of loss in business value of trust assets and forensic accounting services related to fraud and defalcation for a multinational jewelry manufacturer and retailer.
- Damage analysis resulting from termination of exclusive distribution agreement relating to x-ray film and ancillary products.
- Analysis of loss in business value of trust assets and forensic accounting services related to fraud and defalcation for a real estate company.
- Analysis and calculation of construction damages for a multinational telecommunications company.
- Damage analyses and calculations in defense of $200 million fraud and breach of contract claim for a multinational computer manufacturer.
- Damage analyses for various pharmaceutical off-label marketing actions.
- Lost profits damages analysis for an electric power utility and energy producer.
- Damage analyses and loss in business value for a computer distributor.
- Damage analyses and loss in business value for a multinational manufacturer of exhaust systems.
- Damage analyses and loss in business value for a manufacturer of audio, video and data media products.
- Damage analysis resulting from patent infringement for a curtain manufacturer.
- Damage calculations and statistical analyses re: collective action to recover unpaid overtime under the Fair Labor Standards Act.
- Analysis of loss in business value of trust assets related to a manufacturer and distributor of men's hosiery and specialty yarns.
- Analysis of acquisition and cash management practices for an employee leasing company.
- Liquidation and accounting services for a handbag manufacturer.
- Accounting and auditing services for a class action settlement fund for a national automobile rental company.
- Analysis of accounting treatment for crane revenues. Gantry crane operator at the Port of Miami.
- Accounting and auditing consulting services related to the review of various financial institutions.
- Valuation and damage analyses related to mortgage-backed securities.

2

- Business valuation of international bank.
- Business valuation of multinational record label and music publishing company.
- Valuation and damage analyses related to dozens of commercial properties, worldwide.
- Business valuation of a nationwide truck rental and moving supplies.
- Valuation of covenant-not-to-compete for an environmental remediation services firm.
- Business valuation of a professional sports franchise.

**Trial Testimony Experience**

♦ United States Bankruptcy Court
♦ United States District Court
♦ Supreme Court, State of New York
♦ Superior Court of the State of California
♦ American Arbitration Association

**Professional Associations and Memberships**

Ongoing:
Member of the American Institute of Certified Public Accountants
Member of the Association for Investment Management and Research
Member of the American Society of Appraisers
Member of the New York State Society of Certified Public Accountants
   ♦ Litigation Services Committee
Member of the New York Society of Security Analysts

Past:
New York State Society of Certified Public Accountants
   ♦ Leadership Academy

**Publications**

Book review "Valuation for Financial Reporting: Fair Value Measurements and Reporting, Intangible Assets, Goodwill and Impairment, Second Edition," *The CPA Journal*, April, 2009.

"The Adjusted Present Value: An Alternative Approach to the Effect of Debt on Business Value," *Business Valuation Update*, Vol. 12, No. 12, December 2006. Business Valuation Resources, LLC.

"The Benefits of Early Settlement in a BCL §1104-a Shareholder Buyout Proceeding," *NY Business Law Journal*, Vol. 2 No. 1, Spring 1998.  New York State Bar Association Business Law Section.

## Testimony of Marianne L. DeMario for the past four years

**2012:**

JMF Consulting Group II, Inc. v. Beverage Marketing USA, Inc. Index No. 11005/08, Supreme Court of the State of New York, County of Nassau: Trial Term Part 16. Trial Testimony.

Rincon EV Realty LLC et al. v. CP III Rincon Towers, Inc. et al. Case No.  CGC 10-496887, Superior Court of the State of California, County of San Francisco. Deposition. Trial Testimony.

**2013:**

Terra Firma Investments (GP) 2 Limited et al. v. Citigroup Inc. et al. Index No. 09-CV-10459 (JSR), United States District Court, Southern District of New York. Deposition.

**2014:**

Pasha S. Anwar, et al., v. Fairfield Greenwich Ltd., et al. File No. 09 Civ. 0118 (VM), United States District Court, Southern District of New York. Deposition.

**2015:**

Election Protest of Terry Finley before the Board of Directors of the New York Thoroughbred Horsemen's Association. Hearing Testimony.

**2016:**

Thomson Reuters Special Services, LLC v. T4 Data Group, LLC. Case No. 15-cv-1400-LMB/IDD, United States District Court, Eastern District of Virginia, Alexandria Division. Deposition.

