**SMITH + SCHWARTZSTEIN LLC**
Andrew B. Smith
Attorney ID: 032612004
4 Chatham Road, Suite 1
Summit, New Jersey 07901
973-206-1725
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUICE ENTERTAINMENT, LLC, THOMAS DORFMAN, and CHRIS BARRETT, <br><br> *Plaintiffs*, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., <br><br> *Defendant*. | CIVIL ACTION <br><br> Case No. 2:11-cv-7318 (CCC) (CLW) <br><br> **ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE***

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................1

**LEGAL STANDARD**..............................................................................................3

**ARGUMENT** ...........................................................................................................5

  **Motion #1: Exclusion of Any Evidence of Plaintiffs' Damages** ................5

  **Motion #2: Dismissal of Plaintiffs' Tortious Interference Claim**..............9

  **Motion #3: Limiting The Trial To "Four Triable Issues"**.......................11

**CONCLUSION**......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-CV-2768, 2017 WL 2362400, at *2 (E.D. Pa. May 31, 2017) ........................................................................................................... 4
*Atacs Corp. v. Trans World Communs.,* 155 F.3d 659, 669 (3d Cir.1998) ................. 6, 7
*Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) ......................... 4
*DeAngelis v. Hill*, 180 N.J. 1, 12-13 (2004) ................................................................... 14
*Golden Corral Fran. Sys., Inc. v. Scism*, 2021 WL 4490233, at *2 (D.N.J. Oct. 1, 2021) . 7
*Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) ..................................................... 6
Hana Fin., Inc. v. Hana Bank, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) ........................... 9
*Leonard v. Stemtech Health Sciences, Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) ....... 4
*Leonard v. StemTech Health Scis., Inc.*, 981 F. Supp. 2d 273 (D. Del. 2013) ................ 11
*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) ..................................... 8
*Mister Softee, Inc. v. Omar*, 2023 WL 6619637, at *4 (D.N.J. Oct. 11, 2023) .................. 7
*Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751 (1989) ..................... 13
Rice v. Kelly, 483 So. 2d 559, 560 (Fla. 4th DCA 1986) ................................................. 9
*Schwartz v. Menas*, 251 N.J. 556, 279 A.3d 436, 438 (2022) ..................................... 5, 6
*United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) .......................... 4
*Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401 (3d Cir. 1985) ................................... 7, 8

**Statutes**

2A:15-5.13 ......................................................................................................................... 8
*N.J.S.A.* 2A:15-5.12 .......................................................................................................... 8

**Rules**

*Fed. R. Evid.* 102 ......................................................................................................... 6, 13
*Fed. R. Evid.* 701 ............................................................................................................... 8

Plaintiffs Juice Entertainment, LLC, Thomas Dorfman, and Chris Barrett respectfully submit this brief in opposition to the motions *in limine* (ECF #141) filed by Defendant Live Nation Entertainment, Inc. ("Live Nation").

## PRELIMINARY STATEMENT

This case involves claims against Live Nation for tortious interference with business relations and defamation arising out Plaintifss' efforts to produce a live electronic dance music concert at the 2011 State Fair Meadowlands. It is undisputed that Plaintiffs, who were independent promoters for night clubs and other live music venues, entered into an agreement with State Fair Event Management ("SFEM"), the company that operates the State Fair Meadowlands, to produce the 2011 concert and similar events over a multi-year period. Plaintiffs allege that when Live Nation, the most powerful live music promoter in the world, learned of Plaintiffs' agreement with SFEM and their involvement in the State Fair, it began a calculated attack on Plaintiffs and their business. This included sabotaging Plaintiffs' efforts to secure deals with world-renowned DJs and other artists represented by top talent agencies, publicly disparaging Plaintiffs, giving Plaintiffs an "ultimatum" that they had to partner with Live Nation on disadvantageous economic terms in order to do business with the talent agencies, making business threats to Plaintiffs and SFEM, and eventually causing SFEM to terminate its agreement with Plaintiffs.

Such anticompetitive business practices are evidently typical for Live Nation, as the company, which merged with Ticketmaster around the time that the events here occurred,

1

has been the subject of a longstanding investigation by Congress. In fact, just last week, on March 28, 2024, New Jersey Congressman Bill Pascrell, Jr. wrote a letter to the Chairman of the Senate Subcommittee investigating Live Nation-Ticketmaster and attached several publicly available documents *from this case*, including one of Plaintiffs' expert reports that Live Nation attached as an unredacted exhibit on the Court's docket. In Congressman Pascrell's letter, which is publicly available, he wrote that the findings from that expert report "are alarming, but not surprising." He further stated that the report exposed "the ways in which Live Nation/Ticketmaster's business practices are systematically designed to undermine fair competition within the industry to further enrich the company at the expense of fans, as well as other stakeholders in the live events industry."

