

Ian S. Marx, Esq.
Tel 973.360.7951
Fax 973.301.8410
marxi@gtlaw.com

April 8, 2024

<u>*Via ECF*</u>

Honorable Claire C. Cecchi
United States District Judge
United States District Court
 for the District of New Jersey
Martin Luther King Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:   *Juice Entertainment, LLC, et al. v. Live Nation Entertainment, Inc., Civil Action No. 11-CIV-7318 (CCC) (CLW)*

<u>REQUEST FOR LEAVE TO FILE
REPLY ON MOTIONS *IN LIMINE*</u>

Dear Judge Cecchi:

Live Nation is writing to request leave to file a short reply brief in further support of its motions *in limine* (ECF # 141).  At the Court's suggestion, the parties' proposed briefing schedule on Live Nation's motions *in limine* (*see* ECF # 140) did not provide Live Nation with a right to reply although ordinarily it would be afforded such right under the Rules.  However, Plaintiffs' opposition to the motions (*see* ECF # 142) contains several significant misstatements or mischaracterizations of law and fact.  Because it is uncertain whether the Court will grant the parties oral argument at which those issues can be addressed, Live Nation respectfully requests leave to file a short reply brief, in which to address these issues, as follows:

I.   **Incorrect Legal Assertions**

Plaintiffs erroneously rely on several cases for the premise that even if "lost profits" damages are barred by prior orders, Plaintiffs still can still offer the evidence, dressed up under a different name -- "expectation damages" – in connection with their claim in Count II for tortious interference with business relations.  *See* Opp. Br. at pp. 6-7.  The cases on which Plaintiffs rely however involve claims for breach of contract, for which expectation damages may be an appropriate remedy.  The cases do not discuss, concern or relate in any way to whether expectation damages constitute an appropriate remedy on a claim, such as

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TYSONS CORNER
WARSAW~
WASHINGTON, D.C.
WHITE PLAINS

* OPERATES AS GREENBERG TRAURIG MAHER LLP
+ OPERATES AS GREENBERG TRAURIG, S.C.
^ A BRANCH OF GREENBERG TRAURIG, P.A. FLORIDA, USA
~ OPERATES AS GREENBERG TRAURIG GRZESIAK sp.k.
** STRATEGIC ALLIANCE

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
500 Campus Drive, Suite 400 ■ Florham Park, New Jersey 07932 ■ Tel 973.360.7900 ■ Fax 973.301.8410
ACTIVE 685629116v5

April 8, 2024
Page 2
_____

Plaintiffs assert here, for tortious interference with business relations.[1] The issue of whether "expectation damages" are available in contract claims is wholly irrelevant here, where Plaintiffs do not have a viable claim for breach of contract; nor have they asserted one and Plaintiffs' reliance on these cases is wholly misplaced. *See generally* Amended Complaint (ECF # 24).[2]

## II. New Factual Assertions and Mischaracterizations

Plaintiffs then argue that even if lost profits are excluded, they should be allowed to present evidence in support of an award of "compensatory damages" through lay testimony, and they offer deposition excerpts and a handful of documents that they claim support this premise (for reasons briefly touched upon below, these new "facts" do not

---

[1] *Atacs Corp. v. Trans World Communs.*, 155 F.3d 659 (3d Cir.1998) (decided under Pennsylvania law), involved a claim for breach of contract and the court held that expectation damages are available to a plaintiff asserting a breach of contract claim under Pennsylvania law. *Goldfarb v. Solimine*, 245 A.3d 570 (N.J. 2021), involved a suit against an employer who reneged on a promise of employment after the plaintiff had quit his job to accept the promised position. Plaintiff alleged promissory estoppel and breach of contract claims – not a claim for tortious interference. *Mister Softee, Inc. v. Omar*, 2023 WL 6619637, (D.N.J. Oct. 11, 2023) was an action for default judgment by franchisor against an ice cream truck franchisee in which the court was asked to assess default damages arising from breach of a royalty obligation in the parties' franchise agreement on the franchisor's breach of contract claim. *Golden Corral Fran. Sys., Inc. v. Scism*, 2021 WL 4490233, (D.N.J. Oct. 1, 2021), also was a breach of contact action arising from breach of a franchise agreement. Thus, as in each of Plaintiffs' other cases, the court's discussion of the availability of expectation damages to a plaintiff in breach of contract claim is wholly irrelevant.