Exhibit B

**Juice Entertainment LLC, et al. v. Live Nation Entertainment, Inc.**
Documents Relied Upon by Marianne L. DeMario

| Item No. | Bates No. | Description |
|---|---|---|
| 1 | | Juice Entertainment LLC, et al. v. Live Nation Entertainment, Inc. Complaint dated 12/16/2011 |
| 2 | | Juice Entertainment LLC, et al. v. Live Nation Entertainment, Inc. Amended Complaint dated 9/4/2012 |
| 3 | | Agreement between Juice Entertainment and State Fair Event Management dated 3/7/2011 |
| 4 | JUICE0000396-400 | |
| 5 | JUICE0000929-86 | |
| 6 | JUICE0001009-010 | |
| 7 | JUICE0002202 | |
| 8 | JUICE0002204-215 | |
| 9 | LN00004963.xls | |
| 10 | LN0002173-5 | |
| 11 | LN0002306-9 | |
| 12 | WME000039 | |
| 13 | WME000103 | |
| 14 | WME000445 | |
| 15 | WME000473 | |
| 16 | | Deposition of Jason Miller dated 3/23/2016 |
| 17 | | Deposition of John Dimatteo dated 7/17/2013 |
| 18 | | Deposition of Chris Barrett dated 11/19/2013 |
| 19 | | Deposition of Tom Dorfman dated 11/12/2013 |
| 20 | | Deposition of Vito Bruno dated 2/4/2014 |
| 21 | | 20-Year Treasury yield at 7/1/2011 per Federal Reserve Statistical Release H.15, 7/5/2011 |
| 22 | | Ibbotson SBBI 2011 Valuation Yearbook Morningstar, Inc., 2011 |
| 23 | | http://www.stubhub.com/electric-daisy-carnival-new-york-edc-tickets/ |
| 24 | | https://www.facebook.com/notes/electric-daisy-carnival-ede/edc-new-york-tickets-now-on-sale/305281102859166/ |
| 25 | | http://www.madeevent.com/ElectricZoo/2013/tickets.php |
| 26 | | http://nypost.com/2012/07/08/hot-times-in-the-city/ |
| 27 | | https://ravefaced.com/2014/06/feature-history-electricdaisycarnival/ |
| 28 | | http://artsbeat.blogs.nytimes.com/2015/11/18/electric-daisy-carnival-to-return-to-citi-field-in-2016/?_r=0 |
| 29 | | http://www.nytimes.com/interactive/2015/04/28/business/media/The-Music-Festival-Business-Who-Owns-What.html |
| 30 | | http://www.axs.com/news/ede-new-york-2015-statistics-and-raver-poll-55230 |
| 31 | | http://www.nycgovparks.org/parks/randallsislandpark/events/2010/09/04/electric-zoo |
| 32 | | http://www.musikbeats.com/electric-zoo-2011-nyc-recap |
| 33 | | http://www.cnn.com/2013/09/01/us/new-york-music-festival-canceled/ |
| 34 | | http://www.forbes.com/sites/maggiemcgrath/2013/11/04/edm-obsessed-millennials-boost-sfx-entertainment-outlook/ |