Although this Court struck that expert report solely on procedural grounds, the underlying facts in the report have not changed (and have never been challenged by Live Nation). And based on those facts and the other evidence uncovered during discovery, Plaintiffs believe that a jury will find that Live Nation tortiously interfered with Plaintiffs' prospective economic relationships in connection with the 2011 State Fair and their other business opportunities with SFEM, defamed their reputations in the live music industry, and caused them to incur significant damages.

Live Nation does not want those facts to be laid bare at trial. It has therefore filed three motions *in limine*, which really are not targeted at any legitimate evidentiary issues, but rather seek to re-litigate this Court's prior summary judgment decision – by precluding Plaintiffs from presenting *any* evidence of damages at trial (Motion #1), dismissing

Plaintiffs' tortious interference with business relations claim (Motion #2), and essentially limiting the evidence at trial to only two emails and the discussions at two meetings (Motion #3). Tellingly, Live Nation's motions do not identify any specific documents or testimony that it believes should be excluded at trial. Rather, Live Nation uses the kitchen sink approach, as it is essentially seeking to exclude *everything* except for two emails and the evidence relating to two meetings. But there is no basis for such an extraordinarily broad pre-trial ruling. Neither this Court's summary judgment decision nor any other decisions from this Court – nor any section of the Federal Rules of Evidence – support Live Nation's motions. Indeed, Live Nation's motions are so specious that it does not bother citing a single Federal Rule of Evidence in its memorandum of law.

Accordingly, as outlined further below, Live Nation's motions should be denied and a trial date should be set so that Plaintiffs can finally have their day in court. To the extent that Live Nation believes any particular document or piece of testimony is inadmissible under the Federal Rules of Evidence, then its attorneys can make an appropriate objection if and when such evidence is proferred at trial.

## **LEGAL STANDARD**

The Federal Rules of Evidence do not explicitly authorize motions *in limine* to determine the admissibility of evidence. But the practice has developed pursuant to the district court's inherent authority to manage the course of trials. Thus, motions *in limine* "allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa.

3

2017) (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). Although the case law has allowed parties to file such pre-trial motions *in limine*, the trial court "should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Id.* (citing *Leonard v. Stemtech Health Sciences, Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)). Moreover, the party seeking to exclude evidence "bears the burden of demonstrating that the challenged evidence is inadmissible 'on any relevant ground.'" *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-CV-2768, 2017 WL 2362400, at *2 (E.D. Pa. May 31, 2017) (citing *Leonard*).

    Here, Live Nation cannot meet its burden of showing that evidence is "inadmissible on any relevant ground." Its motions should therefore be denied.

# ARGUMENT

**Motion #1:  Exclusion of Any Evidence of Plaintiffs' Damages**

Live Nation argues that Plaintiffs should be precluded from introducing *any* evidence on damages at trial. (Def. Br. at 8-9).  The basis for Live Nation's argument is that Judge Walls's 2018 summary judgment decision held that because Plaintiffs were entering into a new business venture with SFEM, the "new-business rule operates here to bar Plaintiffs from recovering lost profits." (ECF #81 at 18-20).  Thus, according to Live Nation, given that Judge Walls held that Plaintiffs may not recover lost profits on their claim for tortious interference, and because Plaintiffs' recovery for their defamation claim is "limited to an award of nominal damages," this Court should bar Plaintiffs from introducing any evidence on damages. (Def. Br. at 1-2, 8-9).  There are several problems with that argument.