[2] Plaintiffs also improperly rely upon *Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401 (3d Cir. 1985) (*see* Opp. Br. at p. 7) to argue that the equitable remedy of disgorgement can be used here an alternate theory of damages. Although *Zippertubing* did involve an interference claim, it arose when one competitor diverted an opportunity to itself and the plaintiff sought to disgorge profits the defendant gained from the diversion. The case however is wholly inapplicable here. For among other reasons, Plaintiffs allege that Live Nation's interference caused SFEM to cancel its contract with Plaintiffs, depriving Plaintiffs of the opportunity to put on concerts at the State Fair site; Plaintiffs do not allege that Live Nation then seized upon that opportunity to put on concerts at the State Fair and it is beyond dispute that Live Nation did not do so. *See generally* Amended Complaint (ECF # 24). There is nothing therefore to "disgorge" from Live Nation because Live Nation derived no benefit from the cancellation of the contract between Plaintiff and SFEM; nor did Plaintiffs so allege. *Id.* Moreover, Plaintiffs' Amended Complaint does not assert any equitable claims, nor does it allege any theory that could give rise to the equitable remedy of disgorgement and obviously no such claim is made therein. *Id.* Finally, Plaintiffs make no mention of this theory anywhere in the Final Pretrial Order (ECF # 133).

April 8, 2024
Page 3

_____

support a damages claim against Live Nation). As for the "facts," Exhibits A and B of the Smith Certification in support of Plaintiffs' opposition to the motions *in limine* (ECF # 144-1) are deposition excerpts offered for the premise that "Plaintiffs spent hundreds of thousands of dollars as part of their efforts to promote the 2011 State Fair, refute the lies being spread by Live Nation, and save their agreement with SFEM." *See* Opp. Br. at p. 11. Exhibit C of the Smith Certification is offered as evidence of additional alleged "damages," which even if given credence, would give rise to a compensatory award in the total amount of $3,705.07 – and are comprised of a legal invoice for $750, an invoice for services from "DJ Ricardo" for $340, a receipt for flights, hotel and car rental for $1,565.07 and an email that appears to be about website services for $300. Smith Cert., Ex. C.

      a. *The "Facts" Concerning these Alleged Compensatory Damages Are Not Even Identified in the Final PTO*

Notably, Plaintiffs did not disclose any of these "facts" that Plaintiffs claim could support a claim for compensatory damages in the Final Pretrial Order entered by the Court over a year ago on February 28, 2023, in which the parties were *obligated* to identify **all** of the facts they intended to establish at trial (either by stipulation or through proofs) and which further provided that: "Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof." *See* ECF # 133 at p. 6. The disclosed facts that Plaintiffs advised the Court they intended to establish at trial were set forth in Sections 3.A (Plaintiffs' Proposed Stipulated Facts) and 6.A (Plaintiffs' Proposed Contested Facts) of the Final PTO. *See* Final PTO (ECF # 133). Notably, Plaintiffs do not include *any* facts whatsoever concerning damages in Sections 3 or 6 of the Final PTO and certainly did not disclose at all these new facts concerning alleged compensatory damages that are identified in the opposition to the *in limine* motions. *See id.* Nor do Plaintiffs identify or reference in any way a claim for compensatory damages anywhere in the Final PTO. For this reason alone, Plaintiffs should not be permitted to adduce these newly minted "facts" and a newfangled theory concerning compensatory damages that were not disclosed in the Final PTO.[3]

_____

[3] Federal Rule of Civil Procedure 16(e), provides in relevant part that "[t]he court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence .... The court may modify the order issued after a final pretrial conference ***only*** to prevent manifest injustice." Fed.R.Civ.P. 16(e)(emphasis added). Under Rule 16(e), "the standard is ... stringent, and final pretrial orders are binding on the parties in the absence of a showing of manifest injustice." *Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 59 F.Supp.2d 408, 411 (D.N.J. 1999); *see also Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir. 1987) ("The finality of the pretrial order contributes substantially to the orderly and efficient trial of a case."). "The parties are bound by their agreement to so limit issues and may not introduce at trial issues excluded in the pretrial order." *Randolph County v. Alabama Power Co.*, 784 F.2d 1067, 1072 (11th Cir. 1986); *see also United States v. Pottorf*,

April 8, 2024
Page 4

_____

      b.  *The Newly Disclosed "Facts" do not Give Rise to a Claim for Damages in Any Event*

    The deposition excerpts presented as Exhibits A and B tell part but not all of the story concerning Plaintiffs' acquisition and loss of $300,000 due to circumstances that were wholly of their own making having nothing to do with the alleged actions of Live Nation; consequently, excluding these facts would not result in "manifest injustice."