Exhibit C

**Juice Entertainment LLC, et al. v. Live Nation Entertainment, Inc.**
**Standard Attendance**
**As of July 1, 2011**

| Item | Assumption | 2011 (100%) | 2012 (Sellout Capacity) | 2013 (Sellout Capacity) | 2014 (Sellout Capacity) | 2015 (5 year Extension) | 2016 (5 year Extension) | 2017 (5 year Extension) | 2018 (5 year Extension) | 2019 (5 year Extension) | 5-Year Subtotal 2015-2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Attendance per Day (Per Juice Projection JUUCE0001009-010) | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 110,000 |
| Number of Days | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Inflation Rate (starting in 2012) | 2.0% | | | | | | | | | | |
| Total Ticket Revenue (net of taxes) (Per Dimatteo Projection JUUJCE0002204-215) | $80.87 | $3,558,280 | $3,629,446 | $3,702,035 | $3,776,075 | $3,851,597 | $3,928,629 | $4,007,201 | $4,087,345 | $4,169,092 | $20,043,864 |
| Ancillary Revenue (Per Dimatteo Projection JUUJCE0002204-215) | $6.00 | $264,000 | $269,280 | $274,666 | $280,159 | $285,762 | $291,477 | $297,307 | $303,253 | $309,318 | $1,487,117 |
| Sponsorship Revenue (Per Dimatteo Projection JUUJCE0002204-215) | $50,000 | $50,000 | $51,000 | $52,020 | $53,060 | $54,122 | $55,204 | $56,308 | $57,434 | $58,583 | $281,651 |
| **Total Revenue** | | $3,872,280 | $3,949,726 | $4,028,720 | $4,109,295 | $4,191,480 | $4,275,310 | $4,360,816 | $4,448,033 | $4,536,993 | $21,812,632 |
| | | | 98% | 98% | 98% | 98% | 98% | 98% | 98% | 98% | 98% |
| Talent Costs (per Juice Projection JUUCE0001009-010) | ($1,140,000) | (1,140,000) | (1,162,800) | (1,186,056) | (1,209,777) | (1,233,973) | (1,258,652) | (1,283,825) | (1,309,502) | (1,335,692) | (6,421,643) |
| Production Costs (Per Dimatteo Projection JUUJCE0002204-215) | ($862,850) | (862,850) | (880,107) | (897,709) | (915,663) | (933,977) | (952,656) | (971,709) | (991,143) | (1,010,966) | (4,860,452) |
| Marketing Costs (Per Juice Projection JUUCE0001009-010) | ($255,000) | (255,000) | (260,100) | (265,302) | (270,608) | (276,020) | (281,541) | (287,171) | (292,915) | (298,773) | (1,436,420) |
| Letter of Credit (@2.5% of Face Value $250,000) | 2.50% / $250,000 | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (31,250) |
| **Total Expenses** | | $(2,264,100) | $(2,309,257) | $(2,355,317) | $(2,402,298) | $(2,450,219) | $(2,499,099) | $(2,548,956) | $(2,599,810) | $(2,651,681) | $(12,749,765) |
| **Lost Profits** | | $1,608,180 | $1,640,469 | $1,673,403 | $1,706,996 | $1,741,261 | $1,776,211 | $1,811,860 | $1,848,223 | $1,885,312 | $9,062,867 |
| New Jersey State Fair Fair Profit Share (per March 2011 agreement) | $9.00 | - | 396,000 | 396,000 | 396,000 | 396,000 | 396,000 | 396,000 | 396,000 | 396,000 | 1,980,000 |
| % share of net revenues | 2012 (7%), 2013-2014 (10%) | | 7% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% |
| (per March 2011 agreement) | | | 87,113 | 127,740 | 131,100 | 134,526 | 138,021 | 141,586 | 145,222 | 148,931 | 708,287 |
| **Lost Profit (Net of State Fair Share)** | | $1,212,180 | $1,157,356 | $1,149,663 | $1,179,896 | $1,210,735 | $1,242,190 | $1,274,274 | $1,307,000 | $1,340,381 | $6,374,580 |
| | | | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 | 7.0 | 8.0 | |
| Discount Rate | 25.0% | $1,212,180 | $925,885 | $735,784 | $604,107 | $495,917 | $407,041 | $334,043 | $274,098 | $224,879 | $1,735,978 |
| **Present Value of Total Lost Profits** **Total** | | | | | | | | | | | $5,213,933 |

$ 3,477,956

Sources:
Juice Projection (JUUCE0001009-010), Dimatteo Projection (JUUJCE0002204-215), State Fair Agreement dated March 7, 2011

Juice Entertainment LLC, et al. v. Live Nation Entertainment, Inc.
Standard Attendance
As of July 1, 2011