First, as Live Nation knows full well, the New Jersey Supreme Court published a decision in August 2022 expressly abrogating the "new business rule" relied on in Judge Walls's summary judgment decision.  *See Schwartz v. Menas*, 251 N.J. 556, 279 A.3d 436, 438 (2022).  In *Schwartz*, the Court held that although it may be difficult for a new business the meet the standard of showing lost profits with reasonable certainty, "a per se ban on any claims for lost profits damages by a new business [like Live Nation is seeking here] is unwarranted." *Id.,* 279 A.3d at 446.  Judge Walls's 2018 summary judgment decision held

a per se ban on lost profits for new businesses;[1] thereafter, he later held that a 2018 Appellate Division decision "incorrect[ly] applied" the law, "but absent clarification from the Supreme Court of New Jersey to the contrary," there was a "substaintial ground for difference of opinion." (*See* ECF #81 at 18; ECF #98 at 7). The New Jersey Supreme Court has since indeed provided such clarification such that there is no ground at all for applying the new business rule per se, rendering Judge Walls' decision clearly erroneous. *See Schwartz*, 279 A.3d at 446. Accordingly, continuing to apply a per se ban on lost profits in this case would be a clear error of law, and would run afoul of the goal of "securing a just determination" at trial. *See Fed. R. Evid.* 102.

Second, even if the Court finds that *Schwartz* should somehow be ignored in this case, lost profits from the new business are not the only damages remedy available to Plaintiffs here. Plaintiffs' allegations are that Live Nation's tortious interference caused the termination of their contract with SFEM. It is well settled that "[t]he preferred basis of contract damages seeks to protect an injured party's 'expectation interest.'" *Atacs Corp. v. Trans World Communs.,* 155 F.3d 659, 669 (3d Cir.1998) (citation omitted). Expectation damages are measured by "the losses caused and gains prevented by defendant's breach." *See id.; see also Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) ("The purpose of such compensating damages 'is to put the injured party in as good a position as if performance had been rendered.'") (citation omitted). This Court has specifically held that

---

[1] Live Nation misreads this Court's subsequent dicta regarding the reasonable certainty test, but Judge Walls never held that there would be no damages under that test, and this Court has never "conduct[ed] a case-specific inquiry" as required under *Schwartz. See id.* at 447-448.

6

lost/future profits[2] from a contract are allowed. *See Mister Softee, Inc. v. Omar*, 2023 WL 6619637, at *4 (D.N.J. Oct. 11, 2023); *Golden Corral Fran. Sys., Inc. v. Scism*, 2021 WL 4490233, at *2 (D.N.J. Oct. 1, 2021).

Here, Plaintiffs have submitted an expert report – which has not been excluded – which specifically states their "expected interest" in the contract that was termed due to Live Nation's tortious interference. *See* Exhibit B to Certification of Ian Marx in Connection with Motions *In Limine* at ("Plaintiffs' damages are equal to the profits Plaintiffs ***would have made under the Agreement***"). Plaintiffs should be allowed to present such damages as consequential contract damages – as opposed to lost profit damages – due to Live Nation's conduct. *See Atacs Corp.,* 155 F.3d at 669; *see also Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401 (3d Cir. 1985) (holding that a disgorgement of the defendant's profits is an appropriate remedy for tortious interference with prospective economic advantage under New Jersey law, under the theory that a tortfeasor should not profit from its wrongdoing, as Live Nation did here, presumably at a similar amount as that outlined in Plaintiffs' report).

Third, the record here contains evidence of compensatory damages that Plaintiffs suffered unrelated to lost profits or any contract damages. In tortious interference cases, such damages can be proven by lay testimony. *See Lightning Lube, Inc. v. Witco Corp.*, 4

---

[2] The "lost profits" for contract damages is significantly different from the "lost profits" addressed by Judge Walls, as the purpose of the "new business rule" was to preclude a new business from claiming lost profits that they would have received from their business if a defendant's actions had shut them down, not to preclude damages specific to a specific cause, here the termination of the SFEM contract. This is reflected in the language cited to by Live Nation from Plaintiffs' expert report, which details "profits Plaintiffs would have made under the Agreement." *See* Exhibit B to Certification of Ian Marx in Connection with Motions *In Limine.*

F.3d 1153 (3d Cir. 1993) (holding that jury's damages award in a tortious interference case brought against a competitor was supported by lay testimony under *Fed. R. Evid.* 701). Here, both Thomas Dorfman and Chris Barrett testified (and bank records confirmed) that Plaintiffs spent hundreds of thousands of dollars as part of their efforts to promote the 2011 State Fair, refute the lies being spread by Live Nation, and save their agreement with SFEM. (Barrett Dep. 239-241; 259-261 attached to Certification of Andrew B. Smith, Esq. as Exhibit A; Dorfman Dep. 229-237 attached to Certification of Andrew B. Smith, Esq. as Exhibit B); *see also* JUICE807; 1602; 2495; 8454 attached to Certification of Andrew B. Smith Esq. as Exhibit C. Such damages are part of the discovery record in this case and are the direct result of Live Nation's tortious interference.[3]