    Indeed, the full factual record (which was before the Court on Live Nation's motion for summary judgment (ECF # 73)) reveals that one of Plaintiffs' collaborators on the Event, John Sandberg, obtained $300,000 for the Event from a couple from Hackensack, John and Georgianne Chiusolo. *See* ECF # 73 (Marx Cert. Ex. 14 (February 16, 2011 Promissory Note between John Sandberg, Dorfman, Barrett, Juice Entertainment and the Chiusolos); *see also* Marx Cert. Ex. 3 (Dorfman Dep. at 151:23-152:15, testifying that Sandberg had obtained $300,000 from John Chiusolo); *id.* at 224:23-225:9, testifying that the Chiusolos were to receive 25% of Juice Entertainment's net profit in addition to the return of the $300,000 investment). Plaintiffs then lost about half of the Chiusolo money almost immediately. As Sandberg explained it, on or around March 1, 2011, he had been put in contact with someone named Jasmine Adams (a.k.a. "Bella Chanel"), who purported to be an agent for some prominent hip-hop artists. *See id* Marx Cert. Ex. 16 (March 27, 2011 e-mail from Sandberg to Barrett and Dorfman). According to Sandberg, Ms. Adams/Chanel asked him to wire her $131,750, which he did. Realizing he had been scammed, Sandberg asked for the money back, but to no avail. *Id.*; *see also* Marx Cert. Ex. 3 (Dorfman Dep. at 232:5-11, testifying that "we lost the vast majority of the [$300,000] … in a scam."); Marx Cert., Ex. 1 (Barrett Dep. at 239:22-240:6: Q: "That money was just lost?" A: "To the best of my knowledge, lost, yes." Q: "And whoever it was wired to took the money?" A: "Yes."). Although the Chiusolos' investment had been specifically earmarked, Plaintiffs used what remained of it after the Adams/Chanel incident for unrelated "business expenses." Marx Cert. Ex. 3 (Dorfman Dep. at 235:1-4). Those included putting on "an event right down the road [from the Meadowlands] in the swamp in Carlstadt" featuring the infamous actor, Charlie Sheen. *Id.* at 235:4-13. Plaintiffs paid Sheen $55,000 out of the Chiusolo money. Marx Cert. Ex. 1 (Barrett Dep. at 241:4-5, confirming that part of the Chiusolo money was used to pay Sheen).[4]

---

881 F.Supp. 482, 485 (D.Kan. 1995) ("It is proper to exclude from a case any issue not contained in the pretrial order, whether it be a defense or a theory of recovery advanced by the plaintiffs, absent the requisite showing."). Here, for the reasons explained, below, there is no "manifest injustice" in precluding Plaintiffs from offering facts that would not give rise to a compensable claim.

[4] The Chiusolos never got their $300,000 back. *See* ECF # 73 (Marx Cert. Ex. 3 (Dorfman Dep. at 238:16-20, testifying that the Chiusolos were never repaid "because the event never took place.

April 8, 2024
Page 5

_____

Consequently, Plaintiffs were not "damaged" in any way by their alleged expenditure of $300,000; these funds (which were not Plaintiffs in the first place) were admittedly and beyond dispute lost due to Plaintiffs' own actions without regard to any actions of Live Nation and evidence concerning this subject is therefore irrelevant and inadmissible. *See* F.R.E. 103, 104.[5]

\*   \*   \*

For the foregoing reasons, Live Nation respectfully requests leave to file a reply brief in further support of its motions *in limine* or, alternatively, that the Court grant leave *nunc pro tunc* and that this submission be considered as the reply.

**Respectfully submitted**,

**GREENBERG TRAURIG, LLP**

*/s/  Ian S. Marx*

IAN S. MARX

ISM/dad
cc: All Counsel via ECF

---

We didn't have the money to repay them."); Marx Cert. Ex. 1 (Barrett Dep. at 243:15-21, testifying that, by May 31, 2011, only $242.36 was left from the Chiusolos' money). The Chiusolos ultimately sued Plaintiffs for the $300,000. Marx Cert. Ex. 3 (Dorfman Dep. at 54:22-55:11, testifying that John Chiusolo has sued him over the money he loaned for the Event and never got back); id. at 238:25-239:9, acknowledging that the Chiusolos had caused legal papers to be delivered to his house regarding the $300,000)).

[5] Nor have Plaintiffs explained in any way how their alleged expenditures of $3,705.07 referenced in Exhibit C of the Smith Certification (comprised of a legal invoice for $750, an invoice for services from DJ Ricardo for $340, a receipt for flights, hotel and car rental for $1,565.07 and an email that appears to be about website services for $300) are appropriately considered as evidence of damages for which Live Nation is liable.

ACTIVE 685629116v5