Exhibit D

| | | 85% | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 5-Year Subtotal 2015-2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 85% Capacity | | | | | 5 Year Extension | | | |
| Attendance per Day | 22,000 | | | | | | | | | | | |
| (Per Juice Projection JUUCE0001009-010) | | | 18,700 | 18,700 | 18,700 | 18,700 | 18,700 | 18,700 | 18,700 | 18,700 | 18,700 | 93,500 |
| Number of Days | 2 | | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Inflation Rate (starting in 2012) | 2.0% | | | | | | | | | | | |
| Total Ticket Revenue (net of taxes) | $80.87 | | | | | | | | | | | |
| (Per Dimatteo Projection JUUCE0002204-215) | | $ 3,024,538 | $ 3,085,029 | $ 3,146,729 | $ 3,209,664 | $ 3,273,857 | $ 3,339,334 | $ 3,406,121 | $ 3,474,243 | $ 3,543,728 | $ 17,037,284 |
| Ancillary Revenue | $6.00 | | | | | | | | | | | |
| (Per Dimatteo Projection JUUCE0002204-215) | | $ 224,400 | $ 228,888 | $ 233,466 | $ 238,135 | $ 242,898 | $ 247,756 | $ 252,711 | $ 257,765 | $ 262,920 | $ 1,264,050 |
| Sponsorship Revenue | $50,000 | | | | | | | | | | | |
| (Per Dimatteo Projection JUUCE0002204-215) | | $ 50,000 | $ 51,000 | $ 52,020 | $ 53,060 | $ 54,122 | $ 55,204 | $ 56,308 | $ 57,434 | $ 58,583 | $ 281,651 |
| **Total Revenue** | | $ 3,298,938 | $ 3,364,917 | $ 3,432,215 | $ 3,500,859 | $ 3,570,877 | $ 3,642,294 | $ 3,715,140 | $ 3,789,443 | $ 3,865,232 | $ 18,582,985 |
| Talent Costs | ($1,140,000) | | 98% | 98% | 98% | 98% | 98% | 98% | 98% | 98% | 98% | 98% |
| (per Juice Projection JUUCE0001009-010) | | (1,140,000) | (1,162,800) | (1,186,056) | (1,209,777) | (1,233,973) | (1,258,652) | (1,283,825) | (1,309,502) | (1,335,692) | (6,421,643) |
| Production Costs | ($862,850) | | | | | | | | | | | |
| (Per Dimatteo Projection JUUCE0002204-215) | | (862,850) | (880,107) | (897,709) | (915,663) | (933,977) | (952,656) | (971,709) | (991,143) | (1,010,966) | (4,860,452) |
| Marketing Costs | ($255,000) | | | | | | | | | | | |
| (Per Juice Projection JUUCE0001009-010) | | (255,000) | (260,100) | (265,302) | (270,608) | (276,020) | (281,541) | (287,171) | (292,915) | (298,773) | (1,436,420) |
| Letter of Credit (@2.5% of Face Value $250,000) | 2.50% | | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (31,250) |
| Face Value | $250,000 | | | | | | | | | | | |
| **Total Expenses** | | $ (2,264,100) | $ (2,309,257) | $ (2,355,317) | $ (2,402,298) | $ (2,450,219) | $ (2,499,099) | $ (2,548,956) | $ (2,599,810) | $ (2,651,681) | $ (12,749,765) |
| **Lost Profits** | | $ 1,034,838 | $ 1,055,660 | $ 1,076,898 | $ 1,098,561 | $ 1,120,657 | $ 1,143,195 | $ 1,166,184 | $ 1,189,633 | $ 1,213,551 | $ 5,833,220 |
| New Jersey State Fair Profit Share | $9.00 | | | 7% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% |
| (per March 2011 agreement) | | 336,600 | 336,600 | 336,600 | 336,600 | 336,600 | 336,600 | 336,600 | 336,600 | 336,600 | 1,683,000 |
| % share of net revenues | 2012 (7%), 2013- 2014 (10%) | | | | | | | | | | | |
| (per March 2011 agreement) | | | 50,334 | 74,030 | 76,196 | 78,406 | 80,660 | 82,958 | 85,303 | 87,695 | 415,022 |
| **Lost Profits (Net of State Fair Share)** | | $ 698,238 | $ 668,726 | $ 666,268 | $ 685,765 | $ 705,651 | $ 725,936 | $ 746,626 | $ 767,230 | $ 789,255 | $ 3,735,198 |
| Discount Rate | 25.0% | | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 | 7.0 | 8.0 | 3,735,198 |
| | | $ 698,238 | $ 534,980 | $ 426,412 | $ 351,112 | $ 289,035 | $ 237,875 | $ 195,723 | $ 161,005 | $ 132,415 | |
| Present Value of Total Lost Profits | | | | | | $ 2,010,742 | | | | | | $ 1,016,653 |
| **Total** | | | | | | | | | | | | $ 3,026,794 |

**Sources:**
Juice Projection JUUCE0001009-010), Dimatteo Projection JUUCE0002204-215), State Fair Agreement dated March 7, 2011

**Juice Entertainment LLC, et al. v. Live Nation Entertainment, Inc.**

**Discount Rate**

As of July 1, 2011

**Exhibit E**

*Discount Rate:*

| | | |
|---|---|---|
| Risk-Free Rate | (1) | 4.1% |
| Equity Risk Premium | (2) | 6.7% |
| Size Premium | (3) | 6.4% |
| Industry Risk Premium | (4) | 3.2% |
| Company Specific Premium | (5) | 4.6% |

**Discount Rate** **25.0%**

(1) 20-Year Treasury yield at 7/1/2011 per *Federal Reserve Statistical Release H.15 . 7/5/2011.*

(2) Long horizon equity risk premium 1926-2010 per *Ibbotson SBBI 2011 Valuation Yearbook*, Morningstar, Inc., 2011.

(3) Tenth decile (market capitalizations of $1 million to $236 million) size premium for the period 1926-2010 per *Ibbotson SBBI 2011 Valuation Yearbook.*

(4) Industry risk premium per *Ibbotson SBBI 2011 Valuation Yearbook* , considering the following industry categories:

| | | |
|---|---|---|
| SIC 79 (Amusement and Recreation Services) | 68 | 3.22% |
| SIC 792 Theatrical Producers (Except Motion Picture), Bands, Orchestras and Entertainers | 8 | -1.24% |
| SIC 7929 (Bands, Orchestras, Actors and Other Entertainers and Entertainment Groups | 5 | 0.44% |

(5) Appraisers' judgment.