---

[3]   Live Nation also argues that Plaintiffs cannot pursue punitive damages in this case. That is not correct. Under New Jersey law, a tortfeasor may be assessed punitive damages if compensatory damages are awarded and there is evidence from which the factfinder may infer "actual malice." *N.J.S.A.* 2A:15-5.12; 2A:15-5.13; *see also Zippertubing*, 757 F.2d, *supra.*

**Motion #2: Dismissal of Plaintiffs' Tortious Interference Claim**

Live Nation's second motion *in limine* asks the Court to dismiss Plaintiffs' claim for tortious interference with business relations. (Def. Br. at 9-10). Little need be said on this point, as Live Nation is clearly attempting to use this supposed evidentiary motion as a pretext to re-litigate Judge Walls's prior summary judgment ruling from 2018, in which Judge Walls denied Live Nation's dispositive motion on Plaintiffs' claim for tortious interference with business relations. (ECF #81). The courts, however, have made clear that a motion *in limine* "is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." See *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013); *see also Rice v. Kelly*, 483 So. 2d 559, 560 (Fla. 4th DCA 1986) (cautioning "trial courts not to allow 'motions in limine' to be used as unwritten and unnoticed motions for partial summary judgment or motions to dismiss").

Here, Judge Walls has already held that the "record contains sufficient evidence raising a question of fact regarding whether Live Nation interfered in Plaintiffs' prospective business relationships. That evidence takes two principal forms: interference with talent agents, and interference with SFEM." (ECF #81 at 6). Judge Walls further held that Plaintiffs made a sufficient showing that they had "a reasonable expectation of economic advantage" to support their tortious interference claim. (ECF #81 at 12-13). In an Opinion and Order dated July 18, 2022, this Court acknowledged Judge Walls's decision that Plaintiffs' tortious interference of prospective business relationships could proceed to trial. (ECF #127 at 3). Accordingly, the viability of Plaintiffs' tortious interferene claim

9

has already been decided and there is simply no basis for Live Nation to re-litigate this issue now, as the trial nears and the deadline for dispositive motions has long since passed.

Moreover, the facts in the record have not changed. As Judge Walls recognized, the record shows that Live Nation was plainly aware of Plaintiffs' agreement with SFEM for the June 2011 electronic dance music event, and that a reasonable factfinder could determine that John D'Esposito and Jason Miller of Live Nation actively interfered with Plaintiffs' attempts to book talent for the event. The evidence includes, among other things, emails to talent agents badmouthing Plaintiffs, as well as statements at a March 3, 2011 meeting where D'Esposito and Miller gave Plaintiffs "an ultimatum that [Plaintiffs] either partner with them or there is no event," and similar statements at an April 22, 2011 meeting that Plaintiffs would not be able to book "premium talent" for the event unles they partnered with Live Nation on economic terms dictated by Live Nation. (ECF #81 at 9-10).

As explained above, Plaintiffs were clearly damaged by Live Nation's attempts to torpedo Plaintiffs' live music promotion efforts, and this Court has already held that Plaintiffs are entitled to present their tortious interference claim to a jury. (ECF #81; ECF #127). Live Nation's motion should therefore be denied.

**Motion #3: Limiting The Trial To "Four Triable Issues"**

Live Nation's final motion asks the Court to limit the evidence at trial to "Four Triable Issues," which Live Nation narrowly defines as issues relating to two emails dated February 15, 2011 and February 23, 2011, and certain statements made at meetings held on March 3, 2011 and April 22, 2011. (Def. Br. at 4, 10). According to Live Nation, any evidence "that is not germane to those narrowly defined issues is therefore irrelevant and should be excluded." (Def. Br. at 10). There are two basic flaws with Live Nation's argument.

First, Live Nation does not bother to explain what type of evidence it deems germane to the "Four Triable Issues." What documents is it seeking to exclude? Everything except the two emails from February 2011 referenced above? What testimony is it seeking to exclude? Everything except testimony relating to the two emails and two meetings referenced above? Which witnesses should be excluded? Live Nation does not say. Instead, it seeks a blanket ruling from this Court that any evidence "not germane" to the so-called "Four Triable Issues" should be excluded. But courts are not supposed to issue such broad rulings on ill-defined evidentiary issues, especially prior to trial. Under the rules, "evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. StemTech Health Scis., Inc.*, 981 F. Supp. 2d 273 (D. Del. 2013). Live Nation's motion fails for this reason alone.