Exhibit F

**Juice Entertainment LLC, et al. v. Live Nation Entertainment, Inc.**
**Extended Fence from 2012 Forward**
**As of July 1, 2011**

| | Input | 100% 2011 | Extended Fence (100%) 2012 | 2013 | 2014 | 2015 | 5 Year Extension 2016 | 2017 | 2018 | 2019 | 5-Year Subtotal 2015-2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Attendance per Day (Per Juice Projection JUUCE0001069-010) | 22,000 | 22,000 ² | 45,000 ² | 45,000 ² | 45,000 ² | 45,000 ² | 45,000 ² | 45,000 ² | 45,000 ² | 45,000 ² | 225,000 ² |
| Number of Days | 2 | | | | | | | | | | |
| Extended Fence from 2012 Forward | 45,000 | | | | | | | | | | |
| Inflation Rate (starting in 2012) | 2.0% | | | | | | | | | | |
| Total Ticket Revenue (net of taxes) (Per Dimatteo Projection JUUCE0002204-215) | $80.87 | $3,558,280 | | | | | | | | | |
| Ancillary Revenue (Per Dimatteo Projection JUUCE0002204-215) | $6.00 | $264,000 | | | | | | | | | |
| Sponsorship Revenue (Per Dimatteo Projection JUUCE0002204-215) | $50,000 | $50,000 | | | | | | | | | |
| **Total Revenue** | | **$3,872,280** | | | | | | | | | |
| Talent Costs (per Juice Projection JUUCE0001069-010) | ($1,140,000) | (1,140,000) | | | | | | | | | |
| Production Costs (Per Dimatteo Projection JUUCE0002204-215) | ($862,880) | (862,880) | | | | | | | | | |
| Marketing Costs (Per Juice Projection JUUCE0001069-010) | ($255,000) | (255,000) | | | | | | | | | |
| Letter of Credit (@2.5% of Face Value $250,000) | 2.50% / $250,000 | (6,250) | | | | | | | | | |
| **Total Expenses** | | **$ (2,264,100)** | | | | | | | | | |
| **Lost Profits** | | **$ 1,608,180** | | | $ 5,846,721 | | | | | | |
| New Jersey State Fair Profit Share (per March 2011 agreement) | $9.00 | 396,000 | | | | | | | | | |
| % share of net revenues (per March 2011 agreement) | 2012 (7%), 2013-2014 (10%) | | | | | | | | | | |
| Lost Profit (Net of State Fair Share) | | $ 1,212,180 | $ 2,367,319 | $ 2,351,583 | $ 2,413,425 | $ 2,476,503 | $ 2,540,843 | $ 2,606,670 | $ 2,673,410 | $ 2,741,688 | $ 13,038,915 |
| Discount Rate | 25.0% | - | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 | 7.0 | 8.0 | |
| Present Value of Total Lost Profits | | $ 1,212,180 | $ 1,893,855 | $ 1,505,013 | $ 1,235,673 | $ 1,014,376 | $ 832,584 | $ 683,271 | $ 560,655 | $ 459,979 | $ 3,550,863 |
| **Total** | | | | | | | | | | | **$ 9,397,585** |

Sources:

Juice Projection (JUUCE0001069-010), Dimatteo Projection (JUUCE0002204-215), State Fair Agreement dated March 7, 2011

# EXHIBIT C

**In The Matter Of:**

*Juice Entertainment v.*
*Live Nation Entertainment*

---

*Marianne L. DeMario*
*June 21, 2016*

---

*Rizman Rappaport Dillon & Rose*
*66 W. Mt. Pleasant Ave.*
*Livingston, N.J. 07039*
*(973) 992-7650*
*reporters@rizmanrappaport.com*

Min-U-Script® with Word Index

Juice Entertainment v.
Live Nation Entertainment

| Page 1 | Page 3 |
|---|---|

Page 1

```
 1         UNITED STATES DISTRICT
 2         DISTRICT OF NEW JERSEY
 3    _____
 4  JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN,
 5  and CHRIS BARRETT,
 6                      Plaintiffs,
 7
 8    -against-      Case No.:
                     2:11-cv-07318-WHW-CLW
 9
10  LIVE NATION ENTERTAINMENT, INC.,
11                      Defendant.
12    _____
13          Deposition Of:
14        MARIANNE L. DEMARIO
15          (Expert Witness)
16        Tuesday, June 21, 2016
17        9:36 a.m. - 2:59 p.m.
18
19      Taken on behalf of Defendant, held
20  pursuant to Notice, at the law office of
21  GREENBERG TRAURIG, LLP, 54 State Street,
22  Albany, New York 12207; before Brenda J.
23  O'Connor-Marello, CSR, a Certified Shorthand
24  Reporter and Notary Public in and for the
25  State of New York.
```