11

Second, and perhaps more importantly, the whole premise of Live Nation's motion is simply incorrect: this Court has not in any way limited Plaintiffs' claims to the so-called "Four Triable Issues" identified by Live Nation. Nowhere in Judge Walls's summary judgment decision (or any other decision in this case) did the Court limit Plaintiffs' tortious interference and defamation claims to the four emails/meetings focused on by Live Nation. The summary judgment record contained over 70 exhibits proffered by Plaintiffs, which included a slew of emails written to and from Live Nation personnel from 2009, emails involving Plaintiffs, SFEM, Live Nation, talent agents, and/or others from late 2010 and early 2011, an engagement letter between Plaintiffs and Al Dorso of SFEM, a contract between Plaintiffs and SFEM, and various deposition transcripts, among other evidence. (*See also* the documents and events described in Plaintiffs' Amended Complaint (ECF #24 ¶¶ 55-107). Live Nation appears to be arguing that if Judge Walls's summary judgment decision did not reference a specific document or line of testimony, then such evidence should be precluded from being proffered at trial. That is absurd.[4]

It is simply blatantly incorrect that Judge Walls or this Court thereafter ever limited the issues here to the "four triable issues" outlined by Live Nation. Judge Walls never limited the "issues," nor does Live Nation cite to any portion of his decision that purports to so limits Plaintiffs' "triable issues." Even in Live Nation's own highlights to this Court's

---

[4] In fact, Judge Walls referenced **_more_** evidence of tortious interference than the "four" listed by Live Nation, including communications on February 16, 2011, February 18, 2011, and February 22, 2011. (ECF #81 at 6-9). He further referenced other evidence that could be used, and while he made some determinations of the admissibility of other evidence, he did not preclude witnesses testifying to that evidence. *Id.* In addition, he included a discussion of the things that happened in early 2011, including in January, which he found relevant to the tortious interference issue. *Id.* at 12.

12

decision at ECF 127 on page 7 of its brief does not support Live Nation's claims – rather, this Court simply noted that the issues "for trial concern whether Defendant engaged in certain conversations and communications in which it unlawfully pressured SFEM and talent agencies not to work with Plaintiffs, and further, whether the February 23, 2011 email was in fact defamatory." That quote in no way supports the idea that there are only "four triable issues" – in fact, the Court referenced *both* pressure to talent agencies (where all four of the alleged "triable issues" come from according to Live Nation) *and* SFEM, where there are additional references in Judge Walls' decision to communications on February 16 and February 22 which are not included in Live Nation's "four triable issues." (ECF 127 at 7; ECF 81 at 12).

Evidence is deemed relevant and admissible at trial under Rules 401 and 402 of the Federal Rules of Evidence if it "has any tendency to make a fact more or less probable than it would be without the evidence," and the "fact is of consequence in determining the action." That is the standard for admissibility. The standard is not whether a document happened to be cited in a summary judgment decision.

Under New Jersey law, Plaintiffs will prevail on their tortious interference claim if they can prove at trial that (1) they had a protectable right via a prospective economic relationship, (2) Live Nation interfered with that right intentionally and with malice, (3) there is a reasonable likelihood that the interference caused the loss of the prospective gain, and (4) Plaintiffs suffered damage from the interference. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751 (1989). For their defamation claim, Plaintiffs must show, "in addition to damages, (1) the assertion of a false and defamatory statement

13

concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence by the publisher." *DeAngelis v. Hill*, 180 N.J. 1, 12-13 (2004); *see also* (ECF #81 at 5, 13). Those are the legal standards that Plaintiffs must meet here, and they are entitled to introduce any evidence that is relevant to those claims and otherwise admissible under the Federal Rules of Evidence.

Live Nation's attempt to limit the evidence at trial to the four emails/meetings referenced above has no basis in law, this Court's prior decisions in this case, or the Federal Rules of Evidence. Live Nation's motion should therefore be denied.

# CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Live Nation's motions in their entirety, and that a trial date be set.

                                              Respectfully submitted,

                                              **SMITH + SCHWARTZSTEIN LLC**
                                              4 Chatham Road
                                              Summit, New Jersey 07901
                                              Phone: 973-206-1725
                                              E-mail: andrew@sslawfirmllc.com
                                              *Attorneys for Plaintiffs*

                                              By: /s/  Andrew B. Smith

Dated: April 1, 2024