Page 3

```
 1  F E D E R A L   S T I P U L A T I O N S
 2
 3
 4  IT IS HEREBY STIPULATED AND AGREED by
 5  and between the attorneys for the respective
 6  parties hereto, that filing, sealing, and
 7  certifications are hereby waived;
 8
 9  IT IS FURTHER STIPULATED AND AGREED that
10  all objections, except as to the form of the
11  question, shall be reserved to the time of
12  the trial;
13
14  IT IS FURTHER STIPULATED AND AGREED that
15  the within Deposition may be signed before
16  any Notary Public with the same force and
17  effect as though subscribed and sworn to
18  before this Court.
19
20
21
22
23
24
25
```

Page 2

```
 1        A P P E A R A N C E S
 2
 3  APPEARING FOR THE PLAINTIFF(S):
 4  STONE & MAGNANINI
 5       150 JFK Parkway
 6       Short Hills, New Jersey 07078
 7  BY:   AMY WALKER WAGNER, ESQ.
 8          awalker@stonemagnalaw.com
 9          973-218-1111
10
11
12
13  APPEARING FOR THE DEFENDANT(S):
14  GREENBERG TRAURIG, LLC
15       200 Park Avenue
16       Florham Park, New Jersey 07932
17  BY:   IAN S. MARX, ESQ.
18          marxi@gtlaw.com
19          973-360-7951
20
21
22
23
24
25
```

Page 4

```
 1   * * *
 2   (Exhibits MD 1 through 3
 3   herein were marked for
 4   identification.)
 5   * * *
 6   MARIANNE L. DEMARIO,
 7  called as the witness, hereinbefore named,
 8  being first duly cautioned and sworn or
 9  affirmed by BRENDA J. O'CONNOR-MARELLO, a
10  Certified Shorthand Reporter and Notary
11  Public in and for the State of New York,
12  Qualified in Saratoga County, herein to tell
13  the truth, the whole truth, and nothing but
14  the truth, was examined and testified as
15  follows:
16   EXAMINATION
17   BY MR. MARX:
18  Q.   Good morning.  My name is Ian Marx.  I'm
19   a lawyer with Greenberg Traurig.  We
20   represent the defendant in a lawsuit
21   pending in the United States District
22   Court for the District of New Jersey
23   brought against it by plaintiffs Juice
24   Entertainment, Chris Barrett and Tom
25   Dorfman.
```

Juice Entertainment v.
Live Nation Entertainment

| | |
|---|---|
| Page 13 | Page 15 |

**Page 13**

1  following up on the witness' answer,
2  which is that her involvement with
3  Exhibits 2 and 3 was based on a
4  different assignment than she was
5  tasked for in connection with
6  Exhibit 1.
7    BY MR. MARX:
8  Q.  Did I recall that and summarize that
9  correctly?
10 A.  My testimony is that during these time
11 periods, I had different assignments.
12 But again, I'm not sure that the chart
13 in Exhibit 3 reflects the chart that I
14 provided to counsel.
15 Q.  Okay.  What was your assignment during
16 the time frame that Exhibits 2 and 3
17 were prepared?
18 A.  For -- when I was initially approached,
19 I was asked to -- as I previously
20 testified, to look at projections and
21 calculations that had been prepared by
22 Juice Entertainment.  So that's what I
23 did at that time period.
24 Q.  And that was around 2012?
25 A.  I don't remember.  It was a number of

**Page 14**

1  years ago.  I have no reason to believe
2  it wasn't around 2012, but I don't
3  recall.
4  Q.  Okay.  Do you recall whether you believe
5  those projections and calculations with
6  which you had been provided were
7  accurate?
8  A.  At the time I wasn't trying to determine
9  whether they were accurate.  My
10 recollection was that I was looking at
11 them to make sure that they were
12 mathematically correct and that they
13 represented a projection from a
14 theoretical level, so to speak.  This is
15 the way you would project lost profits.
16 Q.  And did you find that the math was
17 correct and that the methodology of
18 projection was sound?
19 A.  I don't recall.
20 Q.  Okay.  And what was your assignment
21 during the 2014 timeframe?
22 A.  I don't recall specifically what
23 instructions I was given or what I was
24 asked to do beyond being asked to come
25 up with a memo that was going to be used

**Page 15**

1  in settlement.  So maybe if I look at
2  it, I discussed -- maybe if I look at
3  the memo, I will have discussed what my
4  assignment is.  So would you like me to
5  do that?
6  Q.  Sure.
7    * * *
8  (Pause for review of Exhibit.)
9    * * *
10   BY MR. MARX:
11 Q.  Did that exercise help you refresh your
12 recollection as to what your assignment
13 was during the 2014 timeframe?
14 A.  No.
15 Q.  Fair enough.
16   Turning to Exhibit 1, and setting
17 aside the other two, if it helps
18 release -- relieve clutter.  Does that
19 report summarize the opinions you've
20 reached in connection with this case?
21 A.  Yes.
22 Q.  Have you reached any opinions that are
23 not reflected in Exhibit 1?
24 A.  No.
25 Q.  Does Exhibit 1 completely summarize your

**Page 16**

1  opinion and explain the basis for it?
2  A.  That is the intention.  I suppose you
3  could, during this deposition, ask me
4  questions that give further information
5  concerning the basis for my opinion.
6  Q.  Well, are you aware of any basis for
7  your opinion that you did not include in
8  your report?
9  A.  No.
10 Q.  So it was your intention to capture all
11 of the bases for your opinion?
12 A.  Correct.
13 Q.  And to summarize all of the support on
14 which you relied to reach your opinion;
15 correct?
16 A.  That is my intent.
17 Q.  Okay.  So what did you rely on to reach
18 your opinion?
19 A.  Well, I relied on my experience and
20 knowledge, and on the documents that
21 I've listed in Exhibit B.  And again, it
22 was my intent to list all of the
23 exhibits that I relied on in Exhibit B.
24 It's possible that -- that there may be
25 documents that I have relied on that

Juice Entertainment v.
Live Nation Entertainment

---

Page 33

1  of assumptions, and you said there
2  wasn't, but you said that having
3  reviewed the document, you saw that
4  there were a number of assumptions made.
5      Is that a fair recollection of
6  what you said?
7  A.  I said if you look through the report,
8  there are assumptions.
9  Q.  What are the assumptions that you made
10  in the report?
11  A.  Paragraph 7, I talk about Plaintiffs'
12  assertions.  I'm assuming liability will
13  be established.
14  Q.  And by way of follow-up, in paragraph 7,
15  you identify assertions made by the
16  Plaintiffs.  The assumption you're
17  making in your report is that they'll be
18  able to establish those?
19  A.  Well, that they'll be able to establish
20  liability.  Whether or not they need to
21  establish each of these assertions is
22  not something that I'm opining on.
23  Q.  Fair enough.  Are there any other
24  assumptions that you made in your
25  report?

---

Page 34

1  A.  Well, in footnote 2, I offer an
2  alternate calculation where I assume
3  paid attendance at 45,000 per day
4  beginning in 2012.
5      In paragraph 16, I say that I
6  assume that the Plaintiffs exercise
7  their option for a five-year extension
8  to the contract.
9      There may be other assumptions.
10  That's what I identify.
11  Q.  So what is the opinion you're offering
12  in this report?
13  A.  My opinion is that lost profits for the
14  electronic dance concert for the years
15  2011 through 2019 expressed in their
16  present value range between $5,213,933
17  and $3,026,794.
18  Q.  You're opining as to the amount of
19  damages, not as to the fact of damages;
20  correct?
21  A.  Well, I'm assuming liability.
22  Q.  Okay.
23  A.  So I interpret liability as something
24  that needs to be established in order
25  for there to be damages, and I have

---

Page 35

1  calculated the damages for the
2  electronic dance concerts.
3  Q.  Okay.  Now, you calculated lost profits
4  for the electronic dance concerts, but
5  not for other categories of alleged
6  damages; is that correct?
7  A.  Yes.
8  Q.  And those other categories I believe you
9  identified in your report as being other
10  concerts, parties and sponsorship
11  revenue related to discussions with
12  Fashion tv; is that correct?
13      I think it's in paragraph 8 of
14  your report where you make that
15  explanation.
16  A.  Yes.  And it's my understanding they're
17  also seeking punitive damages and
18  damages for defamation.  I'm not sure
19  your question included those.
20  Q.  It did.  And it's a fair response.
21      Now, why didn't you include a
22  calculation of those damages?
23  A.  Well, I was initially asked to calculate
24  the damages based on the data that I was
25  given.  I calculated the damages for the

---

Page 36

1  electronic dance concerts.  And counsel
2  did not specifically ask me to calculate
3  damages for any other categories.
4  Q.  Did you calculate damages for any of the
5  other categories?
6      MS. WALKER WAGNER: Objection.
7      BY MR. MARX:
8  Q.  Do you understand the question?
9  A.  Not for purposes of my expert report, I
10  did not.
11  Q.  Okay.  Well, did you do it for any
12  purpose?
13  A.  I would have to go back and check, but I
14  think I may have looked at some numbers
15  for the Latin festivals, and maybe even
16  for some of the others back in 2012, but
17  not during the assignment that I was
18  given in 2016.
19  Q.  Is it your intention to perform a
20  calculation for those categories of
21  damages at some point in the future?
22  A.  Sitting here right now, it is not my
23  intention.  It's possible that counsel
24  will ask me to do that, but they have
25  not.

---

Juice Entertainment v.
Live Nation Entertainment

---

Page 165

```
 1              I N D E X
 2  WITNESS          EXAMINATION BY      PAGE
 3  MARIANNE L. DEMARIO
 4                Mr. Marx             4
 5
 6  TO MD EXHIBITS (Retained By Counsel)
 7  FOR ID      DESCRIPTION            PAGE
 8  Exhibit 1   Expert Report of
                Marianne L. Demario     4
 9
    Exhibit 2   Preliminary Damages
10              Analysis for Settlement
                Purposes                4
11
12  Exhibit 3   Letter 11/27/12 Settlement
                Negotiations (Confidential)  4
13  Exhibit 4   Al Dorso transcript     107
14  Exhibit 5   "Agreement" March 7, 2011
                State Fair Event Management
15              and Juice Entertainment  110
16  Exhibit 6   Bates:  Juice 4139 - 4144
17              E-mail chain between
                Steve Goodgold and
18              John De Matteo
                February 21 and 22, 2011  136
19
20  INFORMATION/REQUESTS
21  Documents                         Page
22  (No requests)
23
24  MARKED QUESTIONS          Page/Line
25  (No marked questions)
```

---

Page 166

```
 1          SHORTHAND REPORTER CERTIFICATION
 2      I, the undersigned, a certified
    shorthand reporter of the State of New York,
 3  do hereby certify:
 4      That the foregoing proceedings were
    taken before me at the time and place herein
 5  set forth; that any witnesses in the
    foregoing proceedings, prior to testifying,
 6  were duly sworn; that a record of the
    proceedings was made by me using machine
 7  shorthand, which was thereafter transcribed
    under my direction; that the foregoing
 8  transcript is a true record of the testimony
    given.
 9
        Further, that if the foregoing pertains
10  to the original transcript of a deposition
    in a federal case, before completion of the
11  proceedings, review of the transcript [ X ]
    was  [  ] was not requested.
12
        I further certify I am neither
13  financially interested in the action nor a
    relative or employee of any attorney or
14  party to this action.
15
16  Dated:  June 21, 2016
17
18
19
20
21          BRENDA J. O'CONNOR-MARELLO, CSR
               NYS License No.: 001088-1
22
               Notary Public, State of New York.
23             Qualified in Saratoga County
               Commission Expires:  April 4, 2018
24
25
```

---

Page 167

```
 1  DECLARATION/WITNESS CERTIFICATION
 2  Case:  Juice Entertainment, LLC, et al v.
                  Live Nation
 3
    Witness:  MARIANNE L. DEMARIO
 4  Deposition Date: June 21, 2016
 5      I declare under penalty of perjury
    that I, MARIANNE L. DEMARIO, the witness
 6  herein, have read the entire transcript of
    my deposition taken in the captioned matter
 7  or the same has been read to me, and the
    same is true and accurate, save and except
 8  for changes and/or corrections, if any, as
    indicated by me on the DEPOSITION ERRATA
 9  SHEET hereof, with the understanding that I
    offer these changes as if still under oath.
10
11  _____
12          MARIANNE L. DEMARIO
13
    Sworn to, before me, this_____ day
14  of_____, 20____.
15
16  _____
17  [                               ](print)
18  Notary Public.
19  Registration No.:_____
20  State of _____
21  Qualified in _____County.
22  My commission expires_____
23
24
25
```

---

Page 168

```
 1  DEPOSITION ERRATA SHEET
 2  Case:  Juice Entertainment, LLC, et al v.
                  Live Nation
 3
    Witness:  MARIANNE L. DEMARIO
 4  Deposition Date: June 21, 2016
            Reason Codes:
 5  1:  To clarify the record
    2:  To conform to the facts
 6  3:  To correct transcription errors.
 7  PAGE/LINE    CORRECTION MADE    REASON CODE
 8  _____
 9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____
```

---